UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES

Plaintiff

V.

2019 JUN 14 PM 3: 29

Civil Action No. 1:19-cv-11093-**ADB**

U.S. DISTRICT COURT
DISTRICT OF MASS.

MONTACHUSETTS REGIONAL TRANSIT AURTHORITY

HB SOFTWARE SOLUTIONS, INC

REBECCA BADGLEY

DONNA LANDRY

BONNIE MAHONEY

KAREN CORDIO

JOANNE NORRIS

STEPHANIE RICHARDS

TAMARA SHUMOVSKAYA

JESSICA TORRES

AMANDA KUKTA

ROBERT MONK

MICHELLE MOYO

IVAN ROMAN

CRYSTAL GEISERT

JANE DOE, and JOHN DOE,

Defendants

## **VERIFIED AMENDED COMPLAINT**

### **Introduction**

1.  Plaintiff, Paul Jones proceeding Pro Se, brings this action pursuant to Title VI et seq, Title VII et seq of the
    Civil Rights Act of 1964 et seq., Intentional Discrimination, Retaliation, Hostile Work Environment, M.G.L. c.
    151B et seq, and the Telephone Consumer Practices Act 47 U.S.C. § 227, *et seq.* ("TCPA"), perpetrated against
    him by all Defendants whom interference with Plaintiff's rights and retaliated against him for filing complaints

1

defendant MART and several of their employers. This conduct caused plaintiff personal injuries which was concrete and particularized harm as defined in Spokeo.

2.   Intentional Race Discrimination, Retaliation and causing Hostile Work Environment is an almost silent yet pervasive problem in American, Federal money supported and financed *(Aid and Abetting)* the above Defendants acts through awards of federal funded moneys and jobs.

3.   In general, it seems rather anomalous that the Federal Government (Funds) should aid and abet Defendants Retaliatory, Intentional Discriminatory conduct based on race, color, or national origin and a Hostile Work Environment, by granting money and other kinds of financial aid. It seems rather shocking, moreover, that while we have on the one hand the 14th amendment, which is supposed to do away with discrimination since it provides for equal protection of the laws, on the other hand, we have the Federal Government sometime unknowingly aiding and abetting those who persist in practicing Intentional Racial Discrimination, Retaliation and serial Hostile Work Environment.

4.   Plaintiff filed a Title VI complaint with the Department of Transportation (DOT) and other Federal & State agencies, Defendant MART on or about April & August of 2017 (Over 26 months), since then defendants have ramped up their Retaliation, Intentional Discrimination and has caused a serial Hostile Work Environment.

5.   Plaintiff reported these acts over fifty-two times to defendants MART their Directors, Managers and lowers employees, plaintiff has been met with nonfeasance conduct by each defendant, more discriminatory and retaliatory acts, these acts caused plaintiff to suffer personal injuries such as Economic damage, loss of sleep deprivation, loss of consortium, anxiety, depression, humiliation, fright and fear of losing job.

6.   Defendant's MART, HSBB, Rebecca, Karen, Joanne, Tamara, Jessica, Amanda, Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Michelle, Joanne are serial offenders of all the counts in this lawsuit as they had the opportunity to correct all their illegal acts and refused to do so, these serial acts started on or about April 20, 2016 and the last acts were on or about June 13, 2019.

7.  Upon information and belief Defendant MART, HSBB, Rebecca, Donna, Karen and Tamara, the Brokerage and Scheduling department has a policy of not hiring *any African American males* to work in their departments occasionally one or two will be allowed to work in the call center as a low-level phone operator.

8.  Upon information and belief Defendants MART, HSBB, Rebecca, Karen, Joanne, Tamara has an open policy that they will not hire a vendor that has an African America Male as the owner or is in a controlling position (Manager /Director), this is an open secret, defendants occasionally will tolerate a few African American *females* to work in these department.

9.  This is a case of Continuing Violations Doctrine under Title VI and other Federal & State laws, the defendant's misconduct places the plaintiff under their prolonged control, or where malfeasance affects a broad swath of potential claimants, either the pure or the modified version of the Continuing Violations Doctrine may represent the optimal means of producing fair and efficient outcomes, these acts are aggregated to make out a hostile work environment claim, they are linked in a pattern of actions which continues into the applicable limitations period.

10. Defendants acts which constitute the plaintiff's claims are part of the same unlawful employment practices that several acts fall within the applicable limitations period, defendant's harassment was more than the occurrence of isolated or sporadic acts of intentional Discrimination, Retaliation and causing a serial Hostile work Environment.

11. Defendants HSBB, Rebecca, Karen, Bonnie, Joanne, Tamara, Jessica, Amanda, Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Michelle, Joanne turned a blind eye to these blatant acts mentioned above, this does not generally fare well under anti-discrimination laws like Title VII and other Federal & State laws.

12. Defendants are liable for statutory, punitive damages and other damages, defendants exercised daily control over the plaintiff 's employment.

## Parties

13. The Plaintiff Paul Jones (Plaintiff) is an African American resident of Stoughton, County of Norfolk, Massachusetts and a citizen of the United States and part of a protected minority group.

14. The Defendant Montachusett Regional Transit Authority ("MART") is a regional transportation authority established under Chapter 161B of the Massachusetts General Laws, and maintains a facility in Fitchburg, Worcester County, Massachusetts.

15. The Defendant HB Software Solutions, Inc ("HSBB") is, upon information and belief, a Corporation located at 1075 Westford Road Lowell, Ma 01851.

16. The Defendant Rebecca Badgley ("Rebecca") is, upon information and belief, an individual residing in Massachusetts and is a manager at Montachusett Regional Transit Authority she is also responsible for hiring and supervising staff, carrying out the policies of MART brokerage department she is the Director.

17. The Defendant Donna Landry ("Donna") is, upon information and belief, an individual residing in Massachusetts and is a manager at Montachusett Regional Transit Authority, she is Assistant Director of Brokerage also responsible for hiring and supervising staff, carrying out the policies of defendant MART.

18. The Defendant Bonnie Mahoney ("Bonnie") is, upon information and belief, an individual residing in Massachusetts and the Communications & Grants Manager at Montachusett Regional Transit Authority she is also responsible for carrying out the policies of Defendant MART Title VI and VII program.

19. The Defendant Karen Cordio ("Karen") is, upon information and belief, an individual residing in Massachusetts and was the Sr. Program manager at Montachusett Regional Transit Authority until on or about May 1, 2016 and is now an employee of HB Software Solutions, Inc. who created the software that defendant MART uses on a daily basis.

20. The Defendant Joanne Norris ("Joanne") is, upon information and belief, an individual residing in Massachusetts and an employee at MART she is a supervisor in the Manager, Complaints quality assurance department.

21. The Defendant Stephanie Richards ("Stephanie") is, upon information and belief, an individual residing in Massachusetts and a supervisor at Montachusett Regional Transit Authority.

22. Defendant Tamara Shumovskaya ("Tamara") is, upon information and belief, an individual residing in Massachusetts and a supervisor in the scheduling department at Montachusett Regional Transit Authority Scheduling department she is also responsible for supervising call center staff, carrying out the policies of defendant MART.

23. Defendant Jessica Torres ("Jessica") is, upon information and belief, an individual residing in Massachusetts and an assistant supervisor of scheduling department at Montachusett Regional Transit Authority Scheduling department.

4

24. Defendant Amanda Kukta ("Amanda") is, upon information and belief, an individual residing in Massachusetts and an assistant supervisor at Montachusett Regional Transit Authority Scheduling department.

25. Defendant Robert Monk ("Robert") is, upon information and belief, an individual residing in Massachusetts and is a contract manager at Montachusett Regional Transit Authority, he is also responsible for carrying out the policies of defendant MART as a contract manager.

26. Defendant Michelle Moyo ("Michelle") is, upon information and belief, an individual residing in Massachusetts and is a contract manager at Montachusett Regional Transit Authority, she is also responsible for carrying out the policies of defendant MART as a contract manager.

27. Defendant Ivan Roman ("Ivan") is, upon information and belief, an individual residing in Massachusetts and was a contract manager at Montachusett Regional Transit Authority until on or about May 20, 2018.

28. Defendant Crystal Geisert ("Crystal") is, upon information and belief, an individual residing in Massachusetts and was an Sr. Staff Assistant at Montachusett Regional Transit Authority until on or about May 25, 2017.

29. Defendant "Jane Doe" and "John Doe" are placeholders for an indeterminate number of partners or shareholders of defendants that may bear individual culpability for the claims stated in this Complaint and who may be separately liable therefore.

## JURISDICTION

30. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

31. Venue is proper in this Court pursuant to **28 U.S.C. 1391(b)** in as much as the challenged actions are alleged to have been committed in this District, all Defendants regularly conduct business in this District, and the named Plaintiff reside in this District.

32. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists of the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

33. Jurisdiction of this Court arises under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

5

**FACTS**

34. All conditions precedent to the bringing of this action has been performed, this case is over $75,000.

35. Defendants intent to cause emotional distress upon plaintiff, Defendants conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

36. As a further proximate result of defendants Intentional Discrimination, Retaliation and creating a Hostile Work Environment and the consequences proximately caused by it, plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body

37. Plaintiff complained to Defendant HSBB, MART, Rebecca, Donna, Bonnie, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica, Amanda, Jane and John their Directors and Managers (At all times relevant to the subject matter of this litigation) but nothing was done to stop or deter the conduct, all defendants directly participate in federal funded programs and directly benefited from federal grants, loans or contracts.

38. Plaintiff undertook protected conduct and suffered an adverse employment action, and the two are causally linked.

39. All Defendants comments and acts were humiliating severe or pervasive to alter the conditions of plaintiff's employment and created an abusive working environment, Defendants received actual and constructive notice by emails, verbally and including several complaints, EEOC, Title VII and Title VI complaints filed on defendants.

40. Defendant Donna, Rebecca, Bonnie, Karen, Joanne, Tamara, Amanda, Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Michelle, Jane and John are MART's and HSBB Managers, are decision makers and or Director, whom were responsible for, among other things, ensuring that they and other employees complied with Title VI, Title VII et seq, TCPA and other Federal & State laws, plaintiff revoked consent several time by certified mail and verbally (*See Exhibit 1*).

41. Defendant HSBB, Donna, Rebecca, Bonnie, Karen, Joanne, Tamara, Jessica, Amanda, Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Jane and John had good faith and reasonable belief that the action plaintiff opposed violated Title VI, Title VII, M.G.L. c. 151B. et seq, and other Federal & State laws.

42. Defendant's MART, HSBB, Rebecca Karen, Donna, Joanne, Tamara, Amanda, Jessica Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Robert, Michelle, Jane and John subjected plaintiff to repeated unpleasant and inequitable treatment from on or about April 30, 2016 until June 13, 2019.

43. Defendants MART, HSBB, Rebecca, Karen, Donna, Joanne, Tamara, Amanda, Jessica Robert, Michelle, Ivan, Crystal, Jane and John, Intentionally discriminated against plaintiff, because plaintiff opposed (contended against, confronted and resisted) all practices made unlawful practice by Title VII et seq, Title VI et seq. M.G.L. c. 151B. et seq and other Federal & State Laws.

44. Plaintiffs was and is the manager / dispatcher at Commonwealth Community Recovery Division Inc. (CCRD) whom has a contract with defendant MART, plaintiff has to communicate via telephone every day with defendant and or by email unlike other nonminority vendors or vendors that don't protest defendant's treatment.

45. Defendant's MART, Rebecca, Karen, Robert, Michelle, Ivan and Crystal, Jane and John, denied the plaintiff proper training from on or about March 1, 2016 until on or about October10, 2018 after several request by plaintiff to receive the proper Vendor portal training as other non-minority vendors received.

46. Defendant's MART, HSBB, Rebecca, Karen, Donna, Joanne, Tamara, Amanda, Jessica Robert, Michelle, Ivan, Crystal, Amanda, Jane and John, conduct toward the plaintiff was Intentionally discriminatory, retaliatory and caused a hostile work environment, it deprived the plaintiff of the benefits of MARTs federal funded programs, the ability to perform his job duties while defendants collected their salaries and enjoyed the benefits of their jobs and the federal funded program.

47. Defendants HSBB, MART, Rebecca, Donna, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica Amanda, Jane and John have segregated plaintiff and has separate policy's & treatment for plaintiff. These acts and or practice complained of in plaintiff complaint was committed with knowledge, or reason to know.

7

48. Defendant Ivan, Robert & Moyo are the contract manager that was assigned to assist plaintiff on issue with MART policies and procedures, from On or about April 2016 until on or about May 15, 2019, these contract managers refused to assist plaintiff (Stoned Walled) on policies and procedures and issues, they refused to even answer or respond to plaintiffs' written request for assistants (emails) on several occasions, depriving plaintiff of the knowledge he required to do his job.

49. Plaintiffs is proceeding against all the individual defendants named in this complaint because there are triable issues of fact regarding whether they committed Intentional Discrimination, Retaliation, non-accommodation and created a (serial) Hostile Work Environment.

