UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL JONES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-11093-TSH |
| | ) | |
| MONTACHUSETTS REGIONAL | ) | |
| TRANSIT AUTHORITY, | ) | |
| HB SOFTWARE SOLUTIONS, INC., | ) | |
| REBECCA BADGLEY, DONNA | ) | |
| LANDRY, BONNIE MAHONEY, | ) | |
| KAREN CORDIO, JOANNE NORRIS, | ) | |
| STEPHANIE RICHARDS, TAMARA | ) | |
| SHUMOVSKAYA, JESSICA TORRES | ) | |
| AMANDA KUKTA, ROBERT MONK, | ) | |
| MICHELLE MOYO, IVAN ROMAN, | ) | |
| CRYSTAL GEISERT, JANE DOE and | ) | |
| JOHN DOE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## HB SOFTWARE SOLUTIONS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

### i. Introduction

Plaintiff Paul Jones' ("Mr. Jones") pro se complaint fails to state a coherent legal

claim against HB Software Solutions, Inc. ("HBSS"). As the Complaint implicitly

concedes, HBSS has no relationship with Mr. Jones and never has. Mr. Jones was never

employed by HBSS and has no contractual arrangement with HBSS, either directly or

through his actual employer, Community Recovery Division, Inc. ("CCRD"). HBSS is a

technology company which licenses its software to Montachusett Regional Transit

Authority ("MART"). As the Complaint implicitly concedes by omission, HBSS has no

role in MART's vendor application process, the processing of soliciting bids by vendors, or the criteria used by MART for selecting vendors for routes or orders. HBSS does not even maintain an auto-dialing service. To its knowledge, HBSS has never interacted with Mr. Jones and no direct interaction is alleged in the Complaint. The gravamen of Mr. Jones' complaint against HBSS seems to be that because HBSS provides technology services to MART (and at some point hired a former MART employee) that HBSS is responsible for all of MART's alleged conduct. Fortunately the law does not permit liability to attach in such a manner.

Even accepting as true Mr. Jones' allegations, he has failed to plead facts sufficient to support a claim that he was ever employed by HBSS or that he complied with the pre-suit requirement necessary to assert such claims. Black letter law mandates that before asserting any employment discrimination claim in Court, a plaintiff must file a complaint against that particular defendant with the Massachusetts Commission Against Discrimination ("MCAD") and/or the Equal Employment Opportunity Commission ("EEOC"). Mr. Jones' failure to plead an employment relationship with HBSS or the making of a pre-suit complaint with the MCAD or EEOC (which he cannot because he did not), proves fatal to his employment-based discrimination claims. Similarly, even if the Court assumes that HBSS has an auto-dialing service, which it does not, the allegations of the Complaint fail to pled facts sufficient to entitle him to relief under the Telephone Consumer Protection Act ("TCPA"). Indeed, Mr. Jones' allegations make clear that he was not acting as an individual consumer in such a way that would entitle him to relief under this statute. Finally, Mr. Jones' Title VII claim along with his

intentional infliction of emotional distress claim, fail against HBSS where Mr. Jones has not pled sufficient facts to make such a claim.

## ii.  Facts

The following facts are drawn from the Plaintiff's Verified Complaint and must be assumed as true for purposes of HBSS' Motion to Dismiss.

Mr. Jones is African-American resident of Stoughton, Massachusetts and a "manager/dispatcher" and employee of CCRD.  Complaint, ¶¶ 13, 44, 59, 61.   CCRD has a contract with MART.  Complaint, ¶ 44.

For significant portions of his Complaint, Mr. Jones does not mention or reference HBSS.  From time to time, however, he includes HBSS among the laundry list of multiple defendants he claims were involved in wrongdoing against him.  Mr. Jones' Complaint does not distinguish or attempt to explain what precisely he is alleging HBSS has done, as compared to the other fourteen defendants.  By way of example only, beginning at Paragraph 83, Mr. Jones describes receiving calls from automated "or predictive dialer with an artificial and/or computerized voice from Defendant MART." Mr. Jones then describes his informing "Defendants Ivan his contact manager and Crystal" to only call his office number.  Complaint, ¶ 84.  Mr. Jones claims that MART continued "to place calls to plaintiffs' personal cellular telephone for the next 32 months." Id.   Mr. Jones claims that he provided a new number "to defendants Ivan, but defendants have never used it … as they still are placing calls to plaintiff personal cellular number."  Complaint, ¶ 85.  He then contends that he sent several letters "to defendants" to revoke consent, although it is clear from the exhibit referenced that his use of the term "defendants" does not include HBSS.  Complaint, ¶ 87.  After not specifically

referencing HBSS relative to these interactions, Mr. Jones alleges at Paragraph 101 of the Complaint that "the defendants HBSS and MARTS ATDS and/or predictive dialer called plaintiff over 20 times within a 40 minute period." Complaint, ¶ 101. No explanation or context is provided which would explain what evidence exists which caused him to conclude that HBSS managed to suddenly participate in this process where the Complaint's preceding paragraphs do not reference HBSS's participation in the autodialing process at all.

