UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES                                     Civil Action No. 1:19-cv-11093-ADB

Plaintiff

        V.

MONTACHUSETTS REGIONAL TRANSIT AURTHORITY et al
Defendants

**PLAINTIFFS VERIFIED OPPOSITION TO DEFENDANTS MONTACHUSETTS**

**REGIONAL TRANSIT AUTHORITY MOTION TO DISMISS**

1. Now comes Plaintiffs Paul Jones ("Plaintiffs"), with his Opposition to Defendants Montachusett's Regional Transit Authority ("MART")  Rebecca Badgley, Donna Landry, Bonnie Mahoney, Karen Cordio, Joanne Norris, Stephanie Richards, Tamara, Shumovskaya, Jessica Torres, Amanda Kukta, Robert Monk, Michelle Moyo, Ivan Roman, and Crystal Geisert, all either current or former MART employees (collectively "MART Defendants") Motion to dismiss.

2. The Plaintiff filed an Amended Verified Complaint (Complaint) seeking damages for violations of the Telephone Consumer Protection Act ("TCPA"), Retaliation in Violation of  Title VII of the Civil Rights Act of 1964, et seq, Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964, et seq, Race & Sex Based National Origin  (African American Male) Discrimination in Violation of Title VII of the Civil Rights Act of 1964, et seq, Race & Sex Based National Origin (African American Male) Discrimination (Disparate Impact) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.  et seq., Retaliation in Violation of Title VI of the Civil Rights Act of 1964, et seq *as amended,* Violations of M.G.L. c. 151B, §*et seq* – Interference with Protected

Rights and Retaliation for Requesting Reasonable Accommodation and Infliction of Emotional Distress.

3. Defendant MART filed a Motion to dismiss citing numerous technical arguments. While the Complaint is not perfect, Furthermore, because neither mistake nor fraud was asserted, Defendants motion to dismiss is without merit. In any event, Plaintiff will be seeking to amend his complaint for these reasons, Plaintiff requests that this Court deny Defendant's MART Motion to Dismiss and grant Plaintiff's Motion to Amend if need be.

4. Both the right to proceed pro se and liberal pleading standards reflect the modern civil legal system's emphasis on protecting access to courts. (See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). Self-representation has firm roots in the notion that all individuals, no matter their status or wealth, are entitled to air grievances for which they may be entitled to relief. (See Swank, supra note 1, at 1546 (discussing the importance of self-representation to the fundamental precept of equality before the law). Access, then, must not be contingent upon retaining counsel, lest the entitlement become a mere privilege denied to certain segments of society. Similarly, because pleading is the gateway by which litigants access federal courts, the drafters of the Federal Rules of Civil Procedure purposefully eschewed strict sufficiency standards. See Proceedings of the Institute on Federal Rules (1938) (statement of Edgar Tolman), reprinted in RULES OF CIVIL PROCEDURE FOR THE DISTRICT COURTS OF THE UNITED STATES 301-13 (William W. Dawson ed., 1938). In their place, the drafters instituted a regime in which a complaint quite easily entitled its author to discovery in order to prevent dismissal of cases before litigants have had an adequate opportunity to demonstrate their merit. See Mark Herrmann, James M. Beck & Stephen B. Burbank, Debate, Plausible Denial: 158 U. PA. L. REV. PENNUMBRA 141, 148 (2009), http://pennumbra.com/debates/pdfs/PlausibleDenial.pdf (Burbank, Rebuttal) (asserting that the

drafters of the Federal Rules objected to a technical pleading regime because it would "too often cut off adjudication on the merits").

5. However, recognizing that trans substantive pleading standards do not sufficiently account for the capability differential between represented and unrepresented litigants, the Supreme Court fashioned a rule of special solicitude for pro se pleadings. Accordingly, "pro se complaint[s], 'however in artfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)). Discovery is needed in this case, and, plaintiff notes in this opposition that the defendants possess some documents plaintiff would need for this his case.

## STANDARD OF REVIEW

6. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

7. The Supreme Court has stated that Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937 (2009) citing Twombly, 550 U.S. at 555. What Twombly and Iqbal do not require is any finding that well pled facts, that is, pleadings making purely factual assertions, require further factual support.

8.  A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.,* 733 F.3d 349, 353 (1st Cir.2013).

9.  In assessing the plausibility of a plaintiff's allegations, the question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, S. Ct. No. 09-9000, 2011 WL 767703, at * 6 (Mar. 7, 2011).  The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007).

