UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL JONES

Civil Action No. 1:19-cv-11093-ADB

Plaintiff

V.

MONTACHUSETTS REGIONAL TRANSIT AURTHORITY et al

Defendants

**PLAINTIFFS VERIFIED OPPOSITION TO DEFENDANTS**

**HB SOFTWARE SOLUTIONS, INC.'S**

1. Now comes the Plaintiff Paul Jones ("Plaintiff) with his opposition to defendants HB Software Solutions Inc. motion to dismiss.

2. The Plaintiff filed an Amended Verified Complaint (Complaint) seeking damages for violations of the Telephone Consumer Protection Act ("TCPA"), Retaliation in Violation of Title VII of the Civil Rights Act of 1964, et seq, Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964, et seq, Race & Sex Based National Origin (African American Male) Discrimination in Violation of Title VII of the Civil Rights Act of 1964, et seq, Race & Sex Based National Origin (African American Male) Discrimination (Disparate Impact) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. et seq., Retaliation in Violation of Title VI of the Civil Rights Act of 1964, et seq *as amended,* Violations of M.G.L. c. 151B, §*et seq* – Interference with Protected Rights and Retaliation for Requesting Reasonable Accommodation and Infliction of Emotional Distress against HB Software Solutions Inc. and other defendants.

1

3. Plaintiff request the court to dismiss HB Software Solutions Inc. from Counts 3,4,5, 6, 7,8 and 9 leaving only Count 1 and 2 for violations of the Telephone Consumer Practices Act ("TCPA') against defendant HB Software Solutions Inc. to go forward.

4. Defendants believe they can skirt around TCPA liability by stating the phone calls where sent to plaintiff as a dispatcher regarding his job, The TCPA make any call to any one's cell phone personal or not a violation of the act, Neither good faith, nor the maintenance of reasonable procedures to avoid violations, is a defense to a claim involving the TCPA's restrictions on robocalls. (See Denova v. Ocwen Loan Servicing, L.L.C., 2018 WL 1832901, at *5–6 (M.D. Fla. Jan. 25, 2018) (these are not defenses to claim of violation of § 227(b)).

5. The TCPA is a strict liability statute (See Krakauer v. DISH Network, L.L.C., 2017 WL 2242952, at *1 (M.D.N.C. May 22, 2017); Harrington v. RoundPoint Mortg. Servicing Corp., 163 F. Supp. 3d 1240, 1243 (M.D. Fla. 2016); Park Univ. Enters., Inc. v. Am. Cas. Co., 314 F. Supp. 2d 1094 (D. Kan. 2004), aff'd, 442 F.3d 1239 (10th Cir. 2006).

6. There is no requirement of a showing of intent except when awarding treble damages. (See Krakauer v. DISH Network, L.L.C., 2017 WL 2242952, at *1 (M.D.N.C. May 22, 2017); Harrington v. RoundPoint Mortg. Servicing Corp., 163 F. Supp. 3d 1240, 1243 (M.D. Fla. 2016).

## INTRODUCTION

7. The Plaintiff filed a Complaint seeking damages for violations of the Telephone Consumer Protection Act ("TCPA") and other statues. Defendant filed a Motion to Dismiss citing numerous technical arguments. While the Complaint is not perfect, because neither mistake nor fraud was asserted, Defendants motion is without merit. In any event, Plaintiff will be seeking to amend his complaint if need be. For these reasons, Plaintiff requests that this Court deny Defendant's Motion to Dismiss and grant Plaintiff's forthcoming Motion to Amend if need be.

8. Both the right to proceed pro se and liberal pleading standards reflect the modern civil legal system's emphasis on protecting access to courts. (See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). Self-representation has firm roots in the notion that all individuals, no matter their status or wealth, are entitled to air grievances for which they may be entitled to relief. (See Swank, supra note 1, at 1546 (discussing the importance of self-representation to the fundamental precept of equality before the law). Access, then, must not be contingent upon retaining counsel, lest the entitlement become a mere privilege denied to certain segments of society. Similarly, because pleading is the gateway by which litigants access federal courts, the drafters of the Federal Rules of Civil Procedure purposefully eschewed strict sufficiency standards. See Proceedings of the Institute on Federal Rules (1938) (statement of Edgar Tolman), reprinted in RULES OF CIVIL PROCEDURE FOR THE DISTRICT COURTS OF THE UNITED STATES 301-13 (William W. Dawson ed., 1938). In their place, the drafters instituted a regime in which a complaint quite easily entitled its author to discovery in order to prevent dismissal of cases before litigants have had an adequate opportunity to demonstrate their merit. See Mark Herrmann, James M. Beck & Stephen B. Burbank, Debate, Plausible Denial: 158 U. PA. L. REV. PENNUMBRA 141, 148 (2009), http://pennumbra.com/debates/pdfs/PlausibleDenial.pdf (Burbank, Rebuttal) (asserting that the drafters of the Federal Rules objected to a technical pleading regime because it would "too often cut off adjudication on the merits").

