# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

**PAUL JONES**

**PLAINTIFF**                                              **Civil Action No. 19-cv-11093-TSH**

     **V**

**MONTACHUSETTS REGIONAL  TRANSIT AUTHORITY et al.**

## PLAINTIFF PAUL JONES REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201(b) of the Federal Rules of Evidence, Plaintiff Paul Jones ("Plaintiff'),

requests that the court take judicial notice of the following documents attached as Exhibits 1

through 15**,** respectively, in further support of Plaintiffs opposition to defendants Motion to

Dismiss.

## ARGUMENT

On a motion to dismiss, the court may consider "matters of public record, "a judge can mull

over" matters susceptible to judicial notice." Lydon v. Local 103, Int'l Bhd. of Elec. Workers,

770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008));

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also Aronson v. Advanced Cell Tech., Inc.,

902 F. Supp. 2d 106, 112 (D. Mass. 2012). While the court's consideration of a motion to

dismiss is traditionally limited to the four corners of the complaint, "courts have made narrow

exceptions for documents the authenticity of which are not disputed by the parties; for official

public records; for documents central to plaintiffs' claim; or for documents sufficiently referred

to in the complaint." Watterson, 987 F.2d at 3-4. Likewise "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).

Accordingly, the Court can take notice and consider any facts at the motion to dismiss stage that are "not subject to reasonable dispute" because that fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Lopes v. Riendeau, 177 F. Supp. 3d 634, 666 (quoting Fed. R. Evid. 201(d)) "A high degree of indisputability is the essential prerequisite" to taking judicial notice of any fact. Fed. R. Evid. 201, advisory committee notes to subdivision (a).

It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990); see Giragosian, 547 F.3d at 66.

As with Rule 12(b)(6), exceptions exist that allow consideration of "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir.2012).

## I.  DEFENDANTS ARE STILL EXERTING DAILY CONTROL OVER PLAINTIFF

Defendants MARTS staff are still exerting control over plaintiff, on September 17, 2019 MARTS employee (Unknown) placed a trip in plaintiffs' portal after plaintiff closed his schedule for the next day September 18, 2019, this action would have caused plaintiff to be late for 1/3 of

his trips and caused up to $600.00 in fines for plaintiff being a no show to pick up scheduled clients ($100 apiece).

This trip was unauthorized by plaintiff, it was placed in plaintiff daily schedule like so many others to sabotage plaintiffs work schedule and cause plaintiff to be unjustly fined by defendant MART and to create a bad record for plaintiff so that defendant can justify withholding work and fining the plaintiff (See Exhibit 1) email from plaintiff to defendants and their attorneys of record).

The attached email Exhibit 1 clearly shows that plaintiff protested the unauthorized trip that was placed in plaintiffs daily schedule by defendants MARTS staff, plaintiff cc the protesting email on September 18, 2019 at 6:56 am to some defendants and their attorneys of record in this case ( Mark R. Reich and Deborah I. Ecker) (See Exhibit 1), defendants actions were contrary to Retaliation, discrimination and creating a Hostile work environment..


Later that day on September 18, 2019 at 1:07pm approximately 6 hours later defendant Rebecca Badgley responded to plaintiffs' email and immediately denied that defendants where Discriminating, Retaliating and causing a Hostile Work Environment without a full investigation (See Exhibit 2) and she stated she is doing an investigation of my allegations.


Plaintiff scrambled and made every attempt to complete the trip and the client was a no show , this trip would have set plaintiff back by 2 hours (Potential for fines up to $600), defendants MARTS employee Katie called me and asked if I was going to go to the trip or she could reassign the trip (Plaintiff would receive an automatic fine of $100 if I agreed to let defendants MART employee Katie

reassign the trip) plaintiff informed defendants MARTS employee (Katie) plaintiff was outside of the clients home but client was not answering the phone and plaintiff would wait the required time which I did.

Soon after plaintiff received a complaint stating that plaintiff never went to pick up the client and the client missed appointment and I was fined $42 See Exhibit 3.


