UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 4:19cv-11093-TSH

| | |
|---|---|
| PAUL JONES<br><br>    Plaintiff<br><br>v.<br><br>MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.<br><br>    Defendants | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u> |

## I.    <u>INTRODUCTION</u>

Defendants, Montachusett Regional Transit Authority ("MART"), and Rebecca Badgley, Donna Landry, Bonnie Mahoney, Karen Cordio, Joanne Norris, Stephanie Richards, Tamara Shumovskaya, Jessica Torres, Amanda Kukta, Robert Monk, Michelle Moyo, Ivan Roman, and Crystal Geisert (collectively "Individual Defendants") (when inclusive of MART, collectively "Defendants") hereby seek judgment in their favor on all claims brought by Plaintiff, Paul Jones in Plaintiff's Second Amended Complaint.

MART is a regional transportation authority established pursuant to G.L. c. 161B. MART provides public transportation services to 22 cities and towns in north central Massachusetts. Through its Dial-A-Mart service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips. MART also provides transportation through its operating company for the Commonwealth's Human Service Transportation Division of the Executive Office of Health and

Human Services ("EOHHS"). MART provides many routes for the Department of Developmental Services as well as individual MassHealth client rides on an as needed basis.

Plaintiff, Paul Jones, is the director, manager and dispatcher for Commonwealth Community Recovery Division, Inc. ("CCRD"). CCRD has a contract with MART to provide transportation services for MART's operating company, providing services to the EEOHS. In his Second Verified Amended Complaint ("Complaint"), Plaintiff alleges that MART discriminated and retaliated against him and created a hostile work environment for him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts I, II and III) and claims that a MART policy disparately impacted him because of his race and sex in violation of Title VII (Count IV). In addition, Plaintiff alleges that the Defendants retaliated against him for requesting a reasonable accommodation in violation of G.L. c. 151B (Count V). Finally, Plaintiff brings a claim against the Defendants for the negligent infliction of emotional distress (Count VI).

All of Plaintiff's claims must be dismissed. First, based on the undisputed facts, MART is not Plaintiff's employer and as such, Plaintiff's claims brought pursuant to Title VII and Chapter 151B must fail. Even if MART could be considered to be Plaintiff's employer for purposes of the statutes, Plaintiff cannot present evidence to establish that he was treated differently by MART or that any policy of MART disparately impacted him because of his race or sex. Likewise, Plaintiff's claim that the Defendants retaliated against him in violation of Chapter 151B for requesting a reasonable accommodation must fail not only because Plaintiff has not alleged that he is a qualified handicap person as that is defined under the statute, but also because Plaintiff has not identified a reasonable accommodation that he requested based on a purported disability. Finally, Plaintiff's claims for the negligent infliction for emotional distress against all of Defendants must fail. Plaintiff's claims against the Individual Defendants fail

because G.L. c. 258, § 2, does not provide a cause of action against individuals. Plaintiff's claims for negligent infliction of emotional distress must fail not only because Plaintiff cannot establish his underlying discrimination claims, but if MART is Plaintiff's employer as he claims, G.L. c. 152 provides Plaintiff with his exclusive remedy for his alleged emotional distress injury.

The within Memorandum is submitted in support of Defendants' Motion for Summary Judgment.

## II. STATEMENT OF FACTS

The facts relevant to Defendants' Motion for Summary Judgment are set forth in their Local Rule 56.1 Statement of Material Facts Not in Dispute (hereinafter "SOF"), filed herewith.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As Plaintiff has the burden of proof, Defendants are entitled to summary judgment if they demonstrate either that Plaintiff has no reasonable expectation of proving an essential element of his claims or by submitting affirmative evidence negating an element of his claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987); Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998). In attempting to defeat summary judgment, "a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir.2005).

Here, based on the undisputed facts, Plaintiff will not be able to establish any of his claims against MART and the Individual Defendants.

