UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 4:19cv-11093-TSH

| | |
|---|---|
| PAUL JONES<br><br>    Plaintiff<br><br>v.<br><br>MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.<br><br>    Defendants | DEFENDANTS' LOCAL RULE 56.1 <u>STATEMENT OF FACTS</u> |

Defendants, Montachusett Regional Transit Authority ("MART"), and Rebecca Badgley, Donna Landry, Bonnie Mahoney, Karen Cordio, Joanne Norris, Stephanie Richards, Tamara Shumovskaya, Jessica Torres, Amanda Kukta, Robert Monk, Michelle Moyo, Ivan Roman, and Crystal Geisert (collectively "Individual Defendants") (when inclusive of MART, collectively "Defendants") set forth the following statement of undisputed material facts in support of Defendants' Motion for Summary Judgment pursuant to Local Rule 56.1 as follows:

1. Plaintiff, Paul Jones ("Plaintiff") is a Director, dispatcher and driver for Commonwealth Community Recovery Division, Inc. ("CCRD").  Complaint, ¶ 42.[1]

2. MART is a regional transportation authority established pursuant to G.L. c. 161B.

    **Exhibit A, Affidavit of Rebecca Badgley, ¶ 2; G.L. c. 161B.**

3. MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts.  Exhibit A, ¶ 3

---

[1] Complaint shall refer to Second Verified Amended Complaint filed on March 27, 2020.

4. Through its Dial-A-Mart Service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips. *Exhibit A, ¶ 3.*

5. MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS"). MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis. *Exhibit A, ¶ 5*

6. The Commonwealth has established a statewide Human Services Transportation coordination initiative, which utilizes a Broker system of managing transportation services for eligible consumers from various programs and agencies ("HST Brokerage System"). Selected Regional Transit Authorities such as MART act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers. The contractual agreement between the HST Broker and the Transportation Provider is referred to as the "Transportation Provider Subcontract." *Exhibit A, ¶ 6.*

7. All Transportation Providers ("Transportation Providers" or "Vendors") are required to comply with the Transportation Provider Performance Standards ("Performance Standards"). *Exhibit A, ¶ 7.*

8. MART has Transportation Provider Subcontracts with over two hundred (200) Vendors. The Performance Standards are incorporated into all Transportation Provider Subcontracts that MART has with its over two hundred Vendors. *Exhibit A, ¶ 8.*

9. MART entered into a Transportation Provider Subcontract with CCRD. *Exhibit A, ¶ 9*

10. Under the Performance Standards, a Transportation Provider is defined as a "local transportation delivery entity under contract to a Broker for the direct provision of transportation services (vehicles and drivers) for HST Consumers. The Performance Standards specifically provide that the Transportation Provider is a "subcontractor to the Broker" and is subject to the provisions of the Commonwealth Terms and Conditions and Standards Contract terms. *Exhibit A, ¶ 11.*

11. Pursuant to Performance Standards, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers. *Exhibit A, ¶ 12.*

12. In addition, the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy. *Exhibit A, ¶, 13.*

13. MART uses an online portal system to assign rides to its Transportation Providers. The portal system assigns rides to the lowest cost qualified Transportation Provider. If the lowest cost qualified Transportation Provider does not accept the ride, the online portal system goes down the list to the next lowest cost qualified Transportation Provider. *Exhibit A, ¶ 14.*

14. Transportation Providers submit rates to MART for use in the vendor portal system. Vendors are allowed to adjust their rates quarterly. MART does not set vendor rates. *Exhibit A, ¶ 15 .*

15. Transportation Providers set the hours that the Transportation Provider is willing to work. MART does not set the hours that the Transportation Provider is available to work. *Exhibit A, ¶ 16.*

16. MART receives many requests from riders for rides before 7:00 a.m. to transport clients to methadone clinics or to dialysis. *Exhibit A*, ¶23.

17. The Transportation Provider portal starts to assign trips to Transportation Providers beginning with the lowest cost qualified vendor for trips three or more days in advance of the scheduled trip. *Exhibit A,* ¶ 17.

