FILED
IN CLERKS OFFICE

2020 JUL 38  AM 8: 47   UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
DISTRICT OF MASS.

PAUL JONES

PLAINTIFF                                          Civil Action No. 19-cv-11093-TSH

     V

MONTACHUSETTS REGIONAL  TRANSIT AUTHORITY et al.


**PLAINTIFF PAUL JONES REQUEST FOR JUDICIAL NOTICE**


Plaintiff urges the Court to consider the two complaints filed by the  Massachusetts States and Federal Attorney  General's office against defendant MART and a non-minority vendor that resulted in a $327,000 settlement agreement See exhibits 1-5.

Pursuant to Federal Rule of Evidence 201(d),4 a court "may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d), Plaintiff Paul Jones ("Plaintiff"), requests that the court take judicial notice of the following documents attached **as Exhibits 1 Exhibits 5,** respectively, in further support of Plaintiffs opposition to defendants Motion for Summary Judgement.

**LEGAL ARGUMENT**

The court may consider "matters of public record, "a judge can mull over" matters susceptible to judicial notice." Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also Aronson v. Advanced Cell Tech., Inc., 902 F. Supp. 2d 106, 112 (D. Mass. 2012). Watterson, 987 F.2d at 3-4. Likewise "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other

courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305

(1st Cir. 1990).

It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those

proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990);

see Giragosian, 547 F.3d at 66.

As with Rule 12(b)(6), exceptions exist that allow consideration of "documents incorporated by reference

into the complaint, matters of public record, and facts susceptible to judicial notice." Grajales v. Puerto Rico

Ports Auth., 682 F.3d 40, 44 (1st Cir.2012).


I.   **Attorney General Maura Healey announced today that the Montachusett Regional Transit**
     **Authority (MART) will pay $300,000 to resolve allegations that it improperly caused false claims to**
     **be submitted to the state's Medicaid program (MassHealth) (EXHBIT 1 & 2).**

"[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those

proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).

Exhibit 1 & 2 In a joint settlement agreement with the Massachusetts Attorney General's Office and the

United States Attorney's Office for the District of Massachusetts, MART will pay $300,000 to resolve

allegations that, from January 1, 2011 through December 31, 2015, the organization billed for and received

reimbursement from MassHealth for thousands of rides that its transportation subcontractors did not provide

to MassHealth members. The AG's Office also alleges that MART was in violation of its contract with the

state, as it did not have appropriate procedures in place to verify that these transportation subcontractors had

actually provided the rides, as billed to MassHealth.

This same allegation is in plaintiff's complaint that MART allows similarly situated non-minority vendors to over bill MassHealth for rides.

MART and their managers and supervisors allowed similarly non-minority vendors to over book rides (Plaintiffs Second Amended complaint lines 73-74) "they are offered 75 trips to every one trip plaintiff is offered regardless of their bid price, , this is done even if they have higher rates than plaintiff (Bid Rigging).

This case is tied directly to plaintiffs allegation, plaintiff reported this to the Massachusetts Attorney generals Office and the Department of Justice (See Exhibit 5 plaintiffs letter to U.S Department of Justice) on August 9, 2016 that MART was allowing and employing UBER to transport clients, MART knew as clients complained that they were picked up by UBER drivers, discovery will show this.

Plaintiff sent this letter 3 years and 11 months before the Massachusetts Attorney General's Office and the United States Attorney's Office for the District of Massachusetts resolved these allegations against MART for $300,000.

**II.    MART non-minority Providers Used Uber and Lyft to Transport Patients**
**and billed MassHealth; Exhibit 3.**

Exhibit 3 shows A Newton transportation company (non-minority) and its owner will pay more than $27,000 and will be permanently excluded from being MassHealth providers to resolve allegations of improperly billing the state's Medicaid Program (MassHealth) for wheelchair van rides when it actually was using ride share services, Attorney General Maura Healey announced today July 3, 2020.

Again this was reported to Massachusetts Attorney General's Office and the Department of Justice (See Exhibit 5 plaintiffs letter to U.S Department of Justice) on August 9, 2016 by the plaintiff, this is one of the non-minority vendors plaintiff references in his Second Amended Complaint line 73 which states "allows

them (Vendors) to cherry pick rides that are very close and only have a mile or two radius, allow them to

choose their areas of work, pay them double the rate sometimes, they are offered *75 trips to every one trip*

*plaintiff is offered regardless of their bid price,* allow them to down load end of the day trip receipts, make

sure their portal alerts them when a complaint is filed against them so they can timely answer (48 hours)

without getting a fine , this is done even if they have higher rates than plaintiff (Bid Rigging*), allow them to*

*have multiple company's or their affiliates (Corporate officers).*


This non-minority vendor Richard Peisch had two or more company's registered with MART to contract

work , like many others, when MARKS own rules state that all vendors can have only one company, his

name is Richard Peisch and his a few of his companies are 1. Universal Sequence, 2. Health Line Transport

Inc (See Exhibit 3) Grafton Mobility Service, Inc.

This vendor is the type of vendor that received an unfair advantage from MART by allowing him to have

multiple company's and allowed him to take so much work that he was unable to complete the jobs so he like

others hire UBER to do the job and billed MassHealth double or triple as his company performed it, this was

an open secret at MART, discovery will show that clients complained for years that these non-minority

vendors had UBER and Lyft picking them up while they claimed they performed the trips and stole money

and MART turned a blind eye.

