1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3

4    Paul Jones,                )
                    Plaintiff,   )
5                                )
                                 )
6    vs.                         )    Case No. 19cv11093-TSH
                                 )
7                                )
     Montachusetts Regional      )
8    Transit Authority, et al.,  )
                    Defendants.   )
9

10

     BEFORE:  The Honorable Timothy S. Hillman
11

12

                        Telephonic Motion Hearing
13

14

15
                               United States District Court
16                             595 Main Street
                               Worcester, Massachusetts
17                             August 13, 2020

18

19

20

21

22
                        Marianne Kusa-Ryll, RDR, CRR
23                         Official Court Reporter
                        United States District Court
24                      595 Main Street, Room 514A
                          Worcester, MA 01608-2093
25                    508-929-3399 justicehill@aol.com
                   Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    Paul Jones, Pro Se
     572 Park Street
3    Stoughton, Massachusetts 02072
     on behalf of the Plaintiff

4
     KP Law, P.C.
5    Deborah I. Ecker, Esquire
     101 Arch Street
6    12th Floor
     Boston, Massachusetts 02110
7    on behalf of the Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         THE CLERK:  Case No. 19-11093, Jones versus

3    Montachusett Regional Transit Authority.

4         Plaintiff and counsel, please note your appearance for

5    the record.

6         THE PLAINTIFF:  Paul Jones, plaintiff, pro se

7    litigant.

8         MS. ECKERT:  And this is Deborah Eckert for the

9    defendants.

10        THE COURT:  And good afternoon to both of you.

11        MS. ECKERT:  Good afternoon.

12        THE COURT:  Ms. Eckert, I believe this is your motion

13   so let me hear from you first; and then when you finish,

14   Mr. Jones, I will hear from you at that time.

15        MS. ECKERT:  Sure, your Honor.  So I don't know if

16   your Honor has had an opportunity to review the motion, but

17   I'll summarize it quickly.

18        I represent Montachusetts [sic]Regional Transit

19   Authority and the individual defendants who provide

20   transportation services to various cities and towns.

21        As part of that service, MART is a broker and engages

22   in subcontracts with companies such as Mr. Jones' company,

23   CCRD, for those brokers, vendors, and MART calls in to provide

24   services to help him and to service his clients.

25        Mr. -- Mr. Jones has filed a complaint, as your Honor

1    is aware, against MART and the various individual defendants

2    under Title VII, Chapter 151D, and then a claim for the

3    negligent infliction of emotional distress.

4            We had originally filed a motion to dismiss on the

5    grounds that MART was not Mr. Jones' and is not Mr. Jones'

6    employer.  As your Honor knows, that was denied so we're now at

7    the summary judgment stage in which we will have to take the

8    allegations contained in the pleadings as true, and so we've

9    provided a statement of fact, most of which Mr. Jones admits,

10   agrees to, in various documents attached.

11           So as regards the claims for -- under Title VII in

12   Chapter 151D, under those claims, and this was the subject of

13   the motion to dismiss, Mr. Jones has to show that the

14   transportation as MART was his employer.

15           And so now that we're able to provide an affidavit and

16   there are -- there are documents; and, in fact, Mr. Jones

17   admits to the fact that what we rely upon is more --

18           THE PLAINTIFF:  Object.

19           MS. ECKERT:  -- conditioned --

20           THE PLAINTIFF:  Object.

21           MS. ECKERT:  I'm sorry?

22           THE PLAINTIFF:  Object.  This -- I --

23           THE COURT:  Mr. Jones.  Mr. Jones, I'm going to give

24   you a -- just let me talk, please.  I'm going to give you a

25   chance to speak, and you can clarify anything you want.  I only

1    allow objections during trial.

2            Please continue, Ms. Eckert.

3            MS. ECKERT:  Sure.  So under multifactor tests there

4    are several indices of what is an employer versus otherwise;

5    and one of those or some of those has the right to control

6    where and how the work is performed, the work done, and whether

7    the work is performed on the premises, whether there's a

8    continuing relationship between the worker and employer,

9    whether the employer has a right to assign additional projects,

10   et cetera.

11           So in our statement of facts, we list several factors

12   that if you look at the responses to our statement of facts we

13   believe are undisputed.

14           And the first is that MART entered into these

15   transportation provider subcontracts not with Mr. Jones, but

16   with his company, CCRD.  So once that is performed by CCRD and

17   CCRD employees, it's not performed on the premises of MART.

18   There's no continuous relationship that MART has with

19   Mr. Jones; rather, again, the subcontract is with CCRD.  MART

20   does not have the right to assign Mr. Jones, or CCRD for that

21   matter, additional projects.

