UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL JONES,<br><br>                    Plaintiff,<br><br>v.<br><br>MONTACHUSETTS REGIONAL TRANSIT<br>AURTHORITY et al<br><br>                    Defendants. | Civil Action No. 4:19-cv-11093-TSH<br><br>REQUEST FOR ORAL ARGUMENT |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

1. Plaintiffs Paul Jones  worked as delivery drivers for Defendant Montachusett Regional Transit
   Authority ("MART") . Plaintiffs claim that MART improperly treated him as independent contractors
   when he was, in fact, an employee, and that, as a result, MART unlawfully allowed their Supervisor
   and Managers (employee defendants) to wield controlling and broad discretionary powers over
   Plaintiff, the "sufficient control" test is purely a fact-based analysis that examines one company's
   level of control over the terms and conditions of another company's employees under the Common
   Law and Joint employer Doctrine.

2. Plaintiffs' memorandum of law contains facts and strong legal arguments of mainly control that
   defendant used in the manner & means of plaintiff day to day work, with references to the record as
   well as to the governing legal authorities. Plaintiff has found these issues clearly and identified and

address those issues and stuck to those issues of whether plaintiff was an employee or independent

contractor under Title VII

3. Defendants simply puts window dressing on many of the same arguments it has already

unsuccessfully raised in this case despite the largely undisputed facts that Plaintiff presents before the

court.

4. Moreover, the issues before us are for the factfinder (Jury), Plaintiffs' responses to defendants'

motion for summary judgment, Statements of Material Facts and Affidavit that plaintiff contends are

disputed demonstrate that several genuine issue of material fact exists that warrants denying

defendants motion for summary judgment. Indeed, this Court should find its decision by the

overwhelming weight of authority plaintiff puts forth in this Memorandum.

5. The facts relevant to Plaintiffs Opposition to Defendants Motion for Summary Judgment are set forth

in Plaintiffs Local Rule 56.1 Statement of Material Facts and Affidavit are not in Dispute

COMMON LAW

INTERPRETING THE TERM EMPLOYEE IN TITLE

6. The central issue in this Summary Judgment is whether MARTS relationship to the plaintiffs makes

MART plaintiffs "employer" under Title VII, this statue defines an "employer" as "a person who is

engaged in an industry affecting commerce who has fifteen or more employees (. . . and any agent of

such a person." 42 U.S.C. § 2000e(b). A "state" may be such a person. *Id.* § 2000e(a). The text ties

the definition of an "employer" to the meaning of "employees. "*Lopez v. Massachusetts*, 588 F.3d 69,

83 (1st Cir. 2009).

7. "Title VII defines an "employee" only as "an individual employed by an employer." 42 U.S.C. §

2000e(f). The Supreme Court has recognized that this definition "is completely circular and explains

nothing." *Nationwide Mut. Ins. Co. v. Darden*, <u>503 U.S. 318, 323</u>, <u>112 S.Ct. 1344</u>, <u>117 L.Ed.2d 581</u> (1992)" *Lopez v. Massachusetts*, 588 F.3d 69, 83 (1st Cir. 2009).

8. The Court in *Clackamas* was persuaded that courts should look to the guidelines in the EEOC's Compliance Manual to address the question of when a person is an "employee." *Id.* at 448-50, <u>123 S.Ct. 1673</u>. Those guidelines, in their current form, list the following, non-exhaustive factors as indications that **(1)** "a worker is in an employment relationship with an employer": **(2)** "[t]he employer has the right to control when, where, and how the worker performs the job;" **(3)** "[t]he work does not require a high level of skill or expertise;" **(4)** "[t]he work is performed on the employer's premises;" **(5)** "[t]here is a continuing relationship between the worker and the employer;" **(6)** "[t]he employer has the right to assign additional projects to the worker;" **(7)** "[t]he employer sets the hours of work and the duration of the job; **(8)** "[t]he worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job; **(9)** "[t]he worker does not hire and pay assistants;" **(10)** "[t]he work performed by the worker is part of the regular business of the employer;" **(11)** "[t]he employer is in business;" **(12)** "[t]he worker is not engaged in his/her own distinct occupation or business;" **(13)** "[t]he employer provides the worker with benefits such as insurance, leave, or workers' compensation;" **(14)** "[t]he worker is considered an employee of the employer for tax purposes;" **(15)** "[t]he employer can discharge the worker;" and **(16)** the duration of the relationship between the parties; "[t]he worker and the employer believe that they are creating an employer-employee relationship." (17) the hired party's role in hiring and paying assistants; Salamon, 2008 WL 2609712, at *1061 (quoting Reid, 490 U.S. at 751–52); see also Darden, 503 U.S. at 322–24. see also *Lopez v. Massachusetts*, 588 F.3d 69, 85 (1st Cir. 2009). *See* Equal Employment Opportunity Comm'n, *EEOC Compliance Manual*, § 2 — III, at 5716-17 (2008). The guidelines emphasize that these criteria should be viewed in light of the totality of the circumstances based on

the parties' relationship. *Id.* § 2 — III, at 5717. *Lopez v. Massachusetts*, 588 F.3d 69, 85 (1st Cir. 2009).

