UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL JONES,<br><br>    Plaintiff,<br><br>v.<br><br>MONTACHUSETTS REGIONAL TRANSIT AURTHORITY  et al<br><br>    Defendants. | Civil Action No. 4:19-cv-11093-TSH |

**PLAINTIFFS RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS 56.1 IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGEMENT**

Pursuant to Local Rule 56.1, Plaintiffs hereby respond to Defendants Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, Plaintiffs are not, in the interest of not duplicative filings of matters contained in the record, resubmitting exhibits, all of which are contained within the record.

1. Plaintiff, Paul Jones ("Plaintiff') is a director, dispatcher, and driver for Commonwealth Community Recovery Division, lnc. ("CCRD"). Complaint, ¶ 42.

   **Plaintiff's Response Disputed in Part**: Plaintiffs is the manager, owner one many dispatchers in the last 4 years at Commonwealth Community Recovery Division Inc. (CCRD) Complaint, ¶ 42.

2. MART is a regional transportation authority established pursuant to G.L. c. 161B. Exhibit A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B.

   **Plaintiff's Response" Admitted**

3. MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts. Exhibit A. 3

   **Plaintiff's Response Disputed in Part:** MART provides public and private transportation in over 22 cities and Towns in Hampden, Worcester, Suffolk, and other Counties.

4. Through its Dial-A-Mart service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips. Exhibit A, ¶ 3.

   **Plaintiff's Response:  Admitted**

5. MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS"). MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis. Exhibit A, ¶ 5.

   **Plaintiff's Response:  Admitted**

6. The Commonwealth has established a statewide Human Services Transportation coordination initiative, which utilizes a Broker system of managing transportation services for eligible consumers from various programs and agencies ("HST Brokerage System"). Selected Regional Transit Authorities such as MART act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers. The contractual agreement between the HST Broker and the Transportation Provider is referred to as the "Transportation Provider Subcontract." Exhibit A, ¶ 6.

   **Plaintiff's Response:  Admitted**

7. All Transportation Providers ("Transportation Providers" or "Vendors ') are required to comply with the Transportation Provider Performance Standards ("Performance Standards"). Exhibit A¶ 7.

   **Plaintiff's Response Disputed :** All Transportation Providers ("Transportation Providers" or "Vendors") are required to comply with the Transportation Provider Performance Standards ("Performance Standards"), MART Contract, Amendments, MARTS Managers, Supervisors and lower employees' instructions.

8. MART has Transportation Provider subcontracts with over two hundred (200) Vendors the Performance Standards are incorporated into all Transportation Provider Subcontracts that MART has with its over two hundred Vendors. Exhibit A, ¶ 8.

   **Plaintiff's Response Disputed**, Defendants have approximately 200 or more vendors working for them in the Commonwealth of Massachusetts.

9. MART entered into a Transportation Provider Subcontract ("Subcontract") with CCRD on October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with MART on December 12, 2015. Exhibit A,¶ 9.

   **Plaintiff's Response Disputed:** MART entered into a Transportation Provider Subcontract ("Subcontract") with CCRD and Paul Jones on October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with MART on December 12, 2015. See Contract signature of Paul Jones EX. 14 pg. 83.

10. Under the Performance Standards contained in the Subcontract, a Transportation Provider is defined as a "local transportation delivery entity under contract to a Broker for the direct provision of transportation services (vehicles and drivers) for HST Consumers. The Performance Standards specifically provide that the Transportation Provider is a "subcontractor to the Broker" and is subject to the provisions of the Commonwealth Terms and Conditions and Standards Contract terms. Exhibit A, ¶11.

    **Plaintiff's Response Disputed in Part:** Under the Performance Standards, a Transportation Provider is defined as a "local transportation delivery entity under contract to a Broker for the direct provision of transportation services (vehicles and drivers) for HST Consumers". The Performance Standards specifically provide that the Transportation Provider is a "subcontractor to the Broker" and is subject to the provisions of the Commonwealth Terms and Conditions and Standards Contract terms. Plaintiff is also subject to the provisions of the MARTS Supervisors, Managers, and lower staff whenever they want to stray from the Commonwealth Terms and Conditions and Standards Contract terms or Plaintiff and CCRD face termination, fines or work is taken or reduced.

