UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL JONES,<br><br>     **Plaintiff,**<br><br>v.<br><br>**MONTACHUSETTS REGIONAL TRANSIT AURTHORITY et al.**<br><br>     **Defendants.** | **Civil Action No. 4:19-cv-11093-TSH** |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, plaintiffs present the following statement of undisputed material facts in opposition to defendants motion for summary judgment.

**MART THE EMPLOYER IS IN THE TRANSPORTATION BUSINESS**

1. Montachusetts Regional Transportation Authority (MART) is a transportation broker established pursuant to G.L. c. 161B. Ex. A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B. Def SOF.

2. MART has been in the transportation business for 50 years, DEPO, Ex. 7, pg. 15, 7-10.

3. Defendant Rebecca Badgley (Rebecca) has worked for MART for 32 years and is the director of the MARTS brokerage department. DEPO, Ex. 7, pg. 61, 1-12.

4. Rebecca Badgley is the director of the brokerage operation she oversee the contract that MART has with the State of Massachusetts, she oversee all aspects of the brokerage including call centers and scheduling, she also oversees all the employee defendants Depo Ex. 7 pg16. 4-19., pg. 17. 1-5 also See Pl. affidavit 45.

1

5. To perform these deliveries in Massachusetts, Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS") contracted, with MART, Def Ex. A, 5

6. Broker Contract or HST Contract or Defendants Services Contract states : the currently effective agreement between EOHHS and the Broker whereby the Broker arranges transportation for Agency Consumers through subcontracts with Transportation Providers within a designated HST service area. Amendments Ex. 3, Page 3 of 58.

7. It further states "Program-Based Transportation: Transportation that occurs on a regular schedule ( e.g. daily) to a common program or Destination Facility, typically provided on a scheduled route, grouped trip basis. Program-Based Transportation includes, but is not limited to, transportation to the following programs: Department of Public Health's (DPH) Early Intervention program, Department of Developmental Services (DDS) day/work programs, Department of Mental Health (DMH) Clubhouse programs, MassHealth funded Day Habilitation, and certain programs or services through Massachusetts Commission for the Blind (MCB) and Massachusetts Rehabilitation Commission (MRC)". Ex. 3 Page 4 & 5 of 58.

8. MART has over 15 employees in the brokerage department 2nd Amended Complaint 14-27, 38, 97.

9. To perform the deliveries, MART relies entirely upon individuals, including the named Plaintiffs, who MART classifies as independent contractors (over 200) pursuant to the Contract and Amendments Def Ex. A, 8. Def SOF 8.

10. Pursuant to defendants' contract and Amendments the plaintiff is considered a sub-contractor Def Ex. A, 9., MART contract MART has the right to control when, where, and how the plaintiff performs the job, Depo pg. 33. 19-24 & pg. 34 1-24. The work does not require a high level of skill or expertise, Depo Ex 7. Pg. 57, 14-24 . There is a continuing relationship between the worker and the employer; Depo ppg. 62. 1-10.. The employer has the right to assign additional projects to the worker and has done so Pl. SOF 10. Ex. 6 email pg. 3-4. The employer MART sets and controls the hours of work and the duration of the job Depo pg. 33. 19-24 & pg. 34 1-

24. Ex.1 pg. 5. The worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job Ex.18. Page **3** of **13 #9**. MART supervises the plaintiffs' day-to-day activities, MART has the authority to hire or fire employees Ex. 5. 2-8. MART promulgates work rules and conditions of employment, MART controls work assignments and issues operating instructions. Ex. 6 pg. 3-9, Pl. Affidavit 3-9. Depo Ex 7. Pg. 57, 14-24.

