# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **PAUL JONES,**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**MONTACHUSETTS REGIONAL TRANSIT AURTHORITY  et al**<br><br>                    **Defendants.** | **Civil Action No. 4:19-cv-11093-TSH** |

## PLAINTIFFS AFFIDAVIT

1.  I Paul Jones the Plaintiff' being over the age of 21 and duly sworn, deposes and states as follows:

2.  Plaintiff called MART to apply for a drivers position and was told he must have a corporation or LLC to contract with MART sometime in 2014 See PLNT SOF 11.

3.  Plaintiff has been in an employment relationship with MART, for approximately 4 years. MART Reserves the right to implement changes or adjustments to scheduling procedures/practices, EX. 3 Pg. **38** of **58, 10.** Plnt SOF 85.

4.  Pursuant to MART contract MART has the right to control when, where, and how the plaintiff performs the job. Plnt SOF 10. Rebecca Badgleys Deposition ("Depo") [1] pg. 33. 19-24 & pg. 34 1-24.

5.  The work plaintiff did (Transportation) for MART did not require a high level of skill or expertise. Plnt SOF 10. Depo Ex 7. Pg. 57, 14-24

---

[1] There is only one deposition in the record, it is Rebeca Badgleys deposition, going forward each time plaintiff references "Depo" it is Rebecca Badgleys deposition Exhibit 7.

6. There was a continuing relationship between the worker and the employer for approximately 4 years' ,SOF 10. Depo ppg. 62. 1-10.

7. The Plaintiff and defendant created an employee employer relationship which consisted of defendant calling and emailing plaintiff 5 days a week and some weekends for approximately 4 years.

8. MART the employer has the right to assign additional projects to the plaintiff and or vendor and has done so. Plnt SOF 10. Ex. 6 email pg. 3-4.

9. MART the employer sets and controls the hours of work and the duration of the job. Plnt SOF 10. Ex.1 pg. 5

10. Plaintiff the worker is not paid by the hour, week, or month rather evet 45 days, MART supervises the plaintiffs' day-to-day activities, MART has the authority to hire or fire employees Ex. 5. 2-8, MART promulgates work rules and conditions of employment , MART controls work assignments and issues operating instructions. Ex. 3, Page 3 of 58 Introduction [2]& Plnt SOF 10. MART is in the same business as Plaintiff transportation Ex. 3, Page 3 of 58. The plaintiff and MARTS supervisors believe that they are in an employer-employee relationship Ex. 18 2-76.

---

[2] MART in their INTRODUCTION in the contract informs the world that The Commonwealth of Massachusetts and MART as their Broker has retained the right to control and manage any subcontractor, driver ,vendor including Plaintiff.

The Commonwealth of Massachusetts has established a statewide Human Service Transportation (HST) coordination initiative, which utilizes a Broker system of managing transportation services for eligible Consumers from various programs and state agencies (HST Brokerage System). Selected Regional Transit Authorities act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers. By participating in the HST Brokerage System, the Transportation Provider is under contractual agreement to provide safe, professional, and on-time transportation service, which is provided with dignity and respect and in the least intrusive way possible for eligible HST Consumers. It is the Transportation Provider's responsibility to be aware of, and to comply with all terms, conditions, and requirements of its contractual agreements with the HST Broker. The contractual agreement between the HST Broker and the Transportation Provider is referred to herein as the "Transportation Provider Subcontract."

11. MART is a regional transportation authority established pursuant to G.L. c. 161B. Ex. A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B. That has a Broker system of *managing transportation services* for eligible Consumers from various programs and state agencies (HST Brokerage System) Ex. 3, Page 3 of 58 Introduction. Plnt. SOF 31.

12. MART provides public transportation services to over twenty-two (22) cities and towns in Hamden, Worcester, Suffolk, and other counties in Massachusetts. Def SOF.

13. MART is a regional transportation authority established pursuant to G.L. c. 161B. Ex. A, Affidavit of Rebecca Badgley, 2,- G.L. c. 161 B. Def SOF 2.

14. Through its Dial-A-Mart service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored tips. Def Ex. A, 3. Def SOF 4.

15. MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS"). MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis. Ex. A, 5, Def SOF 5.

