# EXIHBIT 16

## 2nd Amendment

## Complaint

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES                                     Civil Action No. 1:19-cv-11093-ADB

Plaintiff

V.

MONTACHUSETTS REGIONAL TRANSIT AURTHORITY Et al.
Defendants

## SECOND VERIFIED AMENDED COMPLAINT

### Introduction

1. Plaintiff's states as an initial matter that due to the extremely complicated subject matter attendant to this area of the law and the length of time in which the allegations took place three ½ years, it is extremely difficult (if not impossible) to not be somewhat verbose, as the Civil Rights is about as unfathomably deep as a subject can get, and the Plaintiff's apologies in advance for the extent of this complaint.

2. Defendants interference with Plaintiff's rights and retaliated against him for filing multiple complaints against them ,this conduct caused plaintiff personal injuries which was concrete and particularized harm as defined in Spokeo.

3. Intentional Race Discrimination, Retaliation and causing Hostile Work Environment is an almost silent yet pervasive problem in American, Federal money supported and financed *(Aid and Abetting)* the above Defendants acts through awards of federal funded moneys and jobs.

4. In general, it seems rather anomalous that the Federal Government (Funds) should aid and abet Defendants Retaliatory, Intentional Discriminatory conduct based on race, color, or national origin and a Hostile Work Environment, by granting money and other kinds of financial aid. It seems rather shocking, moreover, that while we have on the one hand the 14th amendment, which is supposed to do away with discrimination since it provides for equal protection of the laws, on the other hand, we have the Federal Government sometime

1

unknowingly aiding and abetting those who persist in practicing Intentional Racial Discrimination, Retaliation and serial Hostile Work Environment.

5.  Defendants are serial offenders of all the counts in this lawsuit as they had the opportunity to correct all their illegal acts and refused to do so, these serial acts started on or about April 20, 2016 and the last acts were on or about June 13, 2019.

6.  Upon information and belief Defendants have a policy of not hiring ***any African American males*** to work in their departments occasionally one or two will be allowed to work in the call center as a low-level phone operator.

7.  Upon information and belief Defendants has an open policy that they will not hire a vendor that has an African America Males as the owner or is in a controlling position (Manager /Director), this is an open secret, defendants occasionally will tolerate a few African American *females* to work in these department.

8.  This is a case of Continuing Violations Doctrine under Title VII and other Federal & State laws, the defendant's misconduct places the plaintiff under their prolonged control, or where malfeasance affects a broad swath of potential claimants, either the pure or the modified version of the Continuing Violations Doctrine may represent the optimal means of producing fair and efficient outcomes, these acts are aggregated to make out a hostile work environment claim, they are linked in a pattern of actions which continues into the applicable limitations period.

9.  Defendants acts which constitute the plaintiff's claims are part of the same unlawful employment practices that several acts fall within the applicable limitations period, defendant's harassment was more than the occurrence of isolated or sporadic acts of intentional Discrimination, Retaliation and causing a serial Hostile work Environment.

10. Defendants turned a blind eye to these blatant acts mentioned above, this does not generally fare well under anti-discrimination laws like Title VII and other Federal & State laws.

11. Defendants are liable for statutory, punitive damages and other damages, defendants exercised daily control over the plaintiff 's employment.

**Parties**

12. The Plaintiff Paul Jones (Plaintiff) is an African American resident of Stoughton, County of Norfolk, Massachusetts and a citizen of the United States and part of a protected minority group.

13. The Defendant Montachusett Regional Transit Authority ("MART") is a regional transportation authority established under Chapter 161B of the Massachusetts General Laws, and maintains a facility in Fitchburg, Worcester County, Massachusetts.

14. The Defendant Rebecca Badgley ("Rebecca") , upon information and belief, an individual residing in Massachusetts and is a manager at Montachusett Regional Transit.

15. The Defendant Donna Landry ("Donna") , upon information and belief, an individual residing in Massachusetts and is a manager at Montachusett Regional Transit Authority.

16. The Defendant Bonnie Mahoney ("Bonnie") , upon information and belief, an individual residing in Massachusetts and the Communications & Grants Manager at Montachusett Regional Transit Authority.

17. The Defendant Karen Cordio ("Karen") , upon information and belief, an individual residing in Massachusetts and was the Sr. Program manager at Montachusett Regional Transit Authority until on or about May 1, 2016.

18. The Defendant Joanne Norris ("Joanne") is, upon information and belief, an individual residing in Massachusetts and an employee at MART she is a supervisor in the Manager, Complaints quality assurance department.

19. The Defendant Stephanie Richards ("Stephanie") is, upon information and belief, an individual residing in Massachusetts and a supervisor at Montachusett Regional Transit Authority.

20. Defendant Tamara Shumovskaya ("Tamara") is, upon information and belief, an individual residing in Massachusetts and a supervisor in the scheduling department at Montachusett Regional Transit Authority Scheduling department.

21. Defendant Jessica Torres ("Jessica") , upon information and belief, an individual residing in Massachusetts and an assistant supervisor of scheduling department at Montachusett Regional Transit Authority Scheduling department.

22. Defendant Amanda Kukta ("Amanda") , upon information and belief, an individual residing in Massachusetts and an assistant supervisor at Montachusett Regional Transit Authority Scheduling department.

23. Defendant Robert Monk ("Robert") , upon information and belief, an individual residing in Massachusetts and is a contract manager and or supervisor at Montachusett Regional Transit Authority.

24.  Defendant Michelle Moyo ("Michelle") is, upon information and belief, an individual residing in Massachusetts and is a contract manager and or supervisor at Montachusett Regional Transit Authority.

25.  Defendant Ivan Roman ("Ivan") is, upon information and belief, an individual residing in Massachusetts and was a contract manager and or supervisor at Montachusett Regional Transit Authority until on or about May 20, 2018.

26.  Defendant Crystal Geisert ("Crystal") is, upon information and belief, an individual residing in Massachusetts and was an Sr. Staff Assistant at Montachusett Regional Transit Authority until on or about May 25, 2017.

27.  Defendant "Jane Doe" and "John Doe" are placeholders for an indeterminate number of partners or shareholders of defendants that may bear individual culpability for the claims stated in this Complaint and who may be separately liable, therefore.

### JURISDICTION

28.   This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

29.  Venue is proper in this Court pursuant to **28 U.S.C. 1391(b)** in as much as the challenged actions are alleged to have been committed in this District, all Defendants regularly conduct business in this District, and the named Plaintiff reside in this District.

30.  Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists of the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

31.  Jurisdiction of this Court arises under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

### FACTS

32.  All conditions precedent to the bringing of this action has been performed, this case is over $75,000.

33.  Defendants intent to cause emotional distress upon plaintiff, Defendants conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

34. As a further proximate result of defendants Intentional Discrimination, Retaliation and creating a Hostile Work Environment and the consequences proximately caused by it, plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body

35. Plaintiff complained to Defendants and their Directors and Managers (At all times relevant to the subject matter of this litigation) but nothing was done to stop or deter the conduct, all defendants directly participate in federal funded programs and directly benefited from federal grants, loans or contracts.

36. Plaintiff undertook protected conduct and suffered an adverse employment action, and the two are causally linked.

37. Defendants made derogatory comments which were humiliating severe or pervasive to alter the conditions of plaintiff's employment and created an abusive working environment, Defendants received actual and constructive notice by emails, verbally and including several complaints, EEOC, Title VII and Title VI complaints filed by plaintiff on defendants.

38. Defendants Donna, Rebecca, Bonnie, Karen, Joanne, Tamara, Amanda, Robert, Michelle, Ivan, Crystal, Stephanie, Crystal, Michelle, Jane and John are MART's Managers, are decision makers and or Director, whom were responsible for, among other things, ensuring that they and other employees complied with Title VII et seq, and other Federal & State laws, plaintiff revoked consent several time by certified mail and verbally.

39. Defendants had good faith and reasonable belief that the action plaintiff opposed violated Title VII, M.G.L. c. 151B. et seq, and other Federal & State laws.

40. Defendant's subjected plaintiff to repeated unpleasant and inequitable treatment from on or about April 30, 2016 until June 13, 2019.

41. Defendants Intentionally retaliated, discriminated and caused a hostile work environment against plaintiff, because plaintiff opposed (contended against, confronted and resisted) all practices made unlawful practice by Title VII et seq, M.G.L. c. 151B. et seq and the other Federal & State Laws in this complaint.

42. Plaintiffs was and is the manager / dispatcher at Commonwealth Community Recovery Division Inc. (CCRD) whom has a contract with defendant MART, plaintiff has to communicate via telephone every day with defendant and or by email unlike other nonminority vendors or vendors that don't protest defendant's treatment.

43. Defendant's denied the plaintiff proper training from on or about March 1, 2016 until on or about October10, 2018 after several request by plaintiff to receive the proper Vendor portal training as other non-minority vendors received.

44. Defendant's conduct deprived the plaintiff of the benefits of MARTs federal funded programs, the ability to perform his job duties while defendants collected their salaries and enjoyed the benefits of their jobs and the federal funded program.

45. Defendants segregated plaintiff and has separate policy's & treatment for plaintiff. These acts and or practice complained of in plaintiff complaint was committed with knowledge, or reason to know.

