UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


PAUL JONES

PLAINTIFF                                        Civil Action No. 19-cv-11093-TSH

    V

MONTACHUSETTS REGIONAL  TRANSIT AUTHORITY et al.



PLAINTIFFS  NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER

SUPPORT OF HIS OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY

JUDGMENT AND PLAINTIFFS' CROSS SUMMARY JUDGMENT


1.  PLEASE TAKE NOTICE that Plaintiff Paul Jones ("Plaintiff") respectfully submits a recent

    Massachusetts Supreme Court decision on the question currently before this court in the above

    case of definition of an employee, Joint Employment definition.


2.  The Massachusetts Supreme Court's decision is attached as Exhibit 1 hereto, which the MSJC

    explains the meaning of employee includes joint employee and what makes a Joint employer.

3.  These same definitions plaintiff argued in his opposition to defendants Motion for Summary Judgment and Plaintiffs cross Motion for Summary Judgment.

4.  The SJC made it clear that "Pursuant to that test, whether an entity is a joint employer of an individual is determined by considering the totality of the circumstances of the relationship between the individual and the entity, guided by a framework of four factors: whether the entity (1) had the power to hire and fire the individual, (2) supervised and controlled the individual's work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

5.  The record, when considered in view this  pending MSJ factors as a whole, supports the conclusion that the plaintiff has proved that defendants MART exercised the type of control over plaintiff employment necessary to conclude it was their joint employer. See JINKS vs. CREDICO (USA) LLC. Dec 13,2021 (SJC) Ex 1.

6.  This same test is what plaintiff stated in his opposition to defendants MSJ and cross MSJ, plaintiff stated that the test for Joint employment is ""Factors to be considered in determining whether an entity is a joint employer are whether it: **1)** supervises the employee's day-to-day activities, **2)** has the authority to hire or fire employees, **3)** promulgates work rules and conditions of employment, **4)** controls work assignments and **5)** issues operating instructions." *Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *12 (D. Mass. Mar. 31, 2021), Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995). See Dckt 123 , # 11 pg. 4.

7.  The SJC state further that "The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 n.4 (6th Cir. 1997), quoting National Labor Relations Bd. v. Browning–Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982). See 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1312 (3d ed. 1996). See also Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964) (describing inquiry whether bus company had "sufficient control over the work of the employees" of another company) See JINKS vs. CREDICO (USA) LLC. Dec 13,2021 Ex 1.

8.  The 2016 contract from defendant MART to CCRD provided that MART "retain[ed] absolute discretion, control, and judgment in the manner and means of carrying out the Services." MART had "exclusive control over CCRD employees' relations while they transported MARTS clients, the policies, and its policies relating to hours, or working conditions of its employees, hiring and firing, suspensions, discipline, and discharge CCRD employees including Plaintiff.

9.  The plaintiff made this point in his opposition, Dckt 123, I stated "The US Supreme and the 1st Circuit has held that "Two or more entities can be considered "joint employers " for Title VII liability purposes". "The Supreme Court and Courts in this circuit defined the concept of a 'joint employer' as a company possessing 'sufficient control over the work of the employees'

3

of another company." "and share or co-determine those matters governing essential terms and conditions of employment" *.Commodore v. Genesis Health Ventures, Inc*., 824 N.E.2d 453, 456 (Mass. App. Ct. 2005) (quoting *Boire v. Greyhound Corp*., 376 U.S. 473, 481 (1964)). !!" *Cagle v. Estes*, No. 3:18-cv-10123-KAR, at *12 (D. Mass. Mar. 31, 2021)". Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir. 1993, *Acosta v. Harbor Holdings & Operations*, *Inc*., 674 F.Supp. 2d 351, 370-71 (D.P.R. 2009), *Marrero v. Misey Rest., Inc.*, CIV. No. 17-1911 (MDM), at *17- 18 (D.P.R. Dec. 13, 2019). See Dckt # 123, # 12 **pg. 5.**

