# EXHIBIT 1

## VERIFIED THIRD

## AMENDED COMPLAINT

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **PAUL JONES,**<br><br>　　　　　　**Plaintiff,**<br><br>**v.**<br><br>**MONTACHUSETT REGIONAL TRANSIT AURTHORITY et al.**<br><br><br><br>　　　　　　**Defendant.** | **Civil Action No.419-cv-11093**<br>**(COMBINED WITH CASE 120-CV- 12076)** |

## THIRD VERIFIED AMENDED COMPLAINT

## INTRODUCTION

1. Plaintiff respectfully submits this Third Amended Complaint pursuant to the First Circuit's Order dated November 23, 2023, which reversed and remanded the above-captioned matters.

2. This submission also complies with the Court's directive to consolidate *Civil Action No. 1:19-cv-11093 and Civil Action No. 1:20-cv-12076* for purposes of summary judgment. The amended pleading is intended to serve as the operative complaint, ensuring that the parties and the Court may reference a single, unified complaint moving forward.

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PAUL JONES,** | |
| **Plaintiff,** | **Civil Action No.419-cv-11093** |
| **v.** | **(COMBINED WITH CASE 120-CV- 12076)** |
| **MONTACHUSETT REGIONAL TRANSIT AURTHORITY et al.** | |
| **Defendant.** | |

## THIRD VERIFIED AMENDED COMPLAINT

## INTRODUCTION

1. Plaintiff respectfully submits this Third Amended Complaint pursuant to the First Circuit's Order dated November 23, 2023, which reversed and remanded the above-captioned matters.

2. This submission also complies with the Court's directive to consolidate *Civil Action No. 1:19-cv-11093 and Civil Action No. 1:20-cv-12076* for purposes of summary judgment. The amended pleading is intended to serve as the operative complaint, ensuring that the parties and the Court may reference a single, unified complaint moving forward.

3. This is a civil action for damages and injunctive relief under the **(1)** Chapter 151B §§ 4(4) and 4(4A), Discrimination, Retaliation, **(2)** Intentional Infliction of Emotional Distress, and **(3)** violations of the Telephone Consumer Protection Act (TCPA) (a) defendants used an Automatic Telephone Dialing System to call plaintiff and (b) Defendants left multiple Artificial Prerecorded Messages (c) before 8 am under 47 U.S.C. § 227(b)(1)(A)(iii) Telephone Consumer Protection Act ("TCPA"), arising from Defendants' repeated retaliatory unauthorized calls to Plaintiff's personal cell phone using an automatic telephone dialing system and leaving prerecorded/artificial voice messages, without Plaintiff's consent and after such consent was expressly revoked on November 12, 2016, February 11, 2017 and on or about March 15, 2018. See Exhibit 1.

4. Plaintiff respectfully seeks statutory damages for each cause of action asserted, injunctive relief, a trial by jury consisting of Plaintiff's peers, and any other relief the Court deems just and proper under the circumstances.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6. Supplemental jurisdiction over Plaintiff's state law claim is proper under 28 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because the acts and omissions giving rise to the claims occurred and plaintiff lives in the District of Massachusetts.

## PARTIES

8. Plaintiff Paul Jones ("Plaintiff") a natural person who resides in Springfield Massachusetts Hampden County.

9. Defendant Montachusett Regional Transit Authority ("MART") is a regional transportation company headquartered in Fitchburg, Massachusetts, Worcester County.

10. The following Defendant individuals are all residents of Massachusetts and at all times relevant to this Complaint are or where employees, agents, of MART's Brokerage Department and directly or indirectly participated in, facilitated, or oversaw the unlawful Retaliatory prerecorded calls without consent using an Automatic Telephone Dialing System , and left multiple prerecorded calls on plaintiffs answering service and Discriminated , and Retaliated against the plaintiff after I complained which created a , Hostile work Environment and cause Intentional Infliction of Emotional distress to Plaintiff:

- **Rebecca Badgley** – Former Director/Manager ("Rebecca")
- **Donna Landry** – Manager ("Donna")
- **Bonnie Mahoney** – Communications & Grants Manager ("Bonnie")
- **Karen Cordio** – Former Sr. Program Manager ("Karen")
- **Joanne Norris** – Manager Employee ("Joanne")
- **Stephanie Richards** – Supervisor ("Stephanie")
- **Tamara Shumovskaya** – Scheduling Supervisor ("Tamara")
- **Jessica Torres** – Assistant Supervisor ("Jessica")
- **Amanda Kukta** – Assistant Supervisor ("Amanda")
- **Robert Monk** – Employee ("Robert")
- **Michelle Moyo** – Contract Manager ("Michelle")

- **Ivan Roman** – Former Contract Manager ("Ivan")

- **Crystal Geisert** – Former Contract Manager ("Crystal")

- **Jane Doe and John Doe** – Unknown individuals responsible for or involved in the actions alleged herein.

# STATEMENT OF CLAIMS

## TELEPHONE CONSUMER PRACTICES ACT VIOLATIONS

### 47 .S.C. § 227(b)(1)(A)(iii)

11. In 2019, Jones filed this action ( Civil Docket # 4:19-cv-11093 ) against MART and various named and unnamed individuals above asserting claims under the TCPA, Titles VI and VII of the Civil Rights Act of 1964, Chapter 151B, as well as a claim for intentional infliction of emotional distress. More specifically, Counts I and II alleged that between May 2016 and June 2019, MART violated § 227(b)(1)(A)(iii) and § 227(c) of the TCPA by using an automatic telephone dialing system ("ATDS") to leave artificial or prerecorded voice messages on Jones's personal cell phone without his prior express consent.