50. Defendants HSBB, MART, Rebecca, Donna, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica, Amanda, Jane and John pattern and practice is widespread systemic discrimination. These practices harmed plaintiff and a large number of minority vendors and their employees in the same manner, their acts were standard operating procedure, regular rather than unusual practices.

51. Defendants HSBB, MART, Rebecca, Donna, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica, Amanda, Jane and John has not taken any affirmative action to assure that plaintiff does not stay excluded from MARTS federal funded programs, participation in the Low-Bid system, gaining access to the Vendor Portal that displays the daily & weekly jobs from their program.

52. Defendants MART, Rebecca, Donna, Karen, HBSS, Jane, John retaliated or allowed their staff under their watch to disable a TAB that controls key feature in plaintiff vendor portal and create new generic emails for all defendants too be contacted from vendors this was after I informed defendant Roman Ivan I was filing a complaint in a few weeks because my emails were being ignored, plaintiff filed the first Title VI complaint on or about March 22,2017, (*See Exhibit 2*) and defendants answered on or about May 2, 2017 (*See Exhibit 3*) upon information and belief this new generic emails were set up so going forward no one in particular could be held responsible for not responding to plaintiffs concerns or questions over email (*See Exhibit 4*).

53. This disabled TAB allowed plaintiff to run end of the day reports, research clients complaint history, what accessed fines are for, the ability to see when a complaint was filed against plaintiffs staff & drivers that are

8

time sensitive, when trips or shared rides are offered to plaintiffs, reports that display all vendors activities, trips excepted and denied by all vendors including price, these acts have handicapped the plaintiff from doing his job properly, other non-minority individuals or vendors that don't protest defendants treatment have full access to these features as of June 14, 2019.

54. After plaintiff filed the Title VI complaint against MART on or about March 22, 2017, (*See Exhibit 2*) Defendants Joanne retaliated against plaintiff a few weeks later by fining plaintiff unjustly for approximately over $8000 from April 15, 2017 until June 13, 2019, the Defendants Joanne, Michelle and Robert even refused to inform the plaintiff in writing what the fines were for, removing complaint number and or explanation from plaintiff fine invoice.

55. Plaintiff exhausted every remedy possible to avoid the filing of this lawsuit (*See Exhibit 5*) in every way defendant the director, manager & decision maker failed to respond and if they did respond they just did not investigate any of plaintiffs claims.

56. Plaintiff should be able to proceed to discovery because he has alleged sufficient facts to make the non-innocent explanation of these facts plausible.

57. Plaintiffs complaint described actions of which he has personal knowledge of, sufficient detail to make them plausible in this Verified Amended Complaint.

58. Defendants HSBB, Rebecca, Karen, Tamara, Jessica, Amanda has sabotages, caused to sabotaged or stood by silently as plaintiff pointed out these facts and refused to correct the deficiencies in plaintiff's vendor portal from on or about April 16, 2016 until June 13, 2019, after defendant Karen was employed at HSBB she began to interfere with plaintiff vendor portal on a daily bases, these defendants place or caused or allowed the placing of non-cost-effective trips into plaintiff vendor portal, this has caused plaintiff to be late and fined considerably since plaintiff started protesting, plaintiff warned the defendants that this was contrary to Title VI,VII and M.G.L. c. 151B (*See Exhibit 6*).

59. Defendants Joanna, Tamara, Jessica and Amanda on at least 40 of occasions refused to pay plaintiffs employer for accommodating two individuals to methadone clinics, the Defendants would disguised as escorts (whom rides for free), when in fact both escort and clients had appointments at the clinic and would see a doctor to get

9

dosed daily, these same clients and escorts were paid as two individuals (separately) to other non-minority vendors or vendors that don't protest defendants treatment these documents are in the possession of defendant MART, MassHealth and HSBB.

60. Upon information and belief defendant Karen, HSBB employer as of approximately May 2017, on several occasion would program the vendor portal or cause it to be programmed to make plaintiff trips to disappeared out of plaintiff portal, which causes plaintiff to have to scramble to book non-cost effective trips for his drivers for the next day so no drive would miss a day, this causes plaintiff to have to work longer hour to insure there is work for the drivers the next day, cutting into plaintiff family responsibilities.

61. Defendants HSBB, Karen, Tamara, Jessica, Amanda, HBSS, Karen and lower scheduling staff have even placed trips that were never even excepted (*See Exhibit 6*).or completed by plaintiffs employer into his by weekly invoices, this has the ability for plaintiff to be brought up of fraud charges by getting paid for trips plaintiffs drivers have not completed, other non-minority vendors never have these problems and have access to all the above functions of the vendor portal this was reported to Defendant Rebecca.

62. Defendants Tamara, Jessica, Amanda constantly removes standing orders and trips from plaintiff portal and give them to other vendors, defendants also do not report most cancellation to plaintiff when a client cancels an appointment, which causes plaintiff and his driver to be on a wild goose chase which economically harms plaintiff and the company.

63. Plaintiff has been excluded from participation in, *denied* the *benefits* of, and the *enjoyment* of any right, privilege, *advantage*, or opportunity enjoyed by other non-minority vendors or vendors that don't protest defendant's treatment in MARTS Federally funded non-emergency transportation program, this is contrary to Title VI, Title VII of the Civil Rights Act. and other Federal & State Laws

64. Defendant MART, Rebecca has withheld plaintiffs' company's pay on several occasion, other non-minority vendor gets paid consistently on time, Defendant Stephanie sent several memos to change the pay day on several occasions to plaintiff (*See Exhibit 7*) but these paid dates are constantly changing when it comes to plaintiff getting paid.

65. Defendants MART, Karen, Ivan, Crystal, Robert, Michell, Rebecca failed to allow plaintiff the opportunity to be trained and be shown the Vendor Portal demo in a timely orderly fashion, (*See Exhibit 8*) and attend a training with any other vendors for almost 30 months, this was to separate and ostracize plaintiff, so I could have to learn by trial and error and which plaintiff did, this method of training cost plaintiff money, time & energy while other non-minority vendors and vendors that don't protest defendants treat received all the proper training and tools needed to perform the job the first time around.

66. Defendants' conduct under color of law proximately caused the deprivation of Plaintiff's federally protected rights and her resulting grievous injuries. Defendants' conduct was done willfully and wantonly and/or with reckless disregard of Plaintiff's rights and feelings.

67. Marts policy states "*MART uses advanced software, which chooses winning bids on a low bid system, MART's computer sort all bids every two hours based on location (who is nearest) and cost (whose is lowest). At the end of each day, all the trips for the following day are distribute via the Vendor Portal*" this is not always the case when assigning trips to non-minority and minorities.

68. Defendant Rebecca, Karen, Ivan, Crystal, and Monk have stated that when MART needs you they will call you while other non-minority vendors or vendors that have not protested defendant's treatment get full access to the vendor portal to cherry pic their schedule and are given jobs when they have the higher bid and are the farthest from the client, this is contrary to MART & HSBB policy, these documents to prove this is in the possession of MART, MassHealth and HSBB.

69. Plaintiffs relations with all defendants deteriorated on or about March 15, 2016 when he first appeared at MARTS facility and they realized plaintiff was a Black African American male till the time of the filing of this complaint, plaintiff did not receive any work for almost 6 months and had to lay off all his drivers and sell 2 vehicles to pay expenses for the company (Insurance, Gas, Maintenance, etc.).

70. After plaintiff filed the Title VI complaint on or about April 16, 2017 defendants Tamara, Jessica, Amanda and the scheduling depart Discriminated and Retaliated by reducing plaintiffs work significantly over the last 2 years

causing plaintiff to have to lay off drivers for lack of work while non-minority vendor and vendors that have not protested defendant's treatment had full access to MARTS Federal Funder program.

71. From on or about April 15, 2016 to June 13, 2019 Defendants Karen, Ivan, Crystal, Tamara, Jessica, Amanda and their staff implemented a policy against Plaintiff that he receive approximately 98 percent less work than non-minority vendors or vendors that have not protested defendant's treatment even if plaintiffs rates (Bids) were lower, this is a discriminatory, Retaliatory act by defendants above, (*See Exhibit 9 spread sheet*) which is August 1, 2016 Vendor Activity Log Report, this report shows all trip vendors refused that work in the Western Massachusetts area (Pioneer valley) where plaintiff works, these vendors refused more trips in one day than plaintiff received in a week as of August 1, 2016. Agawam Transportation refused 138 trips, COMPP Trans refused 332 trips, DSEX Trans refused 164 trips, PHIL Trans refused 53 trips, PRVT Trans refused 166 trips, RAFA Trans refused 810 trips, on this particular day plaintiff refused no trips and was only offered 10 trips and had 3 trip totals for the day of August 1, 2016

72. Defendants MART, Rebecca, Karen and HSBB allowed their employees and co-workers at MART and HSBB to block plaintiff from the vendor portal and disabled key Tab features to deprive plaintiff and to ensure that he could not compete for any jobs with the non-minority vendors or vendors that have not protested defendant's treatment (*See Exhibit 10 Accepted Trip spread sheet*)  this spread sheet was download before defendants disable my tabs in the vendor portal these spread sheets have revealing data of which dispatchers get what riders.

73. On June 2, 2016 at 12:28 pm Defendant Ivan (*See Exhibit 11)* stoned wall plaintiff regarding access to plaintiffs capacity TAB that allows HSBB to see plaintiffs drivers capacity to take on work, Defendant MART stated in there answer to plaintiffs Title VI complaint that plaintiff capacity tab was inadvertently marked as he had ZERO capacity to take on work from on or about April 15, 2016 until April 16, 2017, plaintiff received no work through the vendor portal for a whole year while non-minority and vendors that have not protested defendant's treatment enjoyed the benefits of cherry picking their schedule daily, these acts caused plaintiff to lay off all drivers.

12

74. When plaintiff emailed his contract manager defendant Ivan on several occasions to inform him when plaintiffs tried to adjust his capacity tab it displayed that *"You cannot change capacities as it has been locked by M.A.R.T."* defendant Ivan stoned wall plaintiff by stating verbally and in email that "Hi Paul, You are able to make changes to your capacity manager to reflect times and days of the week you are willing to accept work by visiting the vendor portal and editing your capacity management tab", (*See Exhibit 11)* when in fact he was aware that plaintiffs Capacity tab was blocked by defendants Rebecca, Karen, HSBB and others on the portal that it was locked by MART this was contrary to defendants MARTS policy and Title VI, Title VII and other Federal & state laws as other non-minority vendors or vendors that have not protested defendant's treatment had access to change their capacity at will.

75. On June 2, 2016 pm plaintiff reply to defendants Ivan email and stated, *"Dear Ivan, when I go to capacity management tab it states*: "You cannot change capacities as it has been locked by M.A.R.T.", *this is in red writing bold letters, from what it is telling me it needs to be unlocked by MART first, please let me know your thoughts Thank you"*, Defendant Ivan knew that plaintiff's capacity tab was disabled and just stone walled plaintiff. Defendant Ivan knew that plaintiff's capacity tab was disabled and just stone walled plaintiff.

76. Upon information and belief defendant HSBB, Karen and *Tamara Shumovskaya* (Schedule Dept Manager) whom is Russia makes sure her staff goes out of their way to accommodate the Russian vendor, example all Russian vendors receive no calls (Artificial voice message by IVR System) telephone to offer them work, they have full access to the vendor portal at all times, all their Tabs works in the vendor portal that allows them to research clients complaint history, allows them to cherry pick rides that are very close and only have a mile or two radius, allow them to choose their areas of work, pay them double the rate sometimes, they are offered 75 trips to every one trip plaintiff is offered regardless of their bid price, allow them to down load end of the day trip receipts, make sure their portal alerts them when a complaint is filed against them so they can timely answer (48 hours) without getting a fine , this is done even if they have higher rates than plaintiff (Bid Rigging), allow them to have multiple company's or their affiliates (Corporate officers),  all one has to do is look at MARTS phone records and payroll, plaintiff has to work harder and longer to get less paying trips (non-cost-effective) ,

13

this is contrary to being a recipient of Federal Funds and it is an open secret at the MART Brokerage department, MassHealth has all the records in their possession to prove this accusations , plaintiff plans to propound discovery these documents.

77. This is not the first time MARTS Brokerage and Scheduling department was allowing non-minority vendors to skip the bidding process (Seehttps://www.telegram.com/article/20100924/NEWS/100929724?template=ampart ) or have multiple company's now they just make sure one person doesn't have multiple company's in one name, officers of a certain corporation that is owned by these individuals will each have company's in their names sometimes using the same address, this is public record at the Secretary of States website again an open secret, this is contrary to Federal & State Law and being a recipient of Federal funds.