Mr. Jones' allegations directed against HBSS seem to concern HBSS's conduct which allegedly "sabotages [sic], caused to sabotaged or stood by silently as plaintiff pointed out these facts [to MART and MART representatives] and refused to correct the deficiencies in plaintiff's vendor portal from on or about April 16, 2016 to June 13, 2019, after defendant Karen was employed at HBSS she began to interfere with plaintiff vendor portal on a daily bases (sic) …" Complaint, ¶ 58. No specifics or details are provided at all which support this conclusion.

While the Complaint alleges that Mr. Jones made a discrimination complaint with the EEOC's Boston office against MART, no similar assertion is made against HBSS. See Complaint, Exhibit 18.

### iii. Argument

### I.    LEGAL STANDARD

To avoid dismissal, a complaint must allege facts which, if proven, "raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is not enough for a complaint to plead facts that are "merely consistent with a defendant's liability," and thus would show only that it is possible, rather than plausible, that a claim is true. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Likewise, it is not enough to plead conclusory allegations. Id. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that can survive a motion to dismiss. Iqbal, 556 U.S. at 678.

II. **MR. JONES' "EMPLOYMENT" BASED DISCRIMINATION CLAIMS FAIL AS HBSS DID NOT EMPLOY MR. JONES AND MR. JONES FAILED TO FILE A COMPLAINT AGAINST HBSS WITH THE EEOC OR MCAD**.

Mr. Jones has asserted a series of claims against HBSS which, at their core, require that he demonstrate that HBSS employed him. The Complaint fails to include such an allegation. Indeed, the Complaint alleges that Mr. Jones was employed by CCRD and that CCRD had a contractual arrangement with MART.

Specifically, Count III alleges retaliation in violation of Title VII of the Civil Rights Act. Count IV (mislabeled as Count VI) alleges discrimination (hostile work environment) in violation of Title VII of the Civil Rights Act. Count V alleges racial discrimination in violation of Title VII of the Civil Rights Act. Count VI alleges discrimination (disparate impact) in violation of Title VII of the Civil Rights Act. Count VIII alleges discrimination in violation of Massachusetts General Laws Chapter 151B. Each and every one of these claims requires that a plaintiff be party to an employment relationship with HBSS. Mr. Jones fails to allege an employment relationship with HBSS (or even an independent contractor relationship). Undoubtedly, Mr. Jones never had any sort of relationship with HBSS.

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). The term "employee" is defined under Title VII as "an individual employed by an employer." 42 U.S.C. § 2000e, section 701(f). Here, Mr. Jones' Complaint not only fails to allege an employment relationship with HBSS but the Complaint alleges the opposite. See e.g. Complaint, ¶ 44 ("Plaintiff was and is the manager/dispatcher at Commonwealth Community Recover Division, Inc."); ¶ 59 ("Defendants … on at least 40 of occasions placed trips that were never even excepted … or completed by plaintiff's employer …") (emphasis supplied).

In addition, in order to maintain an employment discrimination claim, a plaintiff must first complain about the defendant to the EEOC and, in the case of a claim brought under M.G.L. 151B, to the Massachusetts Commission Against Discrimination. Just this past term, the United States Supreme Court confirmed this fundamental holding in concluding that "Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.' [which] require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action." Fort Bend County, Texas v. Davis, 139 S.Ct. 1542 (2019). Undoubtedly, a Title VII claim which is not first brought with the EEOC may not be litigated in Court. Id.

Massachusetts state law is in accord. Resorting "to judicial process is not available to a party claiming discrimination unless that party has first lodged a complaint of unlawful discrimination with the MCAD …" Tarandico v. Aetna Life & Cas. Co., 41

Mass.App.Ct. 443, 444 (1996). Failure to file a timely complaint with the MCAD against a defendant prior to filing suit operates to bar a claim of discrimination against the defendant pursuant to G.L. c. 151B. Powers v. H.B. Smith Company, 42 Mass .App.Ct. 657, 667 rev. denied 425 Mass. 1105, 1105 (1997). A plaintiff's failure to satisfy the procedural requirements of G.L. c. 151B necessitates the dismissal of the complaint for discrimination. Charland v. Muzi Motors, Inc., 471 Mass. 580, 586 (1994).

Undoubtedly, HBSS did not employ Mr. Jones or have any contractual relationship with him. Likewise, Mr. Jones failed to lodge any complaint against HBSS with the EEOC or MCAD as required in order to advance an employment based discrimination claim in this case. Thus, all of Mr. Jones' claims brought under Title VII and G.L. c. 151B must be dismissed.