10. Because of Plaintiffs pro se status, the court should construe his pleadings liberally. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75-76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). Plaintiffs verified amended complaint and verified opposition should be treated as an affidavit Pupecki v. James Madison Corp., 376 Mass. 212 (1978).

## INTRODUCTION

11. Defendant MART views the Plaintiff as an individual whom protest unfair treatment from defendants MART as he should be happy because defendants are even dealing with him and that he must be crushed like a bug, silenced, and prohibited from standing up for his self by exerting his rights in the courts. Defendants actions toward the Plaintiff has been, plaintiff dare to move forward in the courts to hold Defendant MART accountable for their violations of his Civil Rights to Privacy and Serenity as well as its multiple violations of Federal and State protection statutes resulting from several illegal, unwarranted acts from the defendants including disruptive calls to plaintiff cell phone (between the hours of 6am -8pm) which was revoked verbally and in writing on multiple occasion (See plaintiff complaint exhibits). Plaintiff is unlike the majority of people who are employed at MART or has

4

some type of working relationship with them, who tolerate being the victims of Defendants MART *war* against them and the abuse that MART showers upon them daily in its insatiable quest for the dollar, and to MART, plaintiff is nothing more than another worm in the chicken yard.

12. Defendants state plaintiff is not an employee when day in and day out the defendants practice a high degree of control over plaintiff's manner in which the work is to be performed, assigned, what areas plaintiff can work in, how much money the plaintiff can earn. Defendants also cannot just deny that they plaintiff is not an employee, or they are not a Recipients of federal funds (See Exhibit 1 MART Financial Statement & Auditors Report) and if even, so plaintiff is not the intended beneficiary of the federal assistance provided and therefore has no standing to bring a claim for the violation of Title VI. According to Exhibit 1 defendant MARTS Financial Statement & Auditors Report on page 7 (Also see pg. 9), defendants received $2,800,000 from Federal Government.

13. In addition, defendants cannot just state "Plaintiff's claims for the violation of the TCPA must be dismissed because the telephone calls of which Plaintiff complains are not the type protected under the TCPA" defendants point the court to no on point case law to prove what they are parroting. Title VII applies to organizations in any sector — for-profit, nonprofit and governmental — with 15 or more employees.

## LAW & ARGUMENT

**A.    Plaintiffs Complaint has Stated a Claim Under the Telephone Consumer Protection Act.**

14. In the instant case, Plaintiff's proposed Complaint states adequate facts to remedy any hyper-technical procedural violations alleged to have previously existed.  For example, Plaintiffs First Amended Verified Complaint identifies the dates and times of most calls made by Defendant (See Complaint Exhibit 24). Furthermore, it provides factual assertions in support of Plaintiff's actual use of the telephone number at issue.

15.   Because the Complaint is plausible, contains sufficient facts to place Defendant on notice of his claims, and raises a right to relief above the speculative level, Defendant's MART requested motion to dismiss should be denied.

### Defendant States "Plaintiff fails to state a claim pursuant to the TCPA (Counts I and II)", Defendants further states that

16. "*In Counts I and II of his Complaint, plaintiff alleges that the MART Defendants violated the TCPA based on telephone calls MART made to his personal  cell phone, defendants stated in their motion to dismiss plaintiff received these calls in his capacity as dispatcher/manager for CCRD as part of the MART automated vendor callout process*"(See page 6 defendants 12 B 6), defendants never denied that plaintiff received artificial and or computerized calls from defendant after he revoked consent verbally and in writing.

17. Several circuits including the  Ninth and First Circuit held "a device can be an ATDS if it merely dials numbers from a stored list."  *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1050 (9th Cir. 2018) because it is a "cardinal principle" that courts "must  give effect, if possible, to every clause and word of a statute," such a result weighs in favor of the Marks reading of the TCPA.  *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) quoting Williams v. Taylor, 529 U.S. 362, 404 (2000)).

18. Nowhere in Plaintiff complaint did plaintiff ever "*alleged defendants called his cell phone in his capacity as a dispatcher/manager for CCRD*" (See plaintiffs' complaint).

19. Plaintiff alleged that "the defendants called plaintiff cell phone with an ATDS and or predictive dialer and left artificial computerized voice messages (between 6am & 8pm) without consent, even after plaintiff revoked his consent to be called on his personal cellular telephone several times verbally and

in writing by certified return receipt") (See Certified Receipt received by MART revoking consent Exhibit to plaintiff complaint).

20. The plaintiff relied on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages and raise an inference that an ATDS was used. See plaintiff's complaint (Kruskall v. Sallie Mae Service, Inc., 2016 WL 1056973, at *3 (D. Mass. 2016) and *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019).