9. However, recognizing that trans substantive pleading standards do not sufficiently account for the capability differential between represented and unrepresented litigants, the Supreme Court fashioned a rule of special solicitude for pro se pleadings. Accordingly, "pro se complaint[s], 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.'"

3

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)). Discovery is needed in this case, and, plaintiff notes in this opposition that the defendants possess some documents plaintiff would need for this his case.

## STANDARD OF REVIEW

10. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

11. The Supreme Court has stated that Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009) citing *Twombly*, 550 U.S. at 555. What Twombly and Iqbal do not require is any finding that well pled facts, that is, pleadings making purely factual assertions, require further factual support.

12. A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir.2013).

13. In assessing the plausibility of a plaintiff's allegations, the question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, S. Ct. No. 09-9000, 2011 WL 767703, at * 6 (Mar. 7, 2011). The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007).

14. Because of Plaintiffs pro se status, the court should construe his pleadings liberally. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75-76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)). Plaintiffs verified amended complaint and verified opposition should be treated as an affidavit Pupecki v. James Madison Corp., 376 Mass. 212 (1978).

**LAW & ARGUMENT**

**A. Plaintiffs Complaint has Stated a Claim Under the Telephone Consumer Protection Act. Against defendant HB Software Solutions Inc.**

15. In the instant case, Plaintiff's proposed Complaint states adequate facts to remedy any hyper-technical procedural violations alleged to have previously existed. For example, Plaintiffs First Amended Verified Complaint identifies the dates and times of most calls made by Defendants MART & HBSS (See Complaint & Exhibit 24 Artificial ,Computerized Messages). Furthermore, it provides factual assertions in support of Plaintiff's actual receipt of the unwanted calls to his personal cell phone.

16. Because the Complaint is plausible, contains sufficient facts to place Defendant on notice of his claims, and raises a right to relief above the speculative level, Defendant's MART requested motion to dismiss should be denied.

17. The complaint state that defendants MART & HB Software Solutions Inc. called plaintiff personal cellular telephone with an Automatic Telephone Dialing System and /or a Predictive Dialer without and even after plaintiff revoked consent from HSBB client Montachusett's Regional Transit Authority (MART).

## Defendant HBSS is the owner of the Automatic Telephone Dialing System and or Predictive Dialer or Software that made the calls to

18. Upon information and belief defendant HBSS software and or Automatic Telephone Dialing System or Predictive Dialer caused the calls to be placed to plaintiff personal cell phone on behalf of defendant MART.

19. Upon information & belief Defendant HBSS provide the Automatic Telephone Dialing System / Predictive Dialer and or Software that can covert AutoDialed calls from a list of numbers.

20. Several circuits including the Ninth and First Circuit held "a device can be an ATDS if it merely dials numbers from a stored list." *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) Marks v. Crunch San Diego, LLC, 904 F.3d 1041, 1050 (9th Cir. 2018) because it is a "cardinal principle" that courts "must give effect, if possible, to every clause and word of a statute," such a result weighs in favor of the Marks reading of the TCPA. *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) quoting Williams v. Taylor, 529 U.S. 362, 404 (2000)).

21. It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment. *Meyer v. Holley*, 537 U.S. 280, 285 (2003)

22. According to the FCC, federal common law agency principles providing for vicarious liability for calls initiated by a third party advance the goals of the TCPA. In the Matter of the Joint Petition Filed by Dish Network, LLC., 28 FCC Rcd at6587 ¶ 35.The United States Supreme Court in Campbell-Ewald Co. v. Gomezheld that aparty may be liable under the TCPA in accordance withtort-related vicarious liability rules. Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016) (the Court hadno cause to question the FCC's ruling that vicarious liability applies under the TCPA)."[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability

rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 828(2003). "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." 537 U.S. at285, 123 S.Ct. at 829. Thus, a seller or creditor cannot shield itself from liability simply by outsourcing telemarketing or collection calls to a third party. Gomez v. Campbell-Ewald Co.,768 F.3d 871, 877 (9thCir. 2014), aff'd136 S.Ct. 663 (2016). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. "Gomez, 768 F.3d at 879. Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority and ratification. 28 FCC Rcd. at 6582 ¶ 24, 6584 ¶ 28, 6588 ¶37. The relationship between the parties is paramount in determining whether there is vicarious liability.Gomez,768 F.3d at 878