The following day on September 19, 2019 defendant Rebecca Bradley email plaintiff and cc the email to defendants' attorneys of record Mark R. Reich and Deborah I. Ecker, this email from defendant Rebecca Bradley confirmed that plaintiff never excepted the mentioned above trip and that it was placed in plaintiffs schedule by a MART employee, to my surprise defendant Rebecca Bradley also stated that "the appropriate action was taken against the employee that placed this unauthorized trip in plaintiff schedule", defendant Rebecca Bradley never recalled the $42.00 fine but did credit plaintiff $30.00 (Pick up fee) for attempting to complete the unauthorized trip See Exhibit 4, plaintiffs pick up fee was $42.00. Discipline constitutes evidence that the plaintiff is an employee rather than an independent contractor Bowerman v. Field Asset Servs., Inc. 242 F. Supp. 3d 910 (N.D. Cal. 2017)


As plaintiff email pointed out (Exhibit 1) that this has been going on for over 2 years causing plaintiff to be fined over $2000 and has disrupted plaintiffs schedule and has caused plaintiff to been unjustly disciplined by defendants MART and their staff by withholding (Sanctioning) plaintiff work load, causing plaintiff to have to lay off 90% his staff (See Verified Complaint) while other non-minority vendor have even been given the option of having multiple company's under the same name and address and allowing other non-minority vendors officers of their corporation or LLC to open

multiple company's, these nonminority vendors control multiple company's while plaintiff stands on the side line and scramble to receive enough work to make a living, this is unethical and maybe something more sinister is going on (See Exhibits 6-15).

## II. ATTORNEY GENERAL MARTHA COAKLEY INDICMENT THREE OF DEFENDANT MARTS EMPLOYESS FOR KICK BACK SCHCEME, OVER RIDING THE LOW BID SYSTEM AND ALLOWING VENDORS TO HAVE MULTIPLE COMPANYS, RELATED STATE COURT ACTION 2010 (EXIHBIT 5)

"[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).

Exhibit 5 is Martha Coakley 2010 Massachusetts Attorney General Indicted of Three former employees of defendant Montachusett's Regional Transit Authority ("MART") and a non-minority vendor Alex Shrayber in Medicaid kickbacks scheme, this indictment was for MART allowing a non-minority vendor to have multiple company's under the same name and address or allowing the non-minority vendor officers of their corporation or LLC to open multiple company's,, and defendant MARTS employees excepting kick backs for allowing the vendor of their choice to receive trips even when their bids where hire than other vendors causing an unfair advantage See Exhibit 5.

Massachusetts Attorney General alleged and convicted defendant MARTS 3 former scheduling department employees and Alex Shrayber (non-minority vendor), Mr. Shrayber owned five

separate transportation business that worked with MART, Like other non-minority vendor that defendant MART allows to do the same as of today September 27, 2019 See Exhibit 6-15 secretary of States Website .

According to the Attorney Generals Press Release, an investigation found that Ms. Shrayber made monthly cash payments ranging from $300 to $500 to a MART employee between spring 2007 and April 2010.

Some of the MART defendants in my complaint was working there in 2010 while this went on and now are Directors, Managers & Supervisors in the same department that perpetrated the above mentioned 2010 scheme.

In 2010 the MART employee allegedly bypassed the agency's "low-bid system" and diverted MassHealth transportation assignments to several of Mr. Shrayber's five companies, his is what plaintiff alleged in his complaint (See plaintiffs Verified complaint). "Massachusetts Attorney General Martha Coakley alleged that the defendant (MART Employees) executed a kickback scheme with several employees of MART to funnel business to him, thus depriving other vendors the opportunity to participate in their federally funded Transportation program.

The attached Exhibit 6 PG 22-24 will show that defendant MART has over 230 Vendors, 40% of these vendors control 90% of all trips that come through defendants MARTS Brokerage department, because they have multiple companies according to the Secretary of State website See Exhibits 6-15.

MART allows certain non-minority vendors to have more than one company at a time this is the same practices that MART allowed in 2010 when the Massachusetts attorney generals office

indicted 3 of MARTS employees in the scheduling department and a non-minority vendor whom they allowed to have 5 different companies.

These non-minority vendors receive most of the work (By passing the low-bid system) even if they have much higher bids and are the furthest from the trip, while the plaintiff and other vendors whom have cheaper bids and are closer to the trips are left with only 10% of the trips that come through the defendant MART Brokerage department, this is unethical as State & Federal Funds are involved, and it is against defendants MARTS, Executive office of Health & Human Services, MassHealth, Mass DOT, Department of Justice policy's and other Federal & State agencies.