B. <u>Title VII of the Civil Rights Act of 1964</u>

In Counts I, II and III of his Complaint Plaintiff alleges that MART discriminated and retaliated against him and created a hostile work environment for him all in violation of Title VII. Specifically, in Count I of his Complaint, Plaintiff alleges that MART retaliated against him for engaging in protected activity by "issuing disciplinary warnings (fines), not training, blocking plaintiff from vendor portal, placing plaintiff's telephone number on defendant's automatic dialing system, threats of termination, reprimands by supervisors, stonewalling plaintiff [and] sabotaging plaintiff[']s daily work schedule." *Complaint, ¶ 185*. In Count II of his Complaint, Plaintiff alleges that MART created a hostile work environment for him in violation of Title VII because of "plaintiff's filing of complaints against defendants race, sex and his opposition to defendant's treatment of him." *Complaint, ¶ 200*. In Count III of his Complaint, Plaintiff alleges that MART discriminated against him "by treating [him] differently from nonminority vendors, including trip assignments, bidding prices, access to the vendor portal, procedure to obtain work (Venor Portal v. ADTS/IVR System), access to training , access to information regarding policy and procedures, access to federal funded programs, managers and unequal wages and compensation because of his race and sex (African American Male)" in violation of Title VII. *Complaint, ¶ 211*. In Count IV of the Complaint, Plaintiff alleges that "defendants policy and/or practice had a disproportionate impact on Plaintiff because of his race and sex (African American Male)" in violation of Title VII. *Complaint, ¶ 218*.

All of Plaintiff's claims brought pursuant to Title VII must be dismissed on the grounds that MART is not Plaintiff's employer. Regardless, Plaintiff cannot present any evidence that he was treated differently by MART because of his race or sex or because he engaged in protected

4

activity. Plaintiff also cannot show that a MART policy disparately impacted African American males. Accordingly, all of Plaintiff's claims brought pursuant to Title VII must be dismissed.

    1. MART is not Plaintiff's Employer

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. The term "employee" is defined under Title VII as "an individual employed by an employer." 42 U.S.C., § 2000e, section 701(f). The First Circuit has looked to two tests in determining whether a plaintiff asserting claims under Title VII is an employee when deciding a Rule 12 motion to dismiss, the "common law multi-factor test" and the "one significant aspect test." Lopez v. Commonwealth of Massachusetts, 588 F.3d 69 (1st Cir. 2009). However, once the factual record is developed, plaintiff is required to meet the common law multi-factor test or otherwise be subject to a motion for summary judgment. Delia v. Verizon Communications Inc., 656 F.3d 1, 3 (1st Circ. 2011).

In determining whether a plaintiff qualifies as a protected employee under Title VII or Chapter 151B for purposes of a Rule 56 motion, the court ordinarily utilizes the common law test of agency. "The test provides 'no shorthand formula or magic phrase that can be applied to find the answers, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive'" See, Dykes v. DePuy, Inc., 140 F.3d 31 (1st Cir. 1998); quoting, NLRB v. United Ins. Co. of Am., 390 U.S. 254 (1968). Courts look to the factors contained in the EEOC's Compliance Manual to address the question of when a person is an "employee". See Lopez v. Commonwealth of Massachusetts, 588 F.3d 68 (2009), citing Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440 (2003). Those guidelines provide a non-exhaustive list of factors to consider in determining whether the worker is in an employment relationship with an

5

employer. Those factors include: "the employer has the right to control when, where and how the worker performs the job"; "the work is performed on the employer's premises"; "there is a continuing relationship between the worker and the employer"; "the employer has the right to assign additional projects to the worker"; "the employer sets the hours of work and the duration of the job"; "the worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job"; "the worker does not hire and pay assistants"; "the employer provides the worker with benefits such as insurance, leave, or workers' compensation"; "the worker is considered an employee of the employer for tax purposes and, the worker and the employer believe they are creating an employer-employee relationship." Lopez, 588 F. 85, quoting, EEOC's Compliance Manual, § 2-111, at 5716-17 (2008).

In applying the above factors to the undisputed facts here, it is clear that Plaintiff is not a MART employee for purposes of protection under Title VII. First, MART entered into a Transportation Provider subcontract with CCRD and not Plaintiff. *SOF, ¶* 9. Second, the work Plaintiff performs is not performed on MART's premises. Third, there is no continuous relationship between Plaintiff and MART. Rather, as set forth above, MART entered into a Transportation Provider subcontract with CCRD, not Plaintiff. Fourth, MART does not have the right to assign Plaintiff additional projects. MART's right to make assignments to CCRD is limited to the provisions of the Transportation Provider subcontract. Fifth, MART does not set Plaintiff's hours. Rather, those hours are set by Plaintiff. *SOF, ¶¶15, 23* . Sixth, Plaintiff is not paid by the hour, week or month. Rather, MART pays CCRD based on the rates CCRD submits for a particular job. *SOF, ¶* 14. Seventh, CCRD hires drivers to perform trips assigned under the Transportation Provider subcontract between MART and CCRD. MART does not hire CCRD's employees and did not hire Plaintiff. *SOF, ¶ 7, 11.* Eighth, MART does not provide Plaintiff