18. For next day or same day requests for transportation, MART assigns the trips to Transportation Providers by telephone. As with the vendor portal system, MART assigns trips to its Vendors starting with the lowest cost qualified Vendor. MART attempts to contact the Transportation Providers three times by telephone to offer the trips before moving on to the next lowest cost Vendor. *Exhibit A*, ¶ 18.

19. CCRD submitted an application to become a transportation provider to MART on October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with MART on December 12, 2015. Because documentation was missing, MART did not execute the Transportation Provider Sub-Contract with CCRD until February 3, 2016 ("Contract"). *Exhibit A, ¶ 19.*

20. Once the Contract was finalized, MART scheduled an office audit and vendor portal training among other things for Plaintiff. *Exhibit A*, ¶ 20.

21. Plaintiff attended vendor portal training on March 22, 2016. *Exhibit A, ¶ 20.*

22. CCRD submitted its requested rates to MART. The rates submitted by CCRD were higher than those of many other MART vendors providing services to EOHHS. Exhibit A, ¶ 21.

23. CCRD also set the hours it was willing to provide transportation services pursuant to the contract from 7:00 a.m. to 3:00 p.m. MART did not set the hours during which CCRD could provide transportation services. *Exhibit A, ¶ 22.*

24. Because of the limits on the hours CCRD is willing to work, CCRD automatically misses opportunities to be assigned rides that are not during CCRD work hours. MART receives many requests from clients for rides before 7:00 a.m. to transport riders to methadone clinics or to dialysis. *Exhibit A*, ¶ 23.

25. Daily and Standing Order (weekly) rides are shown based on assignment from the low-cost auto-assign program (no human intervention) which is based upon vendor rates and capacity tables. *Exhibit A*, ¶ 24.

26. Same and next day trips are not assigned by the vendor portal but rather by telephone call, with the low-cost Vendor called first. The vendor is called three times. If the vendor does not pick up the telephone and accept the assignment after the third call, the next lowest cost vendor is contacted. *Exhibit A*, ¶ 25.

27. On March 22, 2016, Plaintiff received Vendor Portal Training at MART's offices. *Exhibit A, ¶ 26.*

28. Plaintiff almost immediately began to complain that CCRD was not being assigned a sufficient number of trips. By email dated April 16, 2016, Plaintiff was advised that trips are assigned by the vendor portal using a low-cost vendor automated program. *Exhibit A*, ¶ 27.

29. On August 24, 2016, Plaintiff sent an email to Ms. Badgley in which he complained of racial discrimination since the beginning of CCRD's contract with MART. Ms. Badgley responded to Plaintiff's email the following day, having looked into the issues he raised in his email. Ms. Badgley found that there was one area of the vendor portal that had been blocked, which was an oversight, and advised Plaintiff to log into the vendor portal and make sure that he was able to adjust his capacities and see daily work as well as standing orders. *Exhibit A, ¶ 27.*

30. In an email dated October 2, 2017, Plaintiff informed Ms. Badgley that "things have changed for the worst since we had a meeting in March . . . to iron out the portal differences." In that email, Plaintiff complained that CCRD was having problems with "non cost effective trips miles." He complained that CCRD was being fined and that CCRD trips were still "90% given to [CCRD] by the Automatic Dialing System which causes [CCRD] not to be able to compete with any other vendors" and that "[CCRD] calls are hand-picked and sent through the Automatic Dialing System and are not cost effective." *Exhibit A, ¶ 31.*

31. In an email dated October 3, 2017, Ms. Badgley responded to Plaintiff's concerns writing, "I am sorry to hear that things are not going well. As I previously recommended, I would suggest that maybe you branch out to other venues in addition to contracting with MART." She also wrote that as "previously discussed and confirmed with you, your company has complete access to the vendor portal. Transportation that is scheduled 3 days [or] more in advance is going out through the vendor portal auto assign based on vendor bid prices for the trips." Ms. Badgley advised Plaintiff she did "take a look at [CCRD] rates and they continue to be on the high side which is why [CCRD] are seeing

little to no trips in advance through the vendor portal." Further, she informed Plaintiff that CCRD was getting the bulk of its calls from the vendor call out and scheduling members due to the fact that there is same day and next day work and the other vendors are at capacity and MART has reached CCRD's trip rate for coverage. *Exhibit A, ¶ 32.*