In 2010 Massachusetts Attorney General Indicted Three employees of defendant Montachusett's Regional

Transit Authority ("MART") and a non-minority vendor Alex Shrayber in Medicaid kickbacks scheme, this

indictment was for MART allowing a non-minority vendor to have multiple company's under the same name

and address or allowing the non-minority vendor officers of their corporation or LLC to open multiple

company's,, and defendant MARTS employees excepting kick backs for allowing the vendor of their choice

to receive trips even when their bids where higher than other vendors causing an unfair advantage defendants have not stopped offending the Federal & State laws.

Massachusetts Attorney General alleged and convicted defendant MARTS 3 former scheduling department employees and Alex Shrayber (non-minority vendor), Mr. Shrayber owned five separate transportation business that worked with MART like Richard Peisch and so many other non-minority vendors.

According to the Attorney Generals Press Release, an investigation found that Ms. Shrayber made monthly cash payments ranging from $300 to $500 to a MART employee between spring 2007 and April 2010.

Some of the MART defendants in my complaint was working there in 2010 while this went on and now are Directors, Managers & Supervisors in the same department that perpetrated the above mentioned 2010 scheme.

In 2010 the MART employee allegedly bypassed the agency's "low-bid system" and diverted MassHealth transportation assignments to several of Mr. Shrayber's five companies like plaintiff is claiming in his Second Amended complaint.

Attorney General then Martha Coakley alleged that the defendant (MART Employees) executed a kickback scheme with several employees of MART to funnel business to him, thus depriving other vendors the opportunity to participate in their federally funded Transportation program.

The attached Exhibit 4 will show that Richard Peisch whom agreed to pay back $27,000 a few weeks ago on or about July of 2020 had multiple non-emergency transportation companies.

**III.    Plaintiffs letter to the Massachusetts Attorney General and the U.S Department of justice dated August 9, 2020 Four years ago alleging these crimes.**

Attached to the Motion for Judicial Notice is a letter sent by plaintiff to the Massachusetts Attorney General and the U.S Department of justice dated August 9, 2020, it details exactly what the Federal & State attorney alleged and later settle by defendants MART and Mr. Richard Peisch whom agreed to pay over $327,000 in the last few week.

Plaintiff wrote this letter almost four years to the date and was the source of the information and so much more that is still being investigated so say the U.S. Attorney's Office District of Massachusetts "This office will continue to pursue those responsible for undermining the benefits that the government has bargained for." See exhibit 1 3rd paragraph.

The Plaintiff incorporates the following five exhibits in support of their Motions for judicial notice, that his 2016 allegations to the Department of justice was credible and led to a $327,000 settlement from the defendants, plaintiff respectfully ask the court to take judicial Notice of all exhibits and defendant MART and Richard Peisch settlement agreement (plaintiff was unable to obtain a copy of the agreement but is asking the court to post pone Summary judgment until plaintiffs complete discover so that he could obtain all the needed discovery that is in defendants possession to oppose Summary Judgment as he has evoke Rule 56 D formally Rule 56 F and cannot at this time oppose defendants Summary Judgment.

## IV.   There Is Nothing Easy About Any Of This': Mass. Justices Urge Lawyers, Judges To Root Out Racial Bias In Court

Letter from the Seven Justices of the Massachusetts Supreme Judicial Court On June 3rd, 2020:

"Dear Members of the Judiciary and the Bar:

The events of the last few months have reminded us of what African Americans know all too well: that too often, by too many, black lives are not treated with the dignity and respect accorded to white lives. As judges and as lawyers, we are both saddened and angry at the confluence of recent events that have revealed how much more we need to do to create a just, fair, and peaceful society.

6

But we must do more than express our feelings of sadness and anger.

As judges, we must look afresh at what we are doing, or failing to do, to root out any conscious and unconscious bias in our courtrooms; to ensure that the justice provided to African-Americans is the same that is provided to white Americans; to create in our courtrooms, our corner of the world, a place where all are truly equal.

As lawyers, we must also look at what we are doing, or failing to do, to provide legal assistance to those who cannot afford it; to diminish the economic and environmental inequalities arising from race; and to ensure that our law offices not only hire attorneys of color but also truly welcome them into the legal community.

And as members of the legal community, we need to reexamine why, too often, our criminal justice system fails to treat African Americans the same as white Americans and recommit ourselves to the systemic change needed to make equality under the law an enduring reality for all. This must be a time not just of reflection but of action.

There is nothing easy about any of this. It will be uncomfortable: difficult conversations, challenging introspection, hard decisions. We must recognize and address our own biases, conscious and unconscious. We must recognize and condemn racism when we see it in our daily lives.

We must recognize and confront the inequity and injustice that is the legacy of slavery, of Jim Crow, and of the disproportionate incarceration of African Americans, and challenge the untruths and unfair stereotypes about African Americans that have been used to justify or rationalize their repression. And we must examine the underlying reasons why African Americans have suffered disproportionately from the COVID-19 pandemic, both in terms of the number of deaths and the extent of economic hardship it has caused, and, where possible, address the causes of those disparities.

Perhaps most importantly, it is a time for solidarity and fellowship with African American judges and attorneys, to acknowledge their pain, to hear about the conversations they now have with their children, and to stand together when others may try to divide us. As Dr. Martin Luther King, Jr. wrote from a Birmingham jail:

"Injustice anywhere is a threat to justice everywhere. We are caught in an inescapable network of mutuality, tied in a single garment of destiny. Whatever affects one directly, affects all indirectly."