22           Rather, the way this works is that there's an

23   automated assignment system based on low cost, low rate that

24   the computer goes through basically and makes an assignment

25   when the clients of HHS needs services.

1          Let's see.  MART doesn't have the right to assign CCRD

2      additional paths other than when they're assigned

3      these -- these rides with transportation services, and MART

4      does not set Mr. Jones' hours and certainly does not set the

5      rates, which I think has caused some of the issues here for

6      Mr. Jones, because the rates -- his rates or his company's

7      rates are higher than others; and so when the automatic system

8      goes to assign transportation services, his company is not the

9      first to be selected.

10          But based on the factors and those facts that again if

11      look at the statement of facts in the response, it -- the

12      finding can be found and we believe should be found that MART

13      is not Mr. Jones' employer.

14          I do -- well, I guess I'll go through the motion

15      first, and then I'll get to the 56(f) motion that was filed.

16          Even if MART were his employer, to go even further on

17      a Title VII and a 151D claim, Mr. Jones would have to show that

18      he suffers from some adverse employment action; and again,

19      while he at this stage has said in his complaint that he has

20      been penalized, fined, et cetera, as set forth in our statement

21      of facts and supporting documentation, Mr. Jones himself has

22      not suffered an adverse action.  Again, the subcontract is with

23      CCRD, but even if that's the case, there's some -- there were

24      some fines that were imposed, but that's on CCRD, and that's

25      not on Mr. Jones.

1      The assignment of rides again is automatic based on

2  computer.  There is a call-out system, which again is done by

3  rates like the lowest rate first going up to the higher rate.

4      Mr. Jones in his complaint complains that we're using

5  his telephone number, but no doubt he would complain if we

6  hadn't used a telephone number to call out because that's how

7  the assignments are made, and he is the dispatcher for his

8  company.

9      And, finally, I'll separate out a little bit for the

10  Title VII and the 151D.  Even if there's a finding, and we

11  believe there shouldn't be, based on the undisputed facts that

12  MART is the employer, that somehow Mr. Jones versus CCRD

13  suffered an adverse action, there's no discrimination that's

14  alleged and no evidence -- well, I shouldn't say that's

15  alleged.  No evidence, of course, that is certainly no causal

16  connection based on how these rides are assigned.

17      So on Count One and -- I believe, Mr. Jones alleges

18  retaliation, and so Mr. Jones did allege from the outset that

19  he believed he was being discriminated against, and there are

20  documents now in the record that shows how that was addressed,

21  but there's nothing, and Mr. Jones has not presented evidence

22  that the conversations -- and they did spend a lot of time with

23  Mr. Jones going back and forth when he raised concerns about

24  why he wasn't getting assigned more rides, that any of those

25  conversations, that is, not being assigned rides had anything

1       or could be causally connected to his initial complaint.

2               Instead what the evidence and attached shows is that

3       they spent time with Mr. Jones.  They provided him additional

4       training to the initial training that he got that all vendors

5       get and any time that -- he did raise the concern.  Ms. Badgley

6       would go back and forth, would check it out, you know, why is

7       it that you didn't get assigned that ride, you know, suggesting

8       to him, you know, take a look at the rates.  You know, you've

9       still too high.  Maybe you should spread out to other areas, et

10      cetera.  So there's simply no causal nexus.

11              Count Two, as I understand it, is a hostile work

12      environment claim, again putting aside that it's not the

13      employer.  There are no allegations even in the complaint that

14      would create a hostile work environment based on any protected

15      category.  There's no allegations of yelling, of racial

16      comments, sexist comments, et cetera, to support such a claim.

17              And then Count Three again, as I understand it, is

18      a -- I'm trying to -- I'm having trouble reading my

19      writing -- my handwriting, but I think the disparate impact

20      claim, meaning that there needs to be a policy in place by MART

21      that has a disparate impact on a protected class saying that

22      there's a policy of discrimination doesn't do that.

23              So, for instance, if he were to say, well, the policy

24      of taking, you know, transportation providers or vendors with

25      the lowest rates somehow disparately impacts minority vendors.

1    I don't know how we would be able to say that.  That would be

2    a -- that's a policy.  It is MART policy.  We start with the

3    lowest rate.  But that's not what he's alleging.