9. The Supreme Court also found in *Clackamas* recognized "that the EEOC's guidelines are intended to apply across Title VII, the ADA, and the Age Discrimination in Employment Act." *De Jesús,*474 F.3d at 24 (citing *Clackamas,*538 U.S. at 449 n. 7, 123 S.Ct. 1673); *see* EEOC Compliance Manual (CCH), § 2–I, ¶ 7103, at 5706 (2009). *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 390 n.5 (1st Cir. 2016).

## THE JOINT EMPLOYER DOCTRINE

## INTERPRETING THE TERM EMPLOYEE IN TITLE VII

10. Although (unsurprisingly) the self-represented Plaintiff did not use the term "joint employer" in his Second Amended Complaint "SAC" the statements describing the alleged conduct is sufficient to give the court notice that MART might have functioned as Plaintiff's joint employer for purposes of Title VII and that its employee defendants functioned as Supervisor and Managers responsible for creating an employee employer relationship "[F]or the claim to fall within the scope of the investigation, the plaintiff must 'describe the essential nature of the claim and . . . identify the core facts on which it rests.'" *Windross v. Vill*. *Auto*. *Grp*., *Inc*., 887 N.E.2d 303, 308 (Mass. App. Ct. 2008) (quoting *Lattimore*, 99 F.3d at 464). Also *See Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *28-29 (D. Mass. Mar. 31, 2021).

11. "Factors to be considered in determining whether an entity is a joint employer are whether it: **1)** supervises the employee's day-to-day activities, **2)** has the authority to hire or fire employees, **3)** promulgates work rules and conditions of employment, **4)** controls work assignments and **5)** issues operating instructions." *Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *12 (D. Mass. Mar. 31, 2021), Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995).

12. The US Supreme and the 1st Circuit has held that "Two or more entities can be considered "joint employers " for Title VII liability purposes".  "The Supreme Court and Courts in this circuit defined the concept of a 'joint employer' as a company possessing 'sufficient control over the work of the employees' of another company." "and share or co-determine those matters governing essential terms and conditions of employment" .*Commodore v. Genesis Health Ventures*, *Inc*., 824 N.E.2d 453, 456 (Mass. App. Ct. 2005) (quoting *Boire v. Greyhound Corp*., 376 U.S. 473, 481 (1964)). !!" *Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *12 (D. Mass. Mar. 31, 2021)". Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir. 1993, *Acosta v. Harbor Holdings & Operations*, *Inc*., 674 F. Supp. 2d 351, 370-71 (D.P.R. 2009), *Marrero v. Misey Rest., Inc.*, CIV. No. 17-1911 (MDM), at *17-18 (D.P.R. Dec. 13, 2019).

13. The First Circuit has recognized that where an entity, by contracting with an employer, acquires control over the employment conditions of the employer's workers, that entity becomes liable as a "joint employer" Rivas, 929 F.2d at 820 n. 17." *Orell v. Umass. Memorial Medical Center, Inc.*, 203 F. Supp. 2d 52, 62 (D. Mass. 2002). Consequently, "[w]hether an employer possesses sufficient indicia of control to be an employer is essentially a factual issue." Fortunato v. Capitol Sec. Police, Inc., 2007 WL 2688695, at *3 (D.P.R. 2007) (citation omitted), *Galarza-Cruz v. Grupo HIMA San Pablo, Inc.*, CIVIL No. 17-1606 (RAM), at *23-24 (D.P.R. May 28, 2020).

14. A "joint employer " relationship exists when two entities `share control of the employee to such an extent that they both function as an employer , even though they are operationally distinct.'" *Bonilla v. Liquilux Gas Corp.,* 812 F. Supp. 286, 289 (D.Puerto Rico 1993). The joint employer doctrine has been utilized in Title VII cases, and two separate business enterprises can be treated as a single employer for the purposes of Title VII liability if there is an "interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio Television*

*Broadcast Technicians v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *see also Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico,* 929 F.2d 814, 820 n. 16 (1st Cir. 1991) (incorporating joint employer doctrine into Title VII context). While Plaintiff's argument that Lloyd is a "joint employer " is creative, the doctrine does not appear to apply to the situation at hand.

### SUMMARY JUDGMENT STANDARD

15. The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which support its motion. *Id.* (citing Fed.R.Civ.P. 56(c)). Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000) (internal citation omitted)."An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it possess[es] the capacity to sway the outcome of the litigation under the applicable law. "Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations and internal quotation marks omitted) *Medina v. Adecco*, 561 F. Supp. 2d 162, 165 (D.P.R. 2008).