11. Pursuant to Performance Standards, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers. Exhibit A, ¶ 12.

**Plaintiff response Dispute:** False MART demanded that CCRD a corporation get workers compensation for all employees/agents including owner(s) even when the plaintiff had no workers..

12. CCRD was placed on a no-work hold in April 2020 due to the expiration of CCRD's workers compensation insurance. Exhibit B - Email dated September 9, 2020.

**Plaintiff's Response Disputed in part:** CCRD shut down on or about Apr 9, 2020, due to Corvid 19 Virus ,Plaintiff took all insurances off his policies except plaintiff Workers Comp Policy did not expire plaintiff got audited after CCRD closed office the Insurance policy was closed due to CCRD not being available due to the Corvid-19 pandemic to take an audit, we were closed. Plaintiff did eventually complete the Audit of the Workers Compensation program but did not continue with the policy as we have closed since April 2020. Also plaintiff should not have to get insurance I have no employees.

13. In addition, the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy. Exhibit A, ¶, 13; Exhibit C - Deposition of Rebecca Badgley, p. 48.

**Plaintiff's Response Admitted**

14. As courtesy, MART provides a new vendor, portal training before MART assigns work to the vendor so that the vendor understands how the system works. The training describes how the vendor will accept the work being offered, how the billing will be done and how to file and respond to complaints. Exhibit C, pp. 27-29.

    **Plaintiff's Response Disputed:** Defendants failed to inform the court that their Amendments to the Contract and Rebecca Badgleys Depo testimony stated, "vendor portal training is mandatory: "Orientation - Drivers and Monitors (at the Transportation Provider's expense) must be available to attend an orientation with Facility staff within two weeks of hiring and annually thereafter". This may include Sensitivity and Human Rights training. The Transportation Provider shall initiate contact with the Facility to ensure compliance and to coordinate the scheduling of the orientation. The orientation will not exceed one hour in duration and its purpose is familiarization with Facility operations and sensitivity to Consumer needs, See Ex.3 Amendment's page 13 of 58 line.F.2

    Defendant Rebecca Badgley testified during her deposition "MARTS requires *mandatory* vendor portal training (Not a courtesy) before plaintiff or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year, Exhibit 3 Page 6-10. A through D., also See Depo Exhibit 7 Page 27 ¶ 3-7. / Page 85 ¶ 10-15 / Page 86 ¶ 2-16. This contradicts defendant #14 SOF in full.

15. MART uses an online portal system to assign rides to its Transportation Providers. The portal system assigns rides to the lowest cost qualified Transportation Provider. If the lowest cost qualified Transportation Provider

does not accept the ride, the online portal system goes down the list to the next lowest cost qualified Transportation Provider. Exhibit A, ¶14.

**Plaintiff's Response Disputed in part:** This is what MART states in their Contracts & Amendments, but MART overrides the vendor portal system by reducing Plaintiff, CCRD and other drivers' capacity to 0 by manually setting in their vendor portal, once this is done, a vendor will not receive any assignments through MARTS online portal system unless MART manually decide to give a vendor an assignment through the online portal system manually, or through their IVR telephone system. The portal has a back door that can disable assigning trips to the lowest bidder, once this is done MART has control of all assignment, then MART gives plaintiff only the assignments over and over, that have been rejected or problematic that MART preferred vendors do not want. Ex. 10 pgs.2-4.

Deponent Rebecca Badgley stated in her deposition "Yes, we did control that (Capacity Tab) based on the size of the vendors fleet", See Depo Exhibit 7, Page 33, ¶19-23 (she admitted). Defendant went on to say that plaintiff would have to email MART contract Dept. to request that his capacity or hours to be adjusted, and they only MART would decide if plaintiff could add capacity to receive work and that MART controlled the amount of work offered Depo Exhibit 7, Page 34, ¶ 1-5 / page 35 ¶ 1-3 (She Admitted), MART the employer has the right to control when, where, and how the worker (Plaintiff) performs the job.

16. Transportation Providers submit rates to MART for use in the vendor portal system. Vendors are allowed to adjust their rates quarterly. MART does not set vendor rates. Exhibit A, ¶, 15.