## MARTS CONTRACT CONTROL PLAINTIFF

11. Plaintiff called MART to apply for a drivers position and was told he must have a corporation or LLC to contract with MART sometime in 2014. Pl. Affidavit 2.
12. Pursuant to defendants' contract and Amendments "Transportation Providers ("Transportation Providers" or "Vendors ') are required to comply with the Transportation Provider Performance Standards ("Performance standards"). Def Ex. A, 7. Pl. Affidavit 23.
13. Defendants' states "CCRD was placed on a no-work hold in April 2020 due to the expiration of CCRD's workers compensation insurance. Ex. B - Email dated September 9, 2020. DEF SOF 12.
14. Pursuant to defendants' contract and Amendments" No eating or drinking is allowed in the vehicle while any Consumer is in the vehicle (this also applies to the drivers and Monitors), j. No personal stops while transporting HST Consumers, unless specifically authorized See Ex. 3 pg. 21 of 58, B & J.
15. MART has Mandatory dress code for all drivers & Monitors See Ex. 3 MARTS Amendments page 20 of 58- line V.1.
16. Plaintiff / vendor must ensure that drivers carry and maintain "fact sheets" and/or Transportation Plans and daily attendance and/or trip/route sheets for all Consumers on their route. Driver must maintain the log/trip sheet legibly and completely, See Ex. 3 MARTS Amendments Page 22 of 58 #9.

17. MART requires plaintiff and all vendors in 2018, 2019 and 2020 to carry more insurance than the state mandated requirements for vehicle insurance. Ex 7 pg. 48 7-18, See Pl. Affidavit 46.

18. Pursuant to defendants' contract and Amendments "the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy.Ex. A, 13; Ex. C – Depo Rebecca Badgley, p. 48., DEF SOF 13.

19. Pursuant to defendants' contract and Amendments, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers. Ex. A,12., DEF SOF 11.

20. Pursuant to defendants' contract and Amendments it states, "the following reporting requirements are mandatory", See below and Ex. 3, Page 41 of 58 subsection D.1. /  Page 41 & 42 of 58 subsection D,1. / Page 22 of 58 #9".

21. Pursuant to defendants' contract and Amendments it required Plaintiffs and vendors "to submit daily, weekly, monthly, and yearly reports it states: "Transportation Provider will be required to submit to the Broker additional reporting information on a monthly basis". Ex. 3, Page 41 of 58 subsection D.1. /  Page 41 & 42 of 58 subsection D,1. / Page 22 of 58 #9".

    a. "<u>End of month odometer reading</u> on vehicles used for brokerage contract. Update vehicle inventory with new or deleted vehicles". See Deposition Ex. 7 page 6, 16-24 (admitted)..

    b. "<u>Total vehicle hours</u>: that the vehicle is on the road in service to MART for the month. Example: time driver leaves the garage to begin brokerage work until break and time back in service till next break or end of day". See Deposition Ex. 7, page 6, 18-24 / Page 7, 1-4 (admitted).

c. "Accident Vehicle Miles – the odometer reading of the vehicle at the time of the accident". See Deposition Ex. 7, page 7, 3-9 (admitted).

d. "Report Dead Head Miles for WC vans or vehicles with a capacity of 14 or more passengers – reporting of mileage from start to first pick up and from last drop-off to garage at end of day unless there is a significant break, then would need same after break". (Did not apply to plaintiff).

e. "Percentage of fully allocated expenses in service to MART broken down by the following categories (see below example based on $40,000 monthly invoice)": See Deposition Ex. 7, page 8, 1-15 (admitted).

1. "Vehicle Operations – driver salary, dispatcher salary, fuel =$32,000 (80%)" See Deposition Ex. 7 page 8, 16-24 / Page 9, 1-19 (admitted).

2. Vehicle Maintenance – oil changes, tires, mechanic salary - $4,000 (10%)" See Deposition Ex. 7 page 9, 20-24 / Page 10, 1-9 (admitted).

3. Non-Vehicle Maintenance – janitor salary, utility bills, cleaning supplies, etc = $2,000 (5%)" See Deposition Ex. 7 page 10,14-24 / page 11,1-9 (admitted).

4. General Administration – Office staff salaries, profit, admin overhead = $2,000 (5%)" See Deposition Ex. 7, page 11, 10-24. / Page 12, 1-24. Page 13, 1-15 (admitted).

f. Fuel Cost – total cost of fuel for the month". See Deposition Ex. 7, page 13, 16-24 / Page 14, 1-4 (admitted).

g. Gallons of Fuel – total number of gallons of fuel purchased." See Ex. 7, Page 14, 7-15 (admitted).

h. Miles per Gallon – average number of miles that a vehicle travelled on one gallon of fuel for each vehicle used for brokerage contract See Ex. 7, Page 14, 16-24. / Page 15, 1-2 (admitted).