16. All Transportation Providers ("Transportation Providers" or "Vendors ') are required to comply with the Transportation Provider Performance Standards ("Performance standards"). Def Ex. A, 7. Def SOF 7.

17. MART has Transportation Provider subcontracts with over two hundred (200) Vendors. The Performance Standards are incorporated into all Transportation Provider Subcontracts that MART has with its over two hundred Vendors. Def Ex. A,  8. DEF SOF 8.

18. Pursuant to Performance Standards, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers. DEF Ex. A, 12. DEF SOF 11.

19. Defendant stated "CCRD was placed on a no-work hold in April 2020 due to the expiration of CCRD's workers compensation insurance. DEF Ex. B - Email dated September 9, 2020. DEF SOF 12.

20. In addition, the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy.  Ex. A, , 13.  Ex. C - Deposition of Rebecca Badgley, p. 48. DEF SOF 13.

21. The Capacity TAB that allows defendants to see plaintiff's drivers' capacity to take on work PLT SAC 70. Ex. 7 Depo. Pg.79. 1-18.

22. The capacity tab in the portal system contains the vendor's hours of service. DEF Ex. C, pp. 75-7, DEF SOF 20. Depo. Pg.79. 1-18

23. The Plaintiff is in an employment relationship with MART, Plnt SOF 84. Transportation Providers ("Transportation Providers" or "Vendors ') are required to comply with the Transportation Provider Performance Standards ("Performance standards"). Def Ex. A, 7. Def SOF 7.

24. Pursuant to MARTS Contract and Amendments it required Plaintiffs "to submit daily, weekly, monthly and yearly reports it states: "Transportation Provider will be required to submit to the Broker additional reporting information on a monthly basis". Ex. 3, Pg. 41-42 of 58 subsection D.1. a-h. Ex 3. Pg. 22 of 58 # 9.

25. MART informed plaintiff through email that "There are to be no unauthorized passengers in vehicles. You cannot combine MART contracted work with other contracted work". Ex, 9.pg. 2-3. The plaintiff and vendor is *not* engaged in their own distinct occupation or business".Ex.9 pg. 3 email. Plnt Affidavit 50. Plnt SOF 77.

26. Pursuant to MARTS Contract and Amendments they requires "mandatory vendor portal training before plaintiff or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year", Ex. 3 Page 6-10. A through D.,

27. Pursuant the Contract and Amendments "MART requires vender portal training at their facility least once when a vender starts we have them come in for vender portal training before their work is assigned". She went on to admit that "MART requires its vendors to abide by safety requirements, to have certain policies of insurance, to meet certain vehicle requirements and offers vendor portal and orientation training" Depo. Ex. 7. pg. 85 line 10-15. pg. 86 line 2-16 (Rebecca Admitted).

28. Defendant Rebecca Badgley denied then admitted after plaintiff produced an email that was sent from her to plaintiff that she stated MART assigned additional assignments to plaintiff / vendor without prior authorization, Ex.7 page 54, 8-24 / pg. 55, 1-24 / pg. 56 1-2.

29. Pursuant the Contract and Amendments MART the employer "has the right to control when, where, and how the worker performs the job. Depo pg. 33. 19-24 & pg. 34 1-24. Plnt SOF 10. Plaintiff, Drivers and Vendors must Submit to the Broker for approval any policies relating to personnel, procedures or equipment that will be used in the provision of services under the Transportation Provider Subcontract with the Broker". Ex.3 Pg. 7 of 58. 8. SOF 85.

30. Plaintiff had no choice but to rely on MARTS IVR system which would generate all left over or problematic trip which were non-cost-effective work in undesirable areas for the next day after his capacity tab was compromised by Defendants. SOF 86.

31. Plaintiff informed defendants and protested his inability to access the vendor portal and the capacity on several occasions See Dckt # 55, SAC ¶¶ 56, 162, 164, 183, 194. SOF 87.

32. The skill MART required Plaintiff to have to perform the work was not a highly skilled job see Depo. Rebecca pg. 84 8-11. Plnt SOF 34.

33. All the work Plaintiff / vendor did was Integrated into MARTS (Brokerage Department) core business operations, MART is a Transportation Company that has been in the Transportation business for over 30 years, See Depo. Plnt SOF 35.