46. Defendant Ivan, Robert & Moyo are the contract manager that was assigned to assist plaintiff on issue with MART policies and procedures, from On or about April 2016 until on or about May 15, 2019, these contract managers refused to assist plaintiff (Stoned Walled) on policies and procedures and issues, they refused to even answer or respond to plaintiffs' written request for assistants (emails) on several occasions, depriving plaintiff of the knowledge he required to do his job.

47. Plaintiffs is proceeding against all the individual defendants named in this complaint because there are triable issues of fact regarding whether they committed the acts in this complaint.

48. Defendants have not taken any affirmative action to assure that plaintiff does not stay excluded from MARTS federal funded programs, participation in the Low-Bid system, gaining access to the Vendor Portal that displays the daily & weekly jobs from their program.

49. Defendants retaliated or allowed their staff under their watch to disable a TAB that controls key feature in plaintiff vendor portal and create new generic emails for all defendants too be contacted from vendors this was after I informed defendant Roman Ivan I was filing a complaint in a few weeks because my emails were being ignored, plaintiff filed the first Title VI complaint on or about March 22,2017, and defendants answered  on or

about May 2, 2017 upon information and belief this new generic emails were set up so going forward no one in particular could be held responsible for not responding to plaintiffs concerns or questions over email.

50.  This disabled TAB allowed plaintiff to run end of the day reports, research clients complaint history, what accessed fines are for, the ability to see when a complaint was filed against plaintiffs staff & drivers that are time sensitive, when trips or shared rides are offered to plaintiffs, reports that display all vendors activities, trips excepted and denied by all vendors including price, these acts have handicapped the plaintiff from doing his job properly, other non-minority individuals or vendors that don't protest defendants treatment have full access to these features as of June 14, 2019.

51.  After plaintiff filed the Title VI complaint against MART on or about March 22, 2017, Defendants Joanne retaliated against plaintiff a few weeks later by fining plaintiff unjustly for approximately $8000 from April 15, 2017 until June 13, 2019, the Defendants Joanne, Michelle and Robert even refused to inform the plaintiff in writing what the fines were for, removing complaint number and or explanation from plaintiff fine invoice.

52.  Plaintiff exhausted every remedy possible to avoid the filing of this lawsuit in every way defendant the director, manager & decision maker failed to respond and if they did respond they just did not investigate any of plaintiffs claims.

53.  Plaintiff should be able to proceed to discovery because he has alleged sufficient facts to make the non-innocent explanation of these facts plausible.

54.  Plaintiffs complaint described actions of which he has personal knowledge of, sufficient detail to make them plausible in this Verified Amended Complaint.

55.  Defendants sabotaged or stood by silently as plaintiff pointed out these facts and refused to correct the deficiencies in plaintiff's vendor portal from on or about April 16, 2016 until June 13, 2019, after defendant Karen was employed at HSBB she began to interfere with plaintiff vendor portal on a daily bases, these defendants place or caused or allowed the placing of non-cost-effective trips into plaintiff vendor portal, this has caused plaintiff to be late and fined considerably since plaintiff started protesting, plaintiff warned the defendants that this was contrary to Title VII and other Federal & State laws.

56. Defendants on at least 40 of occasions refused to pay plaintiffs employer for accommodating two individuals to methadone clinics, the Defendants would disguised as escorts (whom rides for free), when in fact both escort and clients had appointments at the clinic and would see a doctor to get dosed daily, these same clients and escorts were paid as two individuals (separately) to other non-minority vendors or vendors that don't protest defendants treatment these documents are in the possession of defendants.

57. The defendants on several occasion would program the vendor portal or cause it to be programmed to make plaintiff trips to disappeared out of plaintiff portal, which causes plaintiff to have to scramble to book non-cost effective trips for his drivers for the next day so no drive would miss a day, this causes plaintiff to have to work longer hour to insure there is work for the drivers the next day, cutting into plaintiff family responsibilities.

58. Defendants have even placed trips that were never even excepted or completed by plaintiffs employer into his by weekly invoices, this has the ability for plaintiff to be brought up of fraud charges by getting paid for trips plaintiffs drivers have not completed, other non-minority vendors never have these problems and have access to all the above functions of the vendor portal this was reported to Defendant Rebecca.

59. Defendants constantly removed standing orders and trips from plaintiff portal and give them to other vendors, defendants also do not report most cancellation to plaintiff when a client cancels an appointment, which causes plaintiff and his driver to be on a wild goose chase which economically harms plaintiff and the company.

60. Plaintiff has been excluded from participation in, *denied* the *benefits* of, and the *enjoyment* of any right, privilege, *advantage*, or opportunity enjoyed by other non-minority vendors or vendors that don't protest defendant's treatment in MARTS Federally funded non-emergency transportation program, this is contrary to Title VII of the Civil Rights Act. and other Federal & State Laws

61. Defendants has withheld plaintiffs' company's pay on several occasion, other non-minority vendor gets paid consistently on time, Defendant Stephanie sent several memos to change the pay day on several occasions to plaintiff, but these paid dates are constantly changing when it comes to plaintiff getting paid.

62. Defendants failed to allow plaintiff the opportunity to be trained and be shown the Vendor Portal demo in a timely orderly fashion, and attend a training with any other vendors for almost 30 months, this was to separate and

ostracize plaintiff, so I could have to learn by trial and error and which plaintiff did, this method of training cost plaintiff money, time & energy while other non-minority vendors and vendors that don't protest defendants treat received all the proper training and tools needed to perform the job the first time around.

63. Defendants' conduct under color of law proximately caused the deprivation of Plaintiff's federally protected rights and her resulting grievous injuries. Defendants' conduct was done willfully and wantonly and/or with reckless disregard of Plaintiff's rights and feelings.

64. Marts policy states "*MART uses advanced software, which chooses winning bids on a low bid system, MART's computer sort all bids every two hours based on location (who is nearest) and cost (whose is lowest). At the end of each day, all the trips for the following day are distribute via the Vendor Portal*" this is not always the case when assigning trips to non-minority and minorities.

65. Defendants have stated that when MART needs you they will call you while other non-minority vendors or vendors that have not protested defendant's treatment get full access to the vendor portal to cherry pic their schedule and are given jobs when they have the higher bid and are the farthest from the client, this is contrary to MART & HSBB policy, these documents to prove this is in the possession of defendants.

66. Plaintiffs relations with all defendants deteriorated on or about March 15, 2016 when he first appeared at MARTS facility and they realized plaintiff was a Black African American male till the time of the filing of this complaint, plaintiff did not receive any work for almost 6 months and had to lay off all his drivers and sell 2 vehicles to pay expenses for the company (Insurance, Gas, Maintenance, etc.).

67. After plaintiff filed the Title VI complaint on or about April 16, 2017 defendants began discrimination / Retaliating by reducing plaintiffs work significantly over the last 2 years causing plaintiff to have to lay off drivers for lack of work while non-minority vendor and vendors that have not protested defendant's treatment had full access to MARTS Federal Funder program, this caused plaintiff emotional distress.

68. From on or about April 15, 2016 to June 13, 2019 Defendants implemented a policy against Plaintiff that he receives approximately 98 percent less work than non-minority vendors or vendors that have not protested defendant's treatment even if plaintiffs rates (Bids) were lower.

69.  Defendants are in possession of reports that show other vendors refused more trips in one day than plaintiff received in a week or month.

70.  On or about June 2, 2016 at 12:28 pm Defendant Ivan stoned wall plaintiff regarding access to plaintiffs capacity TAB that allows defendants to see plaintiffs drivers capacity to take on work, Defendant MART stated in there answer to plaintiffs Title VI complaint that plaintiff capacity tab was inadvertently marked as he had ZERO capacity to take on work from on or about April 15, 2016 until April 16, 2017, plaintiff received no work through the vendor portal for a whole year while non-minority and vendors that have not protested defendant's treatment enjoyed the benefits of cherry picking their schedule daily, these acts caused plaintiff to lay off all drivers.

71.  When plaintiff emailed his contract manager defendant Ivan on several occasions to inform him when plaintiffs tried to adjust his capacity tab it displayed that *"You cannot change capacities as it has been locked by M.A.R.T."* defendant Ivan stoned wall plaintiff by stating verbally and in email that "Hi Paul, You are able to make changes to your capacity manager to reflect times and days of the week you are willing to accept work by visiting the vendor portal and editing your capacity management tab", when in fact he was aware that plaintiffs Capacity tab was blocked by defendants Rebecca, Karen, HSBB and others on the portal that it was locked by MART this was contrary to defendants MARTS policy and Title VI, Title VII and other Federal & state laws as other non-minority vendors or vendors that have not protested defendant's treatment had access to change their capacity at will.

72.  On or about June 2, 2016 pm plaintiff reply to defendants Ivan email and stated, "*Dear Ivan, when I go to capacity management tab it states*: "You cannot change capacities as it has been locked by M.A.R.T.", *this is in red writing bold letters, from what it is telling me it needs to be unlocked by MART first, please let me know your thoughts Thank you*", Defendant Ivan knew that plaintiff's capacity tab was disabled and just stone walled plaintiff. Defendant Ivan knew that plaintiff's capacity tab was disabled and just stone walled plaintiff.