10. Plaintiff further stated, "The First Circuit has recognized that where an entity, by contracting with an employer, acquires control over the employment conditions of the employer's workers, that entity becomes liable as a "joint employer" Rivas, 929 F.2d at 820 n. 17." *Orell v. Umass. Memorial Medical Center, Inc.*, 203 F. Supp. 2d 52, 62 (D. Mass. 2002). Consequently, "[w]hether an employer possesses sufficient indicia of control to be an employer is essentially a factual issue." Fortunato v. Capitol Sec. Police, Inc., 2007 WL 2688695, at *3 (D.P.R. 2007) (citation omitted), *Galarza-Cruz v. Grupo HIMA San Pablo, Inc.*, CIVIL No. 17-1606 (RAM), at *23-24 (D.P.R. May 28, 2020).

11. "A joint employer " relationship exists when two entities `share control of the employee to such an extent that they both function as an employer , even though they are operationally distinct.'" *Bonilla v. Liquilux Gas Corp.,* 812 F. Supp. 286, 289 (D.Puerto Rico 1993). The joint employer doctrine has been utilized in Title VII cases, and two separate business enterprises can be treated as a single employer for the purposes of Title VII liability if there is an "interrelation of operations, common management, centralized control of labor relations and

common ownership." *Radio Television Broadcast Technicians v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *see also Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico,* 929 F.2d 814, 820 n. 16 (1st Cir. 1991) (incorporating joint employer doctrine into Title VII context). While Plaintiff's argument that Lloyd is a "joint employer " is creative, the doctrine does not appear to apply to the situation at hand." See Dckt # 123, # 13,14 & 15 **pg. 5 & 6.**

12. Plaintiffs' arguments on September 9, 2021, is on point as the MSJC has once again clarified plaintiffs  argument, plaintiff words used in his opposition was verbiage from US Supreme Court caselaw and now Massachusetts Supreme Court caselaw, this moots defendants' argument that **"**By Plaintiff's own admission, he does not meet the factors set forth above. See, *Complaint ¶ 42.* ("Plaintiff was and is the manager/dispatcher at Commonwealth Community Recovery Division, Inc. (CCRD) who, has a contract with defendant MART . . ."); *Complaint, ¶* 56 ("Defendants . . . have even placed trips that were even expected . . . or completed by plaintiff's employer . . ."); *Complaint, ¶* 128 ("Plaintiff's company does not receive an IRS Form 1099, Plaintiff was required to submit a statement stating who held the workers' compensation insurance . . ."). *Complaint ¶ 128.* Regardless, in applying the above factors to the undisputed facts here, it is clear that Plaintiff is not a MART employee for purposes of protection under Title VII.

13. It does not matter if plaintiff was the Manager/ Dispatcher or that Commonwealth Community Recovery Division, Inc. (CCRD) and not plaintiff had a contract with defendants or that Plaintiff's company does not receive an IRS Form 1099 from defendants or if Plaintiff was

required to submit a statement stating who held the workers' compensation insurance it is clear

from the MSJC order on December 13, 2021 that Plaintiff can be considered defendants MART

employee for purposes of protection under Title VII if they retained control over plaintiff,

which by the own representative deposition testimony Rebecca Badgley she admitted each

prong that the MJSC stated has to be shown to prove defendants were plaintiffs employer under

the Joint Employment doctrine 1-4.

DEFENDANT HAD THE POWER TO HIRE AND FIRE THE INDIVIDUAL (PLAINTIFF)

(2) DEFENDANTS SUPERVISED AND CONTROLLED THE INDIVIDUALS WORK

SCHUEDUEL OR CONDITIONS OF EMPLOYMENT

14. Plaintiff points the court to the first prong that the MSJC stated that a plaintiff must show " (1)

had the power to hire and fire the individual" See MSJC page 2.

15. Defendants stated in their Deposition that "MART is not the hiring or firing authority for a

vendor's employees, but plaintiff stated  "MART has the right to request the removal of an

individual from working on MART's contract. SOF, ¶ 29, 30.