12. Defendants calls did not have a disclosure, any artificial voice or prerecorded call, even if made with consent, must include disclosures which is contrary to the TCPA and is a violation.[1]

13. Defendants prerecorded calls to plaintiffs cell phone included an advertisement of sale of MARTS trips and it  constitutes telemarketing, defendants must have consent in writing

---

[1] 47 C.F.R. § 64.1200(b)(1), (2) (applicable to "[a]ll artificial or prerecorded voice telephone messages" to residential lines, cell phones, or other sensitive numbers). *See* § 6.7.3, *infra*.

from plaintiff which they don't have. See  47 C.F.R. § 64.1200(a)(2). Also See Exhibit 3
Prerecorded Messages.

14. The defendants MART, their employees Rebecca, Tamara, Karen, Jessica, Ivan,
Michelle, Crystal, Robert, Amanda, Stephanie, Donna, Bonnie,  Joanne, Bonnie,
Discriminated and retaliated when I took a protective action against them and file
complaints and demanded that they stop fining me accessive for being late a few minutes,
firing my co-workers, refusing me access to their vendor portal to obtain trips (work)
calling my cell phone with artificial computerized voice messages every 1-2 minutes after
I revoked all consent and presented them with two alternative telephone numbers to calls
my employer Commonwealth Community Recovery Division Inc ("CCRD") office to
sell their service (Trips) .

15. Plaintiff had to file a second lawsuit (Civil Docket # Case 1:20-cv-12076 ) on November
30, 2020, because the defendants MART, Rebecca, Tamara, Jessica, Ivan,  and Michelle,
Robert, Amanda, Stephanie, Donna, Bonnie,  Joanne, Bonnie increased their retaliatory
and discriminatory acts by refusing to honor my revocation demand verbally and in
writing to stop placing calls to my cell phone with their ATD / IVR phone system [2] and to
only call the office lines 413-315-4500 and or 888-680-4667 to sell their trips for their
client.

16. On February 27, 2025, this court combined the two above cases Civil Docket # Case 1:20-
cv-12076 and Civil Docket # 4:19-cv-11093.

---

[2] An IVR (Interactive Voice Response) telephone system is an automated phone system that uses
pre-recorded voice prompts and touch-tone keypad inputs to interact with callers, allowing them
to navigate menus, access information, and even complete tasks without needing to speak to a
live agent.

17. Defendants Rebecca, Tamara, Jessica , Ivan, and Karen refused to remove my personal cell phone from their Automatic telephone Dialing IVR system that left artificial computerized messages that started with a menu (press five to hear the trips press six if you cannot accept these trips right now and would like to receive a call back in a few minutes).[3]

18. Plaintiff has a cell phone the I carries on my person and regularly uses with a number of 617-939-5417.

19. From 2016 to 2020, Plaintiff received thousands of unauthorized calls from MART using an Automatic Telephone Dialing System (ATDS) and artificial/prerecorded voice messages on my cell phone 617-939-5417 and before 8AM. Also See Exhibit 3.

20. As relevant in this third Amended Verified Complaint Plaintiff alleges violations of the TCPA in the form of unconsented calls from defendant -to my cell phone calls made using an Automatic Telephone Dialing System and artificial or prerecorded voice messages before 8am and after 8am after I revoked all consent verbally and in writing by certified return receipt mail.

21. As relevant here, the First Circuit Court clarified in their reverse and remand order that the TCPA prohibits **"any person"** *from using an "[ATDS] or an artificial or prerecorded voice" to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . .. to any telephone number assigned to a . .. cellular telephone service . . . ." under 47 U.S.C. § 227(b)(1)(A)(iii).*

---

[3] allegation that call started with a menu of options and a voice that was "clearly computerized and/or prerecorded" is sufficient); Deegan v. Specialized Loan Servicing, L.L.C., 2020 WL 13356789 (M.D. Fla. Nov. 13, 2020)

22. Plaintiff placed these calls at issue in this verified complaint to a cellular telephone, without and after plaintiff revoked consent for defendants to place any calls to my cell phone.

23. These telephone calls to my cell phone 617-939-5417 were not made for "emergency purposes," as defined by the Federal Communication Commission in 47 C.F.R. § 64.1200.

24. Defendants willfully placed these auto-dialed calls and artificial computerized messages to Plaintiffs cell phone 617-939-5417 without Plaintiffs consent and after plaintiff revoked consent verbally and in writing.

25. The First Circuit clarified in their reverse and remand "*The TCPA contains unique protections for wireless consumers cell phones because autodialed and prerecorded calls are increasingly intrusive in the wireless context, . . . [and] the intrusion on the consumer's privacy from unwanted calls may actually be greater with wireless than wireline calls, where the calls are received on a phone that the consumer may carry at all times*" . See Docket 140 First Circuit Order Reversing and Remanding Count 47 U.S.C. § 227(b)(1)(A)(iii).

26. As soon as the prerecorded call started coming into plaintiff cell phone, plaintiff attempted to stop the calls by sending Three complaints certified return receipts revocations letters that where sent and received and signed by defendants on November 12, 2016, February 11, 2017, and on or about March 15, 2018. See Exhibit 1.

27. Upon receiving the Plaintiff's verbal and written complaints regarding the unauthorized and harassing telephone communications, Defendants Tamara, Jessica, Karen, Ivan, and Rebecca became visibly agitated and retaliated against Plaintiff by escalating the frequency and intensity of unsolicited telephone calls made to Plaintiff's cellular telephone, in willful violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

28. The First Circuit clarified that *"Moreover, express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof. Breda v. Cellco P'ship, 934 F.3d 1, 4 n.4 (1st Cir. 2019) (elements of a TCPA claim under § 227(b)(1)(A)(iii) are: (1) the defendant used an ATDS or artificial or prerecorded voice, (2) to call a telephone number assigned to a cellular service or service for which the called party is charged for the call); further, a consumer who has provided express consent to receive autodialed or prerecorded/artificial voice calls may revoke that consent"*. See Docket 140 1st Circuit reverse & remand order.[4] & [5]

29. The telephone calls placed to Plaintiff's cellular telephone by defendants were retaliatory in nature, and were initiated by Defendants Tamara, Jessica (Scheduling Dept) Rebbeca and Ivan, Karen and Crystal in response to Plaintiff's complaints regarding prior unlawful communications, thereby constituting willful and knowing violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227."