78. Plaintiff sent defendant Rebecca the Manager an email (*See Exhibit 12*) on *August 24, 2016 at 4:48 pm* informing her that her staff has been subjecting plaintiff to racial discrimination, Hostile work environment, Unfair & Deceptive Acts & Retaliation, *On August 25, 2016 at approximately 10:00am* first thing the next morning Defendant Rebecca replied to my emailed and stated "*Paul, Please understand that there is no discrimination involved of any kind. Karen has been out of the office frequently as of late. After following up it is my understanding that Ivan has been assisting you and has been very responsive when you have presented issues but that he has not heard from you recently. Looking in-depth in follow up to your email there was an area in the vendor portal that was blocked, and this was simply an oversight however that might have been the cause of the situation of you not being able to adjust capacities.*

79. Defendant Rebecca retaliated against plaintiff by failing to investigate plaintiff claims of Racial Intentional discrimination, Hostile work environment, Unfair & Deceptive Acts & Retaliation on August 24, 2016, All Defendants including managers Rebecca & Donna, jane and John has a fundamental misunderstanding of the law on Discrimination, Retaliation and causing a (serial) Hostile Work Environment and failed to conduct an effective and "neutral" investigation, both symptomatic of broader problems at MART

80. Defendant Rebecca has told plaintiff several time verbally and by emails that plaintiff should go find work elsewhere.

81. After the August 24, 2016 email to defendant Rebecca there was division and controversy in the program with plaintiff and MART whole staff, Defendants Rebecca, Donna, Karen, Tamara, Jessica, Ivan, Amanda and their lower staff began an implementing an all-out assault of retaliation, Intentional Discrimination and they created a (serial) Hostile Work Environment, this caused very serious issues for the plaintiff going forward.

*82.* The next day (August 25, 2016) Plaintiff was able to adjust his capacity to take on work from the vendor portal(*See Exhibit 12)*, but plaintiff receive, no or little work, because now plaintiff's portal appeared to be working but internally it was disabled, upon information and belief this was done with the help of defendant Karen & HSBB, the company that built and controls the software for the vendor portal whom defendant Karen was hired after the results of plaintiff filing his Title VI complaint against her.

83. On or about October 15, 2016 for the first-time plaintiff started receiving calls from an ATDS and or predictive Dialer with an artificial and or computerized voice from defendants MART telephone number 978-424-9002, at the time plaintiff had no drivers (Due to lack of work) and had the responsibility of driving and dispatching which was impossible to do, plaintiff started received approximately 40-70 computerized artificial voice messages offering him work (non-cost effective trips) from approximately 7 am until 12 noon.

84. Plaintiff immediately called Defendants Ivan his contract manager and Crystal and informed them to please only call plaintiff on his office number *888-680-4667* (Revoked Consent), defendants Ivan & Crystal assured plaintiff no calls would come to his personal cellular telephone anymore, defendants continued to place calls to plaintiffs' personal cellular telephone for the next 32 months with sometimes up to 70 calls a day from 6:10 am -7:00pm on plaintiffs' personal cellular telephone.

85. Soon after MART added verbiage in their 2017 amendments that all vendors had to have a non-toll-free number to receive calls from their IVR system, plaintiff then purchased a non-toll-free number to be called on *413-315-4500*, this number was given to defendants Ivan , but defendants have never used it, plaintiff still has this number as of June 14, 2019, defendants refuse to you it as they still are placing calls to plaintiff personal cellular number.

86. Plaintiff immediately hired a phone operator to take all the calls because as I anticipated the defendants Ivan and Crystal would honor my request to only call plaintiff on the office number *413-315-4500*, defendants failed to place any calls to plaintiff's office number, plaintiffs phone operator did not receive any telephone calls from defendants MART, so plaintiff laid her off, as calls kept pouring in on plaintiffs' personal cellular telephone.

87. Plaintiff sent several letters to defendants to revoke consent to calling plaintiffs personal cellular telephone and also gave the office number to defendants to call plaintiff for all dispatching or any other reason defendants need to speak with someone, (*SEE Exhibit 1*).

88. Plaintiff protested this treatment to defendants Rebecca, Karen, Ivan, Crystal, Tamara, Jessica, defendants seem to get offended that plaintiff was requesting that all future calls be place to the office, this caused a greater divide between plaintiff & defendants.

89. On or about December 28, 2016 plaintiff hired another driver plaintiff logged in to the vendor portal and realized his capacity tab had been locked again by defendant MARTS employees, this hamper plaintiffs' efforts to adjust his capacity for the new drive.

90. From April 30, 2016 to June 13, 2019 Defendants Rebecca, Karen, Ivan, Crystal, Tamara, Jessica, Stephanie, Robert, Michelle and Amanda. allows a special group of non-minority vendors or vendors that don't protest defendant's treatment to take Sundays off as of June 14, 2019, and their work would be distributed to plaintiff and other vendors, when in fact they were mandated to work every day, these special vendors had standing orders (Standing orders are ride vendors except that demands client goes every day) this is contrary to defendants MARTS policy.

91. . Defendant MART, Rebecca, Donna, Karen, Tamara, Jessica, Amanda make sure these special groups of non-minority vendors or vendors that don't protest their treatment, receive trips that are in a 1-3-mile radius (Cost effective), in multiple town (up to 30) or that are worth up to $350-$400 round trip, as plaintiff only receive trips in Springfield, Holyoke and Chicopee.

92. Defendant MART, Rebecca, Karen, HSBB, Donna, allow Defendants Tamara, Jessica, Amanda to assign trips that require multiple pick ups in the same area that are going to same facility or a facility close by, this gives the

16

non-minority vendors non-minority vendors or vendors that don't protest their treatment an unfair advantage over plaintiff and other vendors.

93. Defendants Stephanie and Ivan demands that plaintiff send all drivers credentials over to them (*See Exhibit 13)* for inspection by her staff, this is not done to non-minority vendors or non-minority vendors or vendors that don't protest their treatment their credentials are only inspected by MARTS inspectors, this is contrary to Discrimination, Retaliation, Federal & State Laws and MARTS policy's, as no other vendors are treated like this.

94. Defendants MART, Rebecca, Karen, HSBB, Donna, allows Defendants Tamara, Jessica, Amanda, Stephanie, Robert, Michell thoroughly undermined plaintiff effectiveness in a manner designed to sabotage plaintiffs' efforts to participate in MARTS federal funded program, by stonewalling each and every inquiry plaintiff makes.

95. Defendant MART, Rebecca, Donna, Karen, Ivan, Crystal, Joanna, Michelle, Robert, Stephanie, Tamara, Jessica and Amanda maintained programming that favored non-minority / foreign vendors and vendors that don't protest their treatment and excluded and do not hire protected African American Male vendors / workers and plaintiff.

96. Defendants HSBB, Karen, Tamara, Jessica, Amanda and the scheduling department has blocked plaintiff from gaining access to over 40 cities and towns that he has placed bids in, while allowing non-minority vendors or vendors that don't protest their treatment access to all the towns they have bids in, is contrary to Federal & State laws, MARTS policy, this treatment gives the non-minority vendors or vendors that don't protest defendants treatment an unfair advantage over plaintiff and contrary to Discrimination , Retaliation and other Federal & State laws.

97. Defendants HSBB, Karen, Tamara, Jessica, Amanda make it a point to offer plaintiff trips where there are 1-2-3 escorts, clients that require walkers or crutches while they offer none of these types to the non-minority vendors or vendors that don't protest there treatment when these types of rides should be spread between all vendors, defendants made it a point to give the plaintiff undesirable assignments example: the very first and only

17

assignment plaintiff was given a 1 ride offer 3 day a week, an individual Clover. K, before plaintiff's complaint tab was deactivate and remove from his portal, plaintiff research Clover. K, (whom was considered critical care) she had over 30 complaints lodged against her, and she had filed over 40 against other drivers as on May 1, 2016, no drive would agree to transport her under any circumstances, plaintiff transported Clover. K for over a year and half without a single incident and or complaint from either party.

98. Defendants MART, Rebecca, Donna, Robert, Michelle, Stephanie, Joanne, Karen, Ivan, Crystal, Tamara, Jessica and Amanda and lower employees retaliated against plaintiff (*For plaintiff filing a Title VI Complaint*) for exercising his protected rights by removing plaintiff from access to the vendor portal plaintiff had to rely on computerized, artificial calls from an Automatic Telephone Dialing System (IVR System) and or predictive dialer to receive work daily, unlike the minority vendors or vendors that did not protest defendant's treatment of them.

99. Defendant Karen, Rebecca, Ivan, Stephanie, Robert, Michelle and others denied plaintiffs request to participate in the federally funded Vehicle Leasing program, (*See Exhibit 14)* Dial a Ride (Until April 2018), DDS, EIP, DMH programs while other non-minority vendors and vendors that don't protest defendants Discriminatory, Retaliatory treatment, defendants also only assigned approximately 10 shared rides from the Shared Ride program to plaintiff while other non-minority vendor and vendors that did not protest defendants treatment over 100 – 200 shared rides within the same period of time, other non-minority vendors and vendors that don't protest defendant treatment are allowed to participate in the above federally funded programs.

100. Upon information and belief on or about May 1, 2017 after plaintiff filed the Title VI complaint against Defendant Karen and others, Karen was forced to resign and or was fired from MARTs place of business, and some workers were ordered to undergo civil rights training and Defendant MART had to update their website to reflect Title VI and Title VI complaint procedure and policy's. The defendants were ordered by MassHealth to basic anti-discrimination training that covers discrimination, harassment and retaliation in an effort to effectuate the purposes of Title VI and other federal & State laws which is to eradicate discrimination, this did not sit well with any of the defendants after May 1, 2019 all defendants aggressively retaliated against plaintiff with the acts

18

alleged in this complaint. Things only got worse for plaintiff, Defendants ignored the MassHealth findings which were supported by substantial evidence that plaintiff complained to managers at MART about defendants repeated Intentional Discriminatory, Retaliatory conduct (*See Exhibit 15)* to no avail.

101. On or about June 5, 2017 plaintiff was driving with several client the defendant HSBB & MARTS ATDS and or Predictive dialer called plaintiff over 20 times within a 40 minute period, plaintiff pulled over the car and emailed (Protested) Defendant Tamar and informed her to please stop calling my cellular telephone, I am driving with clients on highway and cannot pull over to answer it is very dangerous, please put any ride offering you have for me in the Vendor portal, all calls stopped immediately, for a few hours then plaintiff cellular phone stated receiving more and more calls the next few month this treatment is contrary to Federal & State Retaliation laws.

102. Upon information and belief defendants MART, Rebecca, Donna, Karen, Tamara, Jessica, Amanda, Robert and Michelle actions reflected that there was and is a fundamental misunderstanding of Intentional Discrimination, Retaliation and a Hostile Work Environment, Title VI & VII Federal & State Civil Rights laws this is wide-spread at defendants MART and HSBB facilities, offices and among the supervisors & managers, this was not an isolated event, neither a proper investigation nor remedial steps were undertaken to correct the situation in plaintiffs Title VI complaint.

103. Defendant HSBB, Karen, MARTS, Rebecca, Donna, Joanna, Tamara Amanda, Jessica, Robert, Michelle and its managers labored under an incorrect understanding of the law, MARTS employees David Dunn, Fatima Rivera, Sherry Corcoran, Nicole Wislocki and Bonnie Mahoney was aware of the above acts perpetrated by the above defendants and stood silent on the side lines and watched and said nothing to deter the above defendants retaliatory, discriminatory acts toward the plaintiff. As a result of plaintiff inability to obtain a corrective response from the above defendants, directors and or managers, plaintiff filed a complaint with the Attorney General's office, The Department of Justice, MassDOT and other agencies regarding above defendant's inappropriate conduct.

104. The short-comings of the defendant MART and its Directors and Managers, they should have conducted a prompt, **neutral** investigation (**See Exhibit 12** into the allegations made by plaintiff and instead the ensuing investigation was hardly neutral. The fact that another complaint had been filed against MARTS with the EEOC 2018 should have set off bells and whistles and instead appears to have had no significance of an investigation.

105. If defendant MART, Rebecca, Bonnie, Tamara, Donna, Joanne, Jessica, Amanda, Robert, Michelle directors and supervisors had interviewed other vendors / employees or their own staff in the Brokerage / Scheduling department, they would have discovered that the above defendants conduct (and the failure of directors and managers to act) at MARTS facility was wider in scope than their limited and biased investigation uncovered.

106. Had the above defendants also conducted a proper investigation of plaintiffs' Title VI and EEOC complaints, they would likely have obtained further relevant information to combat Intentional Discrimination, Retaliation, Hostile Work Environment.

107. Defendants Rebecca, HSBB, Karen, Tamara, Donna, Joanne, Jessica, Amanda, Robert, Michell played favoritism to vendors (As of June 13, 2019) allowing them to receive the bulk of trip disbursement from HSBB software, multiple company's under officers of the same corporations / LLC,s and address, this treatment of non-minority vendors and vendors that don't protest treatment handicapped plaintiff, all one has to do is look at the vendor payroll , previous trip data, secretary of state's website, defendants MARTS list of vendors (Nationality), when they started and one will find there is a very big gap from non-minority vendors / and minority vendors that don't protest the brokerage departments treatment, (**See Exhibit 10 Accepted Trip spread sheet**) to the African American males / Vendors and or employees participating in defendants MARTS federally funded programs or that works at their facility's in any department.