## II. MR. JONES HAS FAILED TO PROPERLY ALLEGE A CLAIM AGAINST HBSS UNDER THE TELEPHONE CONSUMER PROTECTION ACT.

Counts I and II of Mr. Jones' Verified Complaint allege that HBSS violated the Telephone Consumer Protection Act ("TCPA"). The TCPA does not apply to Mr. Jones in the context of this lawsuit and even if it did, Mr. Jones has failed to allege sufficient facts to support a claim against HBSS.

As the District of Massachusetts has held, "[t]he TCPA is … a federal consumer protection statute; indeed, the very name of the statute is the Telephone *Consumer Protection* Act." Gonzalez v. HOSOPO Corp., 371 F. Supp. 3d 26, 36 (D. Mass. 2019); Davis v. Diversified Consultants, Inc., 36 F. Supp. 3d 217, 223 (D. Mass. 2014) ("Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."); see also Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d

Cir. 2013) ("Congress passed the TCPA to protect individual consumers from receiving

intrusive and unwanted calls."); Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954

(9th Cir. 2009) ("The TCPA was enacted in response to an increasing number of

consumer complaints arising from the increased number of telemarketing calls.").

      Mr. Jones' Complaint makes clear that he was not allegedly being contacted as an

"individual consumer" but instead in his capacity as a "dispatcher" for CCRD, a business

seeking to earn fees arising from its contractual relationship with MART.  Mr. Jones'

Complaint appears to allege that Mr. Jones, in his capacity as dispatcher for CCRD,

received too many inquiries from MART seeking to schedule transportation services for

Mass Health Consumers. These calls, if actually placed, were undoubtedly made to Mr.

Jones in his corporate capacity and pursuant to CCRD's contemplated arrangement with

MART.  These communications cannot possibly be of the sort contemplated by Congress

in enacting the TCPA.  Indeed, in accordance with its rulemaking authority, the Federal

Communication Commission issued the following ruling in 2015 with regard to the

TCPA:

> Month after month, unwanted robocalls and texts, both telemarketing
> and informational, top the list of **consumer complaints** received by the
> Commission. The Telephone Consumer Protection Act (TCPA) and our
> rules empower **consumers** to decide which robocalls and text messages
> they receive … With this Declaratory Ruling and Order, we act to preserve
> **consumers'** rights to stop unwanted robocalls, including both voice calls
> and texts, and thus respond to the many who have let us, other federal
> agencies, and states know about their frustration with robocalls.
>
> In enacting the TCPA, Congress made clear that "[i]ndividuals' privacy
> rights, public safety interests, and commercial freedoms of speech and
> trade must be balanced in a way that protects the privacy of individuals
> and permits legitimate telemarketing practices." Since the TCPA's
> enactment, calling technology has changed, and businesses have grown
> more vocal that modern dialing equipment should not be covered by the
> TCPA and its **consumer** protections. At the same time, **consumers** have

also made it clear that despite such technological changes, they still want to avoid most robocalls they have not agreed to receive. With this order —which resolves 21 separate requests for clarification or other action regarding the TCPA or the Commission's rules and orders—we affirm the vital **consumer protections** of the TCPA while at the same time encouraging **pro-consumer** uses of modern calling technology. Further, the clarity we provide in this Declaratory Ruling and Order will benefit **consumers** and good-faith callers alike by clarifying whether conduct violates the TCPA and by detailing simple guidance intended to assist callers in avoiding violations and consequent litigation.

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) (emphasis supplied).  Mr. Jones was not acting as an individual consumer and cannot seek the protections of a statute designed at its core to protect individual consumers.

Even if the Court were to read the TCPA more broadly, Mr. Jones' claims against HBSS still fail.  The essence of Mr. Jones' complaint is that his employer, CCRT, at times received too many referral opportunities from MART and at other times did not receive any referrals from MART, all apparently in an effort to discriminate and retaliate against him personally because he is an African American.  Simply adding HBSS to the laundry list of parties who are broadly and without specificity alleged to have acted improperly is not enough to survive a motion to dismiss. Mr. Jones' Complaint alleges that MART's automated vendor callout process contacted him.  See e.g., Complaint ¶ 83 ("on or about October 15, 2016, for the first time plaintiff started receiving calls from an ATDS and or predictive Dialer with an artificial and or computerized voice from Defendant MART … plaintiff stated receiving approximately 40-70 computerized artificial voice messages offering him work (non-cost effective trips) from approximately 7 am until 12 noon."); Complaint ¶ 84 ("Plaintiff immediately called Defendant Ivan his contract manager and Crystal and informed them to please only call plaintiff on his office

number … defendant Ivan & Crystal assured plaintiff no calls would come to his personal cellular telephone anymore, defendant continued to place calls to plaintiffs' personal cellular telephone for the next 32 months with sometimes up to 70 calls a day from 6:10 am – 7:00 pm on plaintiff's personal cellular telephone").