21. Congress enacted the TCPA to protect the interests of telephone users by placing restrictions on "unsolicited, automated telephone calls." *Satterfield v. Simon & Schuster, Inc.* , <u>569 F.3d 946, 954</u> (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991) ). That is, the statute aims to curb a particular type of *uninvited* call. As a result, the statute omits from its ambit those calls that a person agrees to receive.

22. Individuals have a right to revoke consent, using any reasonable method including orally or in writing. (*See* In re *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, at ¶¶ 63, 64 (F.C.C. July 10, 2015),* ruling upheld*, ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018)* Osorio v. State Farm Bank, 746 F.3d 1242 (11th Cir. 2014). Accord Schweitzer v. Comenity Bank, 866 F.3d 1273 (11th Cir. 2017) (reiterating that consent can be revoked orally and holding that it can be partially revoked). See also Blow v. Bijora, Inc., 855 F.3d 793, 803 (7th Cir. 2017) (quoting the FCC's ruling that consent can be revoked by any reasonable means).

23. Defendants MART states " MART was contacting Plaintiff using its automated vendor callout process in Plaintiff s capacity as a "consumer," but rather as the contact for CCRD, a MART vendor, to schedule transportation services for MART consumers. Such business-related calls are not the type of calls that are protected by the TCPA"). "(See page 6 defendants 12 B 6 & 7).

24. Defendants failed to realize that the TCPA statues does not state anywhere or anything about a plaintiff must be a consumer, the statue is clear it states even a business, corporation can have a private right of action under the TCPA statue, it is clear "The TCPA allows a private right of action by a **person or entity not just consumers** *See* <u>47 U.S.C. § 227(b)(3)</u>" *Holster v. Gatco, Inc.*, 130 S. Ct. 1575, 1577 (2010). ""The private right of action created by the TCPA allows a person or entity to, 'if *otherwise permitted by the laws or rules of court of a State,* bring ...' an action for a violation of the TCPA).

25. Defendants MART states "they were not contacting Plaintiff as a private resident, but rather as the dispatcher for CCRD, a MART vendor, to schedule transportation services that CCRD was to provide to MART consumers. Telemarketing, solicitation or advertising and the like was not the purpose of the calls being made to Plaintiff.

26. Rather, Plaintiff admittedly is the dispatcher for his employer, CCRD, and received the calls in his role as dispatcher as part of the MART automated vendor callout process to schedule transportation services for Mass Health consumers. Complaint, see 22l -232 and Exhibit.22. Where the calls were made to Plaintiff in his commercial capacity pursuant to MART's contract with his employer, CCRD, those calls do not fall within the protections afforded to private residents by the TCPA".

27. Defendants calls were made without the consent of the called party and defendants were told this on several occasions but refused stop all calls to plaintiff's personal cell phone, only after plaintiff filed this case did defendants start calling the two office phone numbers that plaintiff supplied to them when he revoked consent.

28. Defendants are miss guided regarding the TCPA rules and regulations the statue states , The TCPA makes it "unlawful ... to make **any call** (other than a call made for emergency purposes *or made with the prior express consent of the called party)* using any automatic telephone dialing system ... to any

telephone number assigned to a ... cellular telephone service," "unless such call is made solely to collect a debt owed or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). "In short, the TCPA generally makes it unlawful to call a cell phone using" an ATDS. *ACA International v. Federal Communications Commission,* 885 F.3d 687, 693 (D.C. Cir. 2018).

29. The TCPA's substantive restrictions apply to "any person, (See 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a), (c), (d), (e) ("no person" shall violate restrictions), a term that includes individuals (See § 6.9.2.7, infra)., a defendant that can be considered to have "made" or "initiated" a call in violation of the TCPA will have direct liability. In a 2013 ruling that dealt with telemarketing calls, the FCC addressed the question of how much involvement in making a call is necessary to create direct liability (See The Joint Petition Filed by DISH Network, L.L.C., the United States of Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, F.C.C. 13-54, 2013 WL 1934349 (F.C.C. May 9, 2013) and applied the same analysis in 2015 to robocalls to cell phones (See Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, at ¶¶ 25–41 (F.C.C. July 10, 2015), appeal resolved, ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018) (setting aside two parts of 2015 declaratory ruling but leaving this portion undisturbed).

30. Plaintiff never stated in his complaint that Defendants used telemarketing calls to plaintiff private residents, again the defendants are trying to muddy the waters.