23. At this stage of the litigation plaintiff needs discovery to prove his case defendants are in possession of the Automatic Telephone Dialing System and or Predictive Dialer and Software use to make all the alleged calls to plaintiff's personal cell phone and the artificial computerized voice message that bombarded plaintiff every day almost 14 hours a day.

24. Defendant HBSS was directly or vicariously liable for the alleged calls, here is an agency relationship plaintiff needs discovery to show that defendant MART made the calls as well as controlled the manner in which HBSS made the calls to plaintiff cell phone. 1) MART was involved in determining the content of the prerecorded messages that MART & HBSS generated and delivered via ATDS, Predictive dialer or Software technology to plaintiff cell phone; 2) MART was involved in determining which telephone numbers MART & HBSS would call; 3) MART & HBSS both implemented changes in the calling procedures, including the content of the calls, and procedures

7

governing the delivery of the calls, by even allowing their employees to log on to HBSS website and initiate calls even after they arrived home from work.4) Defendant Mart was the principal controlled or had the right to control the purported agent HBSS as they provide their technology to defendant MART (See defendants HBSS Motion to dismiss)5) With this software all supervisor, lower employees could log on from anywhere and send calls to plaintiff and others with an automatic ATDS , Predictive dialer or Software technology, that generated an artificial computerized voice message even from a cellular telephone.

25. Discovery will allow plaintiff to prove from who, when and where the calls came from what device it was initiated from (Lap Top, Cell Phone or Personal Computer), it will also allow plaintiff to obtain owners manuals, serial numbers, instructions, price, training employees and supervisors received, training officers name, place of training, ip address the calls were sent from and when it was purchased etc.

26. The court should note that a TCPA defendant may be vicariously liable under theories of actual agency (or "classical agency"), apparent authority and ratification. *Id.* at *7 (citing In re Joint Petition Filed by Dish Network, LLC, et al. for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574 (2013) (hereafter "*In re Dish Network*")). "In the TCPA context, some courts have characterized the control necessary to establish agency as control over the manner and means of the agent's calling activities." *Id.* (citing *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 787 (N.D. W. Va. 2017)).

27. The courts have generally determined liability by applying the common law agency principles that the FCC identified (See The Joint Petition Filed by DISH Network, L.L.C., the United States of Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574 (F.C.C. May 9, 2013). See § 6.9.2.5, supra (full discussion

of this ruling). The U.S. Supreme Court endorsed this view in Campbell-Ewald v. Gomez, a case *involving a federal contractor's* liability for making non-debt-collection non-telemarketing robocalls to cell phones without prior express consent.

28. companies can be held liable under the TCPA where they exercise control over the "manner and means" of the calling campaign even if such parties did not actually send the offending text message. *Thomas v. Taco Bell Corp.*, No. 12-56458, 2014 WL 1959160 (9th Cir. July 2, 2014).

29. The general rule under the TCPA is that defendants MART & HBSS who made the call or owns the ATDS, Predictive Dialer or Software has the burden of demonstrating that it falls within an exception to one of the TCPA's prohibitions. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 21 F.C.C. Rcd. 3787, 3812 (F.C.C. 2006) (determining that "a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission").

30. Defendant HBSS cannot claim the benefit of an exception in a federal statute (TCPA) HBSS has the burden of coming forward with at least some evidence of the applicability of the exception (See Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."); FTC v. Morton Salt Co., 334 U.S. 37, 44–45, 68 S. Ct. 822, 92 L. Ed. 1196 (1948); E.E.O.C. v. Chi. Club, 86 F.3d 1423, 1429–1430 (7th Cir. 1996); Irwin v. Mascott, 96 F. Supp. 2d 968 (N.D. Cal. 1999).

31. Defendant MART & HBSS has an agency relationship and work together, HBSS providing Software that can produce artificial computerized voice message and HBSS has the ability to send them to the list of numbers defendant MART provides to HBSS.