This is why defendant MART has to exert daily control over plaintiff and other vendors to make sure that the non-minority vendors get to receive all the trips needed to keep their multiple companies going by full capacity while plaintiff suffers.

## III.  SECRETARY OF STATES LIST OF NON-MINORITY VENDORS WORKING WITH DEFENDANT MART THAT HAS MULTIPLE COMPANIES

The attached Exhibits authenticity of which are not disputed by the parties; are official public record and are documents central to plaintiffs' claim and are documents sufficiently referred to in plaintiff's complaint." Watterson, 987 F.2d at 3-4. Likewise.

Defendant MART has well over 240 vendors  See Exhibit 1 plaintiffs' opposition to defendants MART Motion to dismiss.

Exhibits 6-15 are official public record that are on the Massachusetts Secretary of State website (Corporate Data Base: **http://corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx**) , these are just a few vendors out of the approximately 240 vendors whom defendant MART provides work to on a daily basis, after tedious research by the plaintiff there are many many non-minority vendors and vendors that don't protest MARTS treatment.

Defendants MART brokerage department allows these vendors to have multiple companies under same name & address or be owned by fellow officers of the corporation and that is controlled by one individual, this is contrary to Federal & State Laws and defendants MARTS own policy, this is why MART controls a certain group of vendors including plaintiff so that these non-minority vendors can gain an unfair advantage over plaintiff, this is contrary to Title VII, Discrimination, Retaliation, Hostile Work Environment and M.G.L. c. 151B, §et seq and all of plaintiffs counts See Exhibits 6-15.

It is well established, under all of the varied standards that have been utilized for distinguishing employees and independent contractor, that a business cannot unilaterally determine a worker's status simply by assigning the worker the label "independent contractor or by requiring the worker, as a condition of hiring, to enter into a contract that designates the worker an independent contractor Dynamex Operations W., Inc. v. Superior Court of L. A. Cnty. 416 P.3d 1 (Cal. 2018)

[I]t is well established that when Congress uses the term "employee "without defining it with precision, courts should presume that Congress had in mind "the conventional master-servant relationship as understood by the common-law agency doctrine." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (quoting Community for Creative Non-Violence v. Reid, 490 U.S.

730, 739-40 (1989)); see also Walters v. Metropolitan Educ. Enters. Inc., 117 S.Ct. 660, 666;

Frankel v. Bally, Inc., 987 F.2d 86, 90 (2d Cir. 1993).O'Connor v. Davis 126 F.3d 112 (2d Cir.

1997).

It is well settled that an inference of discrimination may be established by a showing that the

employer treated workers in a protected group less favorably than others outside of the group,

criticized the plaintiff in a degrading manner, or made invidious comments concerning other

members of the protected group. Holt v. Roadway Package Systems, Inc.506 F. Supp. 2d 194

(W.D.N.Y. 2007)

## CONCLUSION

For all these reasons, Plaintiff Paul Jones has stated valid claims under the Telephone Consumer

Practices Act, Title VI, Title VII, Discrimination ,Hostile Work Environment, Retaliation, Infliction of

emotional Distress, M.G.L. c. 151B, §*et seq*, and that plaintiff should be deemed an employee,

Defendants MART motion to dismiss should be denied.

Respectfully Submitted

/s/ Paul Jones                                                     September 26, 2019

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109

decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007

**CERTIFICATE OF SERVICE**

I Paul Jones plaintiff Certify that I have mailed a copy to defendant's attorney of record, a true and

correct copy of the foregoing has been furnished via USP mail to the above-mentioned individuals

On this 26th day of September 2019.

Respectfully Submitted

*/s/ Paul Jones*

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com


Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007

<u>**VERIFICATION AND CERTIFICATION**</u>

**STATE OF MASSACHUSETTS**

**Plaintiff, Paul Jones, states as follows**

I am the Plaintiff in this civil proceeding.

I believe that this motion for judicial notice is well

grounded in fact and warranted by existing

law or by a good faith argument for the extension, modification or law.

I believe that this motion for judicial notice is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant (s). I have filed this motion for judicial notice in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this motion for judicial notice is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Paul Jones        */s/ Paul Jones*

572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

September 26 ,2019