6

with any benefits. In fact, CCRD is required to provide MART proof that it maintains workers' compensation insurance for its employees, including Plaintiff. Ninth, Plaintiff is not considered an employee of MART for tax purposes, *SOF, ¶* 11. Finally, MART does not and did not believe that it was creating an employer-employee relationship when it entered into subcontracts with Transportation Providers including CCRD. MART certainly does not and never did believe that it is creating an employer-employee relationship with the employees of all of MARTS' over two hundred (200) Transportation Providers. Based on the above factors alone, Plaintiff cannot show that MART is his employer for purposes of bringing a claim against MART under Title VII.

By Plaintiff's own admission, he does not meet the factors set forth above. See, *Complaint ¶ 42.* ("Plaintiff was and is the manager/dispatcher at Commonwealth Community Recovery Division, Inc. (CCRD) who, has a contract with defendant MART . . ."); *Complaint, ¶* 56 ("Defendants . . . have even placed trips that were even expected . . . or completed by plaintiff's employer . . ."); *Complaint, ¶* 128 ("Plaintiff's company does not receive an IRS Form 1099, Plaintiff was required to submit a statement stating who held the workers' compensation insurance . . .").

Based on the undisputed facts, it is clear that when applying the multi-factor test, or any test for that matter, MART is not Plaintiff's employer for purposes of providing him protection under Title VII. Accordingly, Plaintiff's Claims against MART for the violation of Title VII contained in Counts I, II, III and VI of his Complaint must be dismissed.

2. <u>Plaintiff cannot Show that MART retaliated against him.</u>

Even if Plaintiff could show that he is an employee of MART for purposes of Title VII, which he cannot, Plaintiff still cannot prevail on his claims brought pursuant to Title VII. In

7

Count I of his Complaint, Plaintiff alleges that MART retaliated against him because he filed informal and formal complaints with various state agencies. *Complaint, ¶¶ 182-195*. While Plaintiff does not include a date in the Complaint when he allegedly complained, for purposes of this motion the date is not relevant because Plaintiff will not be able to show that he suffered an adverse employment action and that the adverse employment action was causally connected to the alleged protected activity. "Section 704(a) of Title VII makes it unlawful for an employer to retaliate against an employee for engaging in certain protected activity. See, 42 U.S. C., § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must prove that '(1) he or she engaged in protected activity under Title VII, (2) he or she suffered an adverse employment action, and, (3) the adverse employment action was causally connected to the protected activity." Ray v. Ropes & Gray, LLP 799 F.3d 99 (1st Ci. 2015), quoting Collazo v. Bristol-Myers Squibb Mfg., Inc. 617 F.3d 39, 46 (1st Cir. 2010). If the plaintiff can establish his prima facie case, the burden shifts to the employer to establish a legitimate, non-retaliatory justification for the adverse employment action against him. Id. at 113. If the employer meets its burden, plaintiff retains the ultimate burden of persuasion that the reason offered by the employer is pretext for retaliation. Id.

Plaintiff alleges that he suffered "materially adverse actions" when he was issued disciplinary warnings (fines), not trained, blocked from the vendor portal, when his telephone number was placed on MART's automatic dialing system, when he was threatened with termination, reprimands by supervisors, and when his daily work schedule was sabotaged. *Complaint, ¶ 185*. The facts do not support Plaintiff's claim that he was subjected to the adverse actions alleged. First, Plaintiff was not disciplined. The fines he complains of were imposed on CCRD and when Plaintiff complained, MART explained the basis for the fines and the manner