32. Plaintiff complained to Ms. Badgley by email on January 8, 2018 that CCRD had dropped its rates but was still not receiving offers through the vendor portal. *Exhibit A, ¶ 33.*

33. In response to Plaintiff's January 8, 2018 email, Ms. Badgley advised Plaintiff that she had followed up on her end and the "assign program is functioning properly and rides in the area are being picked up by vendor with lower rates prior to getting to [CCRD's] rate structure during the running of the assign program, which is why [he] would be getting offered via the call out or from staff." She advised Plaintiff that she had looked at CCRD's rates in comparison to other vendors in the area and that CCRD's rates were still on the high side in comparison. She told Plaintiff that he was welcome to request the most updated rates. *Exhibit A, ¶ 34.*

34. Because of issues that Plaintiff appeared to be having in using the Vendor Portal, Ms. Badgley arranged for Plaintiff to receive one-on-one training with Robert Monk in May 2018, *Exhibit A*, ¶ 35.

35. Plaintiff filed his Verified Amended Complaint on June 14, 2019.

36. By email dated June 24, 2019, Plaintiff asked Ms. Badgley to explain the shared ride policy to him because he believed that he was not properly getting credit for some shared ride members when they did not show up. Ms. Badgley responded to Plaintiff and explained the standing order to him. *Exhibit A, ¶ 38.*

37. By email dated June 27, 2019, Plaintiff complained that CCRD's vendor portal reflected offers of trips that CCRD never accepted and complained that MART's system had a "glitch." In response. Ms. Badgley informed Plaintiff that she had looked into the information he provided and informed him that "MART has no way of controlling what times or how frequently members book appointments and as you are aware everything booked is assigned via a low cost qualified bid process based off vendor rates as trips are received." In addition, Ms. Badgley advised Plaintiff that, "I know that you have stated previously that you would take trips in other areas if there were more than one or two. We don't have the ability to build your schedule for you or provide trips in a specific geographical area as these are all medical appointments that can change in volume and location on a daily basis". *Exhibit A, ¶¶ 39 and 40.*

38. In another email dated July 1, 2019, Ms. Badgley responded to another issue raised by Plaintiff about the vendor assignments. Ms. Badgley advised Plaintiff that all of the calls he had accepted via IVR vendor call-out transferred through to his portal and were scheduled with his company. *Exhibit A, ¶¶ 39 and 40.*

39. Assignments made by MART to its over two hundred Vendors are based on a low cost qualified bid process based on vendor rates and availability as trips are received. As Ms. Badgley repeatedly told Plaintiff, CCRD's rates were simply higher than those of other eligible Vendors in the area, which is why CCRD was not being assigned as many trips as Plaintiff would have liked. MART does not have information on the demographics of the Transportation Providers it contracts with, but is aware that seventeen of those Transportation Providers have registered their businesses with the Supplier Diversity Office (SDO) of the Operational Services Division of the Commonwealth of

Massachusetts. CCRD does not appear on the list as having been certified as a diverse business by the SDO. *Exhibit A, ¶ 41*.

          DEFENDANTS

MONTACHUSETT REGIONAL TRANSIT AUTHORITY, REBECCA BADGLEY, DONNA LANDRY, BONNIE MAHONEY, KAREN CORDIO, JOANNE NORRIS, STEPHANIE RICHARDS, TAMARA SHUMOVSKAYA, JESSICA TORRES, AMANDA KUKTA, ROBERT MONK, MICHELLE MOYO, IVAN ROMAN, and CRYSTAL GEISERT

By their attorneys,

/s/ Deborah I. Ecker
Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com

Dated: April 9, 2020

715631/MART/0006

## CERTIFICATE OF SERVICE

    I, Deborah I. Ecker certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.

Date:  April 9, 2020                    /s/ Deborah I. Ecker