Sincerely,

Ralph D. Gants, Chief Justice

Barbara A. Lenk, Associate Justice

Frank M. Gaziano, Associate Justice

David A. Lowy, Associate Justice

Kimberly S. Budd, Associate Justice

Elspeth B. Cypher, Associate Justice

Scott L. Kafker, Associate Justice"

Pursuant to Fed. R. Civ. P. 7(b) and Local Rule 7.1, Plaintiff Paul Jones("Plaintiff") I certify that I have conferred with defendant's attorney to narrow the issue regarding this Motion of Judicial Notice.

Respectfully Submitted

Paul Jones            /s/ *Paul Jones*    *August 7, 2020*
572 Park Street
Stoughton, Ma 02072
PJ22765@gmail.com

Deborah I. Ecker, Esq.
KP | LAW
101 Arch Street, 11th Floor
Boston, MA  02110
O: (617) 654 1714
F: (617) 654 1735
decker@k-plaw.com
www.k-plaw.com

# **VERIFICATION OF COMPLAINT AND CERTIFICATION**

## **STATE OF MASSACHUSETTS**

### **Plaintiff, Paul Jones, states as follows**

I am the Plaintiff in this civil proceeding. I believe that this Motion for Judicial
Notice is well grounded in fact and warranted by existing law or by a good
faith argument for the extension, modification or law.

I believe that this Motion for Judicial Notice is not interposed for any improper purpose, such as to harass any
Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation
to any Defendant(s), named in this Motion for Judicial Notice.

I have filed this Motion for Judicial Notice in good faith and solely for the purposes set forth in it. Each and
every exhibit which has been attached to this Motion for Judicial Notice is true and correct copy of the original.

I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may
contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of
perjury that the foregoing is true and correct.

Paul Jones
/s/ *Paul Jones*

August 7, 2020

## CERTIFICATION AND CERTIFICATE OF SERVICE

I Paul Jones plaintiff Certify that I have mailed a copy to all defendant's attorney of record, a

true and correct copy of the foregoing has been furnished via First Class mail to all defendants

to this action on this 6th day of August 7, 2020

Respectfully Submitted
/s/ Paul Jones
Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Deborah I. Ecker, Esq.
KP | LAW
101 Arch Street, 11th Floor
Boston, MA  02110
O: (617) 654 1714
F: (617) 654 1735
decker@k-plaw.com
www.k-plaw.com

# EXHIBIT 1

**Department of Justice U.S. Attorney's Office District of Massachusetts**
**Montachusett Regional Transportation Authority allegedly submitted reimbursement claims for transportation that was never provided**

Case 1:18-cv-11908-RWZ　Document 73　Filed 08/07/20　Page 12 of 36


United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

# DISTRICT *of* MASSACHUSETTS

U.S. Attorneys » District of Massachusetts » News

**Department of Justice**

U.S. Attorney's Office

District of Massachusetts

FOR IMMEDIATE RELEASE                                          Tuesday, July 21, 2020

# Transportation Broker For MassHealth Agrees to Pay $300,000 to Resolve False Claims Allegations

## Montachusett Regional Transportation Authority allegedly submitted reimbursement claims for transportation that was never provided

BOSTON – The Montachusett Regional Transportation Authority (MART), a transportation broker for MassHealth, has agreed to pay $300,000 to resolve allegations that it violated the False Claims Act by submitting reimbursement claims for rides that never happened.

As a state Medicaid program, which the federal government jointly finances, MassHealth must provide its members with non-emergency transportation to and from medical appointments that MassHealth covers. MassHealth uses transportation brokers, including MART, to help its members find these rides. MART in turn contracts with third-party transportation companies to provide rides to MassHealth members. MART pays the transportation companies for the rides and submits reimbursement claims to MassHealth for the costs of the rides. In addition, MassHealth's parent agency, the Executive Office of Health and Human Services (EOHHS), pays MART a management fee for its brokerage services.

The government alleges that, from Jan. 1, 2011 through Dec. 31, 2015, MART submitted reimbursement claims to MassHealth for thousands of rides that MART's contracted transportation companies did not actually provide. MART's contract with EOHHS required MART to have "procedures to verify that scheduled trips were performed as authorized and as billed, and that the Transportation Provider performed Consumer trips in a timely and satisfactory manner." According to the allegations in the settlement agreement, however, MART's verification procedures were not sufficient to prevent transportation companies from submitting false invoices to MART, resulting in MART then billing the invoiced amounts to MassHealth.

"MART obtained reimbursement from MassHealth for services that its vendors did not actually deliver," said United States Attorney Andrew E. Lelling.  "We expect companies doing business with the government to comply with their contractual obligations. This office will continue to pursue those responsible for undermining the benefits that the government has bargained for."

"The Medicaid program provides health care benefits to low-income individuals and families. Billing for transportation services that were never provided is a waste of valuable taxpayer funds that are intended to provide critical services to those in need," said Special Agent in Charge Phillip M. Coyne of the U.S.

Department of Health and Human Services Office of Inspector General. "This settlement is an example of how the State and the Federal government can work together to recoup and deter overbilling practices."