4           Instead he's alleging the fact that he believes he's

5    discriminated against is the policy itself.  So there's no

6    policy that he anchored that disparate impact claim on that's

7    contained in the complaint.  That's Title VII.

8           Under Chapter 151D, Mr. Jones' claim is for

9    discrimination and retaliation for failure to provide a

10   reasonable accommodation.  There's nothing that I saw in the

11   complaint and nothing in the response to the motion for summary

12   judgment by Mr. Jones which identifies a -- a disability, why

13   he believes he's a qualified disabled person, but also that he

14   requested a reasonable accomodation.  So it's our contention

15   that that should be dismissed as well.

16          And, finally, for the negligent infliction of

17   emotional distress that would be brought under Chapter 258,

18   there is no presentment letter that I am aware of, so that

19   would go out or be dismissed under failure to meet that

20   prerequisite to filing a 258 claim.  Negligent affliction of

21   emotional distress under 258 is only brought against the

22   entity.  So it would be MART.  The individual employees would

23   have to be dismissed.

24          And then the basis for its claim again is

25   discrimination.  And so because there are no allegations that

1    we believe supported a discrimination claim, there's no basis

2    for that -- the claim to go forward.  You can't just -- well,

3    you can.  I mean, you can allege a claim that, you know, that

4    Mr. Jones has done that I -- you know, the negligibly

5    infliction of emotional distress by discriminating against me,

6    you have to prove the underlying discrimination first; and for

7    all the reasons I've stated before, Mr. Jones has not done

8    that.

9            So I don't know if your Honor wants me to briefly

10   address the 56(f) motion, because it might be instructive going

11   forward.  If you want me to wait.

12           THE COURT:  No, I think I want to hear from Mr. Jones,

13   and then I want to hear him on his motion for judicial notice,

14   and then I'll hear you in opposition.

15           Mr. Jones, so what do you want to say, please, sir?

16           THE PLAINTIFF:  Yes.  For the record, sir, Paul Jones.

17   And I would like to say that the defendants' attorney stated

18   that I agreed with most of her motion which is -- which I

19   don't.

20           And first of all, I would like to address Count One

21   which is Title VII.  The defendant states that I am not -- they

22   are not my employee.

23           Basically, the First Circuit Court in most -- a lot of

24   cases states that as long as they control at least one aspect

25   of the plaintiff they are -- they can be deemed an employee.

1    And they control when, where, and how the work is performed.

2    The job doesn't require high-level expertise.  The employee,

3    which there's MART, Montachusett Regional Transit Authority,

4    the employee gets in business, and they do the same business

5    that I do which is provide transportation.  The employee can

6    discharge the worker.  The worker -- the employee believes that

7    they have created an employee-employer relationship, which I

8    did.

9            So even if they control one aspect of our

10   relationship, which they did, your Honor, they -- you know,

11   they say my rates were higher than other people's.  That's not

12   true.  All this is talk.  We tell each other what the bids are

13   and everything.

14           If you look at my complaint, I put in a $10 bid.  They

15   have in their possession all of the documents that show

16   everybody's bid.  They could have easily put in a list of all

17   the bids and said, see, your Honor, it's still better.  A $50

18   bid, and they had a $10 bid; that's why they did it.  So it's

19   in dispute, your Honor, and they controlled at least one aspect

20   of our relationship on a day-in, day-out basis.

21           And as far as the discrimination, your Honor, again,

22   this is summary judgment.  I haven't had a chance to propound

23   discovery.  If any documents all the -- the defendants have all

24   the documents in their possession for me to prove that they

25   discriminated, retaliated, and caused a work -- a hostile work

1    environment, your Honor.

2         And it's -- the Chapter 151, that's on the other

3    defendants except Montachusett Regional Transit Authority; and,

4    your Honor, Chapter 1 -- 151D, as you know, they filed a motion

5    to dismiss, and there was an R and R report was suggested that

6    I to be able to amend the complaint to reflect the Chapter 151

7    filing these violations, and I have several, your Honor.

8         Your Honor, I was hospitalized over this.  I have

9    all -- you know, and I haven't had a chance to get the records

10   from the hospitalization.  So I've made the allegation.  And

11   during discovery, I will give them all of that, you know.

12        And the retaliation, your Honor, once I filed -- once

13   I took an action and filed a complaint against them, they never

14   gave me any work.  They decimated me.  They wouldn't give me

15   work for months.  All of the staff had to be laid off after I

16   got all the insurance, after I had all the drug tests done,

17   after I paid for training; and they retaliated against me, your

18   Honor.  And once I spoke up about it, they really started

19   retaliating on me.