16. It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing summary judgment, [therefore,] must 'present definite, competent evidence to rebut the motion." *Maldonado–Denis,* 23 F.3d at 581 . In making this assessment, the Court must take the entire record in the light most favorable to the

nonmoving party and draw all reasonable inferences in its favor. *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 779–80 (1st Cir.2011). *Polo-Calderon v. De Salud*, 991 F. Supp. 2d 331, 333 (D.P.R. 2014).

## CONTROL AS A MATTER OF CONTRACT

17. Contract interpretation is a question of law for the court. Balles v. Babcock Power Inc., 70 N.E.3d 905, 911 n.12 (Mass. 2017).2 If "the language of a contract is clear, it alone determines the contract's meaning." Id. at 911. A contract is ambiguous if it "can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." Id. (quoting Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907 (Mass. 2008)). When faced with an ambiguous standardized contract that "the non-drafting party had no ability to influence," a court must "construe it against the party that drafted it" and "seek to effectuate . . . the meaning an objectively reasonable person in the non-drafting party's position would give to the language." James B. Nutter & Co. v. Estate of Murphy, 88 N.E.3d 1133, 1139-40 (Mass. 2018).

18. The plaintiffs argue that whether an individual is free from control under the terms of his or her contract can be resolved through common evidence such as the MART ambiguous (2016-2021) Contract & Amendments. Under the contract at issue, MART required plaintiff to submit to additional reporting requirements that are in the Contract or Amendments. Ex. 3, Page 42 of 58 subsection D.1. complaint contain standard terms for all of MARTS vendors and drivers including plaintiff.

19.  Examining the standard terms to determine the extent of MARTS contractual control is an exercise that appears to lead to common answers. As such, the Third Circuit decided that the extent of a company's right to control its workers could be resolved by examination of the franchise agreement,

policies manual, and training manual that were common to the class. <u>Williams v. Jani–King of Phila.</u> <u>Inc.,</u> <u>837 F.3d 314, 321–22</u> (3d Cir. 2016).

20. The defendants' argument, SOF and Affidavit in response seems to be that, for various reasons, the contract contains as much right of control as the plaintiff claim. But that is a merits question, the only question at this point is whether the extent of MART contractual right of control over plaintiff and is determinable because of common evidence. The answer is yes. Dasilva v. Border Transfer of Ma, Inc., 296 F. Supp. 3d 389, 400-01 (D. Mass. 2017).

## CONTROL AS A MATTER OF FACT

21. The plaintiffs respond that evidence of common practices can establish common answers as to control as a matter of fact.

22. Paul Jones (Plaintiff) personally provided delivery services for MART on a full-time basis in Massachusetts including in Suffolk County, plaintiff transported MARTS clients to Boston Medical Center and other locations in Boston on multiple occasions and waited sometimes up to 5 hours with no wait pay.

23. Plaintiff claims that MART improperly treated him as independent contractors when he was in fact an employee, and that as a result MART controlled the manner and means of his work, had authority to hired and fired plaintiff and his co-workers, had mandatory training at their facility, require daily, monthly, and yearly reports, forced plaintiff to obtain workers comp. and other insurance and exerted complete control over plaintiff. See Plaintiff verified compliant

## ARGUMENT

24. Defendant MARTS arguments reflects a fundamental misunderstanding of the Common Law and Joint Employer Doctrine Test and the employee or Independent Contractor issue that is before the

court, there is however, no confusion in the courts or with plaintiff of what acts could deem

defendants' plaintiff's employer.

25. Defendants cannot meet their burden of satisfying elements from the Common Law or Joint

Employer Doctrine imposes on companies seeking to classify its employees as independent

contractors.

26. The defendants Contract, Amendments and emails to plaintiff for approximately 4 long years

demonstrates that the defendant exercised and possessed 'sufficient control over the daily work of

Plaintiff the employee of another company CCRD, MART share and co-determine those matters

governing essential terms and conditions of plaintiff employment.

27. Defendants would like the court to ignore and turn a blind eye to their regulations set forth in their

Contract,  Amendments and emails to plaintiff that clearly shows MART retained for itself sufficient

control of the terms and conditions of employment of the Plaintiff their employee under the Common

Law and Joint Employer Doctrine in question, *Commodore v. Genesis Health Ventures, Inc.,*63

Mass.App.Ct. 57, 824 N.E.2d 453, 456 (2005), and whether MART had the right to control and direct

the means and manner in which the Plaintiff (employee) perform services. *See Thomas O'Connor*

*Constructors, Inc. v. Mass. Comm'n Against Discrimination,*72 Mass.App.Ct. 549, 893 N.E.2d 80,

85 n. 8 (2008) ; *see also Deecy Prods. Co. v. Welch,*124 F.2d 592, 596 (1st Cir.1941) ("it is not

necessary that the employer actually direct or control the manner in which the services are performed;

it is sufficient if he has the right to do so" (citation and quotation omitted)).