**Plaintiff Response Disputed in part:** Provider does Providers and submit rates to MART for use in the vendor portal system. Vendors are allowed to adjust their rates quarterly. MART has the ability to override plaintiff set rates and desired areas to work by adjusting the capacity tab to 0 , MART also give vendors bogus previous rate sheets to base their new rates of the rate sheep MART provides is compromised as to make the vendor believe MARTS vendors are actually bidding much lower this is how they set vendors rates. Once this is done MART is setting the rate and deciding which area plaintiff or a vendor will work in.

17. Plaintiff submitted CCRD's rates to MART and changed CCRD's rates on occasion. Exhibit D - Emails between Plaintiff and MART.

    **Plaintiff's Response Disputed in part:** CCRD submitted rates to MART and changed rates on occasion as stated above this was all irrelevant because MART controlled the capacity tab that had the effect of skipping plaintiff / vendor CCRD in the vendor portal, then MART would hand pick rides in certain area that they needed to be performed thus overriding the vendor portal See Exhibit 1 pg. 1-8 email.

18. Transportation Providers set the hours that the Transportation Provider is willing to work. MART does not set the hours that the Transportation Provider is available to work. Exhibit A, ¶ 16.

    **Plaintiff's Response Disputed in part:** Transportation Providers did set the hours that the Transportation Provider is willing to work at the beginning of contract once Plaintiff set hours, MART staff would demand by email and Amendments "to be available up to 9pm to answer MART automatic call and their dispatcher and have a 24-hour line available to be contacted", See email Exhibit 4 pg. 3-4, therefore MART set Transportation providers time they over road the system.

MARTS Supervisors and Managers also warned me that I had to answer my phone before and after hours or get fined, they pointed me to their contract See Exhibit 3, page 13 of 58 line. G. 1 & 2. MART required plaintiff and all Transportation providers to put in a request from MART to get approval to change their working hours See Ex. 4 pg.2-4.

19. Plaintiff set the hours that CCRD was willing to work. Exhibit D.

   **Plaintiff's Response Disputed in part:** Plaintiff had to send the hours that CCRD and plaintiff was willing to work to get approval from MART sometime this took months to get changed, it did not matter if plaintiff submitted his operating hour for opening and closing, MART would demand by email and Amendments "to be available up to 9pm to answer MART automatic call and their dispatcher and have a 24-hour line available to be contacted", this caused plaintiff undue stress on his family, unable to spend quality time, See email Exhibit 4 pg. 2-4, therefore MART the employer has the right to control when, the worker performs the job, this is an admission that MART is Plaintiff joint employer and controls the manner and means of plaintiff day-day work.

20. The capacity tab in the portal system contains the vendor's hours of service. Exhibit C, pp. 75-76.

   **Plaintiff's Response Disputed Part:** Pursuant to MARTS Contract and Amendments The capacity tab in the portal system contains the vendor's hours of service and displayed the daily and hourly capacity plaintiff had to receive assignments, during Rebecca Badgley Depo she was angry or defensive and not forth coming to answering simple questions regarding the Capacity Tab Depo Ex.7 pgs.71-79

21. The Transportation Provider portal starts to assign trips to Transportation Providers beginning with the lowest cost qualified vendor for trips three or more days in advance of the scheduled trip. *Exhibit A,* , ¶17.

   **Plaintiff's Response Disputed in full**: The Transportation Provider portal starts to assign trips to Transportation Providers beginning with the lowest cost qualified vendor for trips three or more days in advance of the scheduled trip when its noy set to manual. MART set their portal to manual it overrides the system and allows whom they want to be assigned trips no matter what the vendors bids are, as trips are skipped over vendors whom capacity tab is set to 0, this cause they system to believe vendors are full and the assignment will go to next higher bid.

   MART informed plaintiff my capacity was mistakenly set to 0 mistakenly even after I complained for months See Ex. 2, Page 5, also See Ex. 1 pgs. 2-12

22. For next day or same day requests for transportation, MART assigns the trips to Transportation Providers by telephone. As with the vendor portal system, MART assigns trips to its Vendors starting with the lowest cost qualified Vendor. MART attempts to contact the Transportation Providers three times by telephone to offer the trips before moving on to the next lowest cost Vendor. Exhibit A,¶ 18; Exhibit C, p. 45.