22. MART has mandatory Reporting requirements for daily log sheet. Ex. 3 Page 20 of 58 subsection V.13. Plaintiff and vendors must perform a daily vehicle inspection and keep it on file for three months and wear an I.D Badge see Ex. 3, Page 23 of 58 line 14 &15.  MART must be named "additional insured" on all the policies before transporting any Agency Consumers, Ex.  3, page 10 of 58 line. E. MART also requires more than the state mandated insurance for vehicles. Ex. 3, Page 38 of 58 # 2.b. There is a continuing relationship between the worker and the employer.

23. Defendant Rebecca admitted that MART request an end of the day report every day at 8 a.m. the following business day.Ex.  7, Page 23, lines 10- 13 (admitted).

24. Pursuant to defendants' contract and Amendments "MART also reserves the right to request a change or removal of operator/driver or Transportation Provider personnel for any reason", Ex. 3, Page 38 of 58 # 10.

25. MARTS Supervisors & Managers discharged and or fired several of plaintiff's and vendors employees / drivers See Ex, 5 emails pg. 2-8. Pl. Affidavit 48.

26. Pursuant to defendants' contract and Amendments it states "Upon request, provide the Broker, HST Office or Agency with the credentials of any <u>*Transportation Provider employee.*</u> The Broker or Agency has the right to deny the approval of any driver or Monitor, or to require the Provider <u>to replace</u> any driver or Monitor in the performance of HST services, for any reason". Ex.3, Page 7 of 58 # 5.

27. Pursuant to defendants' contract and Amendments "MART reserves the right to Terminate Transportation Provider Subcontract and require the removal of Transportation Provider personnel", Ex. 3, Page 1 of 58, / Page 5 of 58 subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of 58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,3.

28. Pursuant to defendants' contract and Amendments "MART has the right to remove a driver from the contract because it is theirs, See Ex.  7, Page 31, lines 7-24 (admitted), and page 32-line l-4.

29. MART demands the plaintiff and vendors shall provide a list of vehicle used to transport MARTS clients" Ex. 3, page 6 of 58 subsection A.2, 6., MART further states only MART can authorize passengers that can ride in drivers' vehicles while MARTS clients are in vehicle See Ex. 3, Page 8 of 58 subsection 6.

30. Deponent Rebecca Bradgley contradicted the contract is in her deposition she testified under oath that "MART does not have to give the vender authorization to drop a client" , See Ex. 7 page 33 1, line 2-6. MARTS Amendments and emails contradicted Rebecca testimony , Ex. 3 pages 8 of 58 line 8-9 states "*Vendor must get prior authorization from MART to drop or suspend a client". MART also requires plaintiff and vendor to "* When returning a standing order (assignment) we accommodate the next 3 business days *See* Ex. *6 pg. 19.*

31. MART the employer has the right to control when, where, and how the worker performs the job. Pl. Affidavit 28. MART is a regional transportation authority established pursuant to G.L. c. 161B. Ex. A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B. That has a Broker system of ***managing transportation services*** for eligible Consumers from various programs and state agencies (HST Brokerage System) Ex. 3, Page **3** of **58 Introduction.** Pl. Affidavit 11.

32. MART instructs Plaintiff and vendors how to driver and waiting requirements See Ex. 3 Pg. 24-25 of 58.

33. MART  the employer has the right to control how the worker performs the job, Pursuant to defendants' contract and Amendments: *"The Transportation provider **shall** (**See page 7 -9 of 58 B.13 Transportation Service Standards**) "Perform all routing functions in accordance with the following safety performance standards. Wherever possible, pick-up and drop-off points are on the same side of the street as the Consumer's home or Destination Facility. Whenever possible, vehicles should pull into driveways, but only when there is sufficient space for the vehicle to turn around and exit the driveway forward facing, and in the case of private driveways, with the owner's permission. No vehicle shall back out of driveway onto the street, except as specified below in 13.a. The appropriateness of the routing and the number of vehicles used are subject to the discretion of the Broker, throughout the duration of the Transportation Provider Subcontract with the Broker. The*

*Transportation Provider shall comply with the Agency's request not to combine routes going to different sites without the Broker's written approval. **13.a** The Provider may allow a vehicle to back out of a driveway only when transporting children and maximum safety for boarding and exiting vehicles requires it". See MARTS 2019 Amendments page 7-9 of 58 B, 13 & 13a.*

34. The skill MART required Plaintiff or vendor to have and to perform the work was not a highly skilled job see Depo. Rebecca pg. 84 8-11. Pl.  Affidavit 32.