34. The duration of the relationship between the Plaintiff and Defendant have been long term approximately 4-years, Defendant Rebecca admitted in her depo that "It's a relationship with MART and the vendor on a daily basis. Ex.3, pgs. 61, 21-21., pg. 62 1-10. Plnt. SOF 36.

35. The defendants believed they had the right to assign additional trips (Jobs) to the Plaintiff / vendors and did so, Ex.6. pg. 3-4. Plnt SOF 76.

36. Plaintiff, Vendor, or employees possess no proprietary interest in their respective delivery routes that MART assigns and all customers (clients) belong not to CCRD but to MART, Rebecca admitted in deposition See Ex. 7 pg.87, 1-23, Defendants Admission Request No. 9., Plnt SOF 37.

37. Pursuant the Contract and Amendments Plaintiff / vendor "had to report to MART and their staff "if their clients were a no-show when the client did not call the plaintiff or MART (Broker) to cancel a trip at least one (1) hour before the scheduled pick-up time" Ex. 3 Page 8 (8). Plnt. SOF 38

38. Pursuant the Contract and Amendments Plaintiff / vendor "had to report Daily trip sheet identifying each scheduled One-Way Trip with a check box indicating if the Consumer was transported, canceled or was no-show and signed by the driver (and by program staff, if required). Trip sheets should also include Consumer pickup and drop-off times". Ex. 3 pg. Pg. 26 of 58 VII.3.  Plnt SOF 38.

39. Plaintiff job he provided to MART was a regular part of the business of MART,  Plnt SOF 75. Def SOF 3 , Def, Ex. A. 3 "MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts". DEPO, Ex. 7, pg. 61, 1-12. and pg. 74. 6-15. Plnt. SOF 75.

40. Defendants' states in their SOF, 1-7 below "First, MART entered into a Transportation Provider subcontract with CCRD and not Plaintiff. DEF SOF, ¶ 9.. Second, the work Plaintiff performs is not performed on MART's premises. Third, there is no continuous relationship between Plaintiff and MART. Rather, as set forth above, MART entered into a Transportation Provider subcontract with CCRD, not Plaintiff. SOF, ¶ 9".

41. *"Fourth,* MART does not have the right to assign Plaintiff additional projects. MART's right to make assignments to CCRD is limited to the provisions of the Transportation Provider subcontract. SOF. ¶ 9. Ultimately a vendor such as CCRD controls what assignments offered to the vendor, the vendor accepts or declines. SOF, ¶¶ 24".

42. *"Fifth,* MART does not set the hours Transportation Providers are willing to work. Rather, those hours are set by the Transportation Provider. Here, Plaintiff set the hours that he and other CCRD employees were willing to work. Plaintiff. SOF, ¶¶ 18, 19, 33".

43. *"Sixth,* Plaintiff is not paid by the hour, week or month. Rather, MART pays CCRD based on the rates CCRD submits. Plaintiff submitted CCRD's rates to MART and changed CCRD's  rates on occasion. SOF, ¶¶ 16, 17, 32".

44. "Seventh, CCRD hires drivers to perform trips assigned under the Transportation Provider Subcontract between MART and CCRD. MART does not hire CCRD's employees and did not hire Plaintiff. Similarly, a vendor, such as CCRD, does not have to seek MART's approval to hire and employee. MART is not the hiring or firing authority for a vendor's employees, but by contract, MART has the right to request the removal of an individual from working on MART's contract. SOF, ¶ 29, 30".

45. Rebecca Badgley is the director of the brokerage operation she oversee the contract that MART has with the State of Massachusetts, she oversee all aspects of the brokerage including call centers and scheduling, she also over sees all the employee defendants Depo Ex. 7 pg16.  4-19., pg. 17. 1-5. Plnt. SOF. 4.

46. Pursuant the Contract and Amendments "MART requires plaintiff and all vendors in 2018- 2021 to carry more insurance than the state mandated requirements for vehicle insurance. Ex 7 pg. 48 7-18. Plnt. SOF 17.

47. Defendant assigned plaintiff and CCRD assignments without authorization, promulgates work rules and conditions of employment,  controlled work assignments and issued plaintiff operating instructions Ex. 7 page 54, 8-24 / page 55 1-24 / page 56 1-2. Plnt. SOF 88.