73.  Upon information and belief defendant HSBB, Karen and *Tamara Shumovskaya* (Schedule Dept Manager) whom is Russia  and or Ukrainian makes sure her staff goes out of their way to accommodate the Russian and

or Ukrainian vendors, example all Russian and or Ukrainian vendors receive no calls (Artificial voice message by IVR System) telephone to offer them work, they have full access to the vendor portal at all times, all their Tabs works in the vendor portal that allows them to research clients complaint history, allows them to cherry pick rides that are very close and only have a mile or two radius, allow them to choose their areas of work, pay them double the rate sometimes, they are offered 75 trips to every one trip plaintiff is offered regardless of their bid price, allow them to down load end of the day trip receipts, make sure their portal alerts them when a complaint is filed against them so they can timely answer (48 hours) without getting a fine , this is done even if they have higher rates than plaintiff (Bid Rigging), allow them to have multiple company's or their affiliates (Corporate officers),  all one has to do is look at MARTS phone records and payroll, plaintiff has to work harder and longer to get less paying trips (non-cost-effective) , this is contrary to being a recipient of Federal Funds and it is an open secret at the MART Brokerage department, MassHealth has all the records in their possession to prove this accusations , plaintiff plans to propound discovery these documents.

74. This is not the first time MARTS Brokerage and Scheduling department was allowing non-minority vendors to skip the bidding process (Seehttps://www.telegram.com/article/20100924/NEWS/100929724?template=ampart ) or have multiple company's now they just make sure one person doesn't have multiple company's in one name, officers of a certain corporation that is owned by these individuals will each have company's in their names sometimes using the same address, this is public record at the Secretary of States website again an open secret, this is contrary to Federal & State Law and being a recipient of Federal funds.

75. Plaintiff sent defendant Rebecca the Manager of the brokerage department an email on or about *August 24, 2016 at 4:48 pm* informing her that her staff has been subjecting plaintiff to racial discrimination, Hostile work environment, Unfair & Deceptive Acts & Retaliation, *On August 25, 2016 at approximately 10:00am* first thing the next morning Defendant Rebecca replied to my emailed and stated "*Paul, Please understand that there is no discrimination involved of any kind.  Karen has been out of the office frequently as of late. After following up it is my understanding that Ivan has been assisting you and has been very responsive when you have presented issues but that he has not heard from you recently. Looking in-depth in follow up to your email there was an*

*area in the vendor portal that was blocked, and this was simply an oversight however that might have been the cause of the situation of you not being able to adjust capacities,* plaintiff took a protected action by filing a complaint verbally with defendant Rebecca.

76. Defendants including  Rebecca retaliated against plaintiff by failing to investigate plaintiff claims of Racial Intentional discrimination, Hostile work environment, Unfair & Deceptive Acts & Retaliation on or about August 24, 2016, All Defendants has a fundamental misunderstanding of the law on Discrimination, Retaliation and causing a (serial) Hostile Work Environment  and failed to conduct an effective and "neutral" investigation, both symptomatic of broader problems at MART

77. Defendant Rebecca has told plaintiff several time verbally and by emails that plaintiff should go find work elsewhere.

78. After the August 24, 2016 email to defendant Rebecca there was division and controversy in the program with plaintiff and MART whole staff, Defendants Rebecca, Donna, Karen, Tamara, Jessica, Ivan, Amanda and their lower staff began an implementing an all-out assault of retaliation, Intentional Discrimination and they created a (serial) Hostile Work Environment, this caused very serious issues for the plaintiff health going forward.

*79.* The next day (August 25, 2016) Plaintiff was able to adjust his capacity to take on work from the vendor portal, but plaintiff receive, no or little work, because now plaintiff's portal appeared to be working but internally it was disabled, upon information and belief this was done with the help of defendant Karen & HSBB, the company that built and controls the software for the vendor portal whom defendant Karen was hired after the results of plaintiff filing his Title VI complaint against her.

80. On or about October 15, 2016 defendants retaliated against plaintiff by placing approximately 40-70 computerized artificial voice messages from approximately 7 am until 12 noon to his personal cell phone this constituted retaliation because plaintiff had been protesting the treatment from MART and its employees for lack of work through emails to and telephone conversations to all defendants.

81. Plaintiff immediately hired a phone operator to take all the calls because as I anticipated the defendants Ivan and Crystal would honor my request to only call plaintiff on the o**ffice** number *413-315-4500*, defendants failed

to place any calls to plaintiff's office number, plaintiffs phone operator did not receive any telephone calls from defendants MART, so plaintiff laid her off, as calls kept pouring in on plaintiffs' personal cellular telephone.

82. Plaintiff sent 5 letters to defendants to revoke consent to calling plaintiffs personal cellular telephone and also gave the office number to defendants to call plaintiff for all dispatching or any other reason defendants need to speak with someone.

83. Plaintiff protested this treatment to defendants Rebecca, Karen, Ivan, Crystal, Tamara, Jessica, defendants seem to get offended that plaintiff was requesting that all future calls be place to the office, this caused a greater divide between plaintiff & defendants.

84. On or about December 28, 2016 defendants restricted plaintiff's capacity tab in the vendor portal while other vendors had access.

85. From April 30, 2016 to June 13, 2019 Defendants allows a special group of non-minority vendors or vendors that don't protest defendant's treatment to take Sundays off as of June 14, 2019, and their work would be distributed to plaintiff and other vendors, when in fact they were mandated to work every day, these special vendors had standing orders (Standing orders are ride vendors except that demands client goes every day) this is contrary to defendants MARTS policy.

86. Defendants made sure these special groups of non-minority vendors or vendors that don't protest their treatment, receive trips that are in a 1-3-mile radius (Cost effective), in multiple town (up to 30) or that are worth up to $350-$400 round trip, as plaintiff only receive trips in Springfield, Holyoke and Chicopee.

87. Defendants assign trips that require multiple pick ups in the same area that are going to same facility or a facility close by, this gives the non-minority vendors non-minority vendors or vendors that don't protest their treatment an unfair advantage over plaintiff and other vendors.

88.  Defendants demanded that plaintiff send all drivers credentials over to her for inspection by her staff (Audit), this is not done to non-minority vendors or non-minority vendors or vendors that don't protest their treatment their credentials are only inspected by MARTS inspectors, this is contrary MARTS policy's.

89. Defendants thoroughly undermined plaintiff effectiveness in a manner designed to sabotage plaintiffs' efforts to participate in MARTS federal funded program, by stonewalling each and every inquiry plaintiff makes.

90. Defendants maintained programming that favored non-minority / foreign vendors and vendors that don't protest their treatment and excluded and do not hire protected African American Male vendors / workers and plaintiff.

91. Defendants restricted plaintiffs access to over 40 cities and towns that he has placed bids in, while allowing non-minority vendors or vendors that don't protest their treatment access to all the towns they have bids in, this is contrary to Federal & State laws, MARTS policy, this treatment gives the non-minority vendors or vendors that don't protest defendants treatment an unfair advantage over plaintiff.

92. Defendants made it a point to offer plaintiff trips where there are 1-2-3 escorts, clients that require walkers or crutches while they offer none of these types to the non-minority vendors or vendors that don't protest there treatment when these types of rides should be spread between all vendors, defendants made it a point to give the plaintiff undesirable assignments example: the very first and only assignment plaintiff was given a 1 ride offer 3 day a week, an individual Clover. K, before plaintiff's complaint tab was deactivate and remove from his portal, plaintiff research Clover. K, (whom was considered critical care) she had over 30 complaints lodged against her, and she had filed over 40 against other drivers as on May 1, 2016, no drive would agree to transport her under any circumstances, plaintiff transported Clover. K for over a year and half without a single incident and or complaint from either party.

93. Defendants retaliated against plaintiff (*For plaintiff filing a Title VI Complaint*) for exercising his protected rights by removing plaintiff from access to the vendor portal plaintiff had to rely on computerized, artificial calls from an Automatic Telephone Dialing System (IVR System) and or predictive dialer to receive work daily, unlike the minority vendors or vendors that did not protest defendant's treatment of them.

94. Defendants denied plaintiffs request to participate in the federally funded their DDS, Vehicle Leasing program, Dial a Ride (Until April 2018), EIP, DMH and Shared ride programs.

95. Upon information and belief on or about May 1, 2017 after plaintiff filed the Title VI complaint against Defendant Karen and others, Karen was forced to resign and or was fired from MARTs place of business, and

some workers were ordered to undergo civil rights training and Defendant MART had to update their website to reflect Title VI and Title VI complaint procedure and policy's. The defendants were ordered by MassHealth to basic anti-discrimination training that covers discrimination, harassment and retaliation in an effort to effectuate the purposes of Title VI and other federal & State laws which is to eradicate discrimination, this did not sit well with any of the defendants after May 1, 2019 all defendants aggressively retaliated against plaintiff with the acts alleged in this complaint. Things only got worse for plaintiff, defendants ignored the MassHealth findings which were supported by substantial evidence that plaintiff complained to managers at MART about defendants repeated Intentional Discriminatory, Retaliatory conduct to no avail.