16. The defendants deponent Rebeca Badgley stated "MART has the right to remove a driver from

the contract because it is theirs, Dckt 127, Ex. 7 Deposition, Pages 31, lines 7-24 (admitted),

and page 32-line l- 4.

17. PLNT stated in his opposition Dckt 123  "MART has the authority to hire or fire employees
Dckt 123, Dckt 127 Ex. 5. 2-8. Defendants MART promulgates work rules and conditions of
employment, MART controls work assignments and issues operating instructions. Dckt 127,
Ex. 6 pg. 3-9 Defendants emails to plaintiff, , Pl. Affidavit 3-9. Depo Ex 7. Pg. 57, 14-24.

18. "MARTS Supervisors & Managers discharged and or fired several of plaintiff's and vendors
employees / drivers See Ex, 5 emails pg. 2-8. Pl. Affidavit 48. "MART has the right to remove
a driver from the contract because it is theirs, Dckt 127, Ex. 7, Page 31, lines 7-24 (admitted),
and page 32-line l-4. Dckt 123 line 49. Pursuant to defendants' contract and Amendments
"MART reserves the right to Terminate Transportation Provider Subcontract and require the
removal of Transportation Provider personnel", Dckt 127 Ex. 3, Page 1 of 58, / Page 5 of 58
subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of
58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,".

19. "MART also reserves the right to request a change or removal of operator/driver or
Transportation Provider personnel for any reason, Dckt, Ex. 3, Page 38 of 58 # 10. MARTS
Supervisors & Managers fired several of plaintiff's employees / drivers Ex. 5 emails pg. 2-8.
MARTS Amendments states "Upon request, provide the Broker, HST Office or Agency with
the credentials of any *Transportation Provider employee*. The Broker or Agency has the right
to deny the approval of any driver or Monitor, or to require the Provider to replace any driver
or Monitor in the performance of HST services, for any reason." Ex. 3, Page **7** of **58 # 5.**

20. "MART reserves the right to Terminate Transportation Provider Subcontract and require the removal of Transportation Provider personnel", Dckt 127, Ex. 3, Page 1 of 58, / Page 5 of 58 subsection B1,3,4, / page 6 of 58 subsection 6.C / Page 26 of 58 subsection c, 2, / Page 29 of 58 subsection 4,a,2, / Page 30 of 58 section B, / Page 33 of 58 subsection 1,2,3.

21. 'Pursuant to defendants' contract and Amendments "The Broker reserves the right to require on-going evaluation procedures. Non-performance or deterioration of quality of service may result in disciplinary action, reduction of work, suspension and/or contract termination." Dckt 127, See Ex. 18, pg. 11 of 13, f. and "The Broker will monitor equipment and service performance". Dckt 127 See Ex. 18, pg. 11 of 13, g'.

22. 'Pursuant to MARTS contract and Amendments "Quality of service issues on behalf of the Provider will result in warnings, fines, and additional administrative actions such as re-trainings, etc. Severe or continued violations of contract standards may result in reduction of work, suspension and/or contract termination. Transportation Providers may appeal fines within 10 days from the date of the fine letter. All appeals must be submitted in writing." Dckt 127, See Ex.18, pg. 11 of 13, i,1'.

23. 'MART has the authority to hire or fire employees Ex. 5. 2-8. MART promulgates work rules and conditions of employment, MART controls work assignments and issues operating instructions. Dckt 127, Ex. 6 pg. 3-9, Pl. Affidavit 3-9. Depo Ex 7. Pg. 57, 14-24'.

24. "PLNT also pointed the courts to defendants MART mandatory reporting requirements for plaintiff as well as CCRD  see Dckt 123, # 64-66 pgs.

25. "Defendants controlled plaintiff and became PLNT employer because their contract stated plaintiff and CCRD had to:

   **a**. "End of month odometer reading on vehicles used for brokerage contract. Update vehicle inventory with new or deleted vehicles." Dckt 127,Depo Ex.7 page 6, 16-24 (admitted) ".