30. At all relevant times, this phone number 617-939-5417 was registered and assigned to a cellular telephone service and Plaintiff Paul Jones and his address 79 Thompson Street Springfield Ma.

31. Defendant MARTS calls that where artificial computerized messages stated: *"I found one trip in this request you must be authorized to except New trips from MART please listen to*

---

[4] Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1048 (9th Cir. 2017); Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014); Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268-72 (3d Cir. 2013); see also Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7966 (July 10, 2015) ("Consumers have a right to revoke consent, using any reasonable method including orally or in writing").

[5] Jones plausibly alleged that he revoked any consent to receive automated calls on his cell phone both orally and in writing on multiple occasions after he became overwhelmed with the volume of the calls. Accordingly, we conclude that the allegations underlying the claimed violation of § 227(b)(1)(A)(iii) were sufficient to withstand defendants' motion to dismiss.

*the following carefully press five to hear the trips press six if you cannot accept these trips right now and would like to receive a call back in a few minutes, press seven if you wish to decline these trips please make your selection now, if you would like to hear these options again press eight".[6]*

32. The defendant MART calls about was computerized with a robotic sound of the voice and lack of human response to the plaintiff attempts to converse with the caller, it had a distinctive click or pause when the called party answers the call and an unnaturally perfect sound of the voice.

33. The calls poured in from 6:15 AM in the morning 5 days a week Monday - Friday until sometimes after 1 pm from 2016 through 2020 for years plus.

34. The defendants rendered plaintiffs phone useless from 6:15 AM – 1PM 5 days a week and I was unable to receive other calls as the calls tied up my phone for 5 days a week.

35. It is unfathomable how a company like defendant can be so mean and retaliatory that they would add my personal cell phone to their automatic telephone that would make my telephone ring every 1-2 minutes 5 days a week four years, but it happen this is a verified complaint which I swear under oath and can testify in court.

36. Plaintiff called defendants Tamara, Jessica, Karen, Ivan, Crystal, and Rebecca and demanded they not to call my cell phone, please use the telephone numbers *413-315-4500* or the *888-680-4667 to place all calls to.*

---

[6] (allegation that calls were made using a "computerized" or "automated" voice is sufficient). *See also* Barlow v. NewRez, L.L.C., 2022 WL 1619592 (M.D. Fla. Mar. 7, 2022) (denying defendant's motion for summary judgment; plaintiff's affidavit that calls were prerecorded is sufficient to create fact issue). *But cf.* Marshall v. Grubhub, Inc., 2021 WL 4401496 (N.D. Ill. Sept. 27, 2021) (conclusory allegation is insufficient, but this complaint pleaded sufficient facts).

37. It was evident that defendants Tamara, Jessica, Karen, Ivan, Crystal, and Rebecca were offended when I demanded that my cell phone 617-939-5417 be removed from defendants automatic dialer.

38. Plaintiffs gave defendants Tamara, Jessica, Karen, Ivan, Crystal, and Rebecca two separate office numbers to reach plaintiffs employer Commonwealth Community Recovery Division Inc. (CCRD INC.) to sell them tris for their clients.

39. Defendants telephone calls where sale and marketing their trips that they had for sale.

40. Example  Plaintiffs employer CCRD INC. would give defendant MART prices for trips they had every three months the scheduling department would sell the trips according to CCRD INC. prices, every calls was to sell a trip whatever CCRD INC would get paid for the trip defendant MART Brokerage department would receive the same amount of dollars.

41. Defendants Tamara, Jessica, Karen, Ivan, Crystal, and Rebecca assured that all calls would stop to my personal cell phone 617-939-5417, and the calls would be made to either *413-315-4500* or the *888-680-4667 the office numbers.*

42. Defendant made these prohibited calls to Plaintiff cell phone 617-939-5417 from telephone numbers 978-252-0019 on at least the following dates and sometimes times left an artificial computerized voice message on plaintiffs cellular telephone answering service:

November 17, 2016, at 7:10, am 7:20 am-7:30 am-7:35 am- 7:50 am- 7:55 am, Nov 18, 2016, 7:10am- 7:20 am- 7:25 am- 7:35 am- 7:40 am- 7:45 am- 7:50 am, Sep 26, 2017, 7:40 a, 7:45 am- 7:56 am- 8:00 am- 8:05 am Dec 20, 2018, 7:10 am- 7:35 am- 7:45 am- 8:00 am- 8:05 am, June 5, 2019, 6:10 am- 6:15 am- 6:20am- 625 am- 6:34am- 6:50 am- 6:55 am- 7 am, June 6, 2019, 6: 11am- 6: 15 am- 6: 15am- 6:20 am- 6:26am- 6:30am-

6:35am- 640am. This court and other courts has ruled that "the complaint need not identify the numbers that was called or all the dates of the calls.[7]

43. Defendants Tamara, Jessica, Karen, Ivan, Crystal placed thousands of calls to the plaintiff cellular telephone and left thousands of artificial computerized voice message and the managers Karen, Rebecca authorized the calls. See Phone bill Exhibit 2.

44. Defendants MART called plaintiff from telephone numbers (978) 252-0019 and (978) 424-9002. See Phone Bills Exhibit 2.

45. Accordingly, the existence of prior express consent to make an autodialed or an artificial or prerecorded call to a cell phone is an affirmative defense for which the caller (Defendant) bears the burden of proof.[8]

46. An IVR (Interactive Voice Response) telephone system is an automated telephony system that interacts with callers, gathers information, and routes calls to the appropriate recipient and can send artificial computerized voice messages to individuals cell and home phones within seconds back to back .