108. Upon information and belief plaintiff has lower bids than 97% of all vendors in Massachusetts but yet plaintiff is allowed to only get 4% of trips as a dispatcher because defendants over ride the low bid system when it comes to plaintiff whom is an African American male, one thing needs to be pointed out is all above defendant have no problem with employing, training, African America females (Small percentage), Africans, Hispanics, Indians, or any foreign nationality **except** African American Males, MART Brokerage department, HSBB,

20

MassHealth and the Executive office of Health and Human Service has all the records in their possession to

prove this accusations, plaintiff plans to propound discovery and take depositions to flush this information out.

109. Defendants would like to unlawfully terminated plaintiffs employment on the pretext of a customer complaint

or some technical issue, plaintiff and defendant MART has substantial evidence that he and his drivers have an

excellent job performance and that MART tolerates worse misconduct from other vendors / employees, plaintiff

received the least amount of complaints of any vendor in the whole Massachusetts until May 2017 and still has,

the records will show plaintiff didn't start receiving complaints or fines until defendant Karen was fired and or

forced to resign after plaintiff filed his Title VI complaint naming her as the ring leader that lead the charge of

Discriminating, Retaliating and causing other employees, Directors and supervisor to cause a hostile work

environment against the plaintiff.

110. Immediately after defendants Karen's departure from MART defendants HSBB, Rebecca, Stephanie, Tamara,

Ivan, Jessica, Amanda, Joanne Robert and Michelle (Donna watched from the side line) began to retaliate

against plaintiff on a daily basis. Plaintiff found that he could get no answers to his question's, multiple audits,

fines, work load was cut, bogus complaint, vendor portal tabs disappeared.

111. Upon information & belief the problems that have been identified in this complaint are not restricted to MARTS

facility and has infected defendant HSBB facility when defendant Karen was hired (On or about May-June

2017) after she was fired or forced to resign from MART after plaintiff filed his Title VI complaint.

112. On March 29, 2017 plaintiff received an email from Sharna Small-Borsellino director of  MassHealth Human

Service Transportation Office, Sandy Mulcahy Brokerage Operations Manager the email was cc to defendants

Rebecca, Karen  stating "Thank you for agreeing to meet to discuss the issues presented by Paul Jones of

CCRD. Please bring any documentation pertinent to the issues. "regarding my complaint, rectify any allegation

in plaintiff's complaint. Defendant Karen did not show for the meeting, the meeting was productive, but the

only changes made on the defendant's part was that plaintiff was retaliated against Immediately with Intentional

Discrimination, Retaliation and a Hostile Work Environment. There was a basis for plaintiff believing that

wider compliance or lawfulness existed, plaintiff contacted Sharna Small-Borsellino and Sandy Mulcahy to

report the illegal acts from the defendants but it was of no use, help and or advantage dealing with plaintiffs situation.

113. On or about April 15, 2018 plaintiff requested that he be given the proper training that was never given or offered to him by defendants MART, Karen, Rebecca, Donna, Ivan, Robert, Michell and any other defendants for the vendor portal.

114. After plaintiff contacted MassHealth managers Sharna Small-Borsellino I was referred back to defendant Rebecca she then instructed Defendant Robert (My Contract Manager) to book me for the next Vendor Portal training session on May 16, 2018, when I arrived I realized that I was the only vendor there to receive the training.

115. Plaintiff drove 1 hour and 50 minutes when I arrived defendant Robert informed me that the computers where down and he wasn't able to show me anything regarding the vendor portals operations, but he would explain it to me, during this session defendant stone wall me, I had no results with the vendor portal after our meeting because it was blocked upon information and belief by defendant Karen whom now worked at HSBB the company that made the software and controls the portal *(See Exhibit 16)*.

116. Rebecca and Donna allowed these acts to happen on their watch as Director and Assistant director of the Brokerage department, Defendants MART, Rebecca, Tamara, Donna, Joanne, Jessica, Amanda, Robert, Michelle, Ivan, Stephanie engaged in repeated "crude, Intentional Discriminatory, Retaliatory offensive ways, it was unwelcome and inappropriate conduct that was directed at plaintiff which contributed to a pervasively hostile work environment plaintiff likened it to be a battlefield from on or about April 2016 until June 13, 2019.

117. I spoke with Defendant Robert on several occasions starting on or about July 7, 2018, I informed him that I had no results and that any and everything he informed me of regarding the vendor portal didn't work, I demanded that I be given the proper vendor portal training as other non-minority and minority vendors have received, I also informed him that his actions were contrary to MARTS policy and other Federal & State Laws and that as a vendor I should have had proper vendor training it has been over two years I have been on the job, he did not respond until on or about September 2018.

22

118. On or about August 22, 2018 plaintiff realized that several clients that he has made complaint on where being continually offered again to him, plaintiff check the portal and realized the defendants MART complaint depart was removing plaintiff complaints.

119. On or about September 3, 2018 plaintiff requested that he be granted access to download all *END OF THE DAY* reports *(See Exhibit 17)* like other non-minority or vendors that do not protest defendant treatment, Defendants Rebecca, Robert and Michell stated that no vendors can download their end of day trips, several moths later defendant Rebecca asked me why am I not downloading my end of day trips as a receipt for all rides done for the day, I informed her that my Tab was taken away from my vendor portal and I was told no vendor was allowed to download an end of the day receipts for all trips performed, I realized I was being lied to and stoned walled again.

120. On or about September 1, 2018 plaintiff filed a Discrimination, Retaliation and a Hostile Work Environment charge against defendant MART with the EEOC Boston, Ma office *(See Exhibit 18)* , during this time the government experienced a shutdown soon after this prolonged plaintiffs meeting with the EEOC, plaintiff received his notice to sue on or about Feb 22, 2019 from the EEOC office, Plaintiff would go on to filed a timely Federal Complaint on May 9, 2019 in the Massachusetts Federal District Court in Boston, Ma. and Amended the complaint to reflect all the defendants and counts.

121. Soon after plaintiff filed the EEOC complaint, defendants Joanna, Rebecca, Robert, Michell, Tamara, Jessica, Stephanie and Amanda and others Retaliated against plaintiff by not responding to plaintiff's phone calls, emails, placing bogus fines on plaintiff and reducing plaintiffs work load.

122. After several months of being stoned wall by defendants, I sent several emails and phone calls to Defendants Robert and Rebecca regarding receiving proper Vendor Portal training, I received an email from Defendant Robert stating "*Paul, We will be holding our next Vendor Portal Training on Friday October 19th, 2018 from 1:00PM-3:00PM. (See Exhibit 19) The training class is to give you a general over-view of the Vendor Portal, general policy and procedure, and to address common hurdles many first-time vendors may encounter. The address for training is: MART 150 Main St. Fitchburg, MA 01420*".

23

123. Defendant Robert insure me that the internet connection would be up and running and I would be shown the vendor portal demo and receive instruction paper work regarding how the vendor portal works.

124. On October 19, 2018 I arrived at the vendor portal training (3rd Time in 2 plus years) there were other non-minority vendor at the training session and I was able to participate with the group of vendors and was finally shown the vendor portal demo.

124. Soon after I realized that none of the training I received was relevant, because I was still not receiving access (Blocked) to the Vendor Portal, plaintiff still received 97% of his trips offered through defendants HSBB and MARTS ATDS and or predictive dialer computerized artificial voice messaging system while other non-minority vendors and minority vendors that did not protest defendant's treatment had full access to the vendor portal that display trip offerings.

126. On Dec 27, 2018 Defendant MART, Tamara, Jessica Amanda and or the scheduling department place a trip for 5;30 am in the morning for a *Mitchel. M standing order # R121067 & R121068, plaintiff drivers don't start to 7am, plaintiff protested this treatment by email soon after* defendants removed these unauthorized trips immediately from plaintiff's portal, above defendants' actions were sufficiently adverse to constitute retaliation.

127. On Dec 27, 2018 Defendant MART, Tamara, Jessica Amanda and the scheduling department placed 20 Trips in plaintiff's vendor portal to disrupt plaintiffs' drivers and cause confusion, plaintiff informed the scheduling depart that this was contrary to *Retaliation MGL chapter 151, Title VII, Title VI,* Defendants Tamara, Jessica Amanda removed these unauthorized trips immediately

128. On Dec 28, 2018 Defendant Michelle was contacted by plaintiff and was informed plaintiff capacity tab is locked again, Defendant Michell informed plaintiff that "***MART does not give any vendor the ability to change their capacity. That is something that only MART has access to***", *(See Exhibit 20)* defendant Rebecca the Director of MARTS call center resolved this issue in August 2016 when she gave plaintiff access to his capacity tab and claimed it was an oversite, defendants Michelle actions were contrary to Discrimination, Retaliation Federal & State laws, as other non-minority vendors and vendors that did not protest defendant's treatment had access to their capacity tab every day without interruptions.

129. On Dec 28, 2018 plaintiff informed Defendant Michell the plaintiff could not even changes his business hours *(See Exhibit 20)* defendant Michell stated I would have to request them to be changed by defendant MART in writing, as other non-minority vendors and vendors that did not protest defendant's treatment had the ability to change their business hours when deem necessary and access to their capacity tab every day without interruptions.

130. From June 2017 until June 4, 2019 Defendants Tamara, Jessica and Amanda retaliated against plaintiff by constantly changes clients (Trips) pick up (Sabotage) times by usually 15 minutes, when it is policy for all vendors to have 30 minutes to get a client to their destination .On or about December 15, 2018 plaintiff emailed defendant Joanne and ask if he could start getting alerts again when a time sensitive complaint is filed against his drivers so he can answer in a timely orderly fashion to avoid fines, defendant Joanne stated "it's not my responsibility to inform you when you had a complaint lodged against you, you should check every day" this is contrary to defendant MART& HSBB policy, all non-minority vendors and minority vendors that don't protest their treatment has this function available to them.

131. From June 2017 until June 14, 2019 Defendants Karen, HSBB, MART, Tamara, Jessica, Amanda, Jane, John and or the scheduling department retaliated against plaintiff by programing their ATDS and or predictive dialer (IVR System) to keep offering plaintiff the same trips throughout the day, this caused plaintiff economic harm and personal injury.

132. On or about March 15, 2019 plaintiff email the defendants and Robert Monk & Michell Moyo and several department requesting that "any manager or lower level employees to help plaintiff in getting his questions answered regarding issue regarding the vendor portal and receiving work for his drivers", plaintiff received no reply from any defendants or MARTS staff (Managers or Lower Staff) this is contrary to Defendants MARTS policy, Title VI, Title VII, M.G.L. c. 151B and other Federal & State laws.

133. The plaintiff received medical treatment, counseling, and other similar attention for his despondency, plaintiff became withdrawn and lost interest in activities that formerly gave him pleasure and went to the emergency

25

room for treatment and hired a counselor, all above defendants and others are responsible, plaintiff plans to add lower employees after discovery of their names.

## EMPLOYEE V CONTRACTOR

134. Plaintiff properly focused on the most important factor, control, finding that all Defendants exercised an unusual amount of control over plaintiffs' actions, a typical of a traditional employee / contractor relationship. The most important factor in determining the existence of an employment relationship is that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.

135. Defendant MART, HSBB, MART, Rebecca, Donna, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica and Amanda are also involved in the hiring and firing of plaintiff's co- workers Example on February 8, 2019 David Dun MARTS Quality Assurance Department Manager fired a driver after he was hit by another car (Not his fault) after he tested positive for marijuana that he smoked while off for the week end "I would like to thank you for sending over the appeal on behalf of your employee Mr. Murphy in regards to the termination of your employee from all Mart work immediately as a result of the drug test performed due to his involvement in an accident after reviewing your appeal it has been determined that the appeal has been denied based on the positive result of the drug test".

136. Defendants Rebecca, MART, Stephanie, Jane and John had to approve plaintiffs' coworkers and new hires, MART controls internal operations of the plaintiff and his employer, particularly the managing of personnel and equipment used to do job. Plaintiffs company does not receive an IRS Form 1099, Plaintiff was required to submit a statement stating who held the workers' compensation insurance, Defendant MART controlled Plaintiff and plaintiff's employer as an employee, not as an independent subcontractor, on several occasion plaintiff was informed by clients that they called defendant MART to find out what time plaintiff driver would arrived and the client claims that Joanne began to coerce them into making a complaint against plaintiff foe being 5-7 minutes late.

137. Defendants and MART has the hiring party's right to control the manner and means by which the product is accomplished, MART has the right to control when, where, and how the worker performs the job, the work does not require a high level of skill or expertise, there is a continuing relationship between the worker (plaintiff) and the employer (MART), MART has the right to assign additional projects to the worker, MART sets the hours of work and the duration of the job and plaintiff must submit a request to change is hours or capacity that must be approved by MART, the work performed by the plaintiff and his staff is part of the regular business of the employer (Transportation), MART can and has discharged ( Fired) plaintiffs workers, MART worker (Plaintiff) and the employer (MART) believes that they are creating an employer-employee relationship.

138. One should not overemphasize the role of professional judgment, contrasting it to control over the manner and means of plaintiffs work in the common law agency test, plaintiff has alleged contested facts in this complaint.

139. There is nothing intrinsic to the exercise of discretion and professional judgment that prevents a person from being an employee, although it may complicate the analysis. The issue is the balance between the employee's (Plaintiff) judgment and the employer's (All Defendants) control.