Clearly, these allegations have nothing to do with HBSS, nor could they. Neither Mr. Jones nor his employer (CCRT) have any relationship whatsoever with HBSS as the Complaint tacitly concedes. It is not enough to survive a motion to dismiss to add a conclusory paragraph which seeks to sweep HBSS into the alleged unlawful conduct and then allege that HBSS has violated federal law.

At a minimum, in order to state a claim under the TCPS against HBSS, Mr. Jones must affirmatively allege with reference to specific facts how HBSS was the party actually placing the call to him, when HBSS (as to be distinguished from MART) placed calls to him, how these specific calls were placed and that HBSS itself possesses the automated equipment necessary to make these calls. Mr. Jones cannot in good faith assert these facts as there are no facts to support such claims. Counts I and II as against HBSS must therefore be dismissed.

## IV.    MR. JONES HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT A TITLE VI CLAIM AGAINST HBSS

Mr. Jones claim to entitlement under Count VII (Violation of Title VI) is supported by a single sentence found at Paragraph 37 of the Verified Complaint:

> Plaintiff complained to Defendant HBSS, MART, Rebecca, Donna, Bonnie, Karen, Joanne, Robert, Michelle, Ivan. Crystal, Tamara, Jessica, Amanda, Jane and John their directors and manager (At all times relevant to the subject matter of this litigation) but nothing was done to stop or deter such conduct, all defendants directly participate in federally funded programs and directly benefited from federal grants, loans or contract.

10

Aside from the fact that this assertion is demonstrably false, it is insufficient to support a Title VI claim. Nowhere in his Complaint does Mr. Jones cite to, identify, plead or allege any specific "federal grants, loans or contract" which he claims HBSS "directly benefited from," let alone when the "federal grants, loans or contract," were received. No specifics are provided because no specific facts exist to support such a claim.

Moreover Mr. Jones glosses over the actual requirements necessary to support a Title VI claim. Title VI in provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis supplied). Thus, the standard is not whether HBSS "participates" in or "directly benefit[s] from" a "federal grant, loan or contract" but rather whether HBSS receives Federal financial assistance and further whether HBSS has discriminated against Mr. Jones in connection with the specific program or activity for which the Federal financial assistance has been provided. Mr. Jones' Complaint fails to identify from which federal agency HBSS allegedly received financial assistance, when this assistance was provided, the program or activity for which HBSS received financial assistance and/or how HBSS discriminated against Mr. Jones in connection with the particular specific program or activity from which it received assistance. These facts are not alleged because they do not exist and Count VII must therefore be dismissed.

## V. MR. JONES HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Finally, Mr. Jones alleges that HBSS has intentionally inflicted emotional distress upon him. To sustain such a claim, a plaintiff must prove "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Butcher v. University of Massachusetts, 94 Mass. App. Ct. 33, 42 (2018).

Here, Mr. Jones has failed to allege conduct on the part of HBSS which rises to the level of extreme, outrageous conduct which is beyond all possible bounds of decency and utterly intolerable in a civilized community. While Mr. Jones' Complaint contains soaring conclusory allegations about discrimination generally, his Complaint is devoid of virtually any specific alleged acts committed by HBSS which, even if true, could be viewed as beyond all bounds of decency and utterly intolerable in a civilized community. As noted above, it is simply not enough to add HBSS's name to several conclusory paragraphs that reference more than a dozen other MART employees.

Finally, where the intentional infliction of emotional distress count is entirely derivative of Mr. Jones' preceding seven counts, and where the preceding seven counts fail against HBSS, so must the intentional infliction of emotional distress claim. See e.g. Scholz v. Delp, 473 Mass. 242, 254 (2015).

12

## iv.  Conclusion

For the forgoing reasons, HB Software Solutions, Inc. respectfully requests that

the Court allow its motion to dismiss.

Respectfully submitted,

HB SOFTWARE SOLUTIONS, INC.

By its attorneys,

  /s/ David H/ Rich_____
David H. Rich, (BBO#634275)
drich@toddweld.com
Todd & Weld LLP
One Federal Street
Boston, MA 02109
(617) 720-2626
(617) 227-5777 (fax)

Dated:  August 13, 2019

## CERTIFICATE OF SERVICE

I, David H. Rich, hereby certify that this document has been filed through the
ECF system and will be sent electronically to the registered participants as identified on
the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as
non-registered participants on August 13, 2019.

   /s/ David H. Rich_____
David H. Rich (BBO #634275)