31. Defendant MART in quoting "The TCPA was intended to combat, among other things, the proliferation of automated telemarketing calls (known as "robocalls") to private residents is nowhere to be found in Fober v. Management and Technology Consultants. LLC, 886 F.3d 789 (2018).

32. Defendants are miss leading the court with the above statement nowhere the citation (See in Fober v. Management and Technology Consultants. LLC, 886 F.3d 789 (2018) are the words *"The TCPA was*

*intended to combat, among other things, the proliferation of automated telemarketing calls (known as "robocalls") to private residents"* they are is missed placed using this case law (*SEE Exhibit 1 Fober v. Management and Technology Consultants. LLC, 886 F.3d 789 (2018)).*

33.  The above case was decided against the plaintiff in Fober v. Management because she gave consent to receive the alleged calls and never revoked consent unlike plaintiff in this case whom never gave defendants MART consent to call his personal cell phone with an ATD & Artificial or Computerized voice messages, and even if plaintiff did give consent at one point plaintiff revoked consent several times (See complaint Exhibit certified return receipts) orally and in writing by certified return receipt.

34. Defendants points the court to no case laws or statue that are on point for their Parroting arguments, that states one must be a consumer to have a private right of action , Such business-related calls are not the type of calls that are protected by the TCPA, plaintiff's complaint doesn't allege that defendants contacted plaintiff regarding Telemarketing solicitation or advertising.

**Restrictions on Calling Times**

35. Defendant MART called plaintiffs personal cell phone without consent between 6am & 8am with a Computerized and or artificial voice (Automatic Telephone Dialing System and or Predictive Dialer) which is prohibited under the TCPA (See 16 C.F.R. § 310.4(c); 47 C.F.R. § 64.1200(c)(1). The FCC and FTC Rules prohibit telephone solicitations before 8:00 a.m. or after 9:00 p.m., local time (determined by the called party's location). (SEE 16 C.F.R. § 310.4(c); 47 C.F.R. § 64.1200(c)(1).

36. Defendants MART admits that it called plaintiffs cellular telephone and that plaintiff even provided other numbers to be called on, what they failed to do is point the court to any caselaw that gives them the right to place calls using an Automatic Telephone Dialing System (ATDS) and leaving Artificial and or Computerized message every 1-5 minutes sometimes 14 hours a day without consent to plaintiff cell phone even after revoke of consent, for two years or more before 8am.

37. Defendants MART could have easily allowed plaintiff to book all calls through their state of the art vendor portal like they allow the non-minority vendors and minority vendors that don't protest their bad treatment, this tactic by defendant MART allows them to control every aspect of plaintiffs job, such as when and where plaintiff works , time plaintiffs works and days plaintiffs work, and it give MART the ability to offer plaintiff only non-cost effective jobs that other vendors have rejected in the past two week.

### Private Causes of Action Under the TCPA

38. Special issues regarding the private cause of action for violation of the TCPA's restrictions on robocalls to cell phones, See §§ 6.3.5.6 (only cell phone calls to collect government debts), 6.3.6 (general robocall restrictions)

39. The TCPA's substantive requirements are set out at 47 U.S.C. § 227(b)–(e). Sections 227(b) and (c) each provide for an explicit (although somewhat different) private right of action. Section 227(b) provides a private remedy for any violation of that section or of a regulation prescribed under that section. 47 U.S.C. § 227(b)(3). See Engle v. Unified Life Ins. Co., 2014 WL 12508347 (S.D. Cal. Oct. 27, 2014) (plaintiff may allege claim for violation of a TCPA regulation in the alternative to a claim for violation of the statute).Thus there is a private right of action for any violation of provisions dealing with restrictions on autodialed or prerecorded calls or texts to cell phones, See § 6.3, supra. A single violation is sufficient to create liability. Susinno v. Work Out World, Inc., 862 F.3d 346 (3d Cir. 2017) (a single call is sufficient for liability); Sparkle Hill, Inc. v. Invecor, L.L.C., 2014 WL 4755490 (D.N.J. Sept. 23, 2014) (there is no de minimis exception; single junk fax is actionable); Lary v. Tom Taylor Agency, 878 So. 2d 1165 (Ala. Civ. App. 2003); Reichenbach v. Chung Holdings, L.L.C., 823 N.E.2d 29 (Ohio Ct. App. 2004) (prerecorded call); Reichenbach v. Fin. Freedom Ctrs., 2004 WL 2634624 (Ohio Ct. App. Nov. 19, 2004); Grady v. Lenders Interactive