32. What is most notable here is that many (but not necessarily all) of these facts describe a fairly typical lead buyer MART /seller HBSS arrangement in which there is some measure of coordination between the two parties on how calls are to be generated and delivered. Indeed, taking the court's reasoning in *Braver* to its logical extreme, practically any buyer/seller relationship could be considered an agency under one or more agency theories

## Calling Plaintiff cell Phone for
## Purposes Other Than Debt Collection

33. For non-debt-collection calls to cell phones, however, the FCC has not announced any special rule. Instead, courts have generally determined liability by applying the common law agency principles that the FCC identified (See The Joint Petition Filed by DISH Network, L.L.C., the United States of Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574 (F.C.C. May 9, 2013). See § 6.9.2.5, supra (full discussion of this ruling). The U.S. Supreme Court endorsed this view in Campbell-Ewald v. Gomez, a case *involving a federal contractor's* liability for making non-debt-collection non-telemarketing robocalls to cell phones without prior express consent.

## Defendant States "Plaintiff fails to state a claim pursuant
## to the TCPA (Counts I and II)", Defendants further states that

34. Nowhere in Plaintiff complaint did plaintiff ever "*alleged defendants called his cell phone in his capacity as a dispatcher/manager for CCRD*" (See plaintiffs' complaint). Even if the calls where in the capacity as a dispatcher defendants HBSS & MART calls will still be deemed a contrary to the TCPA because Congress enacted the ***TCPA to protect the interests of telephone users*** by placing restrictions on "unsolicited, automated telephone calls." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991) ). That is, the statute aims to

curb a particular type of *uninvited* call. As a result, the statute omits from its ambit those calls that a person agrees to receive.

35. Defendants failed to realize that the TCPA statues does not state anywhere or anything about a plaintiff must be a consumer, the statue is clear it states even a business, corporation can have a private right of action under the TCPA statue, it is clear "The TCPA allows a private right of action by a ***person or entity not just consumers*** See 47 U.S.C. § 227(b)(3)" *Holster v. Gatco, Inc.*, 130 S. Ct. 1575, 1577 (2010). ""The private right of action created by the TCPA allows a person or entity to, 'if *otherwise permitted by the laws or rules of court of a State*, bring ...' an action for a violation of the TCPA).

36. Defendants are miss guided regarding the TCPA rules and regulations the statue states , The TCPA makes it "unlawful ... to make ***any call*** (other than a call made for emergency purposes *or made with the prior express consent of the called party)* using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service," "unless such call is made solely to collect a debt owed or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). "In short, the TCPA generally makes it unlawful to call a cell phone using" an ATDS. *ACA International v. Federal Communications Commission*, 885 F.3d 687, 693 (D.C. Cir. 2018).

37. The TCPA's substantive restrictions apply to "any person, (See 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a), (c), (d), (e) ("no person" shall violate restrictions), a term that includes individuals (See § 6.9.2.7, infra)., a defendant that can be considered to have "made" or "initiated" a call in violation of the TCPA will have direct liability. In a 2013 ruling that dealt with telemarketing calls, the FCC addressed the question of how much involvement in making a call is necessary to create direct liability (See The Joint Petition Filed by DISH Network, L.L.C., the United States of Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Telephone Consumer

11

Protection Act (TCPA) Rules, F.C.C. 13-54, 2013 WL 1934349 (F.C.C. May 9, 2013) and applied the same analysis in 2015 to robocalls to cell phones (See Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, at ¶¶ 25–41 (F.C.C. July 10, 2015), appeal resolved, ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018) (setting aside two parts of 2015 declaratory ruling but leaving this portion undisturbed).

38. Plaintiff alleged that "the defendant HBSS called plaintiff cell phone with an ATDS and or predictive dialer and left artificial computerized voice messages (between 6am & 8pm) without consent, even after plaintiff revoked his consent to be called on his personal cellular telephone several times verbally and in writing by certified return receipt") (See plaintiff complaint).

39. The plaintiff relied on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages and raise an inference that an ATDS was used. See plaintiff's complaint (Kruskall v. Sallie Mae Service, Inc., 2016 WL 1056973, at *3 (D. Mass. 2016) and *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019).

40. Plaintiff never stated in his complaint that Defendants used telemarketing calls to plaintiff, again the defendant HBSS is trying to muddy the waters. Even if so the content and reason of the call doesn't matter.