8

in which fines are calculated and imposed on all Transportation Providers, not just CCRD. *SOF, ¶ 30.* Second, the undisputed documentary evidence shows that Plaintiff was trained on how to use the automated vendor portal on more than one occasion. Plaintiff was offered, and attended, additional training because of the difficulty he was clearly having in understanding how to use the vendor portal. *SOF, ¶¶ 27,34.* Third, Plaintiff's telephone number was placed on MART's automatic dialing system in his role as dispatcher for CCRD. The placement of his telephone number on the automatic dialing system is a means to provide CCRD with the opportunity to accept trips and is not adverse. Surely, Plaintiff would have complained if his or another CCRD employee's telephone number was not placed on the automatic dialing system and CCRD was not afforded the opportunities for same or next day trips assigned through the automated dialing system. Fourth, no one at MART threatened that Plaintiff would be terminated and Plaintiff was not reprimanded by MART. MART has no authority to terminate Plaintiff's employment with CCRD or to reprimand him. Fifth, MART did not "sabotage" Plaintiff's daily work schedule, nor could it. As Plaintiff was informed repeatedly, MART has no way of controlling what times or how frequently members book appointments. Trips that are booked are automatically assigned via a low cost qualified bid process based on vendor rates as trips are received. *SOF, ¶¶ 13, 18, 25, 28, 31 and 39.*

Even if Plaintiff could prove that some or all of the above alleged actions are adverse and did occur, Plaintiff will not be able to show that any or all of them were a pretext for retaliation. Instead, as Plaintiff has repeatedly been told by MART employees, MART assigns trips automatically via a low cost qualified bid process based on vendor rates as trips are received. CCRD's rates were at all relevant times simply higher than other vendors in the area, meaning that CCRD would not be assigned the trips due to its higher rate. While MART's

9

technology was not always perfect and issues arose from time to time, there is simply no evidence Plaintiff can submit to meet his burden of showing that the reasons offered by MART as to why he did not receive more trip assignments, were pretext for retaliation. Accordingly, Plaintiff's retaliation claim brought pursuant to Title VII contained in Count I of his Complaint must be dismissed.

> 3. <u>Plaintiff Has Not Set Forth A Claim for Hostile Work Environment Based on Race or Sex</u>

In Count II of his Complaint, Plaintiff alleges that MART employees harassed him and created a hostile work environment for him because of his race and sex and his opposition to MART's treatment of him. *Complaint, ¶¶ 196-208*. A Hostile work environment is one "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of an employee's employment. See, <u>Montalvo Figueroa</u> v. <u>DNA Auto Corp.</u> 414 F.Supp 3d 213 (2019); quoting, <u>Roy v. Correct Care Sols. LLC</u>, 914 F.3d 52, 61 (1st Circ. 2019). To prevail on a hostile work environment claim Plaintiff must prove, among other things, that the harassment alleged was based upon his race and/or sex. <u>Id</u>, at 241. MART disputes that Plaintiff was harassed and therefore that such alleged harassment was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive. Plaintiff has simply failed to set forth allegations, let alone sufficient evidence, to show that the harassment alleged was because of his race and/or sex. Plaintiff's Complaint does not contain even one comment that could remotely be construed to be race or gender based. Instead, the evidence makes clear that rather than harass Plaintiff or subject him to a hostile work environment, MART employees sought to assist him and train him on the operation of the vendor portal system and repeatedly responded to his questions and concerns within a reasonable amount of time. Plaintiff cannot present sufficient evidence to show that MART employees

harassed him or created a hostile work environment for him, and did so because of his race and/or sex. Accordingly, Count II of Plaintiff's Complaint must be dismissed.

4. Plaintiff Cannot Show That MART Discriminated Against Him Based on His Race or Sex

In Count III of his Complaint, Plaintiff alleges that MART discriminated against him "by treating [him] differently from nonminority vendors, including trip assignments, bidding prices, access to the vendor portal, procedure to obtain work (Venor Portal v. ADTS/IVR System), access to training, access to information regarding policy and procedures, access to federal funded programs, managers and unequal wages and compensation because of his race and sex (African American Male)" in violation of Title VII. *Complaint, ¶ 211-216*. As with Plaintiff's retaliation claim set forth above in section III.B.2, Plaintiff cannot prevail on his claim because he cannot show that he suffered from an adverse employment action and even if he did, he cannot that any such adverse action was taken because of his race or sex. See, Ray v. Ropes and Gray, LLP, citing Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (173). There is simply no evidence that Plaintiff can put forth to show that he was treated differently from other Transportation Providers because of his race or sex. Accordingly, Count III of Plaintiff's Complaint must be dismissed.