"Not only did the Montachusett Regional Transportation Authority try to steal from a government program intended to support a vulnerable population, but they saddled taxpayers with the bills," said Joseph R. Bonavolonta, Special Agent in Charge of the Federal Bureau of Investigation, Boston Division. "Today's settlement underscores the FBI's commitment to working with our law enforcement partners in rooting out Medicaid fraud and ensuring that businesses aren't taking more than what they have legitimately earned."

U.S. Attorney Lelling, Massachusetts Attorney General Maura Healey, HHS-OIG SAC Coyne and FBI Boston SAC Bonavolonta made the announcement today. The matter was handled by Assistant U.S. Attorney Evan Panich of Lelling's Office.

---

**Component(s):**
USAO - Massachusetts

Updated July 21, 2020

# EXHIBIT 2

**Massachusetts Attorney's Generals Office
States that "Montachusett Regional Transportation Authority
the organization billed for and received reimbursement from
MassHealth for thousands of rides that its transportation
subcontractors did not provide to MassHealth members".**

Case 4:19-cv-11093-TSH   Document 73   Filed 08/05/20   Page 15 of 36

EMERGENCY ALERTS

## Coronavirus Update

Stay informed about COVID-19: Latest on cases, guidance, regulations *Aug. 6th, 2020, 9:00 am*

<u>Read more</u>

Travel Order: Requirements for individuals entering Massachusetts *Aug. 1st, 2020, 12:00 am*

<u>Read more</u>

Reopening Massachusetts: Learn more about the phased approach *Jul. 2nd, 2020, 12:00 pm*

<u>Read more</u>



 Mass.gov

PRESS RELEASE

# Montachusett Regional Transit Authority to Pay $300,000 to Resolve Allegations of Submitting False Claims to MassHealth

## Settlement is the Result of a Joint Investigation with the U.S. Attorney's Office

FOR IMMEDIATE RELEASE:

7/21/2020

Office of Attorney General Maura Healey

**MEDIA CONTACT**

# Alex Bradley

## Phone

(617) 727-2543 (tel:6177272543)

## Online

alexander.bradley@mass.gov (mailto:alexander.bradley@mass.gov)

**BOSTON** — Attorney General Maura Healey announced today that the Montachusett Regional Transit Authority (MART) will pay $300,000 to resolve allegations that it improperly caused false claims to be submitted to the state's Medicaid program (MassHealth).

In a joint settlement agreement with the Massachusetts Attorney General's Office and the United States Attorney's Office for the District of Massachusetts, MART will pay $300,000 to resolve allegations that, from January 1, 2011 through December 31, 2015, the organization billed for and received reimbursement from MassHealth for thousands of rides that its transportation subcontractors did not provide to MassHealth members. The AG's Office also alleges that MART was in violation of its contract with the state, as it did not have appropriate procedures in place to verify that these transportation subcontractors had actually provided the rides, as billed to MassHealth.

"Some of our most vulnerable residents rely on MassHealth to provide essential healthcare services, and we need those dollars to be spent properly," said AG Healey. "Any organization that does business with the state must honor its contracts and put appropriate compliance protocols in place to ensure that the state money is not being misused."

8/6/2020                   Montachusett Regional Transit Authority to Pay $300,000 to Resolve Allegations of Submitting Claims to MassHealth | Mass.gov

Case 4:19-cv-11093-TSH   Document 43   Filed 08/07/20   Page 17 of 36

MART is a quasi-public transportation authority that provides mass transit options and brokers medical transportation via subcontractors for the cities of Fitchburg, Gardner, and Leominster and the towns of Ashburnham, Ashby, Athol, Ayer, Bolton, Boxborough, Hardwick, Harvard, Hubbardston, Lancaster, Littleton, Lunenburg, Royalston, Shirley, Sterling, Stow, Templeton, Westminster, and Winchendon.

Improper billing in medical transportation continues to be a priority of AG Healey's Medicaid Fraud Division. This month, the AG's Office announced (/news/newton-transportation-company-resolves-claims-of-improperly-billing-masshealth-for-wheelchair) that a Newton company will pay $27,000 to resolve allegations of improperly billing MassHealth for medically necessary wheelchair van rides actually provided by Uber and Lyft. In November, Michael Davini, the owner of Rite Way Transportation company, was sentenced (/news/transportation-company-owner-sentenced-to-jail-for-multi-million-dollar-medicaid-fraud-scheme) to jail after pleading guilty to charges in connection with a scheme to steal millions from MassHealth by way of kickbacks and billing for services not rendered.

In AG Healey's Office, this matter was handled by Managing Attorney Kevin Lownds, of the Medicaid Fraud Division, with substantial assistance from the U.S. Department of Health and Human Services, Office of the Inspector General, the Boston Field Office of the Federal Bureau of Investigation, and MassHealth.The Medicaid Fraud Division receives 75 percent of its funding from the U.S. Department of Health and Human Services under a grant award. The remaining 25 percent is funded by the Commonwealth of Massachusetts.

###

# Media Contact

## Alex Bradley

### Phone

(617) 727-2543 (tel:6177272543)

Case 4:19-cv-11093-TSH Document 73 Filed 08/07/20 Page 18 of 36

**Online**

alexander.bradley@mass.gov (mailto:alexander.bradley@mass.gov)



## Office of Attorney General Maura Healey

(/orgs/office-of-attorney-general-maura-healey)

Attorney General Maura Healey is the chief lawyer and law enforcement officer of the Commonwealth of Massachusetts.