20        When I went to training at MART, which all the vendors

21   do, I arrived for training.  They told me that you don't --

22   you're not training today.  You're going to wait for Karen

23   Cordio to train you while all the other vendors went in for

24   training.

25        So weeks later I go in for training.  She didn't train

1     me properly.  She took me into her office.  She questioned me.

2     She wants to know my whole history.  Ninety percent of the

3     meeting was not about the vendor portal or policy at MART.  I

4     was lost.  I couldn't understand what was going on.

5           So, then, she told me that oh, the portal's down.

6     I'll tell you what's -- how it is really easy to figure out.

7     And as the defendants' attorney said, oh, they tried to

8     accommodate him and meet with him a few times.  Your Honor, I

9     had to fight to get training.  I -- I -- you know, I asked them

10    five or ten times.  They didn't want to do it.

11          I went to MassHealth, sent letters to MassHealth.

12    MassHealth got involved and said, listen, you need to give this

13    guy proper training.  He needs to sit in front of the vendor

14    portal like everybody else.  Give him a screen shot of the

15    vender portal.  Show him an example,  you know, and it's really

16    easy, your Honor, for the portal to work, you know, but there

17    are certain things that you need to know.

18          As far as rates, your Honor, I've had a lower rate

19    than 90 percent of the vendors.  They give you a rate card with

20    everybody's rates.  They just take the names off.  So all you

21    have to do is look at it and say, okay, if everybody's bidding

22    15, I'm not getting any work, I'm going to bid ten.  And then

23    once I did that, two months went by, and they're like, oh, we

24    overlooked your ten.  They admit it, they overlooked it, you

25    know, so the retaliation has been going on; and if you look at

1    my complaint, your Honor, I put a letter in there, an email

2    from Ivan Roman, who was the manager, my manager at MART, and

3    he wanted me to pay him on the side to train him properly to

4    show him how to defend against MART if I was having problems

5    with my vendor portal not receiving rides, which he knew I did.

6    That's very telling, your Honor.  These people need to be

7    deposed, you know.

8              So the discrimination, I made the allegation of

9    discrimination, and I also made the allegation that out of

10   250-plus vendors maybe about 20 or 15 are African-American

11   males.  African-American males.  They have foreigners, but

12   hardly any African-American males, your Honor.

13             From the onset I think it's discriminated again.

14   That's why I made the complaint.  I tried over and over to talk

15   with them to get things done, and it was just like she said, as

16   far as the phone call, retaliation, discrimination.  Sure.  I

17   had hired a phone operator that sat in the office, and they

18   refused to call her.  Instead, they called me on my cell phone

19   while driving.  Not once, not twice, not ten, not 20 times a

20   day.  50 to a hundred times a day.  And I told them I have a

21   dispatcher in the office, can you please call her.  And it's,

22   like, you know, hanging up the phone, and that's discrimination

23   and retaliation.  And if we -- I can have discovery we can

24   flush all this stuff out.  I made all these allegations in the

25   complaint, your Honor.

1       And like I said this is summary judgment.  They have

2   all of the evidence in their possession.  All of it.

3       THE COURT:  Mr. -- Mr. Jones, you know that discovery

4   is -- is closed, right?

5       THE PLAINTIFF:  Closed?

6       THE COURT:  Yes, sir.

7       THE PLAINTIFF:  I never had --

8       THE COURT:  No, just listen.  Just listen.  There's a

9   scheduling order that sets out the various -- the -- the -- the

10  dates by which certain things have to be accomplished,

11  and -- and one of those is that discovery is closed.  I mean,

12  that's why we have summary judgment.  We wait until the

13  discovery is -- has closed.

14      THE PLAINTIFF:  Your Honor, I have dockets, I have a

15  copy of the docket.  There was never a schedule for discovery,

16  your Honor.  It went straight from after the R and R

17  maintenance report and suggested that I amend my complaint.  We

18  amended the complaint.  I amended the complaint.  She filed a

19  summary judgment right after that.  In my opposition to her

20  summary judgment, I point that out.  That's why -- that's why I

21  invoke Rule 56(f).

22      THE COURT:  All right.  Okay.  All right.

23      THE PLAINTIFF:  There was -- there was the evidence of

24  the schedule, sir.

25      THE COURT:  All right.  Thank you.  I'll -- I'll check

1    that.