28. Defendants' states: MART Is Not Plaintiff's Employer "**First**, MART entered into a Transportation

Provider subcontract with CCRD and not Plaintiff. DEF SOF, ¶ 9.. (Def MSJ pg. 4).

29. Thus, there mere fact that Plaintiffs worked for MART through a corporate entity cannot frustrate a claim of employee v independent contractor by virtue of an arrangement permitting it to distance itself from its employees the Court must reject this argument too.

30. The U.S Supreme court has stated "the court should like governing authority rule labels are not controlling and they do not take the worker from protection of the Act, Defendants fail to realize that under the common law, labels placed on employees, are not controlling and the entire circumstances must be examined" *See* Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) ("putting on an 'independent contractor' label does not take the worker from the protection of the Act."); see also FedEx Home Delivery v. NLRB, 563 F.3d 492, 496 (D.C. Cir. 2009) (stating that there is no magic phrase to be applied and all incidents of the relationship must be examined under the common law standard).

31. Thus, there mere fact that Plaintiffs worked for MART through a corporate entity cannot frustrate a claim of employee v independent contractor by virtue of an arrangement permitting it to distance itself from its employees the Court must reject this argument too. The U.S Supreme court has stated "the court should like governing authority rule labels are not controlling and they do not take the worker from protection of the Act, Defendants fail to realize that under the common law, labels placed on employees, are not controlling and the entire circumstances must be examined" *See* Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) ("putting on an 'independent contractor' label does not take the worker from the protection of the Act."); see also FedEx Home Delivery v. NLRB, 563 F.3d 492, 496 (D.C. Cir. 2009) (stating that there is no magic phrase to be applied and all incidents of the relationship must be examined under the common law standard).

32. Courts in this circuit has stated about label of Independent contract "Rather, the test is whether, based on the facts, an entity "possesses sufficient control over the work of an employee of another

company." *Ahanotu*, <u>466 F. Supp. 2d at 392</u> also See *Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *16

(D. Mass. Mar. 31, 2021). A direct contractual relationship is not a factor in determining joint

employer status. *See Orell*, <u>203 F. Supp. 2d at 62-63</u> (listing the factors). But the focus on the actual

relationship between the worker (Plaintiff) and his employer (Defendants) aims to avoid use of "artful

contract drafting ... as a subterfuge to avoid liability ... when the agreement lacks any real foundation

in the facts of the actual working relationship." <u>Bos. Bicycle Couriers</u>, <u>778 N.E.2d at 972</u>. While the

Common Law & Joint Employer Doctrine expanded the control inquiry to include an analysis of the

parties' actual relationship, it did not eliminate the common-law rule that a worker qualifies as an

employee when the employer retains "the right to control the details of the performance." <u>Athol Daily

News</u>, <u>786 N.E.2d at 371</u>.also *SEE Dasilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 95

(D. Mass. 2019).

33. **Second**, the work Plaintiff performs is not performed on MART's premises. Plaintiff concedes on

    Defendants Second argument the work Plaintiff performs was not performed on MART's premises.

34. **Third**, there is no continuous relationship between Plaintiff and MART. Rather, as set forth above,

    MART entered into a Transportation Provider subcontract with CCRD, not Plaintiff. SOF, ¶ 9.

35. Plaintiff has been in an employment relationship with MART, for approximately 4 years. Pursuant to

    MART Contract and Amendment "MART Reserves the right to implement changes or adjustments to

    scheduling procedures/practices", EX. 3 Pg. 38 of 58, 10. / Pl. SOF 85.

36. Pursuant to MART contract MART has the right to control when, where, and how the plaintiff

    performs the job. Pl. SOF 10. Rebecca Badgleys Deposition ("Depo")[1] 1 pg. 33. 19-24 & pg. 34 1-24.

    The work plaintiff did (Transportation) for MART did not require a high level of skill or expertise. Pl.

---

[1] There is only one deposition in the record, it is Rebeca Badgleys deposition, going forward each time plaintiff
references "Depo" it is Rebecca Badgleys deposition Exhibit 7.

SOF 10. / Depo Ex 7. Pg. 57, 14-24. There was a continuing relationship between the worker Plaintiff and the employer MART for approximately 4 years' Pl. SOF10. / Depo pg. 62. 1-10.

37. The Plaintiff and defendant created an employee employer relationship which consisted of defendant calling and emailing plaintiff instructions 5 days a week and some weekends for approximately 4 years.

38. **Fourth**, MART does not have the right to assign Plaintiff additional projects. MART's right to make assignments to CCRD is limited to the provisions of the Transportation Provider subcontract. SOF. ¶ 9.