   **Plaintiff's Response Disputed in FULL**: Again this can only happen if MART doesn't set their Vendor Portal of IVR system to Manual, MARTS Scheduling department controls the IVR system from their office they can program it to who they want to offer the trips MART wants over and over even if it is rejected and

most times will not offer the Plaintiff any other trips until plaintiff excepts what they are offering , the vendor most times must except it or get no work at all See Exhibit 10 pg. 2-4 email page

23. If a vendor marks the vendor's portal as full for a particular day, the call out system will stop the call out system from offering the vendor work for that particular day. Exhibit C,p.46.

   **Plaintiff's Response Dispute in full:** Plaintiff has marked his vendor portal full 100;s of time and MART overrides it (Manually) and keeps offering plaintiff trips MART needs to be filled, most times it problematic, undesirable clients, non-cost-effective trips or trips their preferred vendor has dropped.

24. Ultimately a vendor controls what assignments offered to the vendor, the vendor accepts or declines. While the capacity tab shows what hours the vendor operates and the volume of work being offered, the vendor controls what assignments to accept. The capacity is based on what a vendor's fleet size can handle in the course of a day. Exhibit C, pp. 76-79,· Exhibit D.

   **Response Plaintiff's Disputed in full:** The vendor can never control what assignments offered to the vendor, the vendor can accepts or declined what MART is offering him Manually of through lowest bid. MART has complete control of the vendor tab they can make it **display** whatever they want, vendors will be reprimanded if MART thinks the vendor is not working in MARTS best interest.

   MART controlled the amount of work a vendor would request through his capacity tab Rebecca stated this in her Depo, she stated: "Yes, we did control that based on the size of the vendors fleet", See Depo Exhibit 7, Page 33, line 19-23 (admitted).

Defendants admitted that plaintiff would have to email MART contract Dept. to request that his capacity be adjusted, and they only MART would decide if plaintiff could add capacity to receive work, and that MART controlled the amount of work offered, See Depo Exhibit 7, Page 34, line 1-5 / page 35 line 1-3, therefore MART the employer has the right to control when, where, and how the worker performs the job.

25. If a trip is already assigned to a vendor and the consumer calls to change the time, if it is in advance, MART will notify the vendor in the vendor portal and the vendor can then notify MART if the vendor cannot accommodate the change. If the customer requests a change the same or next day, MART calls the vendor to see if the vendor can accommodate the change that was made by the customer. Exhibit C, pp. 49-51.

**Plaintiff's Response Disputed in all:** If a client calls and change his time MART will not most times call the vendor they will just change it and plaintiff or driver drivers to the client's house and waste time and it is a no-show, or if the client changes the time in advance most times MART will not inform the plaintiff, driver, dispatcher or vendor it will be in the vendor daily schedule sometimes the changes are before the vendor is even open, plaintiff has experienced MART changing a pick up time from 10:00 am to 5:00am before we are open and I reject the trip and MART fines us for doing so See .Ex. 6 pgs. 3-19.

When this happens MART will fine plaintiff, vendor $100 dollars for each client we reject because MART has changed the time on the client and plaintiff, or vendor cannot accommodate their changes See EX. 6 pg. 19 bottom highlighted.

26. If there is a particular individual that the vendor such as CCRD no longer wants to transport, the vendor can notify MART and MART will remove the individual from being offered to the vendor in the future. A vendor does not have to get permission from MART to drop an individual. Exhibit C, p. 29.

    **Plaintiff's Response Disputed in Full:** MARTS failed to inform the court that their Amendments states the opposite, it states Plaintiff or vendor "could not suspend service for any of MARTS consumers "Ensure that services are not suspended for any Consumer without prior authorization from the Broker".  See Ex. 3, page 8 of 58 #9.

    Deponent Rebecca Bradgley contradicted the contract and Amendments is in her deposition, she testified under oath that "MART does not have to give the vender authorization to drop a client", See Depo Exhibit 7 page 33 1, line 2-6.

    MART also failed to inform the court that the vendor must give 3 days' notice to drop a client and must transport the client 3 consecutive day or a client must be a no-show for three days or vendors can pay a $100 fine to MART and they will remove immediately same day See Exhibit 12. Pgs 2-4 email. Also see Ex. 9 pg. 19 bottom highlighted.