35. All the work Plaintiff / vendor did was Integrated into MARTS (Brokerage Department) core business operations, MART is a Transportation Company that has been in the Transportation business for over 30 years, See Depo pg. 61., 1-9. Pl. affidavit 33.

36. The duration of the relationship between the Plaintiff and Defendant have been long term over 3-years, Defendant Rebecca admitted in her depo that  "It's a relationship with MART and the vendor on a daily basis. Ex. 3, pgs. 61, 21-21., pg. 62 1-10. Pl.  affidavit pg. 34.

37. Plaintiff, Vendor, or employees possess no proprietary interest in their respective delivery routes that MART assigns and all customers (clients) belong not to CCRD but to MART, Rebecca admitted in deposition Ex. 7 pg.87, 1-23, also See Defendants Admission Request No. 9., Pl. affidavit 36.

38. Plaintiff and vendors had to report to MART and their staff "if their clients were a no-show when the client did not call the plaintiff or MART (Broker) to cancel a trip at least one (1) hour before the scheduled pick-up time" Ex 3 Page 8 (8) Pl. Affidavit 37. Daily trip sheet identifying each scheduled One-Way Trip with a check box indicating if the Consumer was transported, canceled or was no-show and signed by the driver (and by program staff, if required). Trip sheets should also include Consumer pickup and drop-off times. Ex. 3 pg. Page 26 of 58 VII. 3**.** Pl. Affidavit 38.

39. Defendants controlled plaintiff day-day work schedule that their controlling actions deemed them to be plaintiff's employer under Title VII and the Joint Employer Doctrine, Pl. affidavit 49.

40. Pursuant to defendants' contract and Amendments : Transportation vendors are "required to respond in writing to Broker Passenger Service Reports within 48 hours via MART's Vendor Portal. However, verbal reports and/or responses may be required immediately.  Failure to respond to the Passenger Service Report by the designated deadline or immediate requests for information will result in fine(s) or further disciplinary action". and "Required to report immediately to the Broker any service complaints received", "Required to notify the Broker immediately by telephone of all circumstances of client misconduct and follow-up in writing via MART's Vendor Portal. See Ex. 18, pg. 7 of 13, o, p, q.

41. Pursuant to defendants' contract and Amendments "The Transportation Provider will be required to submit to MART updated Certifications of Insurance to the contract department no later than noon time 3 business days prior to the expiration date of current policy.  If update is not received by the deadline then effective at 1pm on that date the transportation provider's work will be reassigned and provider will be placed on hold until MART is able to verify compliance". See Ex. 18, pg. 8 of 13, t,.

42. Pursuant to defendants' contract and Amendments "The Transportation Provider shall notify MART in writing within five business days of any transfer of such duties to other persons within its organization relative to the Data Privacy and Security Standards and CORI certified individual. See Ex. 18, pg. 8 of 13, u.

43. Pursuant to defendants' contract and Amendments "The Broker (MART) reserves the right to re-assign daily trips/standing order trips and shared ride groups with minimal notification to the vendor. See Ex. 18, pg. 10 of 13, d.

44. Pursuant to defendants' contract and Amendments "A Transportation Provider *must receive prior approval from a MART representative before changing and/or separating a shared ride group.*  All shared rides must be noted as such on submitted invoices.  This means that vehicles may be routed to pick-up or drop-off consumers' enroute to other consumer(s)' origins or destinations in order to allow a greater number of consumers to be carried with available vehicles.  The Broker reserves the right to limit shared rides if they create excessive travel

time for consumers or are otherwise deemed not to be in the best interests of the Consumer. Consumer travel time on the vehicle cannot exceed one- and one-half hours (1 ½)". See Ex. 18, pg. 10 of 13, f.