48. MARTS Supervisors & Managers discharged and or fired several of plaintiff's and vendors employees / drivers, Ex. 5 emails pg. 2-8. Plnt SOF 25.

49. Defendants controlled plaintiff day-day work schedule that their controlling actions deemed them to be plaintiff's employer under Title VII and the Joint Employer Doctrine, Plnt SOF 39.

50. Defendants stated in the SOF As a courtesy, MART provides a new vendor, portal training before MART assigns work to the vendor so that the vendor understands how the system works. Ex. C, pp. 27-29, this is contrary to Rebecca Depo. Testimony and MARTS Amendments, Ex. 3 Page 6-10. A through D. Ex.18, pg. 7 of 13, n.., Ex. 3 pg. 18 & 19 of 58-line C.1 -4. b., Ex.7 Pg. 85. 10-15 / Pg. 86. 2-16. Plnt. SOF 62.

51. Because the plaintiff worked full-time for MART, plaintiff / vendor could not combine MARTS contracted work with other contracted work in his vehicles, defendants made it impossible for plaintiff / vendors to perform deliveries for any other company, MART started withholding plaintiff /vendors work around September of 2019 (Cut in half), plaintiff then had an opportunity to try to work with other companies. Ex. 9 pg. 3 email. Plnt SOF 77.

52. Plaintiff were entirely reliant on MART for their income during the time that they personally performed deliveries for MART from March 2016 – November 2019. From March 2016 thru November 2019 plaintiff worked for no one else, and effectively could not do so, because MART required the plaintiff to drive hundreds of MARTS clients, it took so much time that plaintiff was incapable of offering his services to other clients. SOF 78.

53. Plaintiff worked transporting MARTS clients or was on call 365 days a year, 7 days a week from approximately April 2016 until April 2020. Plnt SOF 79.

54. Plaintiff is currently not working as today September 1, 2021. Plnt SOF 80.

55. Pursuant the Contract and Amendments MART Requires plaintiff and vendors "to respond in writing to Broker Passenger Service Reports within 48 hours via MART's Vendor Portal. However, verbal reports and

/or responses may be required immediately. Failure to respond to the Passenger Service Report by the designated deadline or immediate requests for information will result in fine(s) or further disciplinary action". Page 40 of 58, O. PLNT SOF 81.

56. Pursuant the Contract and Amendments MART requires plaintiff / vendor "to report immediately to the Broker any service complaints received. Required to notify the Broker immediately by telephone of all circumstances of client misconduct and follow-up in writing via MART' s Vendor Portal. Provide the Broker and consumers with a Massachusetts or a toll-free telephone number. The Transportation Provider will be required to submit to MART a Certificate of Insurance naming MART as a certificate holder and contain the following language in the Description of Operations/ Locations of Vehicles/Special items box: Montachusett Regional Transit Authority (MART) is an additional insured with respects to the transportation services provided by the insured, where required by written contract. The Transportation Provider will be required to submit to MART updated Certifications of Insurance to the contract department no later than noon time 3 business days prior to the expiration date of current policy. If update is not received by the deadline then effective at 1pm on that date the transportation provider's work will be reassigned and provider will be placed on hold until MART is able to verify compliance. Transportation providers should have insurance agents email updates directly to MART at DMAContracts@mrta.us., The Transportation Provider shall notify MART in writing within five business days of any transfer of such duties to other persons within its organization relative to the Data Privacy and Security Standards and CORI certified individual. The Transportation Provider is required to have a signed release of information form from their employees on file. According to the contract specifications the Transportation Providers are required to share employee information and credentials with the Broker, HST and funding agencies. This form will be reviewed by the inspectors for compliance during office audits the designated deadline or immediate requests for information will result in fine(s) or further disciplinary action". Pages 41 of 58, P –V . PLNT SOF 82.

57. Pursuant the Contract and Amendments "MART can withhold payment to plaintiff / vendor makes deductions from the compensation paid to the contractors for fines they determined was insufficient, late pick up or drop off, late responding to a complaint, late submitting paperwork, late or missing reporting requirements" etc. Ex 3 Page 44 of 58, H. Ex.18, pg. 11 of 13, h, g., pg. 11 of 13, i,1. pg. 6 of 13, 4., PLNT SOF 83.