96. Upon information and belief defendants' actions reflected that there was and is a fundamental misunderstanding of Intentional Discrimination, Retaliation and a Hostile Work Environment, Title VII and Federal & State Civil Rights laws.

97.  Defendant HSBB, Karen, MARTS, Rebecca, Donna, Joanna, Tamara Amanda, Jessica, Robert, Michelle and its managers labored under an incorrect understanding of the law, MARTS employees David Dunn, Fatima Rivera, Sherry Corcoran, Nicole Wislocki and Bonnie Mahoney was aware of the above acts perpetrated by the above defendants and stood silent on the side lines and watched and said nothing to deter the above defendants retaliatory, discriminatory acts toward the plaintiff. As a result of plaintiff inability to obtain a corrective response from the above defendants, directors and or managers, plaintiff filed a complaint with the Attorney General's office, The Department of Justice, MassDOT and other agencies regarding above defendant's inappropriate conduct.

98. Defendant failed to conduct a prompt, **neutral** investigation into the allegations made by plaintiff and instead the ensuing investigation was hardly neutral. The fact that another complaint had been filed against MARTS with the EEOC 2018 should have set off bells and whistles and instead appears to have had no significance of an investigation.

99. Defendants failed investigate or to interview other vendors / employees or their own staff in the Brokerage / Scheduling department, after plaintiff verbally complained and filed multiple complaints defendants would have

discovered their facility was wider in scope than their limited and biased investigation uncovered, they would

likely have obtained further relevant information to combat Intentional Discrimination, Retaliation, Hostile

Work Environment.

100. Defendants played favoritism to vendors allowing them to receive the bulk of trip disbursement from the vendor

portal, have multiple company's under officers of the same corporations / LLC,s and address, this treatment of

non-minority vendors and vendors that don't protest treatment handicapped plaintiff.

101. Upon information and belief plaintiff has lower bids than 97% of all vendors in Massachusetts but yet plaintiff

is allowed to only get 4% of trips as a dispatcher because defendants over ride the low bid system when it

comes to plaintiff whom is an African American male, one thing needs to be pointed out is all above defendant

have no problem with employing, training, African America females (Small percentage), Africans, Hispanics,

Indians, or any foreign nationality *except* African American Males, MART Brokerage department, HSBB,

MassHealth and the Executive office of Health and Human Service has all the records in their possession to

prove this accusations, plaintiff plans to propound discovery and take depositions to flush this information out.

102. Defendants would like to unlawfully terminated plaintiffs employment on the pretext of a customer complaint

or some technical issue, plaintiff and defendants have substantial evidence that plaintiff and his drivers have an

excellent job performance and that MART tolerates worse misconduct from other vendors / employees, plaintiff

received the least amount of complaints of any vendor in the whole Massachusetts until May 2017 and still has,

the records will show plaintiff didn't start receiving complaints or fines until defendant Karen was fired and or

forced to resign after plaintiff filed his Title VI complaint naming her as the one of ring leaders that lead the

charge of Retaliating and causing other employees, Directors and supervisor to create a hostile work

environment against the plaintiff.

103. Immediately after defendants Karen's departure from MART defendants watched from the sidelines as

defendants began to retaliate against plaintiff on a daily basis. Plaintiff found that he could get no answers to his

question's, multiple audits, fines, workload was cut, bogus complaint, vendor portal tabs disappeared.

104. On March 29, 2017 plaintiff received an email from Sharna Small-Borsellino director of  MassHealth Human Service Transportation Office, Sandy Mulcahy Brokerage Operations Manager the email was cc to defendants Rebecca, Karen  stating  "Thank you for agreeing to meet to discuss the issues presented by Paul Jones of CCRD. Please bring any documentation pertinent to the issues.  "regarding my complaint, rectify any allegation in plaintiff's complaint. Defendant Karen did not show for the meeting, the meeting was productive, but the only changes made on the defendant's part was that plaintiff was retaliated against Immediately with Intentional Discrimination, Retaliation and a Hostile Work Environment. There was a basis for plaintiff believing that wider compliance or lawfulness existed, plaintiff contacted Sharna Small-Borsellino and Sandy Mulcahy to report the illegal acts from the defendants but it was of no use, help and or advantage dealing with plaintiffs situation.

105. On or about April 15, 2018 plaintiff requested that he be given the proper training that was never given or offered to him by defendants for the vendor portal.

106. After plaintiff contacted MassHealth managers Sharna Small-Borsellino I was referred back to defendant Rebecca she then instructed Defendant Robert (My Contract Manager) to book me for the next Vendor Portal training session on May 16, 2018, when I arrived on May 16, 2018, I realized that I was the only vendor there to receive the training.

107. Plaintiff drove 1 hour and 50 minutes when I arrived defendant Robert informed me that the computers where down and he wasn't able to show me anything regarding the vendor portals operations, but he would explain it to me, during this session defendant stone wall me, I had no results with the vendor portal after our meeting because it was blocked upon information and belief by defendant Karen whom now worked at HSBB the company that made the software and controls the portal.

108.  Rebecca and Donna allowed these acts to happen on their watch as Director and Assistant director of the Brokerage department, Defendants engaged in repeated "crude, Intentional Discriminatory, Retaliatory offensive ways, it was unwelcome and inappropriate conduct that was directed at plaintiff which contributed to

a pervasively hostile work environment plaintiff likened it to be a battlefield from on or about April 2016 until June 13, 2019.

109. I spoke with Defendant Robert on several occasions starting on or about July 7, 2018, I informed him that I had no results and that any and everything he informed me of regarding the vendor portal didn't work, I demanded that I be given the proper vendor portal training as other non-minority and minority vendors have received, I also informed him that his actions were contrary to MARTS policy and other Federal & State Laws and that as a vendor I should have had proper vendor training it has been over two years I have been on the job, he did not respond until on or about September 2018.

110. On or about August 22, 2018 plaintiff realized that several clients that he has made complaint on where being continually offered again to him, plaintiff check the portal and realized the defendants MART complaint depart was removing plaintiff complaints.

111. On or about September 3, 2018 plaintiff requested that he be granted access to download all *END OF THE DAY* reports like other non-minority or vendors that do not protest defendant treatment, Defendants Rebecca, Robert and Michell stated that no vendors can download their end of day trips, several moths later defendant Rebecca asked me why am I not downloading my end of day trips as a receipt for all rides done for the day, I informed her that my Tab was taken away from my vendor portal and I was told no vendor was allowed to download an end of the day receipts for all trips performed, I realized I was being lied to and stoned walled again.

112. On or about September 1, 2018 plaintiff filed a Discrimination, Retaliation and a Hostile Work Environment charge against defendant MART with the EEOC Boston, Ma office, during this time the government experienced a shutdown soon after this prolonged plaintiffs meeting with the EEOC, plaintiff received his notice to sue on or about Feb 11, 2019 from the EEOC office, Plaintiff would go on to filed a timely Federal Complaint on May 9, 2019 in the Massachusetts Federal District Court in Boston, Ma. and Amended the complaint to reflect all the defendants and counts.

113. Soon after plaintiff filed the EEOC complaint, defendants Joanna, Rebecca, Robert, Michell, Tamara, Jessica, Stephanie and Amanda and others Retaliated against plaintiff by not responding to plaintiff's phone calls, emails, placing bogus fines on plaintiff and reducing plaintiff's workload.

114. After several months of being stoned wall by defendants, I sent several emails and phone calls to Defendants Robert and Rebecca regarding receiving proper Vendor Portal training, I received an email from Defendant Robert stating "*Paul, We will be holding our next Vendor Portal Training on Friday October 19th, 2018 from 1:00PM-3:00PM.  The training class is to give you a general over-view of the Vendor Portal, general policy and procedure, and to address common hurdles many first-time vendors may encounter. The address for training is: MART 150 Main St. Fitchburg, MA 01420".*

115. Defendant Robert insure me that the internet connection would be up and running and I would be shown the vendor portal demo and receive instruction paperwork regarding how the vendor portal works.

116. On October 19, 2018 I arrived at the vendor portal training (3rd Time in 2 plus years) there were other non-minority vendor at the training session, and I was able to participate with the group of vendors and was finally shown the vendor portal demo.

117. Soon after I realized that none of the training I received was relevant, because I was still not receiving access (Blocked) to the Vendor Portal, plaintiff still received 97% of his trips offered through defendants HSBB and MARTS ATDS and or predictive dialer computerized artificial voice messaging system while other non-minority vendors and minority vendors that did not protest defendant's treatment had full access to the vendor portal that display trip offerings.

118. On or about  Dec 27, 2018 Defendant MART, Tamara, Jessica Amanda and or the scheduling department place a trip for 5;30 am in the morning for a *Mitchel. M standing order # R121067 & R121068, plaintiff drivers don't start to 7am, plaintiff protested this treatment by email soon after* defendants removed these unauthorized trips immediately from plaintiff's portal, above defendants' actions were sufficiently adverse to constitute retaliation.