   **b**. "Total vehicle hours: that the vehicle is on the road in service to MART for the month. Example: time driver leaves the garage to begin brokerage work until break and time back in service till next break or end of day." Dckt 127,  Depo Ex. 7, page 6, 18-24 / Page 7, 1-4 (admitted) ".

   **c**. "Accident Vehicle Miles – the odometer reading of the vehicle at the time of the accident." Dckt 127, Depo. Ex. 7, page 7, 3-9 (admitted) ".

   **d**" Report Dead Head Miles for WC vans or vehicles with a capacity of 14 or more passengers reporting of mileage from start to first pick up and from last drop-off to garage at end of day unless there is a significant break, then would need same after break". (Did not apply to plaintiff). Dckt 127".

   **e**. "Percentage of fully allocated expenses in service to MART broken down by the following categories (see below example based on $40,000 monthly invoice)": Dckt 127,  Depo Ex. 7, page 8, 1-15 (admitted) ".

"Vehicle Operations – driver salary, dispatcher salary, fuel =$32,000 (80%)" Dckt 127, Depo Ex. 7 page 8, 16- 24 / Page 9, 1-19 (admitted) ".

"Vehicle Maintenance – oil changes, tires, mechanic salary - $4,000 (10%)" Dckt 127, Depos Ex. 7 page 9, 20- 24 / Page 10, 1-9 (admitted) ".

"Non-Vehicle Maintenance – janitor salary, utility bills, cleaning supplies, etc = $2,000 (5%)" Dckt 127, Depo Ex. 7 page 10,14-24 / page 11,1-9 (admitted) ".

"General Administration – Office staff salaries, profit, admin overhead = $2,000 (5%)" Dckt 127, Depo Ex. 7,page 11, 10-24. / Page 12, 1-24. Page 13, 1-15 (admitted).

**f.** "Fuel Cost – total cost of fuel for the month." Dckt 127, Depo Ex. 7, page 13, 16-24 / Page 14, 1-4 (admitted).

**g.** "Gallons of Fuel – total number of gallons of fuel purchased." Dckt 127, Ex. 7, Page 14, 7-15 (admitted) ".

26. This is from defendants' own contract and defendant Deponent Rebecca Badgley confirmed each and every line that it was mandatory but then tried to say MART don't enforce some of these rules which contrary to the contract, MARTS emails to plaintiff.

27. Plaintiffs Opposition to defendant's MSJ goes on to point out that defendant MART Fined plaintiff, called him up to 80 times a day, daily logs, milage each trip and retained control over him. See Dckt 123 Opposition, SOF Dckt 128 and Plaintiff affidavit Dckt. 126.

28. "Pursuant to defendants' contract and Amendments the plaintiff is considered a sub-contractor Def Ex. A, 9., MART contract MART has the right to control when, where, and how the plaintiff performs the job, Dckt 127, Depo pg. 33. 19-24 & pg. 34 1-24"

29. "MART controlled the amount of work a vendor would request through his capacity tab she stated: "Yes, we did control that based on the size of the vendors fleet," Ex. 7, Page 33, line 19-23(admitted). Defendant admitted that plaintiff would have to email MART contract Dept. to request that his capacity be adjusted, and they only MART would decide if plaintiff could add capacity to receive work and that MART controlled the amount of work offered Ex. 7, Page 34, line 1-5 / page 35 line 1-3 (Admitted), therefore MART the employer has the right to control when, where, and how the worker performs the job," See Dckt 123 # 69 pg. 18.

30. "MARTS requires mandatory vendor portal training before plaintiff, or any driver are allowed to transport any of MARTS clients and must report list of vehicles several times a year, Dckt 127. Ex. 3 Page 6-10. A through D. also see Dckt 123. Dckt. 128 SOF, ¶¶ 16, 17, 32. Plaintiff affidavit Dckt. 126".