---

[7] Gibbs v. Solarcity Corp., 239 F. Supp. 3d 391, 397 (D. Mass. 2017); Owens v. Starion Energy, Inc., 2017 WL 2838075, at *5–6 (D. Conn. June 30, 2017) *(plaintiff need not allege date, time, and content of each call; allegations that calls were made in September and that plaintiff answered one call on a specific date are sufficient)*; Mendez v. Optio Sols., L.L.C., 219 F. Supp. 3d 1012 (S.D. Cal. 2016) (need not identify full telephone number or dates of calls but must list last four digits so that defendant can identify calls); Stewart v. T-Mobile USA, Inc., 124 F. Supp. 3d 729, 733 (D.S.C. 2015) *(sufficient to allege calls were made "numerous times" "within the last year"; need not allege specific dates)*; Engle v. Unified Life Ins. Co., 2014 WL 12508347, at *3 (S.D. Cal. Oct. 27, 2014) *(allegation that defendants called plaintiff's residential line thirty-nine times using an "artificial or prerecorded voice" is sufficient; need not allege dates, timing, or content, or why plaintiff believes calls used artificial or prerecorded voice)*. *See also* Missouri *ex rel.* Koster v. Charter Commc'ns, 2016 WL 1625461 (E.D. Mo. Apr. 21, 2016) (sufficient for attorney general's complaint to make general allegations regarding violations of FCC and FTC do-not-call rules and specific allegations regarding just four representative calls).
[8] Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019);

47. Defendants calls had a robotic sound of the voice; And lack of human response to the called party's attempt to converse with the caller; A distinctive click or pause when the plaintiff answers the call; the voice messages were identical, The unnaturally perfect sound of the voice.

48. When Plaintiff would answer these calls, there would be a long pause or an artificial computerized recording, consistent with an automated telephone dialing system.

49. Plaintiff believed, and therefore averred, that calls made by to Plaintiffs cell phone were made using either an automatic telephone dialing system, as that term is defined in 47 U.S.C. § 227(a)(l ), or an artificial or prerecorded voice. Also See Exhibit 3 Prerecorded Messages.

50. Or when plaintiff answer defendants calls sometimes it would be just a clicking sound with air and then the phone would hang up and the phone would ring again a few seconds later.

51. Sometimes defendants calls had a live agent come on after a clicking sound.

52. Artificial prerecorded messages were delivered to Plaintiff's cell phone every 1 to 2 minutes, beginning as early as **6:30 a.m.** and continuing until after 1:00 p.m. on weekdays, effectively rendering Plaintiff's phone unusable for extended periods. Also See Exhibit 3 Prerecorded Messages.

53. As a result, Plaintiff was forced to obtain a second phone line through T-Mobile which economically harmed the plaintiff to ensure that his family could contact him in case of emergencies.

54. The TCPA is a strict liability statute.[9]There is no requirement of a showing of intent except when awarding treble damages. [10]

55. Defendants Tamara, Jessica, Ivan, Karen, and Rebecca where responsible for all the calls to plaintiffs cellular telephone.

56. Defendants willfully invaded Plaintiff's personal privacy by continuing to call Plaintiff's cell phone after consent was clear and repeatedly revoked over 40 verbal requests and three certified letters, blatantly ignoring Plaintiff's demand to cease all communications.

57. Defendants Tamara, Jessica, Ivan, Karen, and Rebecca even continued to place calls to plaintiffs personal cell phone after plaintiff told them to stop all calls to my cell phone.

58. Defendants Tamara, Jessica, Ivan, and Rebecca continued to place calls to Plaintiff's telephone even after a formal complaint was filed with this Court in May 2019.

59. Plaintiff revoked any and all consent defendants MART, Tamara, Ivan, Karen, Jessica, and Rebecca may have thought they had, that is required by the TCPA.

60. Plaintiff's cell phone is used for personal purposes and constitutes a residential telephone line under the TCPA.

61. Plaintiff's cell phone number was registered on the National Do Not Call Registry and the Massachusetts Do Not Call list prior to the events described herein.

62. These calls included telemarketing, solicitation, and advertisement of MART's transportation services for their clients, in violation of the TCPA 47 U.S.C. § 227(b)(1)(A)(iii) and MTSA.

---

[9] <u>Breda v. Cellco P'ship</u>, 934 F.3d 1, 5 (1st Cir. 2019);
[10] Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir. 2008); Berman v. Freedom Fin. Network, 400 F. Supp. 3d 964, 979 (N.D. Cal. 2019); Krakauer v. DISH Network, L.L.C., 2017 WL 2242952, at *1 (M.D.N.C. May 22, 2017), *aff'd*, <u>925 F.3d 643</u>, 662 (4th Cir. 2019);

63. The calls often occurred started at 6:15 AM before 8:00 a.m. robocalls to cell phones, prerecorded calls to residential lines, and junk faxes, provides for $500 statutory damages "for each such violation.[11] Also See Exhibit 3 Prerecorded Messages.

64. Plaintiff attempted to stop all calls as soon as they started coming into plaintiff personal cellular telephone number by sending the first of three Certified Return Receipt to defendants MART office located at 111 Main Street Fitchburg Massachusetts (Exhibit 2).

65. The calls would come at different times during the day, and often at that were harmful for such as when plaintiff was sleeping or dangerous when plaintiff was at work driving, Defendants robo calls every 1-2 minutes tied up plaintiffs phone where I could use it between the hours of 6:15 -1pm 5 days a week or when I was with my family.

66. These calls caused plaintiff frustration, embarrassment, and humiliation.

67. Despite these instructions to stop all calls to my cell phone, the calls continued unabated to plaintiffs cell phone.

68. Despite these revocations letters sent and receive by defendants, Defendants continued to calls to Plaintiff's cell phone with automated telephone dialing system and artificial prerecorded messages. See Exhibit 3 Prerecorded Messages.

69. The First Circuit has ruled that the plaintiff had a right and did revoke his consent several times.

70. The First Circuit stated Defendant established business relationship does not exist after plaintiff revoked consent the first time.