140. Defendants Rebecca, Karen, Ivan, MART, Stephanie, jane and John its employees have or has dictated how plaintiff had to run the business, Example on or about March 2017 Defendant Karen sent an email stating that plaintiff was to document how much he pays, the drivers, himself and what the companies earn each pay period, Mileage for each trip, mileage when all vehicles return to office, amount of money spent on mechanic, gas and vehicle maintenance, and how much money is left over.

141. Defendant Joanne and Michelle would levy fines against plaintiff and CCRD INC with no explanation of why we were fined, even after plaintiff ask for a complaint number and reason why no response was given on several occasions this is contrary to Defendants MARTS policy.

142. Upon information and relief, On or about Tuesday May 15, 2018 defendant Ivan was forced to resign from his job at MART, on Friday May 18, 2018 defendant Ivan emailed plaintiff and other vendors seeking to offer

them private services in combating MART unethical treatment toward vendors for a fee, this is unethical in every way.

143. Defendant Ivan stated in his email to me that "*Many of MART's vendors feel that they are unjustly fined and that their work is under-valued and unappreciated. Unfortunately, I can confirm that is the case, However, my attempts to create a smoother flowing system were largely detoured for the most part by the bureaucracy of my superiors and the servient nature of the system as a whole. They have even gone as far as to stop holding vendor conferences to avoid hearing much of what they already know is wrong but even more so to avoid vendors from fraternizing with each other. The bad part is that the vendors are the ones paying for their flawed system. I would like to further inform you that as a former MART vendor supervisor I have obtained some valuable knowledge in respect to this industry and in particular the contract/s your company hold/s with MART. I can also attest that much of the knowledge I have obtained can save the vast majority of MART vendors a great deal of capital when it comes to knowing how to navigate the different scenarios outlined within the contract as well as the general know how regarding portal use, MART protocol, requirements, etc. I am now at liberty to help assist companies on my own time and can offer manager training assistance which can assist any vendors bottom line but can be extremely useful for companies that are new to this program or frequently fined. There are many ways vendors can protect themselves, their investment, and their bottom line as well as save on other expenditures. Knowledge is power. If you feel you have been fined excessively? Not getting your questions answered? Are you not getting the results you've expected out of this program? Are not being offered work? Having portal problems? Hiring problems? Having trouble reaching departments? Need assistance setting up a system that works? Questions or concerns in regard to MART? I may be able to assist. Today". (See Exhibit 21)* Feel free to reply to this email to find out more about how I may be able to assist your company, today.

144. The above email is very telling of Defendants unethical ways of treating their vendors / employees this is deeply flawed and discriminatory.

28

145. Upon information and belief defendants Rebecca, Donna, Bonnie, Karen, Tamara, Joanne, Jane, and John Does insured that they maintained a policy at MART to deprive timely pay, access to the vendor portal, information, training to plaintiff, less than the non-minority or minority vendors of the different and sometimes the same national origin.

146. Upon information and belief Defendant HSBB, Karen, Rebecca, Donna and other managers allows the scheduling department defendants Tamara, Jessica, Amanda to override the low bid system on their watch (Bid Rigging) to ensure that they create an unfair advantage for these groups of non-minority vendors or vendors that don't protest defendant's treatment.

147. Upon information and belief Defendant MART, HSBB, Rebecca, Donna, Karen, Tamara, Jessica ,Amanda, Jane and John allows the scheduling department to unleash their ATDS / (IVR System) and or predictive dialer on plaintiff and other vendors to Discriminate, Retaliate and keep us occupied, so the non-minority vendors and vendors that don't protest defendant treatment can have an unfair advantage over plaintiff, and maybe there is something more sinister going on, but that is up to the Massachusetts Attorney Generals to uncover.

148. From approximal May 1, 2017 until June 14, 2019 Defendant MART, HSBB, Karen, Tamara, Jessica, Amanda offered or caused plaintiff to be offered the same trips over and over throughout each day, causing plaintiff personal cellular telephone to be tied up, and drivers to be stagnated and plaintiff to waste his time and be forced to take the non-cost-effective trips if he wanted to participate in MARTS federally funded program, while non-minority vendors and vendors that don't protest has full access to cherry pic there schedule, the non-minority vendors or vendors that don't protest defendants treatment have an advantage over plaintiff, because they have full access to the vendor portal they can book their scheduled one or two weeks in advanced, while plaintiff struggles to secure work for the next day from the left over trips the non-minority vendors do not want, this treatment cause plaintiff to be uncertain if he will have enough work for his drivers, plaintiffs drivers have to be on call (uncertain), this is contrary to MARTS own policy.

149. Defendants MART, HSBB, Rebecca, Donna, Karen, Stephanie, Ivan, Robert, Michell, Joanna, Jane and John has treated Plaintiff in an adverse manner, and the other non-minority vendors and vendors that don't protest

any of the defendants treatment who was similarly situated with respect to qualifications but

was not in the plaintiff's protected group was given better treatment this is statistical disparity that affects a

large number of individuals, this is contrary to intentional discrimination, retaliation and causing a hostile

work environment.

## **Plaintiff Exhausted Federal Administrative Remedies**

150. Plaintiff tried his best to rectify the situation with defendant MART by reporting all abuses to defendants

MARTS managers Directs and lower employees to no avail, plaintiff then filed Complaints with MassHealth

managers Sharna. Small-Borsellino, Sandy Mulcahy, Joseph Harrington, plaintiff also reached out to defendant

MARTS Director Mohammed Khan, Bruno Fisher and Bonnie Mahoney to no avail. Plaintiff filed a complaint

with Massachusetts Attorney General's Office, U.S Elizabeth Warren Office, The Department of Justice, The

Executive Office of Health & Human Services, Massachusetts Department of Transportation to stop all illegal

phone calls to plaintiffs' personal cellular telephone, Intentional Discrimination, Retaliation and the Hostile

Work Environment to rectify the situation before it escalated and became toxic.

151. With no results and worst treatment from the Defendants MART plaintiff filed a charge with the EEOC on

September 2018, plaintiff received his Right to sue letter on February 11, 2019 and filed a timely complaint in

the Federal District Court on May 9, 2019.

## **ARTICLE III STANDING**

152. Plaintiff has suffered a concrete injury, that is fairly traceable to the challenged conduct of all the defendants,

and it is likely to be redressed by a favorable judicial decision.  Plaintiff has suffered an invasion of a legally

protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.

153. All Defendants Discriminatory, Retaliatory and acts of causing a Hostile Work Environment in this complaint

and unlawful robocalls with a computerized and or artificial messages caused the Plaintiff to clearly meet the

requirement of concreteness as articulated in *Spokeo.*

30

**The Defendants HSBB & MARTS**

**actions including Robocalls Caused**

**Plaintiff Several Types of Concrete Harm**

154. Defendants HSBB & MARTS called plaintiff from 978-XXX-0019 & 978-XXX-9002 with and ATDS and or predictive dialer and left artificial computerized voice messages since on or about May , 2016 but plaintiffs phone did not ring until on or about November 2016 until June 13, 2019, even after plaintiff revoked his consent to be called on his personal cellular telephone several time verbally and in writing, this was contrary to Retaliation by defendants MART , Rebecca, Donna, Ivan, Tamara, Jessica, Amanda, HSBB and its employee Karen Cordio.

155. Upon information and believe after defendant Karen was forced to resign or fired from MART she immediately gained employment from defendant HSBB, whom owner and staff had a relationship with her when she was employed at MART.

156. Upon information and belief Defendant HSBB and its owners and employees were aware that defendant Karen was fired and or forced to resign from MART for a complaint from plaintiff, at the time of plaintiffs complaint defendant Karen had a track record of violating individuals Civil Rights (*See Trainor v Montachusett Regional Transportation Authority 4:12-cv-40022-TSH*), despite this information defendants HSBB gave her a job where she could access and control MARTS vendor portal, Karen knew defendants HSBB created the platform and software that controls the vendor portal that federal funds pay for to supply the service to MART.

157. Upon information and belief Defendant HSBB and its owners and employees knew that Karen would control the pocket book of each and every vendor and this position would give her unfeather power over defendants MART whom forced her to resign and or fired her a few weeks earlier, defendant Karen had a bone to pick with plaintiff and others that had any roll with her departure from MART.

158. The position that Defendant HSBB granted defendant Karen gave her the ability to control or cause to be controlled, the vendor portal with a click of a mouse (computer). Upon information and belief plaintiffs root of his problems lay at the door step of HSBB and MART, plaintiffs amount of workload, functions of the portal,

calls to plaintiffs' personal cellular telephone and the ability to cause an adverse effect over MARTS entire
distribution of work to vendors, these acts are contrary to Title VI, Title VII and other Federal & State laws.

159. The TCPA has a four-year statute of limitation, plaintiff filed his complaint within the statue of limitation
period, plaintiff gives the court a bird's eye view of the conduct committed by defendants MART, HSBB,
Tamara, Jessica, Amanda, Stephanie, Joanne, Karen, Ivan, Crystal, Robert, Michelle, Jane and John and their
lower employees in the brokerage / Scheduling department.

160. On June 5, 2019 defendants MART, HSBB, Karen, Tamara, Jessica, Amanda and their lower employees in the
scheduling department called or caused plaintiff to be called 61 times with an ATDS and or Predictive Dialer
(Artificial message) from 6:10 am until 7:18 pm this contrary to the Telephone Consumer Practices Act, while
giving plaintiff little or no access to choose his driver schedule through defendant MARTS vendor portal that
HSBB ( Defendant Karen Employer) controls, while the non-minority vendors and other vendors that don't
protest defendants treatment had full access, this is the type of derogatory treatment plaintiff has encountered
since October 16, 2016

161. On June12 and 15, 2019 defendants MART, HSBB, Karen, Tamara, Jessica ,Amanda and their lower
employees in the scheduling department called or caused plaintiff to be called on his personal cellular telephone
(After plaintiff revoked consent several times) 120 times with an ATDS and or Predictive Dialer (Artificial
message) from 6:10 am until 7:00 pm while the non-minority vendors and other vendors that don't protest
defendants treatment had full access to defendants vendor portal this gave other vendors an unfair advantage to
compete over plaintiff, his contrary to the Telephone Consumer Practices Act and other Federal & Stat laws.

162. Defendants have been subjecting plaintiff to this type of treatment since the very first plaintiff went to his first
vendor portal training on or about April 15, 2016 and or protested defendant's treatment on or about May 1,
2016.

163. The calls to plaintiffs' personal cellular causes plaintiff to be unable to able to dispatch or communicate with
his drivers when he is not in the office in a timely orderly fashion.

164. For consumers with cell phones unwanted robocalls cause direct, concrete, monetary injury by depleting a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays. Any injury that is concrete suffices for standing, regardless of how small.

165. Defendants HSBB & MARTS robocalls also cause plaintiff intangible injuries, the main types of intangible harm that these unlawful robocalls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the plaintiffs time or causing the risk of personal injury due to interruption and distraction. The Plaintiff here incurred all of these intangible harms and all of them meet the requirement of concreteness as interpreted by *Spokeo*.

166. A second type of intangible harm caused by the unwanted robocalls is intrusion upon and occupation of the capacity of the Plaintiff's cell phone. The harm recognized by the ancient common law claim of trespass to chattels—the intentional dispossession of chattel, or the use of or intermeddling with a chattel that is in the possession of another, is a close analog for this TCPA violation.

167. Defendants HSBB & MARTS ROBO calls occupied plaintiff cellular phone memory of answering machine and interfered with unencumbered access to the cell phone was trespass to chattels, even if plaintiff did not answer the mere invasion of the plaintiff's electronic device can be considered a trespass to chattels.

168. Defendants HSBB & MARTS unwanted robocalls to plaintiff's personal cell phone has a close relationship to the harm recognized by this ancient common law tort—a tort that protects fundamental property rights.

169. A final intangible harm that the robocalls caused here is that they required the Plaintiff to tend to them and wasted the Plaintiff's time. The first post-*Spokeo* decision to address robocalls squarely holds that wasting the recipient's time is a concrete injury that satisfies Article III. plaintiffs lost time is an adequate injury-in-fact in this TCPA cases.

170. *Spokeo* also holds that a risk of harm can also be concrete enough to satisfy Article III defendants unwanted calls meet this standard as well, as they cause a risk of injury due to interruption and distraction. "Driving while distracted" due to a cell phone call is a common cause of automobile accidents, the National Highway Traffic Safety Administration found that cell phone use contributed to 995 fatalities, or 18% of all fatalities, in distraction-related crashes in 2009. These ROBO calls also diminished the ability of plaintiff to receive emergency calls and messages, as they drown them out, and even forced the plaintiff to turn off his cell phone's audible alert feature. These risks are both real and concrete and satisfy *Spokeo*'s requirements.

171. Defendants HSBB & MARTS actions invaded plaintiff privacy and are much more concrete and particularized that required by Spokeo.

172. All the above acts committed by Defendants HSBB, MART, Rebecca, Donna, Karen, Ivan, Crystal, Joanna, Michelle, Robert, Stephanie, Tamara, Joanna, Jessica and Amanda is contrary to Defendants MARTS own policy, TCPA, Title VI, Title VII, M.G.L. c. 151B and other Federal & State laws.