Servs., 2004 WL 1799178 (Ohio Ct. App. Aug. 12, 2004).Section 227(c), which requires the FCC to

adopt rules concerning subscriber privacy rights, provides a private remedy when a person has

received more than one telephone call within any twelve-month period by or on behalf of the same

entity in violation of regulations prescribed under section 227(c). 47 U.S.C. § 227(c)(5). See

Worsham v. Nationwide Ins. Co., 772 A.2d 868 (Md. Ct. Spec. App. 2001) (consumer has private

cause of action if a repeat call is made after request to be placed on no-call list)Similarly, the FCC

adopted the restrictions on calling times (See 7 F.C.C. Rcd. 8752, at ¶ 26 (F.C.C. Oct. 16, 1992). See

§ 6.6.4, supra).

### Defendant MART is the Principal and Liability for Robocalls to

### Plaintiff cell Phone for Purposes Other Than Debt Collection

40. For non-debt-collection calls to cell phones, however, the FCC has not announced any special rule.

   Instead, courts have generally determined liability by applying the common law agency principles

   that the FCC identified (See The Joint Petition Filed by DISH Network, L.L.C., the United States of

   Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Tel.

   Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574 (F.C.C. May 9, 2013). See § 6.9.2.5, supra

   (full discussion of this ruling). The U.S. Supreme Court endorsed this view in Campbell-Ewald v.

   Gomez, a case *involving a federal contractor's* liability for making non-debt-collection non-

   telemarketing robocalls to cell phones without prior express consent:

**B.    MART is a public non-profit employer and is therefore not exempt from such**

**claims pursuant to the Massachusetts Tort Claims Act, G.L. c. 258, 10(c).**

41. Defendants state that "MART is a public employer and is therefore exempt from such claims pursuant

   to the Massachusetts Tort Claims Act, G.L. c. 258,  10(c).

42. The plaintiff is not a **public employee** which is "a person who is employed by a government agency and includes the **employees** of a municipal, county, state, or federal agency or state college or university" (See https://definitions.uslegal.com/p/public-employee/.) Plaintiff is not employed by any of the above .

43. Plaintiff does not have Massachusetts Tort Claims Act, G.L. c. 258,  10(c) in his complaint as a count and furthermore this statue is designed for public employee defendant MART is an employer (See Massachusetts Tort Claims Act, G.L. c. 258,  10(c).below) Section 10. The provisions of sections one to eight, inclusive, shall not apply to:—

(a) any claim based upon an act or omission of a public employee when such employee is exercising due care in the execution of any statute or any regulation of a public employer, or any municipal ordinance or by-law, whether or not such statute, regulation, ordinance or by-law is valid;

(b) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused;

(c) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations;

It is well established that an "employer is responsible for the torts of its employee only when the torts are 'committed within the scope of the employment.' " Id. at 215–16 (quoting Favre v. *Wal–Mart Stores, Inc.*, 820 So.2d 771, 773 (¶ 5) (Miss.Ct.App.2002))

**C.** **Plaintiffs has stated a claims Brought under Title VII and M.G.L. c. 151B plaintiff should be deemed an employee because defendants fail the common law element of control**

44. Defendant MART states "Plaintiff's claims brought pursuant to Title VII and G.L. c. 151B must be dismissed because Plaintiff is not an employee of MART.

45. Title VII defines an "employer" as "a person who is engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). A "state" may be such a person. *Id.* § 2000e(a). The text ties the definition of an "employer" to the meaning of "employees." *Lopez v. Massachusetts*, 588 F.3d 69, 83 (1st Cir. 2009)

46. Title VII defines an "employee" only as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court has recognized that this definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)

47. It is clear that the terms "employer" and "employee" under Title VII are to be defined with reference to these common law agency principles. *See Walters*, 519 U.S. at 211-12, 117 S.Ct. 660; *De Jesús v. LTT Card Servs., Inc.*, 474 F.3d 16, 18, 22 (1st Cir. 2007); *Alberty-Vélez v. Corporación De P.R. Para La Difusión Pública*, 361 F.3d 1, 6 (1st Cir. 2004).

48. The term "master-servant," while archaic and perhaps even offensive in modern usage, refers to the employer-employee relationship.

49. The U.S. Supreme Court's decision in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989). In that case, the Supreme Court set forth thirteen factors that should be considered: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities/tools; (4) the location of the work; (5) the duration of the relationship; (6) whether the hiring party can assign additional projects to the hired

party; (7) the extend of the hired party's discretion over when/how long to work; (8) the method of payment; (9) the hired party's ability to hire/pay assistants; (10) whether the work id part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. While no single factor is dispositive, the primary emphasis is put on the first factor – the extent to which the hiring party controls the manner and means by which the worker completes her tasks.