**Restrictions on Calling Times**

41. Defendant HBSS called plaintiffs personal cell phone without consent between 6am & 8am with a Computerized and or artificial voice (Automatic Telephone Dialing System and or Predictive Dialer) which is prohibited under the TCPA (See 16 C.F.R. § 310.4(c); 47 C.F.R. § 64.1200(c)(1). The FCC and FTC Rules prohibit telephone solicitations before 8:00 a.m. or after 9:00 p.m., local time (determined by the called party's location). (SEE 16 C.F.R. § 310.4(c); 47 C.F.R. § 64.1200(c)(1).

12

## Private Causes of Action Under the TCPA

42. Special issues regarding the private cause of action for violation of the TCPA's restrictions on robocalls to cell phones, See §§ 6.3.5.6 (only cell phone calls to collect government debts), 6.3.6 (general robocall restrictions)

43. Plaintiff has a cause of action against defendant HBSS (See Worsham v. Nationwide Ins. Co., 772 A.2d 868 (Md. Ct. Spec. App. 2001) (consumer has private cause of action if a repeat call is made after request to be placed on no-call list)Similarly, the FCC adopted the restrictions on calling times (See 7 F.C.C. Rcd. 8752, at ¶ 26 (F.C.C. Oct. 16, 1992). See § 6.6.4, supra).

## Defendant HBSS is the owner of the software that made the calls to

## Plaintiff cell Phone for Purposes Other Than Debt Collection

44. For non-debt-collection calls to cell phones, however, the FCC has not announced any special rule. Instead, courts have generally determined liability by applying the common law agency principles that the FCC identified (See The Joint Petition Filed by DISH Network, L.L.C., the United States of Am., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules, 28 F.C.C. Rcd. 6574 (F.C.C. May 9, 2013). See § 6.9.2.5, supra (full discussion of this ruling). The U.S. Supreme Court endorsed this view in Campbell-Ewald v. Gomez, a case *involving a federal contractor's* liability for making non-debt-collection non-telemarketing robocalls to cell phones without prior express consent.

45. Plaintiff argues that direct liability under the TCPA extends not only to a party on whose behalf the call is made but also extends to a party who stands to benefit from the call, citing Hartley-Culp v. Green Tree Servicing, LLC, 52 F.Supp. 3d 700, 703(M.D. Pa. 2014)(holding TCPA imposes direct and vicarious liability on an entity on whose behalf the call is placed).

46. Individuals have a right to revoke consent, using any reasonable method including orally or in writing. (*See* In re *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, at ¶¶ 63, 64 (F.C.C. July 10, 2015),* ruling upheld, *ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018)* Osorio v. State Farm Bank, 746 F.3d 1242 (11th Cir. 2014). Accord Schweitzer v. Comenity Bank, 866 F.3d 1273 (11th Cir. 2017) (reiterating that consent can be revoked orally and holding that it can be partially revoked). See also Blow v. Bijora, Inc., 855 F.3d 793, 803 (7th Cir. 2017) (quoting the FCC's ruling that consent can be revoked by any reasonable means).

## CONCLUSION

For all these reasons, Plaintiff Paul Jones has stated valid claims under the Telephone Consumer Practices Act, and Defendants HB Software Solutions motion to dismiss should be denied regarding plaintiffs Count 1 and 2 for the Telephone Consumer Practices Act. Plaintiff request the court to grant leave to amend if any deficiencies are found in his Amended Complaint.

Respectfully Submitted

/s/ Paul Jones                                      September 10, 2019

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

## VERIFICATION OF OPPOSITION AND CERTIFICATION

### STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.
I believe that this Verified Opposition to defendants HBSS 12 B 6 motion to dismiss is well-grounded in fact and warranted by existing
law or by a good faith argument for the extension, modification or law.

I believe that this opposition to defendants 12 B 6 motion is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant (s). I have filed this opposition in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this opposition to defendants 12 B 6 motion is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones    /s/ *Paul Jones*

572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

September 10 ,2019

## CERTIFICATE OF SERVICE

I Paul Jones plaintiff Certify that I have mailed a copy to defendant's attorney of record, a true and correct copy of the foregoing has been furnished via USP mail to the above-mentioned individuals On this 10th day of September 2019.

Respectfully Submitted

*/s/ Paul Jones*

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

David H. Rich, (BBO#634275)
drich@toddweld.com
Todd & Weld LLP
One Federal Street
Boston, MA 02109
(617) 720-2626 (Tel)
(617) 227-5777 (fax)