5. Plaintiff Has Not Identified a MART policy that disparately impacted him and other African American Male Vendors

In Count IV of his Complaint, Plaintiff alleges that he and other African American males were disparately impacted by an unspecified MART policy in violation of Title VII. To prove a prima facie case of disparate impact discrimination, Plaintiff must 1) identify a practice or policy used by MART, 2) identify a disparate impact on a group characteristic such as race or sex, and 3) demonstrate a causal relationship between the identified practice and the disparate

impact.  See, E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594 (1st Cir. 594 (1995), citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989).  Plaintiff here cannot prove a prima facie case of disparate impact discrimination. Plaintiff has not identified a "policy or practice" used by MART.  Plaintiff's allegation that "defendant operated as a non-African American Male Vendor" (Complaint, ¶ 218) does not identify a policy implemented by MART that disparately impacted African American males, enabling MART to act as alleged. Second, Plaintiff has not shown a disparate impact on African American Male Vendors. Finally, Plaintiff has not shown that any policy or practice of MART caused a disparate impact on African American Male Transportation Providers.  MART does in fact contract with diverse businesses certified by the Supplier Diversity Office (SDO) of the Operational Services Division of the Commonwealth of Massachusetts.  CCRD does not appear on the list as having been certified as a diverse business by the SDO.  SOF, ¶ 41.

From the undisputed facts, it is clear that MART contracts with diverse Transportation Providers.  Regardless of the demographic of the Transportation Provider, the manner in which MART assigns trips to Transportation Providers is through an automated vendor portal and calls based on low cost qualified bidders and is non-discriminatory.  Plaintiff has failed to identify a MART policy that disparately impacts African American men. Accordingly, Plaintiff's disparate impact claim must be dismissed.

    C. <u>Plaintiff's Retaliation Claim Brought Pursuant to Chapter 151B Must Be Dismissed.</u>

        1. <u>MART</u>

In Count V of his Complaint, Plaintiff alleges that MART violated G.L. c. 151B, by retaliating against him because he requested an accommodation.  Plaintiff's claim brought pursuant to G.L. c. 151B must be dismissed. First, as set forth above, MART is not Plaintiff's

employer for purposes of protection under the statute. Regardless, Plaintiff's claim that he was retaliated against for requesting an accommodation in violation of G.L. c. 151B must be dismissed because MART is not aware that Plaintiff is a qualified handicapped person as that term is defined under Chapter 151B. More importantly, MART is not aware that Plaintiff ever requested an accommodation because of a disability that would allow him to perform the essential functions of his job. As such, MART necessarily could not have retaliated against Plaintiff because he made a request for accommodation. Accordingly, Plaintiff's claim for the violation of Chapter 151B must be dismissed.

2. Individual Defendants

In addition to his claim for retaliation brought against MART contained in Count V of his Complaint, Plaintiff also alleges in Count V that the Individual Defendants discriminated against him and created a hostile work environment for him because of his race and sex. The allegations made against the Individual Defendants as a group are no different than those made against MART. *Complaint, ¶ 227.* Plaintiff's claims brought pursuant to Chapter 151B against the Individual Defendants contained in Count V of the Complaint must also be dismissed.

Section 4(5) of Chapter 151, makes it unlawful for any person, whether an employer or an employee or not, to "aid or abet" in doing or attempting to do any of the acts forbidden under Chapter 151B. In order to prevail on an "aiding and abetting" claim under Section 4(5), Plaintiff must show "(1) that the defendant committed a 'wholly individual and distinct wrong . . . . separate and distinct from the claim in main;'(2) 'that the aider or abutter shared an intent to discriminate not unlike that of the alleged principal offender'; and (3) that 'the aider or abutter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B.'" Lopez v. Commonwealth of Massachusetts, 463

Mass. 696 (2012) quoting, Harmon v. Malden Hospital, 19 Mass. Discrimination L. Rep. 157, 158 (1997). "An aiding and abetting claim under § 4(5), however, is also 'entirely derivative of the discrimination claim.'" Id. at 713, quoting Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 122 (2000). "As a consequence, in addition to the 'individual and distinct wrong' that the defendant must be alleged to have committed, the complaint must allege the commission of an underlying act of discrimination under G.L. c. 151B (the 'main claim') by the principal offender.'" Id., quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 n.7 (2002).