**More** (/orgs/office-of-attorney-general-maura-healey)

# EXHIBIT 3

The AG's Office announced that a Newton company (Richard Peisch) will pay $27,000 to resolve allegations of improperly billing MassHealth for medically necessary wheelchair van rides actually provided by Uber and Lyft.

EMERGENCY ALERTS

## Coronavirus Update

Stay informed about COVID-19: Latest on cases, guidance, regulations *Aug. 6th, 2020, 9:00 am*

__Read more__ ›

Travel Order: Requirements for individuals entering Massachusetts *Aug. 1st, 2020, 12:00 am*

__Read more__ ›

Reopening Massachusetts: Learn more about the phased approach *Jul. 2nd, 2020, 12:00 pm*

__Read more__ ›

HIDE ALERTS

 Mass.gov

PRESS RELEASE

# Newton Transportation Company Resolves Claims of Improperly Billing MassHealth for Wheelchair Van Rides

## Provider Used Uber and Lyft to Transport Patients; Will be Permanently Barred from Participating in MassHealth

FOR IMMEDIATE RELEASE:

### 7/03/2020

Office of Attorney General Maura Healey

MEDIA CONTACT

## Alex Bradley

## Phone

(617) 727-2543 (tel:6177272543)

## Online

alexander.bradley@mass.gov (mailto:alexander.bradley@mass.gov)

**BOSTON** — A Newton transportation company and its owner will pay more than $27,000 and will be permanently excluded from being MassHealth providers to resolve allegations of improperly billing the state's Medicaid Program (MassHealth) for wheelchair van rides when it actually was using ride share services, Attorney General Maura Healey announced today.

Under the terms of a settlement agreement with the AG's Office, Universal Sequence Inc. d/b/a Health Line Transport, Inc., and its owner, Richard Peisch, will pay $27,589 to resolve allegations of numerous violations of MassHealth regulations from January 2014 through January 2017.

The AG's Office alleged that Health Line and Peisch were submitting reimbursement claims for medically necessary wheelchair van transportation services for MassHealth members, while the members were allegedly transported by ride share companies like Uber and Lyft. In addition, Health Line is alleged to have submitted claims for transportation services while the MassHealth member was at an inpatient facility on the date of the claimed ride.

MassHealth provides non-emergency transportation services to aid its members in traveling to obtain covered medical services when public or personal transportation is not available or not suitable due to the member's physical condition and circumstances. Pursuant to its regulations, MassHealth only pays transportation providers for non-

Case 4:19-cr-11003-TSH Document 73 Filed 08/07/20 Page 22 of 36

emergency wheelchair van services provided to members who: (1) use wheelchairs; (2) need to be carried up or down stairs or require the assistance of two persons; or (3) have severe mobility handicaps that prevent them from using public transportation, dial-a-ride, or taxi transportation.

The AG's Office has been active in holding medical transportation companies accountable. In November, Michael Davini, the owner of Rite Way Transportation company, was sentenced (/news/transportation-company-owner-sentenced-to-jail-for-multi-million-dollar-medicaid-fraud-scheme) to jail after pleading guilty to charges in connection with a scheme to steal millions from MassHealth by way of kickbacks and billing for services not rendered.

This matter was handled by Assistant Attorney General Ali Russo, Senior Healthcare Fraud Investigators Robert Ames and Aleksandra Andriyevskaya, and Investigations Supervisor Dean Bates, with assistance from MassHealth and the Massachusetts State Police. The Medicaid Fraud Division receives 75 percent of its funding from the U.S. Department of Health and Human Services under a grant award. The remaining 25 percent is funded by the Massachusetts Attorney General's Office.

###

# Media Contact

## Alex Bradley

**Phone**

(617) 727-2543 (tel:6177272543)

**Online**

alexander.bradley@mass.gov (mailto:alexander.bradley@mass.gov)



## Office of Attorney General Maura Healey

(/orgs/office-of-attorney-general-maura-healey)

Attorney General Maura Healey is the chief lawyer and law enforcement officer of the Commonwealth of Massachusetts.

**More** (/orgs/office-of-attorney-general-maura-healey)

# EXHIBIT 4

Richard Peisch had multiple company's contracting with
Defendant MART

1. HEALTH LINE TRANSPORT, INC.
2. GRAFTON MOBILITY SERVICES, INC.

# Corporations Division

## Business Entity Summary

**ID Number: 001169774**

[Request certificate]    [New search]

**Summary for:  HEALTH LINE TRANSPORT, INC.**

| |
|---|
| **The exact name of the Domestic Profit Corporation:**  HEALTH LINE TRANSPORT, INC. |
| **Entity type:**  Domestic Profit Corporation |
| **Identification Number:** 001169774 |
| **Date of Organization in Massachusetts:** <br> 04-18-2015 |
| **Date of Involuntary Dissolution by Court    Last date certain:** <br> **Order or by the SOC:**  06-30-2017 |
| **Current Fiscal Month/Day:** 12/31 |
| **The location of the Principal Office:** <br><br> Address:  132 ADAMS ST #9 <br> City or town, State, Zip code,      NEWTON,  MA  02458  USA <br> Country: |
| **The name and address of the Registered Agent:** <br><br> Name:    TIM MAUSER, ESQ <br> Address:  11 BEACON ST. <br> City or town, State, Zip code,      BOSTON,  MA  02108  USA <br> Country: |