2          THE PLAINTIFF:  Yeah.

3          THE COURT:  Talk to me about your motion for judicial

4    notice.

5          THE PLAINTIFF:  Yes, my motion for judicial notice

6    that I filed is I would like the Court to take notice of this

7    because this is paramount, and it's directly tied into my

8    complaint.

9          In 2016 -- like I said, vendors talk.  We're a very

10   small group of people, but we communicate amongst each other.

11   That's how everybody knows everybody's age and what they're

12   doing.

13         So anyway, 2016, after I kept trying to work it out

14   with MART, they wouldn't work it.  I said I've got to get the

15   people involved.  I reached out to MassHealth.  They got me

16   proper training.  Well, they got me another session for

17   training.  And then when I went there, that didn't work.

18         So anyway I reached out to the Department of Justice

19   and I just told them, look, these people are getting federal

20   money.  They're not accommodating.  They're not allowing me to

21   participate in the program.  I'm spending all of my -- I was

22   going to get married.  I spent all my wedding money on

23   everything, like, on expenses.  So I reported to the Department

24   of Justice that -- and they said, Well, what are they doing

25   illegal?  And I said, Well, they're doing a bunch of stuff

1    illegal.  They're letting -- they're letting nonminority

2    vendors have two to three companies, and you can verify that

3    from the secretary of state.  They're telling me there's no

4    work when they have these nonminority vendors with two to four

5    companies taking more work than they can handle; and then what

6    they do is they take 200 calls a day, when I don't get ten, and

7    they'll send a hundred out to Uber and Lyft, which is illegal,

8    because only a certified vendor with livery plates, training,

9    can pick up a client.

10          So they were sub -- they were just giving it to Lyft,

11   Lyft charging $7, and they were billing for $30, while I'm on

12   the sidelines begging and pleading for work at a higher price.

13          So this July this past, they came to a settlement with

14   MART.  I guess they've been investigated, and they found out

15   that it was true, and MART said, okay, we're going to settle

16   this.  We don't know which ones did it, but we'll settle for

17   300,000.

18          They got one gentleman who had multiple companies,

19   multiple companies, and was taking all of these trips that he

20   couldn't even handle and pass them onto Lyft and Uber, and Uber

21   is charging seven to $10, and he's charging 20 to $30, which is

22   illegal.  And this was reported to MART plenty of times.

23          I have clients that I will give her in discovery, if I

24   ever get a chance to get there.  And I didn't get a chance to

25   do a scheduling conference and get her discovery.  I will give

1    her a list of clients that have Uber and Lyft from various

2    companies, nonminority companies, day in and day out, and they

3    have reported it to MART, and they did nothing.  And the

4    Department of Justice, the FBI, the Massachusetts branch of the

5    FBI and the Attorney General for the United States and

6    Massachusetts went in, gave -- laid the evidence out.  I know

7    they did research.  They did discovery with them, too, which I

8    would like to propound from them.  And I know they'd gladly

9    give it to me that show that, yeah, you allowed these people,

10   two or three companies, astronomical rates, take all these

11   calls, and you should have known that they didn't have the

12   capacity, because you know how many vehicles they've got.  But

13   they were calling Uber, Lyft, and things of that nature.  And

14   this has been going on and on with MART.  This is the only

15   time.  The same people are there are the same people that was

16   there when the Attorney General arrested three of the

17   scheduling department defendants about seven to ten years ago

18   for allowing a nonminority vendor to have four or five

19   companies in his name, and they were giving him money, and they

20   were giving him all the calls.

21        Now, I'm not suggesting that MRTA's taking money under

22   the table, but that's not for me to --

23        THE COURT:  So -- so your -- I think you've answered

24   my question about the judicial notice.

25        Is -- had you -- have you finished on that?  You're --

1    you're going a little bit off the track.

2          THE PLAINTIFF:  Yeah, I'm finished with that, your

3    Honor, but I would like to point out, your Honor, that I

4    haven't had a chance -- will I be able to speak on the motion

5    for Rule 56(f) that I filed?

6          THE COURT:  Sure.  Why don't you do that now.

7          THE PLAINTIFF:  Okay.  The Rule 56(f), I invoked that

8    because, your Honor, they filed a -- I filed -- I filed a

9    complaint.  Before they answered, I amended it.  They filed a

10   motion to dismiss.  I filed an opposition.  It went to the R

11   and R, the magistrate.  He wrote up an R and R report that

12   said, Mr. Jones -- he dismissed my PCPA claim and said,

13   Mr. Jones, Title VII retaliation, discrimination on opt-out

14   work area should stand, and he should have a chance to amend

15   his Chapter 151D last claim for retaliation.  I did that.