39. MART the employer has the right to assign additional projects to the plaintiff and or vendor and has done so. Pl. SOF 10. / Ex. 6 email pg. 3-4. MART the employer sets and controls the hours of work and the duration of the job. Pl. SOF 10. / Ex.1 pg. 5. Defendant Rebecca Badgley denied then admitted after plaintiff produced an email sent from her to plaintiff that she stated a trip that was assigned to plaintiff was without authorization, as plaintiff had complained of, Ex. 7 page 54, 8-24 / page 55 1-24 / page 56 1-2.

40. Defendants also admitted that "CCRD hires drivers to perform *trips assigned* under the Transportation Provider Subcontract between MART and CCRD". See Def SOF, ¶ 29, 30.

41. MART promulgates work rules and conditions of employment, MART controls work assignments and issues operating instructions. Ex. 3, Page 3 of 58 Introduction [2] / Pl. SOF 10.

---

[2] MART in their INTRODUCTION in the contract informs the world that The Commonwealth of Massachusetts and MART as their Broker has retained the right to control and manage any subcontractor, driver ,vendor including Plaintiff.  The Commonwealth of Massachusetts has established a statewide Human Service Transportation (HST) coordination initiative, which utilizes a Broker system of managing transportation services for eligible Consumers from various programs and state agencies (HST Brokerage System). Selected Regional Transit Authorities act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers. By participating in the HST Brokerage System, the Transportation Provider is under contractual agreement to provide safe, professional, and on-time transportation service, which is provided with dignity and respect and in the least intrusive way possible for eligible HST Consumers. It is the Transportation Provider's responsibility to be aware of, and to comply with all terms, conditions, and requirements of its contractual agreements with the HST Broker. The

42. **Fifth**, MART does not set the hours Transportation Providers are willing to work. Rather, those hours are set by the Transportation Provider. Here, Plaintiff set the hours that he and other CCRD employees were willing to work. Plaintiff. SOF, ¶¶ 18, 19, 33. Plaintiff did not submit his SOF as MART suggested in the above line.

43. The employer MART has the right to assign additional projects to the worker and has done so Pl. SOF 10. Ex. 6 email pg. 3-4. The employer MART sets and controls the hours of work and the duration of the job Depo pg. 33. 19-24 & pg. 34 1-24. Ex.1 pg. 5.

44. Pursuant to defendants' contract and Amendments the plaintiff is considered a sub-contractor Def Ex. A, 9., MART contract MART has the right to control when, where, and how the plaintiff performs the job, Depo pg. 33. 19-24 & pg. 34 1-24

45. **Sixth,** Plaintiff is not paid by the hour, week, or month. Rather, MART pays CCRD based on the rates CCRD submits. Plaintiff submitted CCRD's rates to MART and changed CCRD's rates on occasion. SOF, ¶¶ 16, 17, 32.

46. Plaintiff the worker is not paid by the hour, week, or month rather than the agreed cost of performing a particular job plaintiff is paid from MART under the contract he signed every 45 day. Ex.18. Page **3** of **13 #9**.

47. **Seventh,** CCRD hires drivers to perform trips assigned under the Transportation Provider Subcontract between MART and CCRD. MART does not hire CCRD's employees and did not hire Plaintiff. Similarly, a vendor, such as CCRD, does not have to seek MART's approval to hire and employee. MART is not the hiring or firing authority for a vendor's employees, but by contract, MART has the right to request the removal of an individual from working on MART's contract. SOF, ¶ 29, 30.

---

contractual agreement between the HST Broker and the Transportation Provider is referred to herein as the "Transportation Provider Subcontract."

48. MARTS Supervisors & Managers discharged and or fired several of plaintiff's and vendors employees / drivers See Ex, 5 emails pg. 2-8. Pl. Affidavit 48. "MART has the right to remove a driver from the contract because it is theirs, Ex. 7, Page 31, lines 7-24 (admitted), and page 32-line l-4.

49. Pursuant to defendants' contract and Amendments "MART reserves the right to Terminate Transportation Provider Subcontract and require the removal of Transportation Provider personnel", Ex. 3, Page 1 of 58, / Page 5 of 58 subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of 58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,3.

50. Pursuant to defendants' contract and Amendments "The Broker reserves the right to require on-going evaluation procedures.  Non-performance or deterioration of quality of service may result in disciplinary action, reduction of work, suspension and/or contract termination". See Ex. 18, pg. 11 of 13, f. and "The Broker will monitor equipment and service performance". See Ex. 18, pg. 11 of 13, g.

51. Pursuant to MARTS contract and Amendments "Quality of service issues on behalf of the Provider will result in warnings, fines and additional administrative actions such as re-trainings, etc.  Severe or continued violations of contract standards may result in reduction of work, suspension and/or contract termination. Transportation Providers may appeal fines within 10 days from the date of the fine letter. All appeals must be submitted in writing". See Ex.18, pg. 11 of 13, i,1.

52. MART has the authority to hire or fire employees Ex. 5. 2-8. MART promulgates work rules and conditions of employment, MART controls work assignments and issues operating instructions. Ex. 6 pg. 3-9, Pl. Affidavit 3-9. Depo Ex 7. Pg. 57, 14-24.