27. If the vendor already has the individual scheduled for a trip, the vendor has to inform MART that the vendor no longer wants to transport the individual so that the individual's trip can be rescheduled. Exhibit C, p. 30.

    **Plaintiff's Response Disputed in part:** Plaintiff and Vendor does and should notify MART, but MART will not allow plaintiff or vendor to drop client without their authorization. Pursuant to MART Contract and Amendments "Vendor *must* get prior authorization from MART to drop or suspend a client". Exhibit 3 pages

13

8 of 58 line 8-9 states and the vendor must give 3 days' notice to drop a client and must transport the client 3 consecutive day or a client must be a no-show for three days or vendors can pay a $100 fine to MART and they will remove immediately same day See Ex. 6 pg. 19, Exhibit 12 email. *As stated in the* FY16-20 Contract: Attachment I, C. 4. Demand Response: Transportation Providers returning work that has previously been accepted by the Transportation Provider are subject to fines and/or reduction of work, or other disciplinary action.

28. Pursuant to the Subcontract a vendor is supposed to update its employee log when a vendor's employees change. Exhibit C, pp. 65-66.

   **Plaintiff's Response admitted:**

29. A vendor does not have to seek MART's approval to hire an employee. Pursuant to the Subcontract for a vendor's employee to drive agency consumers, the vendor's employee must meet the requirements set forth in the Subcontract. Exhibit C, pp. 66-67.

   **Plaintiff's Response Disputed in part:** The plaintiff and vendor must send employee log and all new employees' credential so MART can decide if the new employee meets their guidelines if not MART and their employees will dismiss the new employee yes Plaintiff and vendor had to seek MARTS approval to hire an employee See Ex. 5. Pgs. 2-8.

Pursuant to MARTS Contract and Amendments "The Broker or Agency has the right to deny the approval of any driver or Monitor, or to require the Provider <u>to replace</u> any driver or Monitor in the performance of HST services, **for any reason**". Ex.3, Page 7 of 58 # 5..

Pursuant to MARTS Amendments it states "Upon request, provide the Broker, HST Office or Agency with the credentials of any Transportation Provider employee. See Ex. 3 Page **7** of **58. #5.** this is an admission that MART is Plaintiff joint employer and controls the manner and means of plaintiff day-day work.

30. MART is not the hiring or the firing authority for a vendor's employees, but by contract MART has the right to request the removal of an individual from working on MART's contract. Exhibit C, pp. 31-32, 37-39.

    **Plaintiff's Response Disputed in Full:** Pursuant to MARTS Contract and Amendments "MART has the right to remove a driver from the contract because it is theirs, See Depo Exhibit 7, Page 31, lines 7-24 (admitted), and page 32-line l-4.MARTS Supervisors & Managers fired several of plaintiff's employees / drivers See Exhibit 5 emails pg. 2-8.

    "MART reserves the right to Terminate Transportation Provider Subcontract and require the removal of Transportation Provider personnel", Exhibit 3, Page 1 of 58, / Page 5 of 58 subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of 58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,3.

    MART also reserves the right to request a change or removal of operator/driver or Transportation Provider personnel for any reason, Exhibit 3, Page 38 of 58 # 10.

"Upon request, provide the Broker, HST Office or Agency with the credentials of any <u>Transportation Provider employee.</u> The Broker or Agency has the right to deny the approval of any driver or Monitor, or to require the Provider <u>to replace</u> any driver or Monitor in the performance of HST services, for any reason". Exhibit 3, Page 7 of 58 # 5.

MART has fined and threaten to fire plaintiff and has suspended and fired several of plaintiff employees, for even being hit lightly by another vehicle into their bumper with no damage, no fault of their own See Ex. 5 pgs. 2-8.

31. MART controls the amount of work a vendor can request in its capacity tab based on the size of the vendor's fleet. Mart controls the work to be offered a vendor based on the number of vehicles the vendor has and the size of the vehicles. Exhibit C, pp. 34-35.