45. Pursuant to defendants' contract and Amendments "Consumers shall be picked up on a timely basis and arrive to scheduled appointments on time. Transportation Providers must notify the Broker prior to scheduled pickup if their vehicle is going to be late". See Ex.18, pg. 11 of 13, b.

46. Pursuant to defendants' contract and Amendments "Consumers shall be picked up within one (1) hour of their phone call for return trips; this only applies to "will calls for return trips." If the consumer has a set return time, the Transportation Provider must notify the Broker prior to scheduled pick up if their vehicle is going to be late. See Ex. 18, pg. 11 of 13, c.

47. Pursuant to defendants' contract and Amendments "The Broker reserves the right to require on-going evaluation procedures. Non-performance or deterioration of quality of service may result in disciplinary action, reduction of work, suspension and/or contract termination". See Ex. 18, pg. 11 of 13, f. and "The Broker will monitor equipment and service performance". See Ex. 18, pg. 11 of 13, g.

48. Pursuant to defendants' contract and Amendments "Transportation Providers must have internet access at all times". See Ex. 18, pg. 6 of 13, 1.

49. Pursuant to defendants' contract and Amendments "Transportation Providers must accept or decline work via the Vendor Portal daily following the schedule defined by the Broker. Any work that has not been accepted via the Vendor Portal will be removed at an established time set by the Broker. The Broker reserves the right to adjust the timeframe that offered work will remain unaccepted on the Vendor Portal". See Ex. 18, pg. 6 of 13, 3.

50. Pursuant to defendants' contract and Amendments "Transportation Providers returning work that has previously been accepted by the Transportation Provider are subject to fines and/or reduction of work, or other disciplinary action". See Ex. 18, pg. 6 of 13, 4.

51. Pursuant to defendants' contract and Amendments "Transportation Providers temporarily closing their offices and not accepting work for any given timeframe must provide written notification to the Broker at least one week prior to closing date. See Ex.18, pg. 6 of 13, h.

52. Pursuant to defendants' contract and Amendments "Receive and process cancellations from the Broker or Consumers. Notify the Broker immediately via the Vendor Portal of any cancellations, no shows or cancel upon arrivals". See Ex. 18, pg. 6 of 13, i.

53. Pursuant to defendants' contract and Amendments "Maintain records for seven (7) years on the following information. This information will include but is not limited to: Driver/Trips log, copy of driver's license, CORI, RMV, training certificates, etc, See Ex.18, pg. 7 of 13, k, 1.

54. Pursuant to defendants' contract and Amendments "Instructor must have specific training certification or have been trained annually by a certified instructor prior to that individual providing training to drivers, monitors and other personnel as indicated in Attachment K. See Ex.18, pg. 7 of 13, L.

55. Pursuant to defendants' contract and Amendments " *The Transportation Provider shall have the ability to modify their capacity.* MART reserves the right to adjust Transportation Provider's capacities based on performance statistics, quality of service and availability. See Ex.18, pg. 7 of 13, L.

56. Pursuant to defendants' contract and Amendments "The Broker (MART) *reserves the right to refuse payment for service that is late, of poor quality, or violates contract".* See Ex.18, pg. 11 of 13, h.

57. Pursuant to defendants' contract and Amendments "Quality of service issues on behalf of the Transportation Provider will result in warnings, fines and additional administrative actions such as re-trainings, etc. Severe or continued violations of contract standards may result in reduction of work, suspension and/or contract termination. Transportation Providers may appeal fines within 10 days from the date of the fine letter. All appeals must be submitted in writing". See Ex.18, pg. 11 of 13, i,1.

58. Pursuant to defendants' contract and Amendments Plaintiff / vendor "Receive trip scheduling from the Broker electronically via MART's Vendor Portal, DDS Portal, HICS, telephone, fax or Automated Vendor Call Out". See Ex.18, pg. 6 0f 13 g.

59. Plaintiff and vendor was not allowed to mix clients from another contract with MARTS clients in the same vehicles Upon request, "There are to be no unauthorized passengers in vehicles. You cannot combine MART contracted work with other contracted work. Ex. 9 pg. 2, 3.

60. Plaintiff / vendors could only "allow only persons authorized by the Broker to be transported in vehicles with Agency Consumers", Ex. 3, pg. 8 of 58 #6".