58. Plaintiff and vendor had to provide the Broker, HST Office or Agency with the credentials of any Transportation Provider employee. The Broker or Agency has the right to deny the approval of any driver or Monitor, or to require the Provider to replace any driver or Monitor in the performance of HST services, for any reason. Ex. 3 Page **7** of 58 # 5 2019, Plnt SOF 74.

59. Defendants cannot meet their burden of satisfying elements from the Common Law or Joint Employer Doctrine imposes on companies seeking to classify its employees as independent contractors. Plnt. Oppo. MSJ 11.

60. The duration of the relationship between MART and the Plaintiff has been a long approximately 4 years. Plnt. SOF 90.

61. Defendants are joint employers of plaintiff , the joint employer (MART) contracted to obtain services from the employee (Plaintiffs) primary employer CCRD, Plnt SOF 91.

62. A direct contractual relationship is not a factor in determining joint employer Plnt SOF 92.

63. The actual relationship between the worker (Plaintiff) and his employer (Defendants) aims to avoid use of artful contract drafting  as a subterfuge to avoid liability, MARTS Contract agreement lacks any real foundation in the facts of the actual working relationship between the plaintiff and defendant  **Plnt SOF 93**.

64. The Common Law & Joint Employer Doctrine expanded the control inquiry to include an analysis of the parties' actual relationship, it does not eliminate the common-law rule that a worker (Plaintiff) qualifies as an

employee because the defendants in this case retained the right to control the details of the performance of plaintiff work daily. Plnt SOF 94.

65. The common law and Joint Doctrine test is based on the facts in this case, that MART and defendants possessed sufficient control over the work of a Plaintiff who was an employee of another company CCRD. Plnt SOF 95.

66. MART and their employee defendants controlled and directed the work of the Plaintiff as they acted as my employer Plnt SOF 96.

67. The U.S Supreme court and courts in this Circuit in similarly dubious cases have upheld findings that an employee was jointly employed by two employers at once, as in this case plaintiff was employed by CCRD and MART. Plnt SOF 97.

68. MART retained for itself sufficient control of the terms and conditions of employment of the Plaintiff employees over the terms and conditions of plaintiff employment and MART had a contractual right to control and direct the means and manner in which Plaintiff their employee perform the services of transporting their clients to non-emergency appointments. Plnt SOF 98.

69. The First Circuit has stated that it is not necessary that the Defendants (employer) actually direct or control the manner in which the plaintiff performed the service, it is sufficient if the defendants had the right to do so as their own Contract and Amendments stated they did. Plnt SOF 99.

70. Courts in this circuit have found in other cases like this one that MARTS contract and Amendments created a degree of control and supervision over plaintiff, traditionally is considered sufficient to create an employer - employee relationship Plnt SOF 100.

Paul Jones   /s/ Paul Jones
572 Park Street
Stoughton, Ma 02072
617-939-541
Pj22765@gmail.com

**CERTIFICATE OF SERVICE**

I, Paul Jones the plaintiff certify that the above document was filed and that it will be sent electronically

and by First class mail to counsel of record.

Respectfully Submitted

Paul Jones   /s/ Paul Jones                                            September 5, 2021

572 Park Street

Stoughton, Ma02072

617-939-5417

Pj22765@gmail.com

Mark R. Reich (BBO# 553212)

Deborah I. Ecker (BBO# 554623)

KP Law, P.C. 101 Arch Street, 12th Floor

Boston, MA 02110-1109

decker@k-plaw.com,

mreich@k-plaw.com

(617) 556-0007

## <u>VERIFICATION AND CERTIFICATION OF AFFIDAVIT</u>

### STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding. I believe that this Affidavit is well grounded in fact and warranted by existing law and Firsthand Knowledge by a good faith argument for and the extension, modification, or law.

I believe this Affidavit is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s). I have filed it in good faith and solely for the purposes set forth in it.

The plaintiff has reviewed the Affidavit, regarding the allegations of which the plaintiff has personal Firsthand knowledge, the plaintiff knows or believes them to be true.

Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing Affidavit is true and correct.

Paul Jones             /s/ Paul Jones
572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

September 5, 2021