119. On or about Dec 27, 2018 Defendants placed or caused to be placed 20 Trips in plaintiff's vendor portal to disrupt plaintiffs' drivers and cause confusion, plaintiff informed the scheduling depart that this was contrary to

*Retaliation MGL chapter 151, Title VII, Title VI,* Defendants Tamara, Jessica Amanda removed these unauthorized trips immediately

120. On or about Dec 28, 2018 Defendant Michelle was contacted by plaintiff and was informed plaintiff capacity tab is locked again, Defendant Michell informed plaintiff that "*MART does not give any vendor the ability to change their capacity. That is something that only MART has access to*", defendant Rebecca the Director of MARTS call center resolved this issue in August 2016 when she gave plaintiff access to his capacity tab and claimed it was an oversite, defendants Michelle actions were contrary to Discrimination, Retaliation Federal & State laws, as other non-minority vendors and vendors that did not protest defendant's treatment had access to their capacity tab every day without interruptions.

121. On or about Dec 28, 2018 plaintiff informed Defendant Michell the plaintiff could not even changes his business hours defendant Michell stated I would have to request them to be changed by defendant MART in writing, as other non-minority vendors and vendors that did not protest defendant's treatment had the ability to change their business hours when deem necessary and access to their capacity tab every day without interruptions.

122. Defendants retaliated against plaintiff by constantly changes clients (Trips) pick up (Sabotage) times by usually 15 minutes, when it is policy for all vendors to have 30 minutes to get a client to their destination .On or about December 15, 2018 plaintiff emailed defendant Joanne and ask if he could start getting alerts again when a time sensitive complaint is filed against his drivers so he can answer in a timely orderly fashion to avoid fines, defendant Joanne stated "it's not my responsibility to inform you when you had a complaint lodged against you, you should check every day" this is contrary to defendant MART& HSBB policy, all non-minority vendors and minority vendors that don't protest their treatment has this function available to them.

123.From June 2017 until June 14, 2019 Defendants Karen, HSBB, MART, Tamara, Jessica, Amanda, Jane, John and or the scheduling department retaliated against plaintiff by programing their ATDS and or predictive dialer (IVR System) to keep offering plaintiff the same trips throughout the day, this caused plaintiff economic harm and personal injury.

124. On or about March 15, 2019 plaintiff email the defendants and Robert Monk & Michell Moyo and several department requesting that "any manager or lower level employees to help plaintiff in getting his questions answered regarding issue regarding the vendor portal and receiving work for his drivers", plaintiff received no reply from any defendants or MARTS staff (Managers or Lower Staff) this is contrary to Defendants MARTS policy, Title VI, Title VII, M.G.L. c. 151B and other Federal & State laws.

125. The plaintiff received medical treatment, counseling, and other similar attention for his despondency, plaintiff became withdrawn and lost interest in activities that formerly gave him pleasure and went to the emergency room for treatment and hired a counselor, all above defendants and others are responsible, plaintiff plans to add lower employees after discovery of their names.

## EMPLOYEE V CONTRACTOR

126. Plaintiff properly focused on the most important factor, control, finding that all Defendants exercised an unusual amount of control over plaintiffs' actions, a typical of a traditional employee / contractor relationship. The most important factor in determining the existence of an employment relationship is that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.

127. Defendant MART, HSBB, MART, Rebecca, Donna, Karen, Joanne, Robert, Michelle, Ivan, Crystal, Tamara, Jessica and Amanda are also involved in the hiring and firing of plaintiff's co- workers Example on February 8, 2019 David Dun MARTS Quality Assurance Department Manager fired a driver after he was hit by another car (Not his fault) after he tested positive for marijuana that he smoked while off for the week end "I would like to thank you for sending over the appeal on behalf of your employee Mr. Murphy in regards to the termination of your employee from all Mart work immediately as a result of the drug test performed due to his involvement in an accident after reviewing your appeal it has been determined that the appeal has been denied based on the positive result of the drug test".

128. Defendants Rebecca, MART, Stephanie, Jane and John had to approve plaintiffs' coworkers and new hires, MART controls internal operations of the plaintiff and his employer, particularly the managing of personnel and equipment used to do job. Plaintiffs company does not receive an IRS Form 1099, Plaintiff was required to submit a statement stating who held the workers' compensation insurance, Defendant MART controlled Plaintiff and plaintiff's employer as an employee, not as an independent subcontractor, on several occasion plaintiff was informed by clients that they called defendant MART to find out what time plaintiff driver would arrived and the client claims that Joanne began to coerce them into making a complaint against plaintiff foe being 5-7 minutes late.

129. Defendants and  MART has the hiring party's right to control the manner and means by which the product is accomplished, MART has the right to control when, where, and how the worker performs the job, the work does not require a high level of skill or expertise, there is a continuing relationship between the worker (plaintiff) and the employer (MART), MART has the right to assign additional projects to the worker, MART sets the hours of work and the duration of the job and plaintiff must submit a request to change is hours or capacity that must be approved by MART, the work performed by the plaintiff and his staff is part of the regular business of the employer (Transportation), MART can and has discharged ( Fired) plaintiffs workers, MART worker (Plaintiff) and the employer (MART) believes that they are creating an employer-employee relationship.

130. One should not overemphasize the role of professional judgment, contrasting it to control over the manner and means of plaintiffs work in the common law agency test, plaintiff has alleged contested facts in this complaint.

131. There is nothing intrinsic to the exercise of discretion and professional judgment that prevents a person from being an employee, although it may complicate the analysis. The issue is the balance between the employee's (Plaintiff) judgment and the employer's (All Defendants) control.

132. Defendants Rebecca, Karen, Ivan, MART, Stephanie, jane and John its employees have or has dictated how plaintiff had to run the business, Example on or about March 2017 Defendant Karen sent an email stating that plaintiff was to document how much he pays, the drivers, himself and what the companies earn each pay period,

Mileage for each trip, mileage when all vehicles return to office, amount of money spent on mechanic, gas and vehicle maintenance, and how much money is left over.

133. Defendant Joanne and Michelle would levy fines against plaintiff and CCRD INC with no explanation of why we were fined, even after plaintiff ask for a complaint number and reason why no response was given on several occasions this is contrary to Defendants MARTS policy.

134. Upon information and relief, On or about Tuesday May 15, 2018 defendant Ivan was forced to resign from his job at MART, on Friday May 18, 2018 defendant Ivan emailed plaintiff and other vendors seeking to offer them private services in combating MART unethical treatment toward vendors for a fee, this is unethical in every way.

135. Defendant Ivan stated in his email to me that "*Many of MART's vendors feel that they are unjustly fined and that their work is under-valued and unappreciated. Unfortunately, I can confirm that is the case, However, my attempts to create a smoother flowing system were largely detoured for the most part by the bureaucracy of my superiors and the servient nature of the system as a whole. They have even gone as far as to stop holding vendor conferences to avoid hearing much of what they already know is wrong but even more so to avoid vendors from fraternizing with each other. The bad part is that the vendors are the ones paying for their flawed system. I would like to further inform you that as a former MART vendor supervisor I have obtained some valuable knowledge in respect to this industry and in particular the contract/s your company hold/s with MART. I can also attest that much of the knowledge I have obtained can save the vast majority of MART vendors a great deal of capital when it comes to knowing how to navigate the different scenarios outlined with-in the contract as well as the general know how regarding portal use, MART protocol, requirements, etc. I am now at liberty to help assist companies on my own time and can offer manager training assistance which can assist any vendors bottom line but can be extremely useful for companies that are new to this program or frequently fined. There are many ways vendors can protect themselves, their investment, and their bottom line as well as save on other expenditures. Knowledge is power. If you feel you have been fined excessively? Not*

*getting your questions answered?  Are you not getting the results you've expected out of this program?  Are not being offered work?  Having portal problems?  Hiring problems? Having trouble reaching departments?  Need assistance setting up a system that works?  Questions or concerns in regard to MART?  I may be able to assist. Today.* Feel free to reply to this email to find out more about how I may be able to assist your company, today.

136. The above email is very telling of Defendants unethical ways of treating their vendors / employees this is deeply flawed and discriminatory.

137. Upon information and belief defendants Rebecca, Donna, Bonnie, Karen, Tamara, Joanne, Jane, and John Does insured that they maintained a policy at MART to deprive timely pay, access to the vendor portal, information, training to plaintiff, less than the non-minority or minority vendors of the different and sometimes the same national origin.

138. Upon information and belief Defendant HSBB, Karen, Rebecca, Donna and other managers allows the scheduling department defendants Tamara, Jessica, Amanda to override the low bid system on their watch (Bid Rigging) to ensure that they create an unfair advantage for these groups of non-minority vendors or vendors that don't protest defendant's treatment.

139. Upon information and belief Defendant MART, HSBB, Rebecca, Donna, Karen, Tamara, Jessica ,Amanda, Jane and John allows the scheduling department to unleash their ATDS / (IVR System) and or predictive dialer on plaintiff and other vendors to Discriminate, Retaliate and keep us occupied, so the non-minority vendors and vendors that don't protest defendant treatment can have an unfair advantage over plaintiff, and maybe there is something more sinister going on, but that is up to the Massachusetts Attorney Generals to uncover.