### (3) DEFENDANTS DETERMINED THE RATE AND METHOD OF PAYMENT
### (4) MAINTAINED EMPLOYMENT RECORDS

31. PLNT further stated in his opposition to defendant MSJ and cross MSJ that:

The plaintiffs' stated in the record that the defendant's portal provided MART with and discipline, driving reports, ranking reports and that MART used the portal to gather information and files of all CCRD employees including Plaintiff. See Amended Complaint Dckt 7.

32. "Plaintiff is not paid by the hour, week, or month. Rather, MART pays CCRD based on the rates CCRD submits. Plaintiff submitted CCRD's rates to MART and MART changed CCRD's rates on occasion. Dckt. 128 SOF, ¶¶ 16, 17, 32. Plaintiff affidavit Dckt. 126.

33. "The employer MART has the right to assign additional projects to the worker and has done so Dckt. 128 , Pl. SOF 10. Dckt. 127 Ex. 6 email pg. 3-4, Plaintiff affidavit Dckt. 126. The employer MART sets and controls the hours of work and the duration of the job Depo pg. 33. 19-24 & pg. 34 1-24. Ex.1 pg. 5".

34. "MART controlled the amount of work a vendor would request through his capacity tab she stated: "Yes, we did control that based on the size of the vendors fleet," Ex. 7, Page 33, line 19-23(admitted). Defendant admitted that plaintiff would have to email MART contract Dept. to request that his capacity be adjusted, and they only MART would decide if plaintiff could add capacity to receive work and that MART controlled the amount of work offered Ex. 7, Page 34, line 1-5 / page 35 line 1-3 (Admitted), therefore MART the employer has the right to control when, where, and how the worker performs the job" .

35. "MARTS capacity tab is the lifeline of plaintiff's economic means, and it was deliberately taken away from plaintiff on or about April 2016 after he protest discriminatory and retaliatory treatment, MART refused to allow plaintiff to change his Capacity tab (Ex.1pg. 1-8) in their vendor portal the Capacity tab changes the plaintiffs operating hours and how many trips (assignments) the plaintiff could perform and receive daily".

36. "Defendant's managers, agents and employees took materially adverse actions against Plaintiffs, including, but not limited to, issuing disciplinary warnings (Fines), not training, blocking plaintiff from Vendor Portal, placing plaintiffs telephone number on defendants Automatic Dialing system and or Predictive Dialer, threats of termination; reprimands by supervisors, stone walling plaintiff, sabotaging plaintiffs daily work schedule, this was all maintained in CCRD and all employees including plaintiffs employment records in MARTS Vendor portal".

37. Indeed, the SJC recent decision interpreting a Joint employer  is a serious blow to defendant's defense in their MSJ . *See* Ex. 1. The Court's decision strongly signals that any attempt to go around any elements to the Joint Employer at in Massachusetts if a company has like MART (1) had the power to hire and fire the individual, (2) supervised and controlled the individual's work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records is doomed to fail JINKS vs. CREDICO (USA) LLC. Dec 13,2021 (SJC) Ex 1.

38. The SJC further stated that "The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 n.4 (6th Cir. 1997), quoting National Labor Relations Bd. v. Browning–Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982). See 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1312 (3d ed. 1996). See also Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964).

## CONCLUSION

For these reasons, and those set forth in Plaintiffs earlier filings, Plaintiff respectfully requests that

the Court deny Defendants MSJ and grant plaintiffs' opposition and cross MSJ.

Respectfully Submitted

/s/ Paul Jones                                                    December 13, 2021

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

## CERTIFICATE OF SERVICE

I, Paul Jones  certify that the above document will be served by first-class mail upon any party or
counsel of record who is not a registered participant of the Court's ECF system, upon notification
by the Court of those individuals who will not be served electronically.

*/s/ Paul Jones*

Paul Jones
572 Park Street
Stoughton, Ma02072
617-939-5417
Pj22765@gmail.com

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C. 101 Arch Street, 12th Floor
Boston, MA 02110-1109
decker@k-plaw.com, mreich@k-plaw.com
(617) 556-0007