---

[11] *ee* Lary v. Work-Loss Data Inst., 911 So. 2d 18 (Ala. Civ. App. 2005) (consumer is entitled to $500 for each of three faxes sent); Meyer v. Howard S. Bixenholtz Constr., 952 A.2d 507 (N.J. Super. Ct. App. Div. 2008). *See also* Worsham v. Nationwide Ins. Co., 772 A.2d 868 (Md. Ct. Spec. App. 2001) ($500 is to be awarded per call, not per violation).

71. Plaintiff received two or more such calls within a 30-day period after revoking consent and registering on the Do Not Call registries as early as November 2016. [12]

72. When Defendants MART, Tamara, Jessica, and Rebecca authorized the calls to plaintiff cell phone they used equipment which. 1The TCPA defines an ATDS as a piece of "equipment which has the capacity -- (A) to store or produce telephone numbers to be called using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1). See Docket 140 First Circuit remand order.

73. Defendants MART where not registered as solicitors with the Massachusetts Office of Consumers affairs and Business Regulation (the "Office") as a telephone solicitor.

74. Defendants MART calls where sales calls for transportation.

75. Defendants MART got paid for each call that plaintiffs employer would take from them.

76. Defendants Rebecca ordered Tamara, and Jessica to programmed the IVR system to initiate calls to the plaintiff before 6:30 a.m., despite being instructed not to call the plaintiff's personal cellular phone they are vicariously liable for violations of the TCPA and MTSA.

77. Defendants Rebecca  Tamara, Jessica and Rebecca exercised direction and control over the third-party callers by giving explicit instructions on initiating the calls, establishing a principal-agent relationship. This control makes MART above defendants vicariously liable for the caller defendants' actions.

78. Defendants Rebecca, Tamara, Jessica not only created the script but also played an active role in perpetuating the alleged harm by uploading a nightly list of telephone calls to be

---

[12] ""[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" the TCPA privacy regulations. 47 U.S.C. § 227(c)(5)." *Doane v. Benefytt Techs.*, Civil Action 22-10510-FDS, 12 (D. Mass. Mar. 10, 2023).

made to the plaintiff. These actions persisted even after the plaintiff had sent three revocation letters expressly withdrawing consent. Despite this, their supervisor, Rebecca, approved these prerecorded scripts, which enabled MARTS' IVR system to initiate calls starting as early as 6:15 a.m. Rebecca, as their supervisor, had the authority and responsibility to review and regulate these activities to prevent potential legal violations.

79. Defendants Rebecca, Tamara, Jessica approving the lists despite clear indications of the plaintiff's objections, Rebecca not only endorsed their actions but also allowed the calls to proceed, furthering the harm. Since Tamara and Jessica acted within the scope of their employment under Rebecca's supervision, and Rebecca failed to intervene or address the plaintiff's revocation letters, Rebecca and Tamara and Jessica is vicariously liable for their actions of placing the calls.

80. Defendants Rebecca, Tamara, Jessica programmed the IVR system to start calling the plaintiff on his cell phone 5 days a week starting at 6:15 AM 5 days a week every 1-2 minutes.

81. This chain of events demonstrates a clear supervisory endorsement of conduct that disregarded the plaintiff's revocation of consent, amplifying the liability shared among the parties involved.

## PLAINTIFF HAS ARTICLE III STANDING

82. Defendant Rebecca, Karen and Tamara , acting in her managerial capacity, expressly authorized Defendant Jessica to increase the volume and frequency of telephone calls to Plaintiff's personal cellular telephone number, 617-939-5417.

83. Despite Plaintiff's repeated requests to cease calling his cell phone and to instead use the two business numbers Plaintiff provided, Defendants willfully refused to comply.

84. Tamara and Jessica created the calling scripts used to contact Plaintiff, which were approved and authorized by Defendants Karen and Rebecca, both managers of the brokerage department. As such, all Defendants Jessica, Tamara, Karen, and Rebecca are vicariously liable for the unlawful and harassing calls placed to Plaintiff in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227.

85. These actions were carried out with the intent to harass and intimidate Plaintiff, resulting in significant emotional distress and constituting intentional infliction of emotional distress under applicable law, retaliation, and discrimination.

86. Defendants MART, Rebecca, Tamara, Karen, and Jessica are vicariously liable for each and every telephone call made to Plaintiff's cellular phone from 2016 to 2020, as they created the call scripts, authorized the calls, and acted in their capacities as managers within the organization.

87. Defendants MART, Rebecca, Tamara, Karen, and Jessica cause harm to plaintiff by (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the plaintiffs time or causing the risk of personal injury due to interruption and distraction. (4) mental anguish, waste of time, diminished value of my cell phone service and hardware, and increased electricity costs depleting my cell battery, and the cost of electricity to recharge the phone is also a tangible harm. (5) occupied plaintiff cellular phone memory of answering machine and interfered with unencumbered access to the cell phone was trespass to chattels.

**FACTUAL ALLEGATIONS SUPPORTING CLAIM OF RACE BASED**

**DISCRIMINATION UNDER M.G.L. c. 151B 4(4) and 4(4A)**

**DEFENDANTS MARTS, REBECCA, KAREN,IVAN,TAMARA,**

**JESSICA,CRYSTAL,JOANNA, DONNA, BONNIE, ROBERT, AMANDA, MICHELLE,**

**STEPHANIE, JANE & JOHN DOES**

88. Plaintiff is an African American vendor and transportation contractor who, at all relevant times, was engaged in providing services under the Massachusetts Regional Transit Authority ("MART") program.

89. Plaintiff contracted with the Defendants transportation management company and relied on equitable access to trip assignments and vendor scheduling systems to perform his work and earn income.

90. Defendants Ivan, Rebecca, Tamara, Jessica, Karen, and Crystal held supervisory and managerial roles within the brokerage and vendor management departments. They were directly responsible for assigning transportation trips, determining penalties and access to the vendor portal, and making disciplinary decisions.