# TITLE VI, MASSDOT
# FEDERAL TRANSIT ADMINISTRATION
# NONDISCRIMINATION POLICY ASSURANCES

173. The Massachusetts Department of Transportation (MassDOT), Federal Transit Administration (FTA), The Montachusett Regional Transit Authority assures that no person shall, on the basis of race, color, national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance, as required by Title VI of the Civil Rights Act of 1964, as amended, and the Civil Rights Restoration Act of 1987 (P.L. 100.259). Title VI of the Civil Rights Act of 1964 prohibits discrimination based on race, color, and national origin (including limited English proficiency). Related federal nondiscrimination Authorities add the protected categories of sex, 23 U.S.C. 324; age, 42 U.S.C. 6101; disability, 29 U.S.C. 790; low-income, federal Executive Order 12898; and limited English proficiency, federal Executive Order 13166. MassDOT also upholds the Massachusetts Public Accommodation Law, M.G.L. c 272 §§92a, 98, 98a, and the Governor's Executive Order 526, section 4 which

34

provide that access to programs, services and benefits be provided without regard to religion, creed, sexual orientation, gender identity or expression, veteran's status and/or ancestry, along with the bases previously referenced. In addition, MassDOT, FTA and MART will facilitate meaningful and nondiscriminatory public participation in the transportation planning and project development process.

174. The record will show before plaintiff filed the April 2017 Title VI complaint plaintiff and his employer hardly ever received fines and was and is still in good standing, when defendant Bonnie answered plaintiffs Title VI complaint defendant Bonnie suggested innocent explanations for much of the conduct about which plaintiff complained of when she answered the Title VI complaint on or about May 15, 2017, such as plaintiff did not receive any trips offered through the vendor portal because defendant Crystal inadvertently put 0 trips were plaintiffs capacity every hour instead of 10 trips every hour, this went on and was ignored by defendants MART, KAREN, Ivan, Crystal, Rebecca when plaintiff pointed out that he was receiving no trip through the vendor portal for almost 1 year.

175. Plaintiff believes that he and other program beneficiaries have been subjected to unequal treatment or discrimination in the receipt of benefits / services or prohibited by retaliation, discrimination and a hostile work environment from the above defendants.

176. Upon information and belief Defendants HSBB, MART and Bonnie as the Title VI Communications & Grants Manager for MART is charged with the responsibility for implementing, monitoring, and ensuring compliance with Title VI and VII regulations. Title VI responsibilities are as follows: Process the disposition of Title VI complaints received, Collect statistical data (race, color or national origin) of participants in and beneficiaries of agency programs, (e.g., affected citizens, and impacted communities), Conduct annual Title VI reviews of agency to determine the effectiveness of program activities at all levels, Conduct Title VI reviews of construction contractors, consultant contractors, suppliers, and other recipients of federal-aid fund contracts administered through the agency, Conduct training programs on Title VI and other related statutes for agency employees, Prepare a yearly report of Title VI accomplishments and goals, as required, Develop Title VI

information for dissemination to the general public and, where appropriate, in languages other than English, *Identify and eliminate discrimination*, Establish procedures for promptly resolving deficiency status and writing the remedial action necessary, all within a period not to exceed 90 days, upon information and belief it was done by her or another appointed Title VI officer at MART.

177. In accordance with 49 CFR et seq, every application for financial assistance from FTA must be accompanied by an assurance that the applicant (MART) will carry out the program in compliance with MassDOT, FTA Title VI regulations. This requirement is fulfilled when MART & HSBB submits its annual certifications and assurances to MassDOT, FTA shall collect Title VI assurances from sub recipients prior to passing through FTA funds.

178. As part of the Certifications and Assurances submitted to MART at the time of grant application and award, Defendant MART submits a Nondiscrimination Assurance which addresses compliance with Title VI as well as nondiscrimination in hiring ("EEO") *and contracting* ("DBE"), and nondiscrimination because of a disability ("ADA").

179. In Defendant Bonnie signing and submitting the assurance, defendant MART was to confirms to MassDOT, FTA they are and were commitment to nondiscrimination and compliance with federal and state requirements, defendants MART acts of Intentional Discrimination, Retaliation and creating a Hostile Work Environment is contrary to these Laws and fact regarding Title VI compliance above.

## DEFENDANTS HSBB & MART
## PLAN APPROVAL DOCUMENTS

180. On information and belief Defendant MART Title VI agent and or defendant Bonnie stated in the Title VI approval document that "I hereby acknowledge the receipt of the MART Title VI Implementation Plan, I have reviewed and approve the Plan. I am committed to ensuring that no person is excluded from participation in or denied the benefits of MARTS transportation services on the basis of race, color, or national origin, as protected by Title VI according to MassDOT, FTA Title VI requirements and guidelines for Federal Transit Administration sub-recipients" these statements are contrary to Title VI according to MassDOT, FTA rules &

regulations, Title VI requirements and guidelines for MassDOT, FTA Federal Transit Administration sub-recipients Plan Approval document that was signed & submitted by defendant Bonnie which are contrary to MassDOT & Federal Transit Administration Rules & Regulations.

181. Defendants Rebecca, Donna, Bonnie, Ivan, Karen, Crystal, Tamara, Jessica, Michelle, Robert, Stephanie, Ivan, Crystal, Joanna, Jane and John recipients of federal funds retaliated against plaintiff for filing the April 2017 Title VI complaint and for protesting (complaining) about intentional discrimination, retaliation and the hostile work environment which they bestowed upon the plaintiff on a daily bases from on or about April 2016 until this Amended Complaint was filed, by not Identify, reporting and helping to eliminate Intentional discrimination, Retaliation and a Hostile Work Environment under Title VI, VII, M.G.L. c. 151B et seq and by not following the MassDOT, FTA rules & regulations other Federal & State laws.

182. It is well-settled law that there is an implied private right of action to enforce § 601's core prohibition of discrimination in federally-financed programs. Plaintiff is a member of the protected class for whose benefit Congress enacted § 601. Plaintiff was purposefully injured for opposing the intentional discrimination, retaliation and a hostile work environment, Congress and the state of Massachusetts made unlawful in Title VI, Title VII, M.G.L. c. 151B et seq. and other Federal & State Laws.

183. The DOJ and many other federal agencies have adopted regulations prohibiting retaliation by Title VI recipients against those who filed Title VI complaints.

184. Plaintiffs request to have the full panoply of procedural rights, including discovery, the right to a trial, and equitable or compensatory remedy.

## THE TELEPHONE CONSUMER
## PRACTICES ACT 47 U.S.C. § 227, *et seq.*
### Defendant MART and HSBB

185. Upon information and belief on or about May of 2016 defendant Karen implemented a program to call certain vendors using an ATDS and or Predictive Dialer with an artificial computerized voice message to give certain

non-minority and vendors that did not protest defendant's treatment, defendants HSBB, MART, Rebecca, and Donna watched from the side line.

186. Defendants HSBB, Rebecca, Donna, MART, Tamara, Jessica, Amanda , Karen MARTS call center and the Scheduling department new or should have know that it is illegal to call anyone or cause someone to be called with an ATDS and or Predictive Dialer with artificial computerized message without consent on a cellular phone was a violation and to place a call under the same circumstances before 8:00 am without consent of the called party's consent, this would have been known to the defendants if they actually properly trained their staff as they attested to..

187. On Monday March 12, 2018 at 3:50 pm", *(See Exhibit 22)* plaintiff received an email from defendant Ivan stating "Dear MART vendor, please be advised, MART'S Call Center has changed its hours of operation and now open from 6am to 9pm. Therefore, you may be contacted if your contract indicates you are open during these time frames. Please be advised that MART is also changing the start time of the automated vendor callout the process will start at 6am instead of current time of 7am effective Thursday, March 15, 2018. Sincerely, Ivan Roman.

188. This email shows that the defendants MART and its employees never seek consent before placing calls with an ATDS and or predictive dialer that leaves computerized artificial voice messages.

189. Defendants used an ATDS and or predictive dialer to make calls and deliver artificial computerized voice messages to Plaintiff personal cellular telephone that had current functions, absent any modifications to the device's hardware or software, these features of defendants ATDS autodialing features could be activated, as the D.C. Circuit suggested, by the equivalent of "the simple flipping of a switch, these artificial computerized voice messages were made by defendants ATDS and or predictive dialer as defined by the TCPA.

190. Defendants system had the ability to perform the functions of an ATDS and or predictive dialer when it made the calls to plaintiffs' cellular telephone after plaintiff revoked consent.

191. Defendant ATDS and or Predictive Dialer also had the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers automatically, defendants ATDS and or Predictive Dialer was triggered by a person.

192. Plaintiff pleads more than the bare allegation that an ATDS and or predictive dialer was used, example Plaintiff would answer the phone and here a click and long pause then Robotic sounding artificial voice would start to talk with a scripted pitched, sometimes the this voice would have a long pause then state " an error has occurred" and the phone call would hang up, or the artificial voice would start to offer plaintiff work (see script below), this would happen over and over again daily sometimes every 2-5 minutes apart from 6:10 am until sometime 7:00 pm, plaintiff raises a plausible inference that an ATDS and or Predictive dialer was used.

193. From on or about May 30, 2016 to June 13, 2019 Defendants MART,HSBB, Tamara, Jessica, Karen, Jane, John & Amanda sent or caused to be Artificial and or Computerized messages every 1-7 minutes these messages were left on plaintiffs personal cellular telephone that stated "*I found one trip in this request you must be authorized to except New trips from MART please listen to the following carefully press five to hear the trips now press six if you cannot accept these trips right now and would like to receive a call back in a few minutes press seven if you wish to decline these trips please make your selection now if you would like to hear these options again press eight*…"*(See Exhibit 24).*

194. Plaintiff relies on indirect allegations, such as the content of the message, the context in which it was received, the sound of the artificial computerized voice and the existence of similar messages to raise an inference that an ATDS was used.

195. Plaintiff undertook protected conduct, plaintiff suffered an adverse employment action, and the two were causally linked. Plaintiff has never given Defendant permission to contact his cellular telephone, with an autodialed or to leave computerized artificial voice message and if he did consent was revoked with several Certified return Receipt and verbally.

196. Despite the plaintiff's verbal protest, *(See Exhibit 1 & 23) certified* receipt letters, and phone calls to the Defendant regarding to place any and all offers in the Vendor portal, defendants continued to place prohibited

calls to Plaintiff's assigned cellular telephone. Liability for making a prerecorded call falls on the entity that made the call, even if some other entity recorded the message that the caller delivered, plaintiff states claim if caller used artificial voice even if calls was not autodialed.

197. Plaintiff's Jobs or contract with his employer or defendants did not restrict his ability to revoke consent, no reasonable jury could conclude based on the undisputed evidence that Plaintiff's had expressed anything other than a clear request that Defendant stop calling him.

198. Plaintiff's revoke of consent, letters and verbal request to use another number to contact plaintiff for business left no room for debate over whether Plaintiff had revoked his consent to be called on his personal cellular telephone. Plaintiff who uses a cell phone need not separately allege that he was charged for the call, prohibition applies to calls to cell phones whether or not called party is charged for call, plaintiff states claim if caller used artificial voice even if call was not autodialed, The TCPA is applicable to all artificial or prerecorded voice telephone messages" to residential lines, cell phones, or other sensitive numbers.

199. The foregoing acts and omissions of Defendants MART & HSBB and / or their affiliates, agents, and/or other persons or entities acting on Defendants' MART & HSBB behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by sending calls and computerized and or artificial voice messages to the cellular telephone number (617-939-XXXX of Plaintiffs.

200. Defendant HSBB & MART used automatic telephone dialing equipment and that the call bore telltale signs of an automated call, such as an obviously artificial voice, a message asking the consumer to press one of several keys, these allegations are based on the clarity and cadence of the artificial voice message,

201. Plaintiff seeks damages for any and all calls that Defendant HSBB & MART made to Plaintiff's telephone number in violation of the TCPA and the rules, regulations and orders promulgated by the FCC including but not limited to damages for any calls that defendant made which Plaintiff is unaware of, for Defendant's failure to properly scrub the national DNC as required by the FCC, failure to properly maintain and update its company specific DNC call list, and failure to accommodate Plaintiff's requests to stop calling, failure to train and

monitor its employees about the existence of both the national and state TCPA laws & required lists and to enforce the requirement that DNC requests be recorded, failure to stop all calls to the subscriber made within 10 years of consumer request to place his number on company DNC, failure to employ a version of the national "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and to maintain records documenting this process.