50. Defendants MART has control over the plaintiff, Plaintiff is supervised by the employer, Defendant ordered plaintiff to submit how many miles plaintiff drives while working, how much money plaintiffs takes home, plaintiff must inform defendants how much money company and each employees makes, how much was spent for maintenance on vehicles, office expenses, gas, miles traveled to do job, time when vehicles was returned to plaintiffs office at end of day (See plaintiffs complaint).

51. Plaintiff is not engaged in a separately established business distinct from that of the Defendant, Defendant MART has the right to terminate employees working for plaintiff, Plaintiff does not provide specialized services that no other MART employee can perform, Plaintiff is not providing services that require a great deal of skill (Driving), The work being performed by the Plaintiff is part of the regular business of the Defendant (Transportation), Defendants sets the amount of work plaintiff can acquire through control plaintiffs capacity (Plaintiff has to put in a request to raise the amount of work he can acquire from defendant), Defendants set the time period in which trips must be done, Plaintiff is not paid a high rate for his services, Defendant MART does not issue a 1099 form for the services provided by the plaintiff.

52. Plaintiff is required to answer his cellular phone to except next day trips and if plaintiff did not, he would receive a reduced work load for the next day, start work at times specified by defendant

MART (See Exhibits to complaint), and were required to call if plaintiff were going to be late or absent In other words, if plaintiff refused certain trips work for one day, plaintiff did not have another way to make money. (See Garcia v. Seacon Logix, Inc. (2015) 190 Cal.Rptr.3d 400.)

53. The Plaintiff trip assignments were tightly controlled, the plaintiff had little or no choice of trip assignments daily even trips that where not cost effective, and if plaintiff declined one, plaintiff were refused significant amount of work the following day, causing plaintiff to lose all of his employees several times and had to sell several of the vehicles due to lack of work. Example plaintiff has laid off all his workers except one defendant MART has cut plaintiffs work by 80% since plaintiff filed this complaint in this court, under these conditions the plaintiff has had to work 365 days a year since April 2016 under MARTS policy.

54. Under defendants control plaintiff has no opportunity for profit or loss depending upon his managerial skill only on defendant's ability to allow plaintiff to have access to the work unlike other non-minority's or minority that has never protested defendant's treatment plaintiff is treated differently than non-minority's (See plaintiffs complaint & exhibits).

55. The defendant's employees were very involved in the plaintiff's daily activities and closely supervised plaintiff. Defendant MARTS managers set rules along with enforcing compliance because their jobs depended on plaintiffs and other vendors success in transporting clients.

56. Part of the regular business" factor: The defendants MART brokerage department could not function as a business without the transportation that the so call contractors performed. Thus, the work of the plaintiff and other vendors was part of the defendant MARTS core function.

57. Defendant MART also required that there be training of plaintiff by their employee, by required attendance at meetings, or by other methods, indicates control, especially if the training is given periodically or at frequent intervals.

58. Defendants assessment of flat fees (fines) to the plaintiff for not meeting job specifications, which most times exceeded the actual value of the job completed, were more consistent with the "disciplining of employees," (See *Scantland v. Jeffry Knight Inc 11 circuit*)

59. The Defendants had the right of control over plaintiff' job performance by allowing managers to reprimand or otherwise discipline plaintiff when plaintiff did not follow its standards or employ defendants' techniques.

60. The secondary factor plaintiff should be deemed an employee is that defendant MART has the right to discharge suspend plaintiff and any of his employees at will and without cause under defendants MART quality assurance. Further, there was no distinction between MARTS business, the transportation of individuals and the plaintiffs work.

61. One significant piece of defendants MARTS supervision over Plaintiff is a "MART quality assurance" process under which plaintiff must review under defendants MARTS policy and follow defendants procedures this is contrary to Title VII and other state laws (See *Salamon v. Our Lady of Victory Hospital, W.D.N.Y., No. 1:99-cv-48, 4/3/12.*)

62. These policies defendants MART quality assurance did not merely reflect professional and governmental regulatory standards they went further by creating a level of control that establishes an employment relationship for purposes of Title VII, the evidence submitted by plaintiff indicated that the policies imposed upon him, and the imposition of the review process on is work to such a large degree have been motivated by the defendants goal of maximizing revenue, and in reaction to plaintiffs protesting the treatment and complaints filed by plaintiff.