As set forth above, Plaintiff will not be able to prove an underlying act of discrimination, retaliation or hostile work environment based on his race and/or sex. Plaintiff has not separately pled facts against each of the Individual Defendants sufficient to prove an underlying act of discrimination, retaliation or hostile work environment, but even if he did, the acts that he complains of are not separate from the "main claim." The Individual Defendants are all current or former MART employees who attempted to assist Plaintiff in his use of the automated systems and explain to him not only how the systems work, but also why CCRD might not be getting as many trips assigned as other lower cost Transportation Providers. Plaintiff has not and cannot present evidence to show that each of the Individual Defendants committed a wholly separate and distinct wrong separate from the main act and has not shown any of the Individual Defendants had an intent to discriminate against him because of his race or sex. Despite the length of the factual averments contained in his Complaint, Plaintiff has not alleged sufficient facts and cannot present sufficient evidence to show that each of the Individual Defendants had an intent to discriminate against him and that each committed a wholly separate

and distinct wrong from the claim in main. Accordingly, Plaintiff's claim brought against the Individual Defendants pursuant to G.L. c. 151B must be dismissed.

> D. Plaintiff's Claim for the Negligent Infliction of Emotional Distress Against All Defendants Must be Dismissed.

Finally, in Count VI of his Complaint, Plaintiff brings a claim for the negligent infliction of emotional distress against all Defendants. The basis for Plaintiff's claim is that "Defendants knew or should have known, that failure to combat the Intentional Discrimination, Retaliation and the Hostile Work Environment and to investigate plaintiffs' allegations in a timely orderly fashion and to exercise due care would cause plaintiff severe emotional distress and physical symptoms." Complaint, ¶ 236. Plaintiff's claims for the negligent infliction of emotional distress against all of the Defendants must be dismissed.

First, all of the Plaintiff's claims against the Individual Defendants for the negligent infliction of emotional distress must be dismissed because public employees are not liable for negligence or wrongful acts under the Massachusetts Tort Claims Act, G.L. c. 258, § 2.

Second, Plaintiff's claim for the negligent infliction of emotional distress against MART must be dismissed because Plaintiff did not satisfy the administrative prerequisite provided for under the Act by failing to meet the presentment requirement under the Act. G.L. c. 258, § 4. Regardless, Plaintiff's claim for the negligent infliction of emotional distress is no different from the claims he has made under Title VII and Chapter 151B. Plaintiff's claim for the negligent infliction of emotional distress pre-supposes that he can prevail on his discrimination, harassment and retaliation claims against MART, which, as set forth above, he cannot. Because he cannot prevail on his claims brought pursuant to Title VII and Chapter 151B, Plaintiff will not be able to show that MART's actions allegedly in violation of those statutes caused him to suffer

severe emotional distress. Further, if Plaintiff is a MART employee as he claims, G.L. c. 152, the so-called workers compensation statute, provides Plaintiff with his exclusive remedy for an on the job injury, including the "emotional distress" he claims he suffered as a result of MART's negligence. Finally, Plaintiff's claims that MART negligently inflicted emotional distress on him are barred by G.L. c. 258, § 10(b) because whether and how to respond to all of Plaintiff's complaints and whether to investigate the issues he raised (none of which had anything whatsoever to do with Plaintiff's race or sex) are discretionary functions.

Accordingly, Plaintiff's claim for the negligent infliction of emotional distress against MART and the Individual Defendants contained in Count VI of his Complaint must be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons the Defendants respectfully request that this honorable Court enter judgment in their favor on all of Plaintiff's claims brought against MART and the Individual Defendants contained in Plaintiff's Second Amended Complaint.

DEFENDANTS

MONTACHUSETT REGIONAL TRANSIT AUTHORITY, REBECCA BADGLEY, DONNA LANDRY, BONNIE MAHONEY, KAREN CORDIO, JOANNE NORRIS, STEPHANIE RICHARDS, TAMARA SHUMOVSKAYA, JESSICA TORRES, AMANDA KUKTA, ROBERT MONK, MICHELLE MOYO, IVAN ROMAN, and CRYSTAL GEISERT

By their attorneys,

*/s/ Deborah I. Ecker*
Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com

Dated: April 9, 2020
715653v2/MART/0006

CERTIFICATE OF SERVICE

      I, Deborah I. Ecker certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.

Date: April 9, 2020                              /s/ Deborah I. Ecker