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | RICHARD PEISCH | 132 ADAMS ST #9 NEWTON, MA 02458 USA |
| TREASURER | RICHARD PEISCH | 132 ADAMS ST #9 NEWTON, MA 02458 USA |
| SECRETARY | RICHARD PEISCH | 132 ADAMS ST #9 NEWTON, MA 02458 USA |
| DIRECTOR | RICHARD PEISCH | 132 ADAMS ST #9 NEWTON, MA 02458 USA |

**Business entity stock is publicly traded:**

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| Class of stock | Par value per share | Total Authorized | | Total issued and outstanding |
|---|---|---|---|---|
| | | No. of shares | Total par value | No. of shares |
| CWP | $ 1.00 | 1,000 | $ 1000.00 | 1,000 |

# Corporations Division

## Business Entity Summary

**ID Number: 001216542**

Request certificate     New search

**Summary for:  GRAFTON MOBILITY SERVICES, INC.**

| | |
|---|---|
| **The exact name of the Domestic Profit Corporation:**  GRAFTON MOBILITY SERVICES, INC. | |
| **Entity type:**  Domestic Profit Corporation | |
| **Identification Number:** 001216542 | |
| **Date of Organization in Massachusetts:**  03-30-2016 | **Date of Revival:** 7/29/2019 12:00:00 AM |
| **Date of Involuntary Dissolution by Court Order or by the SOC:**  06-28-2019 | **Last date certain:** |
| **Current Fiscal Month/Day:** 12/31 | |

**The location of the Principal Office:**

Address:  132 ADAMS ST #9

City or town, State, Zip code,        NEWTON,  MA   02458   USA
Country:

**The name and address of the Registered Agent:**

Name:    RICHARD PEISCH

Address:  1463 GRAFTON RD

City or town, State, Zip code,        MILLBURY,  MA   01527   USA
Country:

**The Officers and Directors of the Corporation:**

| Title | Individual Name | Address |
|---|---|---|
| PRESIDENT | RICHARD FRANCIS PEISCH | 132 ADAMS ST NEWTON, MA 02458 USA |
| PRESIDENT | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |
| TREASURER | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |
| SECRETARY | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |
| VICE PRESIDENT | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |
| DIRECTOR | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |
| DIRECTOR | RICHARD FRANCIS PEISCH | 12 MARSHALL ST. BOSTON, MA 02108 USA |

**Business entity stock is publicly traded:**

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

# EXHIBIT 5

PLAINTIFFS AUGUST 9, 2016 LETTER TO DEPT.OF JUSTICE
REGARDING UBERS BEING EMPLOYED TO TRANSPORT
MASSHEALTH CLIENTS

**Paul Jones**

**79 Thompson Street**

**Springfield, Ma 01109**


**U.S Department of Justice**                                **August 9, 2016**

**Civil Rights Division**

**950 Pennsylvania Avenue, N.W**

**Office of the Assistant Attorney General, Main**

**Washington, DC 20530**

<b>TITLE VI COMPLAINT</b>


To whom it may concern,

I am writing to report several violations of Title VI discrimination because of my race and other factors by **Montachusett Regional Transit Authority (MART)** employees Karen Cordio, Ivan Roman, Crystal Geisert and Tamara shumovskaya.

On or about **April 15, 2015** I applied for a non-emergency Transportation contract with Montachusett Regional Transit Authority (MART) **(See Exhibit 1)** whom is a recipient of Federal funds.

Services and opportunities were flat out denied to me (Paul Jones) and the company I work for, I believe this was based upon my race and sex without justification. I Paul Jones has been treated differently when seeking access to the MART bidding Vendor Portal to except daily jobs because of my race and sex without Justification.

I am a minority (Male African American) that has been subject to having to make a stronger case for access to the bidding Vendor Portal unlike than non-minority vendors.

I am the President & Director of Commonwealth Community Recovery Division Inc. (CCRD INC).

4 of our employees including myself scheduled, paid and attended all mercury certification classes and received all certification required by MART to participate in the non-emergency Transportation program at MART.

After CCRD INC was awarded the contract on or about July 1, 2015, Paul Jones (President / Director) and another staff member finally was able to complete all paper work for the MART non-emergency contract on or about March 18, 2016 almost 1 year after I applied.

On or about March 22, 2016 Karen Cordio Scheduled a training section with Paul Jones and another employee of CCRD INC (**See Exhibit 2**).

In this meeting with MART employees Karen Cordio & Crystal Geisert they provide training on how to log in MARTS vendor portal on a daily bases and get the non-emergency transportation jobs that were available Karen Cordio stated that *"MART uses advanced software, which chooses winning bids, determines if ride sharing is possible and even generates a bill for each trip. MART's computer sort all bids every two hours based on location (who is nearest) and cost (whose is lowest). At the end of each day, all the trips for the following day are distributed, I Paul Jones an CCRD INC. would be able to participate in this computerized low bid process, and will also be called if a ride is needed and I am in the area".*

Karen Cordio assured me that there was more than enough work to go around to all the Vendors in the Portal.

We were given a User name & Password to access the vendors portable so that we can receive jobs on a daily basis through the Vendors Portal

Karen Cordio assigned me 5 rides per hour from 7am – 6pm which was a total of 60 rides per day on March 23, 2016 (which never happened), and assured me that there was more than enough work to go around, and asked me not to take any work that I could not do because there would be a financial penalty for each job our company put back in the Vendor Portal, the meeting ended and was successful as I thought.