16         Upon me filing the second amended complaint, I

17   immediately filed a summary judgment motion.  I have not had a

18   chance to get any discovery.  Ninety-nine percent of the

19   discovery is in their possession.  They have a vendor portal

20   with the click of a button they can print out all the vendors'

21   names from -- all the vendors' companies names, every ride they

22   had, the price they had from 2015 to 2019 and mine.  And they

23   can have the cheapest one all the way down to the expensive

24   one.  And they could -- that would show a bulk of the problem.

25         And also, I invoked it because I haven't had a chance

1    to get discovery.  And, your Honor, there's no -- there was no

2    conference set up.  We haven't had -- even had a scheduling

3    conference, you know.  And I think you should put this on hold

4    until we have a scheduling conference, we have discovery, and

5    then the summary judgment can come.  And I will welcome that,

6    and, you know, give me a chance to get discovery to prove my

7    claims because a lot of this stuff I really don't even have to

8    get it from -- well, I have to get it from MART, but I can get

9    it from other people, like MassHealth, the Department of the

10   Attorney General, the Attorney General of Massachusetts, the

11   Executive Office of Health and Human Service.  They'll show all

12   the rates, all the checks that everybody got, who had the

13   lowest and everything.  And I would like to depose their --

14   their portal operator that operates the system, because with a

15   click of a mouse, your Honor, they could block you out.  You

16   can get no calls, and that will show who had access to the

17   vendor portal and who only had access to call.

18         Getting a call and saying, oh, we've got a ride, an

19   automated dialing caller says, we've got five rides with you,

20   and how I can take them within a minimum of five minutes.  It's

21   impossible.  It's impossible.  And basically, I was being used

22   as a -- after all these guys, the nonminority vendors took

23   their trips, anything that they couldn't make they will call me

24   the same day or the next day and ask me to pick up someone.

25   And when I will pick them up they would say, oh, Worcester was

1    supposed to pick us up.  Well, this one they didn't show, and,

2    you know, the Rule 56(f) should stand, and summary judgment

3    should be put off until we have a scheduling conference and a

4    chance for discovery, your Honor, you know.

5           Discovery will be short.  We only need six months to

6    do it, and it's very -- the documents I want from them they

7    will be very access -- very easy to access, you know.  And

8    I'm -- I'm ready and willing and able to give all my documents,

9    deposed, whatever, but I really need discovery to oppose this

10   summary judgment.  I haven't had a chance.

11          THE COURT:  Thank you -- thank you, Mr. Jones.

12          THE PLAINTIFF:  You're welcome.

13          THE COURT:  Ms. Eckert, I'll give you a brief

14   rebuttal, and you can argue about the motion for judicial

15   notice.

16          MS. ECKERT:  Okay.  Your Honor, we filed an opposition

17   to the 56(f), so we'll rely on that.  There was a response to

18   our statement of undisputed facts, and so the information in

19   response to that is contained in our opposition to the 56(f).

20          As far as the judicial notice, different counsel

21   entered into the settlement, and my understanding is and in

22   reviewing the documents that Mr. Jones filed, one is different

23   management now; but, two, there's nothing in those documents

24   that talks about discrimination.  My understanding is that they

25   were fined for poor oversight realistically, that they allowed

1    these vendors, and there's nothing in there that says whether

2    they're minority or not to assign by -- by Uber and Lyft, and

3    so that's my understanding.

4        There's also no information and MART is not aware that

5    Mr. Jones was involved in any way, if that was one of the

6    reasons to take judicial notice.  So that would be our position

7    that it's just not relevant to Mr. Jones' claims.

8        THE COURT:  All right.  Thank you, everybody.  We're

9    going to take it under advisement.  Good job.

10       MS. ECKERT:  Thank you, your Honor.

11       THE PLAINTIFF:  Thank you very much, your Honor.  Have

12   a nice day.  Bye.

13       (At 3:15 p.m., Court was adjourned.)

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3               I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4     certify that the foregoing transcript is a true and accurate

5     transcription of my stenographic notes before the Honorable

6     Timothy S. Hillman, to the best of my skill, knowledge, and

7     ability.

8

9

10         /s/ Marianne Kusa-Ryll                    08/13/2020

11         Marianne Kusa-Ryll, RDR, CRR                 Date

12         Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25