53. **Eighth,** MART does not provide Plaintiff with any benefits. In fact, CCRD is required to provide MART proof that it maintains workers' compensation insurance for its employees, including Plaintiff. SOF, ¶¶ 11 and 12. Defendants are correct they provide no benefits.

54. Plaintiff the worker is not paid by the hour, week, or month rather every 45 days. MART supervises the plaintiffs' day-to-day activities and MART has the authority to hire or fire employees Ex. 5. 2-8.

55. MART is in the same business as Plaintiff transportation Ex. 3, Page 3 of 58. The plaintiff and MARTS supervisors believe that they are in an employer-employee relationship Ex. 18 2-76.

56. MART has Transportation Provider subcontracts with over two hundred (200) Vendors. The Performance Standards are incorporated into all Transportation Provider Subcontracts that MART has with its over two hundred Vendors. Def Ex. A,  8. DEF SOF 8.

57. Defendants has admitted in their SOF that they retained for itself sufficient control of the terms and conditions of employment of the Plaintiff and had the right to control and direct the means and manner in which the Plaintiff (employee) perform transportation services see below.

58. MART is in the same business as plaintiff, "MART is a regional transportation authority established pursuant to G.L. c. 161B. Ex. A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B. That has a Broker system of managing transportation services for eligible Consumers from various programs and state agencies (HST Brokerage System) Ex. 3, Page 3 of 58 Introduction. Pl. SOF 31.

59. "MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS"). MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis". Ex. A, 5 / Def SOF 5.

60. "All Transportation Providers ("Transportation Providers" or "Vendors ') are required to comply with the Transportation Provider Performance Standards (Amendments)". Def Ex. A, 7. Def SOF 7.

61. "Pursuant to Performance Standards, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers". DEF Ex. A, 12. DEF SOF 11.

62. "CCRD was placed on a no-work hold in April 2020 due to the expiration of CCRD's workers compensation insurance. DEF Ex. B - Email dated September 9, 2020. DEF SOF 12.

63. "In addition, the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy".  Ex. A, , 13. / Ex. C - Deposition of Rebecca Badgley, p. 48. / DEF SOF 13.

MARTS MANDATORY REPORTING REQUIRMENTS

64. Pursuant to MARTS Contract and Amendments it required Plaintiffs "to submit daily, weekly, monthly and yearly reports it states: "Transportation Provider will be required to submit to the Broker additional reporting information on a monthly basis". Ex. 3, Pg. 41-42 of 58 subsection D.1. a-h. Ex 3. Pg. 22 of 58 # 9.

65. MART 2016-2021 Contract and Amendments uses the word "**shall**" 156 times, According to Black's Law Dictionary, the term "shall" is defined as generally imperative or mandatory. ... It has a peremptory meaning, and it is generally imperative or mandatory. The U.S Supreme Courts states "The word `shall ' is ordinarily `the language of command.'" *Anderson* v. *Yungkau*, <u>329 U.S. 482, 485</u> (1947) (quoting *Escoe* v. *Zerbst*, <u>295 U.S. 490, 493</u> (1935)). *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 184-85 (2003).

66. MARTS Amendments states the following reporting requirements are mandatory see below and Ex. 3, Page 41 of 58 subsection D.1. /  Page 41 & 42 of 58 subsection D,1. / Page 22 of 58 #9".

a.   "<u>End of month odometer reading</u> on vehicles used for brokerage contract. Update vehicle inventory with new or deleted vehicles". Depo Ex.7 page 6, 16-24 (admitted)..

b. "<u>Total vehicle hours</u>: that the vehicle is on the road in service to MART for the month. Example: time driver leaves the garage to begin brokerage work until break and time back in service till next break or end of day". Depo Ex. 7, page 6, 18-24 / Page 7, 1-4 (admitted).

c. "Accident Vehicle Miles – the odometer reading of the vehicle at the time of the accident". Depo. Ex. 7, page 7, 3-9 (admitted).

d. "Report Dead Head Miles for WC vans or vehicles with a capacity of 14 or more passengers – reporting of mileage from start to first pick up and from last drop-off to garage at end of day unless there is a significant break, then would need same after break". (Did not apply to plaintiff).

e. "Percentage of fully allocated expenses in service to MART broken down by the following categories (see below example based on $40,000 monthly invoice)": Depo Ex. 7, page 8, 1-15 (admitted).

1. "Vehicle Operations – driver salary, dispatcher salary, fuel =$32,000 (80%)" Depo Ex 7 page 8, 16-24 / Page 9, 1-19 (admitted).

2. Vehicle Maintenance – oil changes, tires, mechanic salary - $4,000 (10%)"  Depos Ex 7 page 9, 20-24 / Page 10, 1-9 (admitted).