    **Plaintiff's Response Disputed in part:** These two statements have been produced as a defense since plaintiff filed his complaint, before plaintiff filed his complaint MART and their Supervisors and Managers informed plaintiff that he was able to control (Capacity) the amount of work CCRD received by adjusting his capacity tab, sometime in 2018 when plaintiff filed multiple internal complaints MART created this defense that they would manage and control a vendors capacity tab after I produce multiple screen shots of the vendor portal capacity tab with a message when plaintiff would try to adjust his capacity the message stated " ***You cannot change capacities as it has been locked by MART".***

    This Mart controls the work to be offered a vendor based on the number of vehicles the vendor has and the size of the vehicles. This is a defense from plaintiff allegations in his lawsuit it was also was put forth by MART once plaintiff started filing internal complaints and protesting and complaining of not getting assignments for over 6 months from the vendor portal and plaintiffs capacity tab was locked by MART essentially cripplingly plaintiff and CCRD from doing any business it was finally admitted to being set to 0. MART employee's defendant Champagne, Jessica, Badgley, Rebecca, Shumovskaya, Tamara, Crystal

16

Geisert, Ivan Roman and Karen Cordio but plaintiff send several emails too these same employees on multiple occasions and they were ignored after I kept being told I could like the other vendors adjust my Capacity Tab, SEE EX. 1 pgs.1-12 and also Ex.2 pg. 5.

**Yes** MART now admits after complaint is file and a Deposition is held MART and defendant now use this statement as a defense "they controls the amount of work a vendor can request in its capacity tab based on the size of the vendor's fleet" See Rebecca Badgley Deposition Testimony ."*Yes, we did control that based on the size of the vendors fleet",* See Depo Exhibit 7, Page 33, line 19-23 (admitted).

Defendant admitted that plaintiff would have to email MART contract Dept. to request that his capacity be adjusted, and then only MART would decide if plaintiff could add capacity to receive work, and that MART controlled the amount of work offered, See Depo Exhibit 7, Page 34, line 1-5 / page 35 line 1-3 (Rebecca Admitted), therefore MART the employer has the right to control when, where, and how the worker performs the job, this is an admission that MART is Plaintiff joint employer and controls the manner and means of plaintiff day-day work.

32. CCRD submitted its requested rates to MART. The rates submitted by CCRD were higher than those of many other MART vendors providing services to EOHHS. Exhibit A, ¶ 21. Exhibit D.

    **Plaintiff's Response Disputed in part:** Plaintiff did submit his rates on behalf of CCRD to MART, but they were not higher than at least 90 % of other vendors this is hearsay from defendants we have not had discovery to flush out everyone rates and pay that will clearly show plaintiff rates where much lower than the other vendors.

33. CCRD also set the hours it was willing to provide transportation services pursuant to the contract from 7:00 a.m. to 3:00 p.m. MART did not set the hours during which CCRD could provide transportation services. Exhibit A, 22; Exhibit D.

**Plaintiff Response Disputed in part:** Plaintiff hours where set form 7 am – 3pm from March 2016 until approximately June 2, 2016, plaintiff requested his hours be changed to 24 hours a day on Jun 2, 2016, at 10:39 AM See Ex. 4 pgs. 3-4 after this change plaintiff and CCRD received very few assignments.

Plaintiff then changed his hours back to 7 am -3pm on or about January 2017, MART kept offering me trips before opening time 7 am, I had no choice but take them because I would have not received enough work to stay in business. See Exhibit 17 Daily logs redacted before 7 am also Exhibit 4 pg. 4.

## CERTIFICATE OF SERVICE

I, Paul Jones the plaintiff certify that the above document was filed and that it will be sent electronically and by First class mail to counsel of record.

Respectfully Submitted

Paul Jones   /s/ Paul Jones                                                            September 6, 2021
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich
Deborah I. Ecker
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com,
mreich@k-plaw.com
(617) 556-0007

# VERIFICATION AND CERTIFICATION OF DEFENDANT SOF

## STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding. I believe that this counter of Defendants SOF is well grounded in fact and warranted by existing law and Firsthand Knowledge by a good faith argument for and the extension, modification, or law.

I believe this counter of Defendants SOF is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s). I have filed it in good faith and solely for the purposes set forth in it.

The plaintiff has reviewed the counter of Defendants SOF , regarding the allegations of which the plaintiff has personal Firsthand knowledge, the plaintiff knows or believes them to be true.

Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing Affidavit is true and correct.

Paul Jones           /s/ Paul Jones
572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

September 5, 2021