61. MART required more than the state mandated vehicle insurance.

62. Defendants stated in the SOF As a courtesy, MART provides a new vendor, portal training before MART assigns work to the vendor so that the vendor understands how the system works. Ex. C, pp. 27-29, this is contrary to Rebecca Depo. Testimony and MARTS Amendments, Ex. 3 Page 6-10. A through D., Ex. 18, pg. 7 of 13, n., Ex.3 pg. 18 & 19 of 58-line C.1 -4. b., Ex. 7 Pg. 85. 10-15 / Pg. 86.  2-16. Pl. Affidavit 50.

63. Pursuant to defendants' contract and Amendments MARTS requires mandatory vendor portal training before plaintiff or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year, Ex.3 Page 6-10. A through D.,

64. Pursuant to defendants' contract and Amendments MART requires Plaintiff or vendor " to have a representative attend mandatory conferences, meetings and trainings as requested by the Broker" See Ex.18, pg. 7 of 13, n.

65. Pursuant to defendants' contract and Amendments MART has a mandatory training for all drivers and Monitors and attend Broker sponsored, coordinated, or arranged meetings as determined to be necessary by MART, Ex. 3 pg. 18 & 19 of 58-line C.1 -4. b.

66.  Pursuant to defendants' contract and Amendments "MART requires vender portal training at their facility least once when a vender starts we have them come in for vender portal training before their work is assigned". She

went on to admit that "MART requires its vendors to abide by safety requirements, to have certain policies of insurance, to meet certain vehicle requirements and offers vendor portal and orientation training", Ex. 7 Pg. 85. 10-15 / Pg. 86.  2-16 (Admitted in Depo Rebecca).

67. Pursuant to defendants' contract and Amendments MARTS requires mandatory vendor portal training before plaintiff or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year, Ex.3 Page 6-10. A through D.,

68. Pursuant to defendants' contract and Amendments "MART requires vender portal training at their facility least once when a vender starts we have them come in for vender portal training before their work is assigned". She went on to admit that  "MART requires its vendors to abide by safety requirements, to have certain policies of insurance, to meet certain vehicle requirements and offers vendor portal and orientation training" See Ex. 7 Page 85 line 10-15 / Page 86 line 2-16 (Admitted).

69. Defendant Rebecca Badgley admitted defendants assigned work without plaintiff or vendors authorization See Ex.7 page 54, 8-24 / page 55 1-24 / page 56 1-2.

70. Pursuant to defendants' contract and Amendments "MART require plaintiff / vendor to "ensure that a training officer or other supervisor attends Broker sponsored training sessions and provides such training to drivers and Monitors (where applicable) Ex.3, pg. 7 of 58 #7".

71. Pursuant to defendants' contract and Amendments "MART requires (Mandatory) Vendor portal training their Amendments states: *"Orientation - Drivers and Monitors (at the Transportation Provider's expense must be available to attend) an orientation with Facility staff within two weeks of hiring and annually thereafter. This may include Sensitivity and Human Rights training. The Transportation Provider shall initiate contact with the Facility to ensure compliance and to coordinate the scheduling of the orientation. The orientation will not exceed one hour in duration and its purpose is familiarization with Facility operations and sensitivity to Consumer needs",* Ex. 3 pg. 13 of 58 line.F.2

72. Pursuant to defendants' contract and Amendments "Submit to the Broker for approval any policies relating to personnel, procedures or equipment that will be used in the provision of services under the Transportation Provider Subcontract with the Broker". Ex.3 page 7 of 58 #8.

73. Pursuant to defendants' contract and Amendments "Demonstrate continual compliance with HST Office, EOHHS, Agency-specific and Broker standards for transportation service, trip verification, personnel qualifications and performance, field inspections and audit, reporting, record keeping, billing and complaint response". Ex.3 pg. 7 of 58 #8.

74. Plaintiff and vendor had to provide the Broker, HST Office or Agency with the credentials of any Transportation Provider employee. The Broker or Agency has the right to deny the approval of any driver or Monitor, or to require the Provider to replace any driver or Monitor in the performance of HST services, for any reason. Ex 3 Page **7** of 58 # 5 2019, Pl. affidavit 58.