140. From approximal May 1, 2017 until June 14, 2019 Defendant MART, HSBB, Karen, Tamara, Jessica, Amanda offered or caused plaintiff to be offered the same trips over and over throughout each day, causing plaintiff personal cellular telephone to be tied up, and drivers to be stagnated and plaintiff to waste his time and be forced to take the non-cost-effective trips if he wanted to participate in MARTS federally funded program, while non-minority vendors and vendors

that don't protest has full access to cherry pic there schedule, the non-minority vendors or vendors that don't protest defendants treatment have an advantage over plaintiff, because they have full access to the vendor portal they can book their scheduled one or two weeks in advanced, while plaintiff struggles to secure work for the next day from the left over trips the non-minority vendors do not want, this treatment cause plaintiff to be uncertain if he will have enough work for his drivers, plaintiffs drivers have to be on call (uncertain), this is contrary to MARTS own policy.

141. Defendants treated Plaintiff in an adverse manner, and the other non-minority vendors and vendors that don't protest any of the defendants treatment who was similarly situated with respect to qualifications but was not in the plaintiff's protected group was given better treatment this is statistical disparity that affects a large number of individuals, this is contrary to  intentional discrimination, retaliation and  causing a hostile work environment.

## Plaintiff Exhausted Federal Administrative Remedies

142. Plaintiff tried his best to rectify the situation with defendant MART by reporting all abuses to defendants MARTS managers Directs and lower employees to no avail, plaintiff then filed Complaints with MassHealth managers Sharna. Small-Borsellino, Sandy Mulcahy, Joseph Harrington, plaintiff also reached out to defendant MARTS Director Mohammed Khan, Bruno Fisher and Bonnie Mahoney to no avail. Plaintiff filed a complaint with Massachusetts Attorney General's Office, U.S Elizabeth Warren Office, The Department of Justice, The Executive Office of Health & Human Services, Massachusetts Department of Transportation to stop all illegal phone calls to plaintiffs' personal cellular telephone, Intentional Discrimination, Retaliation and the Hostile Work Environment to rectify the situation before it escalated and became toxic.

143. With no results and worst treatment from the Defendants MART plaintiff filed a charge with the EEOC on September 2018, plaintiff received his Right to sue letter on February 11, 2019 and filed a timely complaint in the Federal District Court on May 9, 2019.

### ARTICLE III STANDING

144. Plaintiff has suffered a concrete injury, that is fairly traceable to the challenged conduct of all the defendants, and it is likely to be redressed by a favorable judicial decision.  Plaintiff has suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.

145. All Defendants Discriminatory, Retaliatory and acts of causing a Hostile Work Environment in this complaint caused the Plaintiff to clearly meet the requirement of concreteness as articulated in *Spokeo*.

### The Defendants Retaliatory Robocalls Caused
### Plaintiff Several Types of Concrete Harm

146. Defendants retaliated by calling plaintiff from 978-XXX-0019 & 978-XXX-9002 with and ATDS and or predictive dialer and left artificial computerized voice messages since on or about May , 2016 but plaintiffs phone did not ring until on or about November 2016 until June 13, 2019, even after plaintiff revoked his consent to be called on his personal cellular telephone several time verbally and in writing, this was contrary  to Retaliation by defendants.

147. On or about June 5, 2019 defendants retaliated against plaintiff by placing 61 calls with an ATDS and or Predictive Dialer (Artificial message) from 6:10 am until 7:18 pm to plaintiffs' personal cellular telephone.

148. The retaliatory calls to plaintiffs' personal cellular causes plaintiff to be unable to able to dispatch or communicate with his drivers when he is not in the office in a timely orderly fashion.

149. Defendants retaliatory robocalls also cause plaintiff intangible injuries, the main types of intangible harm that these unlawful robocalls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the plaintiffs time or causing the risk of personal injury due to interruption and distraction.  The Plaintiff here incurred all of these intangible harms and all of them meet the requirement of concreteness as interpreted by *Spokeo*.

150. Defendants retaliatory calls occupied plaintiff cellular phone memory of answering machine and interfered with unencumbered access to the cell phone was trespass to chattels, even if plaintiff did not answer the mere invasion of the plaintiff's electronic device can be considered a trespass to chattels.

151. Defendants unwanted retaliatory robocalls to plaintiff's personal cell phone has a close relationship to the harm recognized by this ancient common law tort—a tort that protects fundamental property rights.

152. A final intangible harm that the retaliatory robocalls caused here is that they required the Plaintiff to tend to them and wasted the Plaintiff's time.  The first post-*Spokeo* decision to address robocalls squarely holds that wasting the recipient's time is a concrete injury that satisfies Article III. plaintiffs lost time is an adequate injury-in-fact.

153. *Spokeo* also holds that a risk of harm can also be concrete enough to satisfy Article III defendants unwanted retaliatory calls meet this standard as well, as they cause a risk of injury due to interruption and distraction. "Driving while distracted" due to a cell phone call is a common cause of automobile accidents, the National Highway Traffic Safety Administration found that cell phone use contributed to 995 fatalities, or 18% of all fatalities, in distraction-related crashes in 2009. These calls also diminished the ability of plaintiff to receive emergency calls and messages, as they drown them out, and even forced the plaintiff to turn off his cell phone's audible alert feature.  These risks are both real and concrete and satisfy *Spokeo*'s requirements.

154. Defendants actions invaded plaintiff privacy and are much more concrete and particularized that required by Spokeo.

## CONTINUING VIOLATION DOCTRINE

155. The principal question is whether the continuing violation doctrine required consideration of a lengthier period of time in evaluating the merit of plaintiffs' claims. Answering that question requires one to assess the impact of the Supreme Court's decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)

156. Defendants MART, HSBB, Rebecca, Donna, Karen, Ivan, Crystal, Tamara, Jessica, Amanda, Robert, Michell, Stephanie, Jane and John began a campaign of harassment that continued through the filing of this lawsuit 37 months later.

157. The conduct that plaintiff identifies from on or about May 2016 until June 13, 2019 from that point forward is related, and the pre- and post-limitations period incidents involved the same type of discriminatory, Retaliatory and serial hostile work environment employment actions, occurred relatively frequently, and were perpetrated by the same individual.

158. Defendants refused to acknowledge plaintiff when he spoke or sent the majority of emails and if he did speak, they cut him off, hang up the phone this treatment was unprofessional, unwelcoming, and even aggressive, plaintiff was told often that he did understand whatever the topic was, the defendants belittled or otherwise spoke down when speaking to plaintiff this treatment displayed open hatred and contempt for the plaintiff from May 2016 until June 13, 2019.

159. There is no evidence that the defendants MART, HSBB, Rebecca, Donna, Karen, Ivan, Crystal, Tamara, Jessica, Amanda, Robert, Michell, Stephanie, Jane and John took any intervening acts that would have severed the continuing nature of the acts.

160. Plaintiff alleges a hostile work environment claim, plaintiff filed his complaint while several acts which comprises the hostile work environment claim is still timely, the entire time period (May 2016 until June 19, 2019) of the hostile environment should be considered by this court for the purpose of determining liability. Defendants acts involve the same type of discrimination, tending to connect them in a continuing violation, the alleged acts were recurring not in the nature of an *isolated work assignment or incident* these acts were on going not a discrete act, and defendants' acts had the degree of permanence which triggered plaintiff's awareness of a duty to assert his protected rights.

161. Defendants Hostile work environment claims were continuing because they involve repeated conduct, so the unlawful practice did not occur on any particular day, defendants' acts contributed to plaintiffs claim occurred within the filing period, the entire time period of the hostile environment should be considered by this court for

the purposes of determining defendant's liability. Plaintiff's serial hostile environment claim, Discrimination and retaliation is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendants, the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim, nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement. Each act was part of the whole, all defendants' acts are still part of the same claim plaintiff alleges in this Amended complaint.

162. Defendants acts on or about May 2016 had a relation to the acts that happen through (38 Months) June 13, 2019, the defendants that were directors and supervisors HSBB, MART, Rebecca, Donna, Karen, Tamara, Stephanie, Joann Jane and John did not intervene at all when plaintiff protested, complained and or filed complaints with defendants directly and or varies agency's these action by the defendants were part of the same serial hostile environment, intentional discrimination and retaliation claim. plaintiff identified specific and ongoing acts of harassment throughout this Amended Complaint.

163. Plaintiff has demonstrate that the separate acts are related that the violation were continuing there was no intervening action by any of the defendants in this lawsuit, defendants acts became more sever over time from the acts that preceded them, the continuing violation doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.

164. Plaintiff protected and protested his rights earlier as early as May 2016 and as late as June 9, 2019 and alerted all defendants to the existence of a serial hostile work environment, Intentional Discrimination and Retaliation, some of the incidents that supported the plaintiffs  hostile work environment, discrimination and retaliation claims occurred before the 300 day period began, plaintiff realized knew of an ongoing violation and the continued violation doctrine on or about March 1, 2019 after doing research of remedies to stop the acts by the defendants.