91. Unlike similarly situated white vendors and drivers, who were permitted full access to MART's vendor portal and allowed to independently schedule efficient and cost-effective routes, Plaintiff was routinely denied such access and forced to wait for Defendants to assign him trips.

92. The trips assigned to Plaintiff were regularly located in distant and inefficient areas, requiring additional fuel, increased travel time, and resulting in significant economic loss.

Meanwhile, white vendors were allowed to create consolidated schedules within concentrated areas, minimizing fuel costs and maximizing profit.

93. Defendants also imposed unjustified and excessive financial penalties against Plaintiff, totaling over $20,000, for minor infractions such as lateness due to traffic conditions outside his control. In contrast, white vendors with worse attendance records and more documented complaints were fined significantly less or not at all.

94. Defendants systematically blocked Plaintiff's access to the vendor portal, while white vendors—and vendors who had not submitted complaints—maintained uninterrupted access, allowing them to independently secure work.

95. After Plaintiff raised internal complaints of discrimination and retaliation, the Defendants escalated their conduct, intentionally denying Plaintiff trip opportunities and increasing his financial hardship, thereby attempting to pressure him into quitting.

96. During the COVID-19 pandemic, Plaintiff, like many vendors, temporarily suspended his operations and allowed his commercial insurance to lapse on vehicles not in use. In or around late 2021, Plaintiff contacted Defendant Rebecca to resume work and was informed that he had been terminated due to the insurance lapse.

97. However, numerous white vendors also allowed their insurance to lapse during the same time period. These vendors were not terminated and were allowed to resume work once operations restarted—some after more than a year of inactivity.

98. In another retaliatory act, Defendants Tamara, Karen, Rebecca, Crystal, and Jessica denied Plaintiff's request to be trained alongside other white vendors. Plaintiff's scheduled orientation was abruptly canceled, and Defendant Ivan admitted that

Defendant Karen wanted to "personally" oversee Plaintiff's training, despite not being responsible for training duties.

99. Rather than training Plaintiff in the designated training room with portal access, Karen questioned him about his personal background and denied him the opportunity to practice using the vendor portal.

100.    Following Plaintiff's complaints about being denied proper training, he received no trip assignments for five consecutive months, while white vendors continued working uninterrupted.

101.    On multiple occasions, Defendants Tamara, Karen, Rebecca, Crystal, and Jessica refused to use the alternative business phone numbers Plaintiff provided, instead continuing to harass him via personal cellphone—despite repeated objections and in violation of applicable state and federal laws, including the TCPA and MTSA.

102.    After Plaintiff expressly demanded that all harassing calls cease and stated that continued contact would lead to legal accountability, Defendants retaliated by increasing the call frequency—initiating calls as early as 6:15 AM in rapid succession and continuing through the early afternoon.

103.    This call campaign lasted from 6:15 AM until approximately 1 pm 5 days a week from 2016-2020 and caused Plaintiff significant distress, including two emergency room visits related to stress and anxiety.

104.    Plaintiff also notified Rebecca at 5pm that Defendants Tamara, Jessica, Crystal, Donna Landry, Bonnie Mahoney, Joanne Norris, Stephanie Richards, Amanda Kukta, and Robert Monk were engaging in discrimination and retaliation.

105.    The next morning at approximately 10 AM less than 24 hours later Defendant Rebecca issued an email stating that an investigation had been conducted and no discrimination was found. No meaningful inquiry was ever conducted.

106.    Plaintiff further experienced retaliation when Rebecca, Joanna, Donna, Stephanie, and Michelle Moyo imposed excessive fines for minor delays and when Joanne Norris withheld pay for a trip lasting from the afternoon until 3:00 AM, ultimately only paying Plaintiff approximately $90.00 after his complaint was file several months later.

107.    Collectively, Defendants' MART, Rebecca, Ivan, Tamara, Jessica, Crystal, Donna Landry, Bonnie Mahoney, Joanne Norris, Stephanie, Amanda, Michelle, and Robert conduct—including differential scheduling, excessive fines, denial of access to essential tools, retaliatory assignments, discriminatory termination, and failure to investigate—constitutes unlawful discrimination on the basis of race in violation of M.G.L. c. 151B 4(4) and 4(4A).

## FACTUAL ALLEGATIONS RELATING TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

108.    The repetitive, incessant calls have caused Plaintiff emotional harm and distress, embarrassment, aggravation, discomfort, and other losses.

109.    The plaintiff had to visit the Mercy Hospital in Springfield Massachusetts because the retaliatory telephone calls inflicted pain and suffering on the plaintiff.

110.    The monetary fees from the emergency room caused the plaintiff emotional distress and economic harm to pay for the visits.

111.    The ongoing calls from defendants where harassing and abusive.

112.      Plaintiff took off work driving because the government shut down all driving in the

country because of Corvid and plaintiff and other white vendors suspended the insurance

for several of their vehicles but the defendants fired the plaintiff for letting his insurance

overlap in 2020.

113.      Defendants MARTS, Rebecca, Tamara, and Jessica calls to Plaintiff were

harassing, aggravating and highly intrusive and invasion of privacy.

114.      The Defendants MARTS, Rebecca, Tamara, and Jessica repetitive, auto-dialed

calls to Plaintiff have caused emotional harm and distress, embarrassment, humiliation,

and other losses.

115.      Defendants MARTS, Rebecca, Tamara, and Jessica intentionally intruded upon

Plaintiff's solitude and seclusion.

116.      Defendants MARTS, Rebecca, Tamara, and Jessica tactic of repeatedly auto dialing

Plaintiff is highly offensive to a reasonable person.

117.      Defendants MARTS, Rebecca, Tamara, and Jessica, through their conduct, has

repeatedly and intentionally invaded Plaintiff's privacy.

118.      From approximately 2016 through 2020, Plaintiff was subjected to a relentless

and sustained campaign of harassing telephone calls by Defendants Ivan, Rebecca,

Tamara, Jessica, Karen, and Crystal.