202. Plaintiff demonstrated that he had good faith and reasonable belief that the underlying challenged actions of the defendants violated the law, none of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

203. Defendant made these prohibited calls to Plaintiff from telephone number 978-252-0019 *(See Exhibit 24)* on at least the following dates and times and left an artificial voice message of plaintiff's cellular telephone number 617-939-XXXX

- November 17, 2016 7:10, am 7:20 am, 7:30 am, 7:35 am, 7:50 am, 7:55 am

- Nov 18, 2016 7:10, am 7:20 am, 7:25 am, 7:35 am, 7:40 am, 7:45 am, 7:50 am

- Sep 26, 2017 7:40, am 7:45 am, 7:56 am, 8:00 am, 8:05 am,

- Dec 20, 2018 7:10 am 7:35 am, 7:45 am, 8:00 am, 8:05 am,

- June 5, 2019 6:10am,6:15 am, 6:20am, 625 am, 6:34am, 6:50 am, 6:55 am, 7 am

- June 6, 2019 6:11am, 6:15 am, 6:15am, 6:20 am,6:26am,6:30am, 6:35am, 640am

## CONTINUING VIOLATION DOCTRINE

204. The principal question is whether the continuing violation doctrine required consideration of a lengthier period of time in evaluating the merit of plaintiffs' claims. Answering that question requires one to assess the impact of the Supreme Court's decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)

205. Defendants MART, HSBB, Rebecca, Donna, Karen, Ivan, Crystal, Tamara, Jessica, Amanda, Robert, Michell, Stephanie, Jane and John began a campaign of harassment that continued through the filing of this lawsuit 37 months later.

206. The conduct that plaintiff identifies from on or about May 2016 until June 13, 2019 from that point forward is related, and the pre- and post-limitations period incidents involved the same type of discriminatory, Retaliatory and serial hostile work environment employment actions, occurred relatively frequently, and were perpetrated by the same individual.

207. Defendants refused to acknowledge plaintiff when he spoke or sent the majority of emails and if he did speak, they cut him off, hang up the phone this treatment was unprofessional, unwelcoming, and even aggressive, plaintiff was told often that he did understand whatever the topic was, the defendants belittled or otherwise spoke down when speaking to plaintiff this treatment displayed open hatred and contempt for the plaintiff from May 2016 until June 13, 2019.

208. There is no evidence that the defendants MART, HSBB, Rebecca, Donna, Karen, Ivan, Crystal, Tamara, Jessica, Amanda, Robert, Michell, Stephanie, Jane and John took any intervening acts that would have severed the continuing nature of the acts.

209. Plaintiff alleges a hostile work environment claim, plaintiff filed his complaint while several acts which comprises the hostile work environment claim is still timely, the entire time period (May 2016 until June 19, 2019) of the hostile environment should be considered by this court for the purpose of determining liability. Defendants acts involve the same type of discrimination, tending to connect them in a continuing violation, the alleged acts were recurring not in the nature of an *isolated work assignment or incident* these acts were on going not a discrete act, and defendants' acts had the degree of permanence which triggered plaintiff's awareness of a duty to assert his protected rights.

210. Defendants Hostile work environment claims were continuing because they involve repeated conduct, so the unlawful practice did not occur on any particular day, defendants' acts contributed to plaintiffs claim occurred within the filing period, the entire time period of the hostile environment should be considered by this court for the purposes of determining defendant's liability. Plaintiff's serial hostile environment claim, Discrimination and retaliation is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendants, the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim,

42

nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement. Each act was part of the whole, all defendants' acts are still part of the same claim plaintiff alleges in this Amended complaint.

211. Defendants acts in May 2016 had a relation to the acts that happen through (38 Months) June 13, 2019, the defendants that were directors and supervisors HSBB, MART, Rebecca, Donna, Karen, Tamara, Stephanie, Joann Jane and John did not interve at all when plaintiff protested, complained and or filed complaints with defendants directly and or varies agency's these action by the defendants were part of the same serial hostile environment, intentional discrimination and retaliation claim. plaintiff identified specific and ongoing acts of harassment throughout this Amended Complaint.

212. Plaintiff has demonstrate that the separate acts are related that the violation were continuing there was no intervening action by any of the defendants in this lawsuit, defendants acts became more sever over time from the acts that preceded them, the continuing violation doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.

213. Plaintiff protected and protested his rights earlier as early as May 2016 and as late as June 9, 2019 and alerted all defendants to the existence of a serial hostile work environment, Intentional Discrimination and Retaliation, some of the incidents that supported the plaintiffs hostile work environment, discrimination and retaliation claims occurred before the 300 day period began, plaintiff realized knew of an ongoing violation and the continued violation doctrine on or about March 1, 2019 after doing research of remedies to stop the acts by the defendants.

214. Plaintiff tried to work with defendants as the statue encourages us to work with employers and to take advantage of other mechanisms for obtaining relief from ongoing harassment rather than rushing to bring an EEOC charge and litigation., plaintiff demonstrated that he has done so by revoking consent to be called of his cellular telephone early and often getting another dedicated local number for defendants to call, writing to defendants asking for help to rectify the situation several times, contacting Executive office of Health & Human Service, MassHealth,

43

Directors, Supervisors, MassDOT, Department of Justice, U.S Senator Elizabet Warren and others, to preserve my job.

215. Plaintiff presented factors to show a continuing violation that would enable him to support is Intentional Discrimination, Retaliation and a Hostile Work Environment (harassment) claims with defendant's conduct occurring more than 300 days before he filed his EEOC charge.

216. The pre- and post-limitations period of incidents involved the same type of actions, occurred relatively frequently, and were perpetrated by all the same defendants, there is no evidence the defendants took any intervening acts that would have severed the continuing nature of the acts. The plaintiff has pointed to equitable consideration that should allow the court to consider the full scope of the continuing conduct. The plaintiff showed the Intentional Discrimination, Retaliation and the Hostile work Environment (harassment) occurred over a broader period was on account of his national origin African American (Black), sex (Male), Retaliation, Intentional Discrimination and was severe and pervasive.

217. Defendants acts is a tort involved and a continued repeated injury to the plaintiff and the limitation period does not begin until the date of the last injury or when the tortious act ceased, the Continued Violation Doctrine not about a continuing, but about a cumulative, violations as in the Amended Complaint.

## COUNT I

## VIOLATION OF THE TCPA,

## 47 U.S.C § 227(b)(1)(A)(iii) et seq
## AGAINST DEFENDANTS MART & HSBB

218. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

219. Defendant placed many non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system in violation of 47 U.S.C § 227(b)(1)(A)(iii).

220. It is a violation of the TCPA, 47 U.S.C. § 227(b) to call a person's cellular telephone using an automatic telephone dialing system or prerecorded message without that person's prior express consent.

44

221. Plaintiff did not expressly authorize Defendant to call his cellular telephone in service of Defendant's general business aims. Further, Plaintiff's instructions to cease calls effectively revoked any prior consent Defendant may believe it had. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014).

222. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issued regulations implementing the TCPA, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy.

223. Defendant's method of contacting Plaintiff is indicative of its ability to dial numbers without any human intervention in the calling process, which the FCC has opined is the hallmark of an automatic telephone dialing system (i.e. auto-dialer). See In the Matter of Rules & Regulations Implementing The Telephone Consumer Protection Act of 2008, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶ 11-13; In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).

224. Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. See FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

225. Defendant, through its agents, representatives and/or employees acting within the scope of their authority, acted willfully and therefore intentionally violated the TCPA, 47 U.S.C § 227 (b)(1)(A)(iii). Pursuant to the FCC's interpretation regarding willfulness, "willful or knowing" requires merely that "the violator knew that he was doing the act in question. A violator need not know that his action or inaction constitutes a violation." In re Dynasty Mortg., L.L.C., 22 F.C.C. Rcd. 9453, 9470 n.86, 2007 WL 1427724 (F.C.C. May 14, 2007).

226. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. See also Mims v.

45

Arrow Fin. Servs., L.L.C., 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("The Act bans certain practices invasive of privacy").

227. Defendant's phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

228. Defendant's phone calls also harmed Plaintiff by (1) trespassing upon and interfering with Plaintiff's rights and interests in access to his cellular telephone; (2) trespassing upon and interfering with Plaintiff's rights and interests in access to his cellular telephone line; (3) intruding upon Plaintiff's seclusion; (4) wasting Plaintiff's time; (5) depleting the battery life on Plaintiff's cellular telephone; (6) using memory storage space in Plaintiff's cellular telephone; and (7) causing Plaintiff aggravation, indignation, humiliation, embarrassment, anxiety, anguish, depression, unwarranted stress and loss of enjoyment of life. (8) Causing plaintiff, the inability to do his dispatching & driving job.

229. As a result of Defendant's violations of 47 U.S.C. § 227 et seq, Plaintiff is entitled to an award of \$1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(C), and \$500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

230. Plaintiff is entitled to injunctive relief prohibiting Defendant from contacting the Plaintiff on his cellular phone using an automated dialing system pursuant to the 47 U.S.C. § 227(b)(3)(a).

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant for statutory damages of \$500 for each violation and \$1,500.00 knowing and willing for each violation, an order be entered enjoining Defendant from calling Plaintiff's personal cellular telephone by use of an automatic dialing system, and for such other and further relief as justice may require, and any post-judgment interest as may be allowed under the law; any such other and further relief as the Court may deem just and proper.

## COUNT II
### VIOLATIONS OF THE TELEPHONE
### CONSUMER PROTECTION ACT 47 U.S.C. § 227(c)(5) et seq
### DEFENDANTS HSBB & MART

231. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

232. Defendant's conduct violated the TCPA 47 U.S.C. § 227(c).

Wherefore: Plaintiff prays for relief and judgment, as follows: Adjudging that Defendant violated the TCPA 47

U.S.C. § 227(c). Awarding Plaintiff statutory damages pursuant to 47 U.S.C. § 227(c)(5) of 500.00 for the first

call and $1500.00 for each call thereafter made to the Plaintiffs wireless phone as a knowing and/or willful

violation of the restrictions on the use of telephone equipment relating to the National Do Not Call Registry;

## COUNT III

### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, et seq

## AGAINST DEFENDANTS MART, HSBB, REBECCA, DONNA, ROBERT, MICHELLE, STEPHANIE, JOANNE, TAMARA, JESSICA, AMANDA, IVAN, CRYSTAL & KAREN JANE DOE, and JOHN DOE

233. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

234. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from

discriminating against an employee because he has opposed any practice made an unlawful employment

practice by this subchapter.42 U.S.C. § 2000e-3(a).

235. Plaintiffs protested and made informal and formal complaints to The Massachusetts Attorneys General's office,

Executive office of Health & Human Services, MassHealth, Department of Justice, Department of

Transportation, the E.E.O.C, Defendants' Agents, Managers, Directors and employees opposing Defendants'

unlawful, discriminatory, retaliatory employment practices.

236. As a result of Plaintiffs' complaints, on information and belief Defendant Karen was fired and or forced to

resign from defendant MART, and the MART staff had to undergo Training under the Title VI and Title VII of

the Civil Rights Act of 1964 and come under compliance of these laws.

237. Defendants managers, agents and employees took materially adverse actions against Plaintiffs, including, but

not limited to, issuing disciplinary warnings (Fines), not training, blocking plaintiff from Vendor Portal, placing

plaintiffs telephone number on defendants Automatic Dialing system and or Predictive Dialer, threats of

termination; reprimands by supervisors, stone walling plaintiff, sabotaging plaintiffs daily work schedule.

238. Defendants' adverse actions constituted retaliatory workplace harassment.

239. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

240. As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

241. Plaintiff is entitled to their reasonable attorneys' fees and costs of suit.

242. Any non-discrete conduct that occurred outside of the statute of limitations can be relied upon to prove retaliation when the earlier conduct only became actionable once other conduct occurring within the limitations period occurred. *See* Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101 (2002).

243. The effect of the events described above has been to deprive plaintiff of equal employment opportunities in retaliation for exercising his federally protected rights.

244. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of the plaintiff

245. The unlawful employment practices described above were intentional.

246. As herein alleged, all the Defendants, by and through its Directors, officers, employees, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting him to unjust scrutiny, false allegations and derisive comments solely because he had protested the discrimination, retaliatory treatment. Defendants had no legitimate reasons for any such acts each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

247. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the Defendants may have engaged in other discriminatory practices against him which are not yet fully known.

**WHEREFORE**, Plaintiff, demands judgment against the Defendants, in an amount which will compensate him for: Violation of plaintiffs rights under Title VII of the Civil Rights Act et seq; Compensatory and Special damages for or medical treatment & supplies, physicians' and counseling fees impairment of power to earn money; physical pain, emotional distress and humiliation; Personal injuries, Loss of consortium, Punitive

damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct; Declaratory and permanent injunction against future acts of discrimination and harassment against Plaintiff; Trial by jury on all issues so triable; Costs expended herein, including reasonable attorneys' fees; Pre-judgment and post-judgment interest; and Any and all other relief to which he may be entitled

## Count VI

### Discrimination (Hostile Work Environment) in Violation of
### Title VII of the Civil Rights Act of 1964, et seq
### Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica,
### Robert, Michelle, Joanna, MART, HSBB, Jane, and John

248. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

249. A plaintiff who has a seasonable claim based on a hostile work environment may introduce evidence of events that occurred prior to the six-month limitation period as background evidence even though he or she may not recover damages for those events. Id. at 541, 750 N.E.2d 928. Ocean Spray Cranberries, Inc. v. Massachusetts Commn. Against Discrimination, 441 Mass. at 647, 808 N.E.2d 257.[4]

250. Plaintiff was subjected to harassment, verbal and written conduct by Defendants' Directors, Agents, Managers, Supervisors and employees.