63. Because a reasonable fact finder could conclude that the defendant's quality assurance standards extended beyond health and safety concerns or to plaintiffs' specific qualifications, and because plaintiff was subject to possible negative peer review for violation of those standards, plaintiff is able

to demonstrate a genuine factual conflict regarding the extent of control exercised by the defendants over his performance. Therefore, the court should allow the Title VII and related state claims to go forward to a jury.

64. This Court should hold that there is sufficient evidence to support defendant MART effectively controlls the manner and means of the plaintiff's work and plaintiff is deemed an employee.

65. Defendants failed to recognize that the degree of control exercised over the work performance of plaintiff, if not established for reasons related to the quality of the service provided, has re-categorize an independent contractor into an employee for purposes of Title VII liability. This court should place a significant burden on defendant MART to justify independent contractor classifications.(See Dynamex Operations West, Inc. v. Superior Court.

66. Plaintiff has submitted sufficient evidence to support a jury finding that he had a reasonable, good faith belief that the challenged actions of Title VII were unlawful by all defendants. Based on the evidence of Plaintiffs complaints Exhibits and plaintiffs' and his own observations, a jury could find that it was not unreasonable for plaintiff to believe that defendants MARTs conduct amounted to violation of Title VII and G.L. c. 151B. The statute requires the employee to establish, by direct or circumstantial evidence, a prima facie case that he or she (1) "participated in an activity protected by §§ 194 et seq." and (2) was subsequently discharged or otherwise discriminated against.*Id.* § 194a(c); *see Lupu v. Wyndham El Conquistador Resort Golden Door Spa*, 524 F.3d 312, 313 (1st Cir. 2008). *Collazo v. Bristol-Myers Squibb Manufacturing*, 617 F.3d 39, 45 (1st Cir. 2010)

67. Plaintiff has made out a prima facie case of retaliation under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff was (1) he or she engaged in protected activity under Title VII, (2) plaintiff

suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected activity. *Fantini v. Salem State College*, 557 F.3d 22, 32 (1st Cir. 2009).

68. The plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Roman v. Potter*, 604 F.3d 34, 39 (1st Cir. 2010). The defendant motion to dismiss does not meets its burden defendants simply states plaintiff is not an employee, plaintiff's complaint shows that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's MARTS retaliatory animus.

69. plaintiff *initiated* a complaint about Discrimination, Retaliation & Hostile work environment and stated he engaged in protected conduct. The plaintiff described various instances of Discrimination, Retaliation & Hostile work environment by defendants MART. Plaintiffs complaints to MassHealth, EEOC, MASSDOT, DOJ and others should reasonably be seen as resistant or antagonistic to the Discrimination, Retaliation & Hostile work environment, "if for no other reason than the point . . . explained by an EEOC guideline: `When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always `constitutes the employee's *opposition* to the activity.'" *Id.* at 851 (quoting 2 EEOC Compliance Manual §§ 8-II-B(1), (2), p. 614:0003 (Mar. 2003)).Plaintiff need discovery in order to prove that the employer acted intentionally" to prevail on a Title VII disparate treatment claim.

70. Plaintiffs complaint & Exhibits produced evidence that he experienced Discrimination, Retaliation & Hostile work environment, shortly after he was denied proper training on several occasions and complaints to Rebecca Bradley MARTS Supervisor and by filing and pursuing multiple complaints for Discrimination, Retaliation & Hostile work environment This showing of temporal proximity is sufficient to establish a prima facie case of causation. *See DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008) ("[O]ur law is that temporal proximity alone can suffice to meet the relatively light burden

of establishing a prima facie case of retaliation.") (internal quotation marks omitted); *see also Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007) (This court should hold that temporal proximity between plaintiffs complaints of Discrimination, Retaliation & Hostile work environment, should be sufficient to make prima facie showing of causation).