After returning to the office and briefing the staff and preparing to take on these non-emergency jobs, the following day I tried unsuccessfully to gain access to the vendor portal that had all the job postings.

I wasn't able to log into the Vendor Portal, I was contact by Crystal Geisert and was informed by her there was missing documents, which I promptly hand delivered to MARTS office on or about March 25, 2016.

On or about March 28, 2016 I email Karen Cordio and explain that our user name & password has been deactivate and we could not access the Vendor Portal (See Exhibit 3).

On or about March 29, 2016 I was emailed by Crystal Geisert and she stated that only I Paul Jones was approved to drive the other employees were missing doctor letters, I stated that was fine and that only I would start immediately, and the others would get the doctor letter shortly.

At this time, I had limited access to the Vendor Portal every part except the section that had all the daily jobs, I was devastated.

I was not given any date or time that we could start booking calls through the Vendor Portal this was extremely awkward because I was not able to determine the amount of work we would get on a daily basis for hiring purposes.

I had hired employees but had no answers to as of when they could start, I passed these concerns on to Karen Cordio by email when she was not available by phone.

On or about April 6, 2016 I was contacted by Ivan Roman he informed me that, "I don't have access to the Vendor Portal that has the daily jobs and may not never get access to that part of the Vendor Portal to pick the daily jobs".

I asked him what had changed from a few days ago when I was informed by Karen Cordio that I would have access to the daily Jobs in the Vendor Portal.

I asked Ivan Roman for a Manuel that had all this new information in it and he stated that it was a good question and as far as he knew that type of manual doesn't exist.

Ivan Roman did not have a straight answer to most of my questions and during the conversation just stated that's how it is, the system is on a low bid system and there are a lot of competition and maybe my bids may be too high.

I questioned what he was stating and he began to get irritated, Ivan Roman informed me that MART has a call center and would call me when there were any jobs available in my areas and that I needed to be on call during our office hours if I wanted any jobs.

I asked Ivan Roman how could I properly hire employees if it is a mystery when we will receive jobs from MARTS call center.

Ivan Roman also stated that my bids determine the amount of work we get if I have a low bid, I then stated to Ivan Roman that I would bid $10 a ride so I could get access to the Vendor Portal daily jobs and would try to book all the calls in a single area so we could make a profit.

I also asked how would I obtain jobs to comply with the contract we were given he then stated that the phone operators would provide work to us when it was available.

I changed my bids to $10 per ride on or about April 8, 2010 which took effect on May 1, 2016 to my surprise we still weren't granted access to the Vendor Portal daily jobs as other non-minority's vendor had access to, at that time I knew I was being discriminated against as we had lower bids than most non-minority Vendors, so I realized it was not based on the lowest bid system when it came to me and my company I worked for, I realized there was a different set of rules for CCRD INC and Paul Jones.

With a $10 bid we still was denied participation to access the daily jobs in the Portal we were given 5 jobs at the most in a day these jobs were unprofitable because of the location they were at, which cost expenses to sky rocket.

I began receiving request for ride from MARTs Call center these ride request was always during the same hour or very far from each other this caused much confusion, being stuck in traffic, potential of being late and other factors.

This went on for months on or about June 2, 2016, I was sent to a call an hour away upon arrival I was informed by the client she cancelled with MART the day before, I then sent an email to Tamara shumovskaya informing her that I have driven over an hour and the client's appointment

was cancelled and was there a way to eradicate this type of calls, I also informed her that the company (CCRD INC) has not made a profit since starting the contract yet but I am confident things will turn around (See Exhibit 4).

I also sent Ivan Roman and Crystal Geisert an email on June 2, 2016 at 12:55 pm (See Exhibit 5) I stated "Hello *can you please change CCRD INC Vendor Capacity to reflect that we are willing to except trips 7 days a week 24 hours a day Thank you very much, I know you guys are extremely busy, we only send emails when necessary*". Ivan Roman replied and stated "*You are able to make changes to your capacity manager to reflect times and days of the week you are willing to accept work by visiting the vendor portal and editing your capacity management tab*". He also stated "*Our DDS and EIP programs work differently from our DMA program which you are a part of and they have an RFP every 5 years which just started this fiscal year so they are not accepting applications at this time. However, after your company has completed a full year of service with our DMA program your company can ask to be considered for individual trips they often times offer our vendors as single trips but they will not take you into consideration until your anniversary has passed and your company has proven to provide reliable service.*

*Lastly, unfortunately MART does not pay vendors for no shows. We are very sorry to hear that you have wasted time, energy, gas, and money on trips that you were unable to complete. However, these circumstances should be considered when accepting work as they can occur. Vendors rates often times affect the amount of work you will receive and is a very competitive based bidding system. This should also be considered if you are looking to receive more job offers. Thank you for contacting MART if you have any further questions or concerns please feel free to touch base with Karen, Crystal, or myself.*

I made no statement in the emails on June 2, 2016 asking to get paid for a canceled trip I believe this was to shift the burden on me.

I logged back in to the Vendor Portal and it still stated that "**You cannot change capacities as it has been locked by MART**".

The capacities tab was blocked by MART and has been since the very first day (on or about April 1, 2016) I believe Ivan Roman knew this as he told me differently.

I responded to Ivan Romans email on June 2, 2016 at 6:52 pm I stated "**Dear Ivan, when I go to capacity management tab it states: "You cannot change capacities as it has been locked by MART", "This is in red writing bold letters, from what it is telling me it needs to be unlocked by MART first, please let me know your thoughts Thank you**".