3. Non-Vehicle Maintenance – janitor salary, utility bills, cleaning supplies, etc = $2,000 (5%)"  Depo Ex. 7 page 10,14-24 / page 11,1-9 (admitted).

4. General Administration – Office staff salaries, profit, admin overhead = $2,000 (5%)" Depo Ex. 7, page 11, 10-24. / Page 12, 1-24. Page 13, 1-15 (admitted).

f. Fuel Cost – total cost of fuel for the month". Depo Ex. 7, page 13, 16-24 / Page 14, 1-4 (admitted).

g. Gallons of Fuel – total number of gallons of fuel purchased." Ex. 7, Page 14, 7-15 (admitted).

h. Miles per Gallon – average number of miles that a vehicle travelled on one gallon of fuel for each vehicle used for brokerage contract. Ex. 7, Page 14, 16-24. / Page 15, 1-2 (admitted).

## MART CONTROLED THE PLAINTIFF'S CAPACITY TAB
## THE HOURS AND AMOUNT OF WORK PLAINTIFF RECEIVED

67. MARTS capacity tab is the lifeline of plaintiff's economic means, and it was deliberately taken away from plaintiff on or about April 2016 after he protest discriminatory and retaliatory treatment, MART refused to allow plaintiff to change his Capacity tab (Ex.1pg. 1-8) in their vendor portal the Capacity tab changes the plaintiffs operating hours and how many trips (assignments) the plaintiff could perform and receive daily.

68. MART informed plaintiff my capacity was mistakenly set to 0 mistakenly See Ex.2, Page 5, MART Title VII internal complaint responses. months later I was informed by my 2nd contract manager Michell Moyo that only MART has the capability to adjust plaintiffs' capacity tab, that if I want to change my hours I would have to submit a form and request hour changes and attached a form, and that MART does not give any vendor the ability to change his capacity, Ex. 1 pg. 1-8 email.

69. MART controlled the amount of work a vendor would request through his capacity tab she stated: "Yes, we did control that based on the size of the vendors fleet", Ex. 7, Page 33, line 19-23 (admitted). Defendant admitted that plaintiff would have to email MART contract Dept. to request that his capacity be adjusted, and they only MART would decide if plaintiff could add capacity to receive work and that MART controlled the amount of work offered Ex. 7, Page 34, line 1-5 / page 35 line 1-3 (Admitted), therefore MART the employer has the right to control when, where, and how the worker performs the job.

70. MART states "The Transportation Provider is a subcontractor to the Broker (MART) and is subject to the provisions of the Commonwealth Terms and Conditions and Standard Contract terms", Ex. 3, <u>Page 5 of 58 subsection B.4.</u> This is a continuing relationship between the worker and MART the employer.

71. Plaintiff could not get paid for wait time or cancelations a reasonable driver would believe he would be paid each time he arrives at a home regardless of whether he successfully delivers the product client. Otherwise, through no fault of his own, he would risk driving for hours and receiving no pay if multiple clients are not home or MART screwed up a client's schedule, Dasilva v. Border Transfer of Ma, Inc., 296 F. Supp. 3d 389 (D. Mass. 2017).

30. MART has mandatory Reporting requirements for all below requirements, daily log sheet See Ex. 3 Page 20 of 58 subsection V.13. Plaintiff must perform a daily vehicle inspection and keep it on file for three months and wear an I.D Badge. Ex. 3, Page 23 of 58 line 14 &15.  MART must be named as an "additional insured" on all the policies before transporting any Agency Consumers, Ex.3, page 10 of 58 line. E. MART also requires more than the state mandated insurance for vehicles Ex. 3, Page 38 of 58 # 2.b. There is a continuing relationship between the worker and the employer.

72. Defendant Rebecca admitted that MART request an end of the day report every day at 8 a.m. the following business day. Ex. 7, Page 23, lines 10- 13 (admitted).

73. MART also reserves the right to request a change or removal of operator/driver or Transportation Provider personnel for any reason, Ex. 3, Page 38 of 58 # 10. MARTS Supervisors & Managers fired several of plaintiff's employees / drivers Ex. 5 emails pg. 2-8. MARTS Amendments states "Upon request, provide the Broker, HST Office or Agency with the credentials of any *Transportation Provider employee.* The Broker or Agency has the right to deny the approval of any driver or Monitor, or to

require the Provider <u>to replace</u> any driver or Monitor in the performance of HST services, for any reason". Ex. 3, Page **7** of **58 # 5.**

74. "MART reserves the right to Terminate  Transportation Provider Subcontract and require the removal of Transportation Provider personnel", Ex. 3, Page 1 of 58, / Page 5 of 58 subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of 58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,3.

75. MART demands the plaintiff shall provide a list of vehicle used to transport MARTS clients" Ex. 3, page 6 of 58 subsection A.2, 6., MART further states only MART can authorize passengers that can ride in drivers' vehicles while MARTS clients are in vehicle see Ex. 3, Page 8 of 58 subsection 6.