75. Plaintiff job he provided to MART was a regular part of the business of MART, Def SOF 3 , Def Ex.A. 3 "MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts". See DEPO, Ex.7, pg. 61, 1-12. and pg. 74. 6-15. Pl. Affidavit 39.

76. The defendants had the right to assign additional trips (Jobs) to the Plaintiff and vendor and did so Ex.6. pg. 3-4. Pl. Affidavit 35.

77. Because the plaintiff worked full-time for MART, plaintiff / vendor could not combine MARTS contracted work with other contracted work in his vehicles, defendants made it impossible for plaintiff / vendors to perform deliveries for any other company, MART started withholding plaintiff /vendors work around September of 2019 (Cut in half), plaintiff then had an opportunity to try to work with other companies. Ex. 9 pg. 3 email. Pl. Affidavit 51.

78. Plaintiff were entirely reliant on MART for their income during the time that they personally performed deliveries for MART from March 2016 – November 2019. From March 2016 thru November 2019 plaintiff

worked for no one else, and effectively could not do so, because MART required the plaintiff to drive hundreds of MARTS clients, it took so much time that plaintiff was incapable of offering his services to other clients. Pl. Affidavit 52.

79. Plaintiff worked transporting MARTS clients or was on call 365 days a year, 7 days a week from approximately April 2016 until April 2020. Pl. Affidavit 53.

80. Plaintiff is currently *not* working as today September 1, 2021. Pl. Affidavit 54.

81. Pursuant to defendants' contract and Amendments MART requires "plaintiff and vendors to respond in writing to Broker Passenger Service Reports within 48 hours via MART's Vendor Portal. However, verbal reports and /or responses may be required immediately. Failure to respond to the Passenger Service Report by the designated deadline or immediate requests for information will result in fine(s) or further disciplinary action. Page 40 -41 of 58, O. Pl. Affidavit 55.

82. Pursuant to defendants' contract and Amendments MART requires "plaintiff / vendor to report immediately to the Broker any service complaints received. Required to notify the Broker immediately by telephone of all circumstances of client misconduct and follow-up in writing via MART' s Vendor Portal. Provide the Broker and consumers with a Massachusetts or a toll-free telephone number. The Transportation Provider will be required to submit to MART a Certificate of Insurance naming MART as a certificate holder and contain the following language in the Description of Operations/ Locations of Vehicles/Special items box: Montachusett Regional Transit Authority (MART) is an additional insured with respects to the transportation services provided by the insured, where required by written contract. The Transportation Provider will be required to submit to MART updated Certifications of Insurance to the contract department no later than noon time 3 business days prior to the expiration date of current policy. If update is not received by the deadline then effective at 1pm on that date the transportation provider's work will be reassigned and provider will be placed on hold until MART is able to verify compliance. Transportation providers should have insurance agents email

updates directly to MART at <u>DMAContracts@mrta.us</u>., The Transportation Provider shall notify MART in writing within five business days of any transfer of such duties to other persons within its organization relative to the Data Privacy and Security Standards and CORI certified individual. The Transportation Provider is required to have a signed release of information form from their employees on file. According to the contract specifications the Transportation Providers are required to share employee information and credentials with the Broker, HST and funding agencies. This form will be reviewed by the inspectors for compliance during office audits the designated deadline or immediate requests for information will result in fine(s) or further disciplinary action. Pages 41 of 58, P –V . Pl. Affidavit 56.

83. Pursuant to defendants' contract and Amendments "MART can withhold payment to plaintiff / vendor makes deductions from the compensation paid to the contractors for fines they determined was insufficient, late pick up or drop off, late responding to a complaint, late submitting paperwork, late or missing reporting requirements etc". Ex 3 Page 44 of 58, H., Ex.18, pg. 11 of 13, h, g.,  pg. 11 of 13, i,1.,  pg. 6 of 13, 4., Pl.  Affidavit 57.

84. Plaintiff has been in an employment relationship with MART, for approximately 4 years. MART Reserves the right to implement changes or adjustments to scheduling procedures/practices, EX. 3 Pg. **38** of **58, 10.** Pl. Affidavit 3.