165. Plaintiff tried to work with defendants as the statue encourages us to work with employers and to take advantage of other mechanisms for obtaining relief from ongoing harassment rather than rushing to bring an EEOC charge and litigation., plaintiff demonstrated that he has done so by revoking consent to be called of his cellular telephone

early and often getting another dedicated local number for defendants to call, writing to defendants asking for help to rectify the situation several times, contacting Executive office of Health & Human Service, MassHealth, Directors, Supervisors, MassDOT, Department of Justice, U.S Senator Elizabet Warren and others, to preserve my job.

166. Plaintiff presented factors to show a continuing violation that would enable him to support is Intentional Discrimination, Retaliation and a Hostile Work Environment (harassment) claims with defendant's conduct occurring more than 300 days before he filed his EEOC charge.

167. The pre- and post-limitations period of incidents involved the same type of actions, occurred relatively frequently, and were perpetrated by all the same defendants, there is no evidence the defendants took any intervening acts that would have severed the continuing nature of the acts. The plaintiff has pointed to equitable consideration that should allow the court to consider the full scope of the continuing conduct. The plaintiff showed the Intentional Discrimination, Retaliation and the Hostile work Environment (harassment) occurred over a broader period was on account of his national origin African American (Black), sex (Male), Retaliation, Intentional Discrimination and was severe and pervasive.

168. Defendants acts is a tort involved and a continued repeated injury to the plaintiff and the limitation period does not begin until the date of the last injury or when the tortious act ceased, the Continued Violation Doctrine not about a continuing, but about a cumulative, violations as in the Amended Complaint.

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

169.  The defendants intended to inflict emotional distress or they knew or should have known that emotional distress was the likely result of their conduct toward the plaintiff, the conduct was extreme and outrageous and was beyond all possible bounds of decency and was utterly intolerable in a civilized community, the actions of the defendant were the cause of the plaintiffs distress, the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

170. Plaintiff experienced physical conditions of severe headaches, insomnia, muscle tension, fatigue, nausea, vomiting, depression, shortness of breath, uncontrollable crying spells, loss of appetite, stress, stomach pains, loss

of Consortium, changes in personality and mood,  heart racing and believed that he was suffering a heart attack and or stroke due to defendants conduct and was rushed to Mercy Hospital Emergency room during this whole ordeal with the defendants and sought counseling due to the stress-related conditions that defendants continually bestowed upon plaintiff.

171. Plaintiff suffered great anguish as a result of defendant's actions, that anguish manifested itself in the above ways and also fears for his safety, this constellation of symptoms limited plaintiff's ability to function this harm would not have occurred but for the defendant's misconduct and defendants' actions were a proximate cause of the harm to plaintiff.

172.  Plaintiff was even unable to drive and attend to his Job, family duties some days due to defendants' actions towards him plaintiffs functioning was impaired months on end.

173. A jury can reasonably conclude that plaintiffs' emotional distress from defendants' actions were sufficiently severe to justify recovery.

174. All Defendants some time or another transmitted a series of vicious and extraordinarily disturbing e-mails to plaintiff, the relentless nature of defendant's pernicious attacks and the duration of their onslaught weigh heavily on plaintiff and was severe.

175. The plaintiff was forced to endure emotional distress over Three years period which is a highly relevant datum that the distress was sufficiently severe, and plaintiff should be compensated.

176. Given these and other incidents, and the more than three-year long war of vituperation waged by all defendants against the plaintiff the jury can conclude that defendants course of conduct amounted to far more than mere insults, harassment, indignities, and petty oppression.

177. The defendant's actions where causation-in-fact given the duration and persistence of defendants attacks, a jury has ample reasons to infer that their (Defendants) conduct caused plaintiff emotional distress, defendants knowingly participated in the events leading to the wrongful retaliatory, harassing, conduct defendants had actual knowledge or on the defendant's deliberate disregard of a substantial probability that their actions would produce severe emotional distress to the plaintiff.

178. The complaint supports that a jury's determination can conclude that plaintiffs' emotional distress was the foreseeable result of defendants over three-year long pattern of vilification, harassment, retaliation and other actions in this Second Amended complaint establishes proximate cause, plaintiffs harm was severe, and a causal connection was sufficient by defendants' actions.

179. A jury could supportably conclude that defendants, over a long period of time, displayed a strain of deliberate malevolence that easily qualifies as extreme and outrageous conduct, the defendants has intentionally inflicted severe emotional distress without privilege on the plaintiff.

180. Defendant had a pattern of misconduct such as defendants placing calls to plaintiffs cellular phone when he was not working after he revoked consent, making him submit to multiple back to back audits, not investigating his claims of discrimination, retaliation, creating a hostile work environment, fining plaintiff excessively and not informing him what the fines are for, disabling multiple sections of the plaintiffs vendor portal, adding non-cost effective trips to his schedule, trying to charge him a fee to show plaintiff how to navigate defendants above actions.

181. In the case at bar, the district court should conclude that the above acts were all reasonably foreseeable results of the defendant's misconduct, the so-called intervening acts in this complaint were well within the realm of reasonable expectations once the defendant's acts took place.

## COUNT I

### Retaliation in Violation of  Title VII of the Civil Rights Act of 1964, et seq
### DEFENDANTS MART

182. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee because he has opposed any practice made an unlawful employment practice by this subchapter.42 U.S.C. § 2000e-3(a).

183. Plaintiffs protested and made informal and formal complaints to The Massachusetts Attorneys General's office, Executive office of Health & Human Services, MassHealth, Department of Justice, Department of

Transportation, the E.E.O.C, Defendants' Agents, Managers, Directors and employees opposing Defendants' unlawful, discriminatory, retaliatory employment practices.

184. As a result of Plaintiffs' complaints, on information and belief Defendant Karen was fired and or forced to resign from defendant MART, and the MART staff had to undergo Training under the Title VI and Title VII of the Civil Rights Act of 1964 and come under compliance of these laws.

185.  Defendants managers, agents and employees took materially adverse actions against Plaintiffs, including, but not limited to, issuing disciplinary warnings (Fines), not training, blocking plaintiff from Vendor Portal, placing plaintiffs telephone number on defendants Automatic Dialing system and or Predictive Dialer, threats of termination; reprimands by supervisors, stone walling plaintiff, sabotaging plaintiffs daily work schedule.

186. Defendants' adverse actions constituted retaliatory workplace harassment.

187. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

188. As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

189. Plaintiff is entitled to their reasonable attorneys' fees and costs of suit.

190. Any non-discrete conduct that occurred outside of the statute of limitations can be relied upon to prove retaliation when the earlier conduct only became actionable once other conduct occurring within the limitations period occurred.  *See* Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101 (2002).

191. The effect of the events described above has been to deprive plaintiff of equal employment opportunities in retaliation for exercising his federally protected rights.

192. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of the plaintiff

193. The unlawful employment practices described above were intentional.

194. As herein alleged, all the Defendants, by and through its Directors, officers, employees, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting him to unjust scrutiny, false

allegations and derisive comments solely because he had protested the discrimination, retaliatory treatment. Defendants had no legitimate reasons for any such acts each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

195. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the Defendants may have engaged in other discriminatory practices against him which are not yet fully known.

**WHEREFORE**, Plaintiff, demands judgment against the Defendants, in an amount which will compensate him for: Violation of plaintiffs rights under Title VII of the Civil Rights Act et seq; Compensatory and Special damages for or medical treatment & supplies, physicians' and counseling fees impairment of power to earn money; physical pain, emotional distress and humiliation; Personal injuries, Loss of consortium, Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct; Declaratory and permanent injunction against future acts of discrimination and harassment against Plaintiff; Trial by jury on all issues so triable; Costs expended herein, including reasonable attorneys' fees; Pre-judgment and post-judgment interest; and Any and all other relief to which he may be entitled

**Count II**

**Discrimination (Hostile Work Environment) in Violation of**

**Title VII of the Civil Rights Act of 1964, et seq**

**DEFENDANT  MART**

196. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

197. A plaintiff who has a seasonable claim based on a hostile work environment may introduce evidence of events that occurred prior to the six-month limitation period as background evidence even though he or she may not recover damages for those events.  Id. at 541, 750 N.E.2d 928.   Ocean Spray Cranberries, Inc. v. Massachusetts Commn. Against Discrimination, 441 Mass. at 647, 808 N.E.2d 257.[4]

198. Plaintiff was subjected to harassment, verbal and written conduct by Defendants' Directors, Agents, Managers, Supervisors and employees.

199. Defendants' agents and employees' conduct was not welcomed by Plaintiffs.

200. Defendants' agents' and employees' conduct was undertaken because of Plaintiffs' filing of complaints against defendants Race, Sex and his opposition to defendant's treatment of him.

201. The conduct was so severe or pervasive that reasonable persons in Plaintiffs' positions would find their work environment to be hostile or abusive.

202. Plaintiff believes his work environment to be hostile or abusive as a result of Defendants' Directors, Agents, Managers, Supervisors and employees conduct.

203. All Defendants knew, or should have known, of the abusive conduct, Plaintiff provided Management level & Lower level employees, with information sufficient to raise a probability of harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

204. Defendants did not exercise reasonable care to prevent harassment in the workplace and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

205. The very nature of such claims in this complaint is that they involve "repeated conduct;" (2) therefore an unlawful employment practice involving such claims "cannot be said to occur on any particular day;" (3) rather, they occur "over a series of days or perhaps years against the defendants.