119.      These calls were placed to Plaintiff's personal cellular telephone, often occurring

every one to two minutes, beginning as early as 6:15 a.m. and continuing into the early

afternoon, as late as 1:00 p.m., five days per week.

120.      The content and frequency of these calls were not related to ordinary business

needs, but were made with the intent to intimidate, control, and punish Plaintiff,

particularly after he made internal complaints regarding discriminatory treatment and unfair business practices.

121.    Defendants were fully aware that such extreme call volume and timing would cause Plaintiff substantial distress, and their conduct was undertaken intentionally and/or with reckless disregard for Plaintiff's well-being.

122.    As a result of the Defendants' conduct, Plaintiff suffered severe emotional distress, including anxiety, sleep disturbances, panic, and physical symptoms requiring medical attention.

123.    Plaintiff was forced to seek emergency medical care on at least two separate occasions due to acute stress-related symptoms caused by the overwhelming and repeated calls to his phone.

124.    The Defendants' conduct goes beyond the bounds of decency and is utterly intolerable in a civilized community.

## COUNT I

**Violations of the TCPA – Use of Automatic Telephone Dialing System (ATDS) and Prerecorded Messages**
**47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)**

### DEFENDANTS MART, REBECCA, TAMARA & JESICCA

125.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

126.    Defendant has violated the TCPA, 47 U.S.C. § 227 et seq., and its implementing Regulation at **47 U.S.C. § 227(b)(1)(A)(iii); and** 47 C.F.R. § 64.1200 et seq., by making

any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(l )(A)(iii).

127.    Defendants violated the TCPA by initiating telemarketing calls (Sales Calls) to Plaintiff's wireless phone using an ATDS and leaving prerecorded messages without prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

128.    These communications were made for commercial purposes to solicit Plaintiff to purchase defendants MARTS goods or services.

129.    Defendants knowingly and willfully used automated systems and prerecorded messages in their telemarketing call campaigns to plaintiff cell phone after plaintiff revoked consent.

130.    As a direct result of these violations, Plaintiff suffered harm, including loss of privacy, emotional distress, and financial costs, and battery life to his cell phone.

131.    Defendants used an automatic telephone dialing system and/or prerecorded/artificial voice messages to contact Plaintiff's cell phone without an emergency purpose.

132.    Plaintiff revoked any prior consent the defendants may have through they had, if given, in November 2017, yet Defendants continued to place thousands of calls up until on or about November 2020.

133.    Each call was a separate and willful violation of the TCPA.

134.    Defendants calls did not have a disclosure, any artificial voice or prerecorded call, even if made with consent, must include disclosures which is contrary to the TCPA and is a violation and plaintiff is owed $500 for each prerecorded message.

135.    Plaintiff is entitled to statutory damages of up to $1,500 per willful violation and $500 per negligent violation.

136.    Plaintiff is entitled, under the TCPA, to statutory damages of not less than $500.00 nor more than $1,500.00 for each autodialed or artificial/pre-recorded telephone call to

his cellular phone number 617-939-5417.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

**Statutory Damages**: $500 for each violation, trebled to $1,500 for each willful or knowing violation under 47 U.S.C. § 227(b)(3) after plaintiff revoked consent.

**Actual Damages**: Compensation for costs and harm incurred.

**Injunctive Relief**: Prohibition against further ATDS and prerecorded artificial messages violations.

**Other Relief**: Such other and further relief as the Court deems just and proper.

## COUNT II

### RETALIATION IN VIOLATION OF M.G.L. c. 151B, §§ 4(4) and 4(4A) All DEFENDANTS MART, Rebecca, Ivan, Tamara, Jessica, Crystal, Donna Landry, Bonnie Mahoney, Joanne Norris, Stephanie, Amanda, Michelle, and Robert

137.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

138.     At all relevant times, Plaintiff was engaged in protected activity under Massachusetts General Laws, Chapter 151B, by submitting internal complaints and reports to supervisors and higher-level management regarding unlawful, harassing, or otherwise improper conduct occurring within the workplace, including but not limited to unauthorized telephone communications and other objectionable treatment.

139.     Following Plaintiff's complaints, Defendants Rebecca, Tamara, Karen, and Jessica, acting in their official capacities as managers and agents of the employer, engaged in retaliatory conduct against Plaintiff.

140.     Specifically, after the submission of said complaints, Defendants collectively ramped up the volume, frequency, and aggressiveness of telephone calls to Plaintiff's personal cellular telephone, despite prior objections and instructions to cease such communications.

141. Said actions were retaliatory in nature, intended to punish, intimidate, and economically harm the Plaintiff for engaging in protected activity, in violation of M.G.L. c. 151B, §§ 4(4) and 4(4A).

142. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered emotional distress, reputational harm, and economic damages, including lost income and diminished employment prospects.


**WHEREFORE,** Plaintiff respectfully requests that this Court

(a) Declare that Defendants' conduct violated M.G.L. c. 151B, §§ 4(4) and 4(4A);

(b) Award Plaintiff compensatory and consequential damages;

(c) Award Plaintiff punitive damages and attorney's fees as permitted by law;

(d) Grant such further relief as this Court deems just and proper.

## COUNT III

## DISCRIMINATION IN VIOLATION OF

## M.G.L. c. 151B, §§ 4(4) and 4(4A)

### *(Race-Based Discrimination and Retaliation)*

**DEFENDANTS MART, Rebecca, Ivan, Tamara, Jessica, Crystal, Donna Landry, Bonnie Mahoney, Joanne Norris, Stephanie, Amanda, Michelle, and Robert Plaintiff is a member of a protected class under Massachusetts law as an African American individual.**

143. Plaintiff performed his duties as a transportation vendor in a competent and professional manner.

144. Defendants Ivan, Rebecca, Tamara, Jessica, Karen, and Crystal, acting in their official and managerial capacities, engaged in a pattern and practice of treating Plaintiff differently than similarly situated white vendors and drivers.