251. Defendants' agents and employees' conduct was not welcomed by Plaintiffs.

252. Defendants' agents' and employees' conduct was undertaken because of Plaintiffs' filing of complaints against defendants Race, Sex and his opposition to defendant's treatment of him.

253. The conduct was so severe or pervasive that reasonable persons in Plaintiffs' positions would find their work environment to be hostile or abusive.

254. Plaintiff believes his work environment to be hostile or abusive as a result of Defendants' Directors, Agents, Managers, Supervisors and employees conduct.

255. Directors, Supervisors, Management level & Lower level employees knew, or should have known, of the abusive conduct. Plaintiff provided Management level & Lower level employees, including defendants

Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica, Robert, Michelle, Joanna, MART, HBSS, JANE DOE, and JOHN DOE with information sufficient to raise a probability of harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

256. Defendants did not exercise reasonable care to prevent harassment in the workplace and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

257. The very nature of such claims in this complaint is that they involve "repeated conduct;" (2) therefore an unlawful employment practice involving such claims "cannot be said to occur on any particular day;" (3) rather, they occur "over a series of days or perhaps years against the defendants.

258. As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

259. Defendants unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination.

260. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of suit pursuant to Title VII of the Civil Rights Act of 1964 and other laws; and further relief as this Court deems just and proper.

**COUNT V**

**Race & Sex Based National Origin**

**(African American Male)**

**Discrimination in Violation of**

**Title VII of the Civil Rights Act of 1964, et seq**

**Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica, Robert, Michelle, Joanna, MART, HBSS, JANE DOE, and JOHN DOE**

261. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

262. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

263. Defendants discriminated against Plaintiffs by treating them differently from the nonminority vendors, including trip assignments, Bidding prices, access to the vendor portal, procedure to obtain work (Vendor Portal. v. ADTS / IVR System, access to Training, access to information regarding policy & procedures, access to federal Funded programs, managers, and unequal wages and compensation, because of his Race & Sex (African American Male).

264. Plaintiffs' Race & Sex (African American Male) was the determining factor and/or a motivating factor in Defendants' actions.

265. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, suffered emotional distress, economic damages to be proven at trial.

266. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

267. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to

Plaintiffs' right to be free from discrimination based on Race & Sex (African American Male).

268. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and

practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by

reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for

Plaintiffs' emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and

liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages,

including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining

Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of

suit pursuant to Title VII of the Civil Rights Act of 1964 Race & Sex based and other laws; and further relief as

this Court deems just and proper.

## COUNT VI

**Race & Sex Based National Origin**
**(African American Male)**
**Discrimination (Disparate Impact) in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. et seq**
**Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica,**
**Robert, Michelle, Joanna, MART, HBSS, JANE DOE, and JOHN DOE**

269. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

270. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons

on the basis of their Race & Sex. Plaintiffs are informed and believe and thereon allege that Defendants'

operated as a non- African American Male Vendor that owned or managed a Transportation company would

participate in MARTS Federally Funded programs and if they did it would only be a very small number of

African American Male, defendant's policy and/or practice had an adverse and disproportionate impact on

plaintiff because of his Race & Sex **(African American Male) (National Origin)**.

271. Defendants' above policy and/or practices policy was neither manifestly job-related nor consistent with business necessity.

272. Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

273. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

274. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on Race & Sex **(African American Male) (National Origin)**.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of suit pursuant to Title VII of the Civil Rights Act of 1964 National Origin based and other laws; and further relief as this Court deems just and proper.

## COUNT VII

**Retaliation in Violation of Title VI of the Civil Rights Act of 1964, et seq *as amended***
**Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica,**
**Robert, Michelle, Joanna, MART, HBSS, JANE DOE, and JOHN DOE**

275. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

276. Plaintiff is with a specific class of persons—were subjected to discrimination on the basis of race, color, or national origin in the programs and activities of a Federal-aid Recipient may file a Title VI complaint.

277. According to USDOT regulations, 49 CFR §21.11(b), a complaint must be filed not later than 180 days after the date of the last instance of alleged discrimination, unless the time for filing is extended by the investigating agency, plaintiff filed this complaint timely.

278. Title VI of the 1964 Civil Rights Act provides that no person in the United States shall, on the grounds of race, color, national origin, or sex, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving federal financial assistance (refer to 49 CFR Part 21). The Civil Rights Restoration Act of 1987 broadened the scope of Title VI coverage by expanding the definition of the terms "programs or activities" to include all programs or activities of Federal Aid recipients, sub recipients, and contractors, whether such programs and activities are federally assisted or not.

279. Defendants committed intentional discrimination in violation of § 601 and "regulations applying § 601's ban on intentional discrimination.

280. Section 601 of Title VI of the Civil Rights Act of 1964 provides that:" No person in the United States shall, on the ground of race, color or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance". Title VI prohibits federal agencies from providing funding to any person, organization, or governmental agency that discriminates on the basis of race.

281. Retaliation claims are rooted in both Title VI's and Title IX's central purpose of prohibiting Additionally, following the Chevron doctrine, the Fourth Circuit in Peters appropriately deferred to agency regulations interpreting Title VI and Title IX to prohibit retaliation See Peters, 327 F.3d at 316-21,323-24. The Supreme Court has recognized that private plaintiffs may file a private right of action under § 601 of Title VI alleging that a recipient has committed intentional discrimination See Sandoval, 532 U.S. at 280 (stating that it is "beyond dispute that private individuals may sue to enforce" § 601's prohibition against intentional discrimination); Cannon, 441 U.S. at 699 (holding private right of action exists under Title IX and suggesting that private right of action also exists with respect to Title VI because Congress modeled Title IX after Title VI); Karlen, supra note

4, at 196; Mank, Title VI, supra note 4, at 31-32; Note, After Sandoval: Judicial Challenges and Administrative Possibilities in Title VI Enforcement, 116 HARv. L. REv. 1774, 1776 (2003).

282. Furthermore, Congress has explicitly authorized attorneys' fees for prevailing plaintiffs in Title VI cases, See *42 U.S.C. § 1988(b) (2000); Karlen, supra note 4, at 196.*

283. Defendants violated the anti-retaliation regulations under Title VI and is enforceable because plaintiff addressed § 601 ban on intentional discrimination of Title VI.

284. The Department of Justice (hereinafter "DOJ]") has promulgated regulations stating that a recipient of federal financial assistance shall neither "directly [n]or through contractual or other arrangements, utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin," or which "have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin.,,57 Similarly, the Department of Education's Tide VI regulations forbid recipients to engage in either intentional discrimination or practices causing disparate impacts with respect to protected minority groups.

285. Plaintiff Title VI claims permits recovery of damages for intentional discrimination ("Title VI provides for monetary damages awards"); Franklin v. Gwinnett County Pub. Schs, 503 U.S. 60, 70 (1992) ("clear majority" of Court has expressed view that damages are available for intentional violation of Title VI).

**WHEREFORE**, Plaintiff, demands judgment against the Defendants, in an amount which will compensate him for: Violation of plaintiffs rights under Title VI of the Civil Rights Act of 1964 et seq; Compensatory and Special damages for or medical treatment & supplies, physicians' and counseling fees impairment of power to earn money; physical pain, emotional distress and humiliation; Personal injuries, Loss of consortium, Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct; Declaratory and permanent injunction against future acts of discrimination and harassment against Plaintiff; Trial by jury on all issues so triable; Costs expended herein, including reasonable attorneys' fees; Pre-judgment and post-judgment interest; and Any and all other relief to which he may be entitled.

## COUNT VIII

### (Violations of M.G.L. c. 151B, §*et seq* –

**Interference with Protected Rights and Retaliation for Requesting Reasonable Accommodation**
**Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica, Robert, Michelle, Joanna,**
**MART, HBSS, JANE DOE, and JOHN DOE**

286. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

287. Any non-discrete conduct that occurred outside of the statute of limitations can be relied upon to prove

retaliation when the earlier conduct only became actionable once other conduct occurring within the limitations

period occurred. *See* Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101 (2002).

288. Plaintiff requests to Defendants for accommodations, and his internal

complaints regarding MART's failure to provide accommodations, as alleged above, constitute activity protected

from retaliation and/or interference under M.G.L. c. 151B, §§ 4(4) and 4(4A.)

289. At all relevant times, Plaintiff acted in good faith and was reasonable in the requests he made to Defendants and

acted with a good-faith belief that MART's conduct in failing to provide reasonable accommodations was

unlawful.

290. Defendants' conduct as alleged herein, including without limitation Defendants' Intentional Discrimination,

Retaliation, Hostile Work environment, refusing to train plaintiff properly, refusing to allow plaintiff to

participate in Federal Funded Programs, refusing communicate with plaintiff, refusing to remove plaintiffs

personal cellular telephone from their ATDS and or predictive dialer, constitutes adverse employment action

against plaintiff.

291. Defendants Discriminated, Retaliated and caused a Hostile work environment against the Plaintiff from on or

about May 12, 2016 to June 13, 2019.

292. Plaintiff engaged in protected conduct, that he suffered some adverse action, and that there was a causal

connection between the protected conduct and the adverse action.

293. Defendants' malicious and reckless disregard plaintiffs' rights to work in peace with discrimination, retaliation and a Hostile Work Environment. Plaintiff engaged in activity protected under the statute

294. Defendants aided & abet, incited, compelled and coerce retaliatory in violation of the relevant provisions of Chapter 151B, the above-mentioned acts in this lawsuit which are forbidden under this chapter or to attempt to do so.

295. Courts in Massachusetts and the First Circuit determine whether a party is an employee or independent contractor based upon 'traditional agency law principles.' Speen, 102 F.3d at 631. Those principles apply equally to claims brought under the federal [ADA] and the Massachusetts Anti-Discrimination Statute. See id. at 627-34." Santangelo v. N.Y. Life Ins. Co., Civil Action No. 12-11295-NMG, 2014 WL 3896323, at *7 (D. Mass. Aug. 7, 2014); see also Barton v. Clancy, 632 F.3d 9, 17-18 (1st Cir. 2011) (for purposes of interpreting term "employer," in Chapter 151B, federal courts look to federal decisions interpreting the term "employer" under federal antidiscrimination statutes). For the reasons set forth above in connection with Plaintiff's claim under the ADA, Defendants have not shown as a matter of law that Plaintiff was an independent contractor rather than an employee for purposes of Chapter 151B. In order to pursue his claims, the plaintiff relies on the application of the continuing violation doctrine now set forth in Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 541-542, 750 N.E.2d 928 (2001), to claims of a hostile work environment based on racial discrimination in violation of G.L. c. 151B, § 4(1).

296. Unlike "sexual harassment," racial harassment is not defined in G.L. c. 151B. Nevertheless, G.L. c. 151B, § 4(1), states that it is an unlawful practice for an employer because of race "to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment." In deciding the Cuddyer case, the Supreme Judicial Court did not base its analysis of the employee's claim on the statutory definition of sexual harassment. Instead, the court gave deference to the MCAD's decisions and its rule-making authority. Cuddyer v. Stop & Shop Supermarket Co. 434 Mass. at 533-534, 750 N.E.2d 928. The court also observed

that, pursuant to G.L. c. 151B, § 9, "the provisions of this chapter [151B] are to be construed liberally" in order to eliminate discriminatory conduct. Ibid., quoting from G.L. c. 151B, § 9.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein; For reasonable attorneys' fees and costs of suit pursuant to M.G.L. c. 151B, §§) *ET SEQ* and other laws; and further relief as this Court deems just and proper.

## INFLICTION OF EMOTIONAL DISTRESS
### Rebecca, Karen, Ivan, Crystal, Stephanie, Donna, Tamara, Amanda, Jessica, Robert, Michelle, Joanna, MART, HBSS, JANE DOE, and JOHN DOE

297.Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

298. Defendants knew, or should have known, that failure combat the Intentional Discrimination, Retaliation and the Hostile Work Environment and to investigate plaintiffs' allegations in a timely orderly fashion and to exercise due care would cause plaintiff severe emotional distress.

299.As a further proximate result of defendants and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional distress and mental suffering.

300.Defendants knew or should have known that their acts would cause plaintiff physical and mental harm and that he would have to seek professional treatment.

**WHEREFORE**, plaintiff prays judgment against defendant as follows: For general damages for severe

emotional distress and mental suffering, medical and related expenses, lost wages, costs of, and, for such other

and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a jury trial.

Paul Jones

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

June 14, 2019

## VERIFICATION OF COMPLAINT AND CERTIFICATION

### STATE OF MASSACHUSETTS

#### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.
I believe that this civil Complaint is well grounded in fact and warranted by existing
law or by a good faith argument for the extension, modification or law.

I believe that this Verified Amended Complaint is not interposed for any improper purpose, such as to harass
any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of
litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for
the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct
copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or
fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten
notations.

The plaintiff has reviewed the complaint, regarding the allegations of which the plaintiff has personal
knowledge, the plaintiff knows or believes them to be true.

Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to
be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of
perjury that the foregoing pleading is true and correct.

Paul Jones          /s/ Paul Jones
572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

June 14, 2019