71. The  supervisor's and named employees threats to take adverse action against the plaintiff several time (See Complaint) and these threats were carried out (Withholding pay, daily work, access to vendor portal training, fines, reducing work, calling plaintiffs personal cell phone sometime for 14 hours a day) created a hostile work environment, caused the plaintiff a job detriment, this is Retaliation, disparate treatment claims under Title VII. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 770 n.3 (1998)

72. The defendant employer MART is not entitled to the defense because the plaintiff (employee) did not fail to utilize the corrective measures offered by the company's anti Title VII policy. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

**D. Plaintiff has stated a claim for M.G.L. c. 151B**

73. The employer neither has affirmative defense to vicarious liability for their supervisor's conduct because the employer (MART) did not acted promptly and reasonably to prevent and correct the alleged Title VII and **M.G.L. c. 151B, §***et seq violations because the* employee unreasonably failed to take advantage of preventive opportunities plaintiff offered them (Defendants MART)

74. The Massachusetts General Laws c. 149 §148B (also known as the Massachusetts Independent Contractor Law) establishes a three-prong test to determine whether a worker is an employee or independent contract. The law begins with the presumption that all Massachusetts workers are employees. To overcome this presumption and show that a worker is an independent contractor, the

employer must demonstrate that the worker satisfies each and every element of a three-part test for independent contractors. Failure by the employer to prove only one of the three prongs is enough to establish that the worker is an employee.  Under the Massachusetts Independent Contractor Law, an individual performing any service, shall be considered to be an employee under those chapters *unless*: the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and the service is performed outside the usual course of the business of the employer; and, the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

### Free From Control and Direction

75. The burden is upon the employer to demonstrate that the services at issue are performed free from its control or direction and defendant have not done so . The test is not so narrow as to require that a worker (Contractor) be entirely free from direction or control from outside forces. To satisfy the first prong, the employer must demonstrate that the services provided by the worker at issue are: (i) Free from its control and direction; and (2) Carried out with minimal instruction, defendants MART has not done so.

### Continuing violation doctrine

76. Plaintiff complaint against defendants under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq., alleged that he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment. Section 2000e-5(e)(1) requires that a Title VII plaintiff file a charge with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days "after the alleged unlawful employment practice occurred." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 104-5 (2002)

77. Plaintiff Paul Jones urges the court to apply the continuing violation doctrine as discussed in Richards, supra, 26 Cal.4th 798. Under that doctrine, an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period. (Id. at p. 812.)Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1056 (Cal. 2005)

78. Defendants MART workplace harassment, was sufficiently severe or pervasive toward the plaintiff Paul Jones, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for . . . retaliation cases." ( Noviello v. City of Boston, supra, 398 F.3d at p. 89.)" Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1056 n.16 (Cal. 2005)

79. Because plaintiff Paul Jones harassment claims against defendants MART is composed of a series of separate acts that collectively constitute one "unlawful employment practice," the court in Morgan concluded that it does not matter that some of the component parts fall outside the statutory time period. ( Id. at pp. 116-118.) " Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1057 (Cal. 2005)

80. Here, the plaintiff Paul Jones alleges a retaliatory course of conduct rather than a discrete act of retaliation by defendants MART, a series of separate retaliatory acts collectively may constitute an "adverse employment action" even if some or all of the component acts might not be individually actionable. If, however, we courts were to foreclose application of the continuing violation doctrine as a matter of law in retaliation cases, the statute of limitations would start running upon the happening of the first act of retaliation, even if that act would not be actionable standing alone. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1058 (Cal. 2005)

81. Plaintiff Paul Jones alleges a pattern of systematic retaliation (Defendant MART Serial offenders) "holding that coworker hostility or retaliatory harassment, if sufficiently severe, can constitute adverse

employment action for purposes of a title VII retaliation claim" Yanowitz v. L'Oreal USA, Inc., 36

Cal. 4th 1028, 1061 (Cal. 2005)

## CONCLUSION

For all these reasons, Plaintiff Paul Jones has stated valid claims under the Telephone Consumer

Practices Act, Title VI, Title VII, Discrimination ,Hostile Work Environment, Retaliation, Infliction of

emotional Distress, M.G.L. c. 151B, §*et seq*, and Defendants MART motion to dismiss should be denied.

Respectfully Submitted

/s/ Paul Jones                                                                September 10, 2019

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007

## VERIFICATION OF OPPOSITION AND CERTIFICATION

### STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.

I believe that this Verified Opposition to defendants MART 12 B 6 motion to dismiss is well-grounded in fact and warranted by existing

law or by a good faith argument for the extension, modification or law.

I believe that this opposition to defendants 12 B 6 motion is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant (s). I have filed this opposition in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this opposition to defendants 12 B 6 motion is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones          */s/ Paul Jones*

572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

September 10 ,2019

## CERTIFICATE OF SERVICE

I Paul Jones plaintiff Certify that I have mailed a copy to defendant's attorney of record, a true and correct copy of the foregoing has been furnished via USP mail to the above-mentioned individuals On this 10th day of September 2019.

Respectfully Submitted

*/s/ Paul Jones*

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com


Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007