Ivan Roman has never responded to my email request asking for access to the capacities section of the Vendors Portal so that I could change the capacities to reflect that we will except trip 7 days a week 24 hours a day.

I believe this was a discrimination and retaliation without any justification because I sent emails trying to communicate my grievances (See Exhibit 5) as of April 1, 2016 to August 10, 2016 I have been locked out of the Vendors Portal of daily jobs and Capacities section.

The following days I was retaliated against and did not receive any jobs for about a week, as I still was not granted access to the Vendor Portal daily job section or Capacities section.

Other non-minorities and some minorities were given immediate access to these section of the Vendors Portal as soon as they started the contract with MART contrary to our situation

These other Vendors could stream line the process and book calls in the same area and make a profit, and have all the work they could possibly manage.

I never was informed of any specific reason why we could not participate and book our own schedule on a day to day basis, but instead I had to stay by the phone during office hours and hope we receive a call from MART call center.

This made it very difficult to run a transportation business as I could not put the employees to work pay expenses, gas, Insurance vehicle maintenance and run the business, after 2 months of

this unjustified discrimination the employees had to be laid off (on or about May 28, 2016) we could not afford to pay a salary and had very little work come in.

I have sent several emails informing MART employees Karen, Crystal, Ivan & Tamara of the devastating effect of this has been on the company and me and my family's finances and I have been met with retaliation time and time again.

I have also been retaliated against by constantly being given a one-way job that would cost 80% of the amount earned to be spent on expense's such as tolls and gas, I was offered a one-way trip to Boston that paid $90, most Vendors get 4 times of that. Most trips I receive overlap with the first so it puts me in a bind (Discriminating and Retaliatory conduct) if I except and or makes me look bad in I don't except I believe this treatment is to put me in jeopardy of being late, all the call I receive is during or between a 3-hour window and never spread out.

There has been retaliation against me for voicing my grievances of not being able to make payroll for 5 months and not having access to certain parts of the Vendors Portal that other Vendors have, MARTS employees have made the playing field is not equal to me because of my race and other factors.

I believe that Crystal Cordio, Ivan Roman, Crystal Geisert & Tamara intentionally treated me unjustifiably differently and purposely blocked me from access to the Vendors Portal or jobs called in to us.

This discrimination is a direct and discriminatory action against me which affected me and the company I work for negatively and there is no substantial justification for this treatment, Federal Funds are involved and this discrimination is based on my race and other factors which make this a Title VI violation.

These discriminatory action has a diverse effect, it is the roll of MART and their employees to abide by Title VI and other Federal & State Laws which they have failed to do.

Applicants such as MART when receiving Federal Funds should be prepared for a possible Pre Award or Post Award review to determine whether a Title VI problem exist.

MART is a recipient of Federal Funds and has failed to carefully review and monitor their staff for possible violations of the act (Title VI).

I believe this complaint falls within the Jurisdiction of the Department of Justice, and I am requesting that the D.O.J investigate this case or take other appropriate actions.

Evidence of discrimination can be found if the D.O.J investigate this matter easily by looking at our Bids and activity's versus other non-minority's Vendors bids and their activity's, you will find that we had lower bids but was over looked and not given access to the Vendor Portals.

The daily logs will confirm that I have been discriminated against by MART and their employees, other vendors of different races with higher bids were given jobs when I had a lower bid and was closer to the client.

I have been informed by some of the clients that MART has been employing UBER cab services to pick up clients that request rides to their appointments, this is a direct violation of the Title VI act, MARTS rule state that a vendor has to be registered and given a contract with MART, insured with Livery plates and drivers have to receive multiple certificate of compliance which UBER drivers does not have.

It has been over a year since the contract took affect and over 5 months since Paul Jones had his training with Karen Cordio and given a username & Password to the Vendor Portal, I have not been able to get enough rides to make payroll one time, I have almost depleted my savings to keep this business afloat.

I have taken out to loans and I am convinced that I will not acquire enough work to make the upcoming payments on these loans due to discrimination and retaliation.

I feel that MART employees will retaliate against me for making this complaint, I am asking that your department monitor the treatment I receive from MART in the future after this complaint is filed.

Today is August 10, 2016 I wrote Karen an email on or about August 5, 2016 explaining that our company has not been able to make payroll since we have taken on this contract and that it is causing me and my family great financial and mental harm.

I also stated that I haven't received work since April 27, 2016 which was a typo, I sent another email today August 10, 2016 to Karen Cordio pointing this out (See Exhibit 6).

In the email I ask Karen Cordio for correspondence of how the problem could be cured, since then I have received no work this is a clear retaliation again for my inquiring about receiving work to make payroll.

This discrimination has cause great tension between me and my family life and staff, not being able to get paid a pay check to provide for my family is very frustrating, embarrassing.

As a direct result of MARTS employee's discrimination and wrongful conduct, I and the company I work for has suffered and will continue to suffer damages, including but not limited to, the loss of the benefit of the contract, embarrassment, humiliation, mental distress, poor credit and anxiety.

I fear that the MART above employees are plotting ways to manufacture complaints and or will threaten, intimidate, coerce or engage in other discriminatory conduct against me other employees of the company.

I am afraid to speak with the employees of MART without a witness to the verbal conversation which could give rise to manufactured evidence to use against me because I have filed this complaint against MART with the D.O.J...

Paul Jones