76. Deponent Rebecca Bradley contradicted the contract is in her deposition she testified under oath that "MART does not have to give the vender authorization to drop a client" , Ex. 7 page 33 1, line 2-6. MARTS Amendments states something totally different, Ex.3 pages 8 of 58 line 8-9 states "Vendor *must* get prior authorization from MART to drop or suspend a client".

77. MART issues mandatory instructions how to driver their client's "vehicles should pull into driveways, but only when there is sufficient space for the vehicle to turn around and exit the driveway forward facing, and in the case of private driveways, with the owner's permission". Ex. 3, Page 9 of 58 subsection 13 & 13.A. Therefore MART the employer has the right to control when, where, and how the worker performs the job.

78. MARTS Amendments issue instructions on dress code and on surprise inspection. Ex. 3, Page 20 of 58 subsection V.1./ Ex. 3, Page 26 of 58 # 4. MART has authority to fine Plaintiff and or vendor Ex. 3, Page 26 of 58 Subsection C.2.

79. MARTS requires mandatory vendor portal training before plaintiff or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year, Ex. 3 Page 6-10. A through D.,

80. Rebecca testified at Depo that "MART requires its vendors to abide by safety requirements, to have certain policies of insurance, to meet certain vehicle requirements and offers vendor portal and orientation training" Ex. 7 Page 85 line 10-15 / Page 86 line 2-16 (Admitted).

## MART CONTROL PLAINTIFFS' HOURS OF OPERATION

81. MART controlled plaintiff hours of operation, Ex. 4 pg. 3-4, therefore MART the employer has the right to control when, the worker performs the job.

82. MARTS Supervisors and Managers also warned me that I had to answer my phone before and after hours or get fined, they pointed me to their contract Ex. 3, page 13 of 58 line. G. 1 & 2.

83. Defendant Rebecca admitted that MART didn't require a vender to have a degree, high school diploma Ex. 7-page 84 line 8-1, the work does not require a high level of skill or expertise.

## PLAINTIFF EXAUSTED ALL REMIEDIES EEOC RIGHT TO SUE LETTER

84. On or about February 11, 2019, Plaintiff filed a complaint (Charge) with the United States Equal Employment Opportunity Commission ("EEOC") against MART. According to the Charge, "defendants" exerted and had control over [Plaintiff's] tasks and could control [his] employment status, "On February 15, 2019, EEOC sent plaintiff a right to sue letter and timely filed his Verified complaint on May 10, 2019, and then Amended his complaint of On June 14, 2019. Ex. 8.

85. Plaintiff pointed out the fact that the defendants have over 15 employee's plaintiffs named over 16 in his Second Amended Complaint Ex.  16. Line 38,78 & 97.

86. Plaintiff has created triable issue by submitting evidence that  "a worker is in an employment relationship with an employer", "[t]he employer has the right to control when, where, and how the worker performs the job;",

"[t]he work does not require a high level of skill or expertise;",  "[t]here is a continuing relationship between the worker and the employer;" **,**  "[t]he employer has the right to assign additional projects to the worker;" **,** "[t]he employer sets the hours of work and the duration of the job; **,** "[t]he worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job; **,** "[t]he work performed by the worker is part of the regular business of the employer;" , "[t]he employer is in business;" **,** "[t]he worker is not engaged in his/her own distinct occupation or business;" , "[t]he employer provides the worker with benefits such as insurance, leave, or workers' compensation;" , "[t]he worker is considered an employee of the employer for tax purposes;" ,"[t]he employer can discharge the worker;" and the duration of the relationship between the parties;, whether the hiring party is in business;**,** **S**upervises the employee's day-to-day activities, **H**as the authority to hire or fire employees, **P**romulgates work rules and conditions of employment, **C**ontrols work assignments and **I**ssues operating instructions "under traditional principles of agency law," *Walters,* 519 U.S. at 211, 117 S.Ct. 660, " *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 390 (1st Cir. 2016) "*Reid,*490 U.S. at 751–52, 109 S.Ct. 2166 , *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 390 n.4 (1st Cir. 2016)

## CONCLUSION

87. For all these reasons, the Court should deny Defendant's motion for summary judgment on the issue of Defendants are deemed plaintiff employer under the Common Law or The Joint Employment Doctrine and Plaintiff has exhausted all remedies with his EEOC.

## CERTIFICATE OF SERVICE

I, Paul Jones the plaintiff certify that the above document was filed electronically through the ECF System and is available for viewing and downloading from the ECF System, that it will be sent electronically to

counsel of record identified as registered participants on the Notice Electronic Filing, and copies will be sent to those indicated as non-registered participants.

Respectfully Submitted

Paul Jones   /s/ Paul Jones                                                      September 5, 2021
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich
Deborah I. Ecker
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007