85. Plaintiff, Drivers and Vendors must "Submit to the Broker for approval any policies relating to personnel, procedures or equipment that will be used in the provision of services under the Transportation Provider Subcontract with the Broker". Ex.3 Pg. 7 of 58. 8. Pl. Affidavit. 29. "[t]he employer has the right to assign additional projects to the worker;"

86. Plaintiff had no choice but to rely on MARTS IVR system which would generate all left over or problematic trip which were non-cost-effective work in undesirable areas for the next day after his capacity tab was compromised by Defendants. Pl. Affidavit 30.

87. Plaintiff informed defendants and protested his inability to access the vendor portal and the capacity on several occasions See Dckt # 55, SAC ¶¶ 56, 162, 164, 183, 194. SOF 88. Pl. Affidavit 31.

88. Defendant assigned plaintiff and CCRD assignments without authorization, Ex. 7 page 54, 8-24 / page 55 1-24 / page 56 1-2. Pl. Affidavit 47.

89. Defendants cannot meet their burden of satisfying elements from the Common Law or Joint Employer Doctrine imposes on companies seeking to classify its employees as independent contractors. Pl. Oppo. MSJ 11.

90. The duration of the relationship between MART and the Plaintiff has been long, approximately 4 years. Pl. Affidavit 60.

91. Defendants are joint employers of plaintiff , the joint employer (MART) contracted to obtain services from the employee (Plaintiffs) primary employer CCRD, Pl. Affidavit 61.

92. A direct contractual relationship is not a factor in determining joint employer Pl. Affidavit 62.

93. The actual relationship between the worker (Plaintiff) and his employer (Defendants) aims to avoid use of artful contract drafting as a subterfuge to avoid liability, MARTS Contract agreement lacks any real foundation in the facts of the actual working relationship between the plaintiff and defendant, Pl. Affidavit 63.

94. The Common Law & Joint Employer Doctrine expanded the control inquiry to include an analysis of the parties' actual relationship, it does not eliminate the common-law rule that a worker (Plaintiff) qualifies as an employee because the defendants in this case retained the right to control the details of the performance of plaintiff work daily. Pl. Affidavit 64.

95. The common law and Joint Doctrine test is based on the facts in this case, that MART and defendants possessed sufficient control over the work of a Plaintiff who was an employee of another company CCRD. Pl. Affidavit 65.

96. MART and their employee defendants controlled and directed the work of the Plaintiff as they acted as my employer, Pl. Affidavit 66.

97. The U.S Supreme court and courts in this Circuit in similarly dubious cases have upheld findings that an employee was jointly employed by two employers at once, as in this case plaintiff was employed by CCRD and MART. Pl. Affidavit 67.

98. MART retained for itself sufficient control of the terms and conditions of employment of the Plaintiff employees over the terms and conditions of plaintiff employment and MART had a contractual right to control and direct the means and manner in which Plaintiff their employee perform the services of transporting their clients to non-emergency appointments.Pl. Affidavit 68.

99. The First Circuit has stated that it is not necessary that the Defendants (employer) actually direct or control the manner in which the plaintiff performed the service, it is sufficient if the defendants had the right to do so as their own Contract and Amendments stated they did.Pl. Affidavit 69.

100. Courts in this circuit have found in other cases like this one that MARTS contract and Amendments created a degree of control and supervision over plaintiff, traditionally is considered sufficient to create an employer - employee relationship Pl. Affidavit 70.


    Paul Jones   /s/ Paul Jones

    572 Park Street

    Stoughton, Ma 02072

    617-939-5417

## CERTIFICATE OF SERVICE

I, Paul Jones the plaintiff certify that the above document was filed and that it will be sent electronically and by First class mail to counsel of record.

Respectfully Submitted

Paul Jones   /s/ Paul Jones                                    September 5, 2021
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com,
mreich@k-plaw.com
(617) 556-0007

## VERIFICATION AND CERTIFICATION

### STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.   I believe that this Statement of Material Fact (SOF) is well grounded in fact and warranted by existinglaw or by a good faith argument for the extension, modification, or law.

I believe it is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s). I have filed it in good faith and solely for the purposes set forth in it. .

The plaintiff has reviewed the SOF, regarding the allegations of which the plaintiff has personal knowledge, the plaintiff knows or believes them to be true.

Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing pleading is true and correct.

Paul Jones            /s/ Paul Jones
572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

September 5, 2021