206. As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

207. Defendants unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination.

208. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.


**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by

reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' emotional pain and suffering, Loss of consortium ,and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of suit pursuant to Title VII of the Civil Rights Act of 1964 and other laws; and further relief as this Court deems just and proper.

## COUNT III

### Race & Sex Based National Origin  (African American Male)
### Discrimination in Violation of Title VII of the Civil Rights Act of 1964, et seq
### DEFENDANTS MART

209. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

210. Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

211. Defendants discriminated against Plaintiffs by treating them differently from the nonminority vendors, including trip assignments, Bidding prices, access to the vendor portal, procedure to obtain work (Vendor Portal. v. ADTS / IVR System, access to Training, access to information regarding policy & procedures, access to federal Funded programs, managers, and unequal wages and compensation, because of his Race & Sex (African American Male).

212. Plaintiffs' Race & Sex (African American Male) was the determining factor and/or a motivating factor in Defendants' actions.

213. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, suffered emotional distress, economic damages to be proven at trial.

214. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

215. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on Race & Sex (African American Male).

216. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.


**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' Loss of consortium, emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of suit pursuant to Title VII of the Civil Rights Act of 1964 Race & Sex based and other laws; and further relief as this Court deems just and proper.


## COUNT IV

### Race & Sex Based National Origin  (African American Male) Discrimination (Disparate Impact) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.  et seq
### DEFENDANT MART

217. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

218. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their Race & Sex. Plaintiffs are informed and believe and thereon allege that Defendants' operated as a non- African American Male Vendor that owned or managed a Transportation company would participate in MARTS Federally Funded programs and if they did it would only be a very small number of African American Male, defendant's policy and/or practice had an adverse and disproportionate impact on plaintiff because of his Race & Sex **(African American Male) (National Origin)**.

219. Defendants' above policy and/or practices policy was neither manifestly job-related nor consistent with business necessity.

220. Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

221. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

222. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on Race & Sex **(African American Male) (National Origin)**.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' Loss of consortium, emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein and reasonable attorneys' fees and costs of suit pursuant to Title VII of the Civil Rights Act of 1964 National Origin based and other laws; and further relief as this Court deems just and proper.

**COUNT V**
**Violations of M.G.L. c. 151B, §*et seq* – Interference with Protected Rights**
**and Retaliation for Requesting Reasonable Accommodation**

**ALL DEFENDANTS**

223. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

224. Any non-discrete conduct that occurred outside of the statute of limitations can be relied upon to prove retaliation when the earlier conduct only became actionable once other conduct occurring within the limitations period occurred.  *See* Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101 (2002).

225. Plaintiff requests to Defendants for accommodations, and his internal complaints regarding MART's failure to provide accommodations, as alleged above, constitute activity protected from retaliation and/or interference under M.G.L. c. 151B, §§ 4(4) and 4(4A.)

226. At all relevant times, Plaintiff acted in good faith and was reasonable in the requests he made to Defendants and acted with a good-faith belief that MART's conduct in failing to provide reasonable accommodations was unlawful.

227.Defendants' conduct as alleged herein, including without limitation Defendants' Intentional Discrimination, Retaliation, Hostile Work environment, refusing to train plaintiff properly, refusing to allow plaintiff to participate in Federal Funded Programs, refusing communicate with plaintiff, refusing to remove plaintiffs personal cellular telephone from their ATDS and or predictive dialer, constitutes adverse employment action against plaintiff.

228. Defendants Discriminated, Retaliated and caused a Hostile work environment against the Plaintiff from on or about May 12, 2016 to June 13, 2019.

229. Plaintiff engaged in protected conduct, that he suffered some adverse action, and that there was a causal connection between the protected conduct and the adverse action.

230. Defendants' malicious and reckless disregard plaintiffs' rights to work in peace with discrimination, retaliation and a Hostile Work Environment. Plaintiff engaged in activity protected under the statute and made defendants aware of it.

231. Defendants aided & abet, incited, compelled and coerce retaliatory in violation of the relevant provisions of Chapter 151B, the above-mentioned acts in this lawsuit which are forbidden under this chapter or to attempt to do so.

232. Courts in Massachusetts and the First Circuit determine whether a party is an employee or independent contractor based upon 'traditional agency law principles.' Speen, 102 F.3d at 631. Those principles apply equally to claims brought under the federal [ADA] and the Massachusetts Anti-Discrimination Statute. See id. at 627-34." Santangelo v. N.Y. Life Ins. Co., Civil Action No. 12-11295-NMG, 2014 WL 3896323, at *7 (D. Mass. Aug. 7, 2014); see also Barton v. Clancy, 632 F.3d 9, 17-18 (1st Cir. 2011) (for purposes of interpreting term "employer," in Chapter 151B, federal courts look to federal decisions interpreting the term "employer" under federal antidiscrimination statutes). For the reasons set forth above in connection with Plaintiff's claim under the ADA, Defendants have not shown as a matter of law that Plaintiff was an independent contractor rather than an employee for purposes of Chapter 151B.

233. In order to pursue his claims, the plaintiff relies on the application of the continuing violation doctrine now set forth in Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 541-542, 750 N.E.2d 928 (2001), to claims of a hostile work environment based on racial discrimination in violation of G.L. c. 151B, § 4(1).

234. Unlike "sexual harassment," racial harassment is not defined in G.L. c. 151B. Nevertheless, G.L. c. 151B, § 4(1), states that it is an unlawful practice for an employer because of race "to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment."   In deciding the Cuddyer case, the Supreme Judicial Court did not base its analysis of the employee's claim on the statutory definition of sexual harassment.   Instead, the court gave deference to the MCAD's decisions and its rule-making authority. Cuddyer v. Stop & Shop Supermarket Co. 434 Mass. at 533-534, 750 N.E.2d 928.   The court also observed that, pursuant to G.L. c. 151B, § 9, "the provisions of this chapter [151B] are to be construed liberally" in order to eliminate discriminatory conduct.   Ibid., quoting from G.L. c. 151B, § 9.

**WHEREFORE**, Plaintiffs pray for relief as follows: For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful; lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial; compensatory damages for Plaintiffs' Loss of consortium, emotional pain and suffering, and personal injury in an amount to be proven at trial; punitive and liquid damages in an amount to be determined at trial; interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation; an order enjoining Defendants from engaging in the unlawful acts complained of herein; For reasonable attorneys' fees and costs of suit pursuant to M.G.L. c. 151B, §§) *ET SEQ* and other laws; and further relief as this Court deems just and proper.

**COUNT VI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**ALL DEFENDANTS**

235. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein

236. Defendants knew, or should have known, that failure combat the Intentional Discrimination, Retaliation and the Hostile Work Environment and to investigate plaintiffs' allegations in a timely orderly fashion and to exercise due care would cause plaintiff severe emotional distress with physical symptoms .

237. As a further proximate result of defendants and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional distress and physical / mental suffering, the severe emotional distress suffered by the plaintiff was intentionally inflicted, establishing physical harm.

238. Defendants knew or should have known that their acts would cause plaintiff physical and mental harm and that he would have to seek medical, mental health professional treatment, plaintiff attempted to mitigate the harm that defendants caused him several time over a Three (3) and half year period.

239. At all relevant times, Defendants owed Plaintiffs a duty to act with reasonable care, and/or the injury to the Plaintiffs was reasonably foreseeable, Defendants had the power, ability, authority and duty to stop engaging in the conduct described herein and to intervene to prevent or prohibit such conduct but refused to do so.

240. As a direct and legal result of Defendants wrongful acts, Plaintiffs have suffered and will continue to suffer significant physical injury, pain and suffering and extreme and severe mental anguish and emotional distress.

241. Despite said knowledge, power, and duty, Defendants negligently failed to stop engaging in the conduct described herein or to prevent or to prohibit such conduct or otherwise to protect Plaintiffs, thereby breaching their duty to him. To the extent that said negligent conduct was perpetrated by the Defendants confirmed and ratified said conduct with the knowledge that Plaintiffs' emotional and physical distress would thereby increase and with a wanton and reckless disregard for the deleterious consequences to Plaintiffs.

WHEREFORE, plaintiff prays judgment against defendant as follows: For general damages for severe emotional distress and mental suffering, Loss of consortium, medical and related expenses, lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, compensatory damages, punitive damages, attorney fees,  and, for such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

 Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a jury trial.

Paul Jones

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

 March 25,2020

## <u>VERIFICATION OF SECOND AMMENDED COMPLAINT AND CERTIFICATION</u>

### STATE OF MASSACHUSETTS

### Plaintiff, Paul Jones, states as follows

I am the Plaintiff in this civil proceeding.
I believe that this civil Complaint is well grounded in fact and warranted by existing
law or by a good faith argument for the extension, modification or law.

I believe that this Second Amended Verified Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

The plaintiff has reviewed the complaint, regarding the allegations of which the plaintiff has personal knowledge, the plaintiff knows or believes them to be true.

Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing pleading is true and correct.

Paul Jones            /s/ Paul Jones
572 Park Street

Stoughton, Ma 02072

<u>PJ22765@gmail.com</u>

March 25,2020