145. Plaintiff was denied access to the MART vendor portal, required to accept individually assigned and economically inefficient trips, subjected to disproportionate fines, and ultimately terminated—all of which constitute adverse actions.

146.    Similarly situated white vendors were permitted to create efficient trip schedules, given unrestricted portal access, rarely fined, and allowed to take extended breaks during the COVID-19 pandemic without termination.

147.    The differential treatment experienced by Plaintiff was based on his race and/or in retaliation for his protected activity, including complaints to supervisors about discriminatory treatment.

148.    Defendants' conduct constitutes unlawful discrimination and retaliation under M.G.L. c. 151B, § 4(4) (retaliation for protected activity) and § 4(4A) (discrimination in terms, conditions, and privileges of employment).

149.    As a direct and proximate result of Defendants' discriminatory and retaliatory actions, Plaintiff has suffered economic harm, loss of income, reputational damage, and emotional distress.


**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Declare that Defendants' conduct violated M.G.L. c. 151B, §§ 4(4) and 4(4A);

b. Award Plaintiff back pay, front pay, and lost benefits;

c. Award compensatory damages for emotional distress and reputational harm;

d. Award punitive damages to deter future misconduct;

e. Award reasonable attorney's fees and costs under M.G.L. c. 151B, § 9; and

f. Grant such other and further relief as the Court deems just and proper.


## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**DEFENDANTS  MART, Rebecca, Ivan, Tamara, Jessica, Crystal, Donna Landry, Bonnie Mahoney, Joanne Norris, Stephanie, Amanda, Michelle, and Robert**

150.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

151.     Defendants Ivan, Rebecca, Tamara, Jessica, Karen, and Crystal engaged in extreme and outrageous conduct by repeatedly and willfully subjecting Plaintiff to excessive, harassing phone calls to his personal cell phone from 2016 through 2020.

152.     These calls occurred every one to two minutes, beginning at approximately 6:15 a.m. and continuing into the early afternoon, five days per week, despite Plaintiff's objections and requests that the harassment cease.

153.     Defendants' conduct was intentional and malicious, or at the very least, carried out with reckless disregard of the likelihood that it would cause Plaintiff to suffer severe emotional distress.

154.     As a direct and proximate result of this conduct, Plaintiff suffered severe emotional and physical distress, including anxiety, panic, and other stress-related conditions, which required emergency room treatment on two separate occasions.

155.     Defendants' conduct constitutes intentional infliction of emotional distress under Massachusetts common law.


**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendants for intentional infliction of emotional distress;

b. Award Plaintiff compensatory damages for emotional and physical suffering, including medical expenses;

c. Award punitive damages to punish and deter Defendants' conduct;

d. Award Plaintiff costs, interest, and such other relief as this Court deems just and proper.

**JURY TRIAL REQUESTED**

**PRAYER FOR RELIEF**

Respectfully submitted,                    March 27, 2025


Paul Jones Plaintiff, prose   /s/ Paul Jones

79 Thompson Street

Springfield, Ma 01109

617-939-5417

Pj22765@gmail.com

## CERTIFIED VERIFIED THIRD AMENDED LAWSUIT

I ,Paul Jones is the Plaintiff in this civil proceeding before this court. I am over the
age of 21 , I verify that I have personal knowledge of the facts stated above and hereby swear
under pains and penalties of perjury that all of those facts are true and accurate.

I, Paul Jones, am declaring under penalty of perjury that Plaintiff called me with an automatic
Telephone dialing system and with artificial computerized voice messages thousands of times
and that the messages where left by defendants including MART and its named employees in the
above lawsuit. Virtually Plaintiff quickly recognize when they were speaking with a non-human
on MARTS calls on my cell phone. . . . Federal notice-pleading standards do not require
Plaintiffs  complaint to provide microscopic analysis of these prerecorded calls' qualities");
Chapman v. Nat'l Health Plans & Benefits Agency, L.L.C., 619 F. Supp. 3d 788 (E.D. Mich.
2022) (standard is a "low bar"; holding description of the content of the call and its request for an
automated response to be sufficient); Quinan v. Jet Lending, L.L.C., 2022 WL 716668 (S.D. Tex.
Mar. 10, 2022) (allegation that plaintiff was easily able to determine that voicemail messages
were prerecorded when she listened to them is sufficient); Dudley v. Vision Solar, L.L.C., 2021
WL 3077557, at *3 (E.D. Pa. July 21, 2021) (allegation that call started with a menu of options
and a voice that was "clearly computerized and/or prerecorded" is sufficient); Deegan v.
Specialized Loan Servicing, L.L.C., 2020 WL 13356789 (M.D. Fla. Nov. 13, 2020)

Under the law, specifically 28 U.S.C. § 1746(2), I, Paul Jones, am declaring under
penalty of perjury that everything stated in this Complaint above is true and accurate to the best
of my knowledge, which I have firsthand knowledge and can testify in court.

Paul Jones        /s/ Paul Jones                                    **March 27, 2025**

79 Thompson Street

Springfield, Ma 01109

617-939-5417

Pj22765@gmail.com

31

## CERTIFICATE OF SERVICE

I hereby certify that on this 28 day of March 2025, a true and correct copy of the foregoing Plaintiff's Motion to Amend Pleadings Pursuant to First Circuit Remand and Consolidation Order was served upon all parties of record via the Court's Electronic Case Filing (ECF) system and/or by first-class via email, to the following:

Respectfully submitted,

Plaintiffs Name

Paul Jones  /s/ Paul Jones                                    March 28, 2025

79 Thompson Street

Springfield, Ma 01109

617-939-5417

Pj22765@gmail.com


Mark R. Reich

Deborah I. Ecker

KP Law, P.C.

101 Arch Street, 12th Floor

Boston, MA 02110-1109

(617) 556-0007

mreich@k-plaw.com

decker@k-plaw.com