UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET No. 4:19-cv-11093-MRG

PAUL JONES,

     Plaintiff

     v.

MONTACHUSETT REGIONAL TRANSIT
AUTHORITY, et al.,

     Defendants

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'
MOTION FOR
SUMMARY JUDGMENT

## I.    **INTRODUCTION**

Defendants, Montachusett Regional Transit Authority and Crystal Geisert, Bonnie Mahoney, Jessica Torres, Karen Cordio, Michelle Moyo, Donna Landry, Joanne Norris, Robert Monk, Amanda Kukta, Ivan Roman, Tamara Schumovskaya, Rebecca Badgley, and Stephanie Richards (collectively, "MART" or "Defendants"), hereby move for summary judgment in the above-captioned matter on Count I of Plaintiff Paul Jones' ("Plaintiff" or "Jones") First Amended Complaint [Dkt No.7],[1] and on Counts V and VI of Plaintiff's Second Verified Amended Complaint [Dkt No. 55], following a remand to this Court by the First Circuit Court of Appeals in Case No. 22-1234.[2]

---

[1] After the TCPA claims were dismissed by this Court, the Plaintiff did not renew them in his Second Verified Amended Complaint. Following the Court of Appeals' remand to this Court, however, the TCPA claim in Count I brought pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) has been revived, and the Defendants move for summary judgment on that count. In contrast, the First Circuit concluded that the Plaintiff had not plausibly alleged any other claims pursuant to other sections of the TCPA. Therefore, Count II of the First Amended Verified Complaint [Dkt No.7] has not been similarly revived.

[2] The related TCPA claim issues were discussed by the First Circuit Court of Appeals in Appeal Case No. 22-1569, and that decision ordered remand to the Court in Jones's other case, No. 1:20-cv-12076-TSH (Appeal No. 22-1569). At the Status Conference held on February 27, 2025, this case was consolidated and the complaint combined with Case 4:19-11093.

Defendants are entitled to summary judgment on Plaintiff's claim of violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA"), because MART did not use an automatic telephone dialing system (ATDS) as that is defined under the TCPA and as clarified by the United States Supreme Court in *Facebook, Inc. v. Duguid, 592 U.S. 395 (2021)*, when contacting vendors to offer unassigned trips. Instead, MART's interactive voice response system ("IVR") contacts vendors based on rates that are submitted to MART for use in the vendor portal system by the vendor as well as the vendor's capacity.

In addition, Defendants are entitled to summary judgment on Plaintiff's claim of violation of G.L. c. 151B, §§ 4(4) and 4(4A) contained in Count V of his Second Amended Complaint because Plaintiff did not meet the administrative prerequisite for filing such a claim with the Massachusetts Commission Against Discrimination ("MCAD"). Regardless, Plaintiff's retaliation claim, brought pursuant to G.L. c. 151B, §§ 4(4) and 4(4A), must be dismissed because Plaintiff will not be able to establish that he was treated differently by Defendants after he complained of discrimination. Instead, Plaintiff's complaints before he complained of discrimination, that his company Commonwealth Community Recovery Division, Inc. ("CCRD") was not assigned enough work, were the same as his complaints after he complained. The undisputed fact is that Plaintiff's company was not assigned more work simply because CCRD was not the lowest cost qualified vendor. Finally, Plaintiff's claim for the negligent infliction of emotional distress contained in Count VI of Plaintiff's Second Verified Amended Complaint must be dismissed because Plaintiff failed to present his claim to MART, a necessary prerequisite to filing a claim for negligence against a public employer such as MART. See, G.L. c. 258, §§ 5 and 9. As with his claim brought pursuant to G.L. c. 151B, §§ 4(4) and 4(4A), even if Plaintiff had met the administrative prerequisite to bringing a negligence claim against MART, Plaintiff's claim for the

2

negligent infliction of emotion still must be dismissed because MART is immune from such claims under the discretionary function section of Chapter 258, § 10(b) and because, based on the undisputed material facts, Defendants did not breach any duty owed to Plaintiff and instead continuously worked with Plaintiff to assist him to better understand the use of the portal system and the reasons for his not being assigned more work.

As set forth above and in more detail below, summary judgment should enter in favor of Defendants on Plaintiff's remaining claims.

## II.  ARGUMENT

### A.  Legal Standard.

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Federal Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation and quotations marks omitted). "[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is inappropriate "if the record is sufficiently open-ended to permit a rational fact finder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

In determining whether summary judgment is proper, the Court must view the record in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor.  Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014).  The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (citation omitted).  A genuine

issue of fact exists where a fact finder could find in favor of the non-moving party, "while material facts are those whose existence or nonexistence has the potential to change the outcome of the suit." Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (internal citation and quotations marks omitted). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Fontanez-Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal citation and quotation marks omitted).

Here, even when drawing all reasonable inferences in favor of Plaintiff, there remain no genuine issues of material fact as to Plaintiff's claims brought pursuant to the TCPA, § 227(b)(1)(A)(iii); Chapter 151B, §§ 4(4) and/or 4(4A); and his claim for the negligent infliction of emotional distress. As such, judgment must enter in favor of Defendants on all remaining claims before this Court.

> **B. Plaintiff's TCPA Claim Must Be Dismissed Because MART Does Not Use ATDS and Regardless, Plaintiff Provided His Prior Express Consent to MART to Call Him As the Dispatcher/Manager of MART's Vendor CCRD, Inc.**

Plaintiff's claims of violation of the TCPA must be dismissed because MART did not use an ATDS system as that is defined by the TCPA and as clarified by the Supreme Court when calling Plaintiff's cell phone, or any of its vendors' phones, and, even assuming *arguendo* that it had, the Plaintiff provided prior express consent to have MART call his cellular phone as the dispatcher/manager of CCRD, Inc. for the purpose of offering rides to CCRD, Inc., MART's vendor.

The TCPA was enacted in 1991 to address "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers," after "[a]dvances in automated technology made

it feasible for companies to execute large-scale telemarketing campaigns at a fraction of the prior cost, dramatically increasing customer contacts." Facebook, Inc. v. Duguid, 592 U.S. 395, 399 (2021) (internal quotations and citations omitted). "Congress found autodialer technology to be uniquely harmful. It threatened public safety by seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services." Id. "Indeed, due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees." Id. at 399-400. MART has not engaged in the activities addressed by the TCPA, and so Plaintiff's claims thereunder must be dismissed.

    1.  <u>ATDS</u>

The TCPA imposed various restrictions on the use of automated dialing equipment. Id.; See also Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2344 (2020). One such restriction, as relevant here, prohibits "any person within the United States" from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice" to any cell phone number. Id. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Here, it is undisputed that MART did not use an automatic telephone dialing system to contact the Plaintiff's cell phone. The United States Supreme Court has held that under the TCPA,

"[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Duguid, 592 U.S. at 399. The definition of an autodialer thus "requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." Id. at 404. The Court expressly rejected the argument that ATDS simply encompasses any system with the "capacity to dial numbers without human intervention." Id. at 409.

Here, MART's equipment neither stores nor produces telephone numbers "using a random or sequential number generator," and therefore, "it is not an autodialer" within the meaning of the TCPA. Duguid, 592 U.S. at 402. Specifically, MART's system does not have the capacity to generate random ten-digit phone numbers and then to dial them to leave a prerecorded voice message. Rather, MART telephones its Vendors for transportation services on the numbers that those Vendors provide to MART to receive offers for trips, using a highly specific and targeted low-cost qualified transportation provider list. SoF, ¶¶ 14-18. If a Vendor rejects the call, the IVR system will telephone the next lowest-cost qualified Vendor on the telephone number provided to it, unless that Vendor has indicated that they are "at capacity" or on "holiday." SoF, Id. at ¶ 14 . Indeed, MART's IVR system utilized the cellular telephone number specifically provided to MART by the Plaintiff, so that he could "accept" or "reject" transportation trips for the region on behalf of CCRD, Inc. SoF, ¶ 17.

Additionally, even if MART's IVR system did have ATDS capacity (which it does not), it is undisputed that MART has never employed ATDS to call the Plaintiff. SoF, ¶¶ 16, 17. The Plaintiff does not allege, nor could he, that MART somehow makes large blocks of identical and simultaneous calls to random numbers, rather than the personalized calls and messages it sends to

its vendors. *See generally Plaintiff's Second Amended Verified Complaint.* Rather, the telephone calls or messages will not be sent by MART if the vendor updates the online portal as full for a particular day, or on holiday, or if the vendor is not one of the lowest-cost, qualified vendor, based on the rates that the vendor sets (and can update quarterly) in MART's online portal system. SoF, ¶¶ 14, 17. As such, the calls and messages through the IVR system are not of the type of mass-produced, automatic robocalls to consumers against which the TCPA guards; they are targeted and specific messages sent to a list of MART's qualified vendors, so that those subcontractors can receive work through the benefit of optimized trip dispatch operations. *Accord* Jovanovic v. SRP Invs. LLC, No. PHX:21-CV-00393-JJT, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021), citing Suttles v. Facebook, Inc., 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) ("Targeted messages 'weigh against an inference that ATDS was used'"); Duguid, 592 U.S. at 405 ("Expanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems [of clogging up emergency and business lines] when Congress meant to use a scalpel").

The undisputed facts also establish that MART does not use any "random or sequential number generator," such as computer-generated number tables to dial and leave its messages for various vendors, but rather, MART's IVR system makes decisions to call a vendor for transportation services using a highly specific low-cost list, which is generated based on contact information provided to it by its vendors and updated by the vendors through its online portal system. Accord Panzarella v. Navient Sols., Inc., 37 F.4th 867, 882 (3d Cir. 2022) (entering summary judgment for defendant loan-service provider who "selected a dialing campaign's potential targets from 'specific, curated borrower lists' … [which] contained contact information drawn from [defendant]'s internal database of account information rather than computer-generated

number tables"); Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP, No., 2022 WL 16948612, at *3 (D.R.I. Nov. 15, 2022) (entering summary judgment for defendant where, *inter alia*, calling system could not generate random 10-digit numbers and dial them). As such, where the Defendants in no way use any sort of ATDS or random or sequential number dialing systems to telephone Plaintiff, the TCPA does not apply and summary judgment must enter for the Defendants.

      2.  Prior Express Consent.

In addition, even assuming *arguendo* that MART did use an automatic dialing system to call the Plaintiff's cell phone, judgment nonetheless must enter for MART here because Plaintiff, as the dispatcher/manager of CCRD, provided MART prior consent to call his cell phone number. Among its provisions, as pertinent here, the TCPA prohibits making "any call (other than a call … made with the prior express consent of the called party) …." 47 U.S.C. § 227(b)(1)(A)(iii). The First Circuit has stated that it "understand[s] consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim." Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019). "The TCPA does not define prior express consent." Moskowitz v. Am. Sav. Bank, F.S.B., 37 F.4th 538, 541 (9th Cir. 2022). Some courts, then, have adopted the FCC's interpretation the text: "that a person who knowingly releases his number consents to be called at that number, and that consent is 'effective' where the responsive messages relate to the same subject or type of transaction as the messages that led to the response." Moskowitz, 37 F.4th at 542, quoting Van Patten v. Vertical Fitness Grp., *LLC*, 847 F.3d 1037, 1044-1045 (9th Cir. 2017) and *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992).

Here, there is no dispute that Plaintiff gave his prior express consent to MART to call his cell phone for the purpose of ascertaining and accepting opportunities for rides to provide transportation services on behalf of CCRD, Inc. Specifically, the evidence is undisputed that the Plaintiff initiated contact with MART by providing his cell phone number to MART to obtain same-day or next-day rides under the terms of the contractual agreement between MART and CCRD, Inc. SoF, ¶¶ 17; *Accord* Van Patten, 847 F.3d at 1046 (holding, as matter of law, that plaintiff "gave prior express consent" when he "gave his cellular telephone number for the purpose of a … contract with … defendant," reasoning that "transactional context matters in determining the scope of a consumer's consent to contact"); Moskowitz, 37 F. 4th at 542 (affirming grant of summary judgment for defendant where plaintiff "initiated contact with [defendant]" and "expressly consented" to receiving certain messages from defendant). See also, Lawrence v. Bayview Loan Servicing, LLC, 666 Fed.Appx. 875, 880 (11th Cir. 2016) ("[T]he provision of a mobile phone number, without limiting instructions suffices to establish the consumer's general consent to be called under the TCPA."). Additionally, the Plaintiff was trained by MART regarding how to use its online portal system and call-out system after complaining that he wanted to be contacted for *more* ride offers, and he did not attempt to limit any contact with MART regarding his cell phone usage at that time. SoF, ¶¶ 27, 35-38. *Accord* Miller v. Ginny's Inc., 287 F. Supp. 3d 1324, 1328 (M.D. Fla. 2017) (plaintiff provided defendant "with consent to call her using an ATDS by agreeing to the Credit Terms and providing [defendant] with her cell phone number in connection with the credit transaction").

The transactional nature of the parties' relationship here, and the explicit contract that CCRD, Inc. had with MART to provide transportation services, directly bears on the issue of consent and the nature of the calls that were sent to the Plaintiff's cell phone as CCRD, Inc.'s

dispatcher/manager.  Indeed, as the First Circuit noted in its decision to remand this case, the prior business relationship between the two parties is "relevant to the question whether Jones gave prior express consent to receive the calls."  Jones v. MART, Case No. 1234, at 6 (1st Cir. 2023).  See also, Van Patten, 847 F.3d at 1046 ("a transactional context matters in determining the scope of a consumer's consent to contact").  The phone calls and voice messages sent to Plaintiff's cell phone thus were directly related to the acceptance of rides for the Plaintiff's business, CCRD, Inc., demonstrating that he had expressly consented to receive such calls from May of 2016 through June of 2019.  In connection with the business relationship between MART and CCRD, Inc., absent severing the contractual relationship, it remains plain that Plaintiff, as the dispatcher/manager of CCRD, Inc. consented to receive telephone calls through his cell phone from MART for business purposes, such as providing CCRD, Inc. offers of same-day or next-day rides.  No reasonable view of the evidence can suggest that express consent was not provided by the Plaintiff in connection with the work set forth in the contract between MART and CCRD, Inc.

Although Plaintiff alleges that he sent a letter to MART in 2017 purporting to "revoke" his consent to be telephoned by the IVR system using the cell phone number he provided to MART for such purposes, Plaintiff has not provided the certified returns for said letters indicating that the appropriate person within MART actually received the letter(s).  More important, the undisputed facts remain that Plaintiff, despite having the ability to do so, did not change the telephone number in the online portal so as not to receive calls on his cellular telephone from the IVR system and continued to accept rides and offers of trips via telephone calls from MART's IVR system to obtain work through June 20, 2019 on the cellular telephone number provided. SoF, ¶¶ 18,19.   Rather, at the same time as Plaintiff complained about receiving too many calls about rides, Plaintiff also complained that he was not receiving enough rides from MART.  See Plaintiff's Complaint.  In

email exchanges dated June 17, 2019 through June 24, 2019, Plaintiff requested that MART call his office numbers only, but did not respond to the inquiry from MART's staff member as to which telephone number provided would be for regular calls and which would be for the automated calls. The telephone number associated with MART's IVR system that appears on a vendor's caller id and/or cell phone bill, is 978-252-0019.  SoF, ¶¶ 18-19. MART promptly updated the number in its IVR system and MART ceased using Plaintiff's cellular telephone number, 617-939-5417, previously provided by Plaintiff to call him using MART's IVR system.  However, Plaintiff would still have received "regular" calls from MART staff for the purpose of offering Plaintiff trips or for other purposes from MART's primary trunk line, 978-424-9002. MART's primary trunk line which appears on caller id for outgoing calls is <u>not</u> connected or affiliated with the IVR System. SoF, ¶¶ 20, 21. The appearance of that telephone number (978-424-9002) on Plaintiff's cell phone bill does not denote activity that calls were made using the IVR system.  The undisputed facts remain that Plaintiff provided, and did not otherwise revoke, his prior express consent to receive calls on his cellphone from May 2016 through June of 2019 through the IVR system and continued to accept work offered up to June 20, 2019 through use of the IVR system.  SoF, ¶¶ 17, 18.

Accordingly, even assuming *arguendo* that MART did use an automatic dialing system to call the Plaintiff's cell phone, based on the undisputed material facts, Plaintiff consented to MART calling his cell phone to call him about potential work for CCRD using the IVR system. Accordingly, summary judgement should enter in favor of MART on Plaintiff's remaining TCPA claims.  <u>See, e.g.</u>, <u>Lucoff</u> <u>v. Navient Sol., LLC</u>, 981 F.3d 1299, 1306 (11th Cir. 2020) ("TCPA consent issues are appropriate for summary judgment … when the underlying facts are not disputed."); <u>Mantha v. Quotewizard.com, LLC</u>, No. CV 19-12235-LTS, 2021 WL 6061919, at *9 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, No. CV 19-12235-LTS, 2022 WL

325722 (D. Mass. Feb. 3, 2022) (granting summary judgment on issue of prior consent for TCPA claim); <u>Carl</u> v. <u>First Nat'l Bank of Omaha</u>, 2:19-cv-00504-GZS, 2021 WL 2444162, at *3 (D. Me. June 15, 2021) (granting summary judgment to defendant on issue of consent).

### C. Chapter 151B – Plaintiff has Failed to Make out a Case for Retaliation or Interference with Protected Rights.

In addition to the entry of summary judgment on Plaintiff's remaining TCPA claim, summary judgment must enter for Defendants on Count V of Plaintiff's Second Verified Amended Complaint [Dkt. 55], Plaintiff's claim for "Interference with Protected Rights and Retaliation for Requesting Reasonable Accommodation," pursuant to G.L. c. 151B, §§ 4(4) or 4(4A). [Dkt. 55 at 38-39.][3]  First, Plaintiff's claim brought pursuant to G.L. c. 151B, §§ 4(4) or 4(4A) must be dismissed because Plaintiff failed to file a charge of retaliation or interference pursuant sections 4(4) and 4(4A) with the MCAD as required prior to bringing his claim in court. *See* G.L. c. 151B, § 4.  While Plaintiff filed a complaint of discrimination and retaliation with the EEOC and dually filed it with the MCAD, that complaint was not filed under Sections 4(4) or 4(4A). The EEOC dismissed Plaintiff's complaint for lack of jurisdiction because there was no employee/employer relationship.  SoF, ¶ 41.  The MCAD followed the EEOC's determination and issued a substantial weight determination dismissing Plaintiff's complaint on the same grounds as the EEOC, presumably understanding that Plaintiff had only filed his charge of discrimination and retaliation as an employee of MART.  Plaintiff did not file a separate complaint of retaliation with the MCAD pursuant to sections 4(4) and 4(4A) of Chapter 151B and in fact, did not initially claim here that his retaliation claim was based on anything other than his status as an employee of MART. Because

---

[3] Plaintiff titles Count V of his Second Verified Amended Complaint "Violations of M.G.L. c. 151B, § et seq – Interference with Protected Rights and Retaliation for Requesting Reasonable Accommodation." However, Plaintiff does not allege in his Second Verified Amended Complaint that he requested any reasonable accommodation to be able to perform the essential functions of his job, and Plaintiff did not request any type of reasonable accommodation from MART.

Plaintiff did not file a charge of retaliation with the MCAD under the sections of the statute he now seeks to pursue, Plaintiff's claim brought pursuant to G.L. c. 151B, §§ 4(4) and 4(4A) must be dismissed.   Finally, to the extent that the individually named Defendants are still parties to this matter, any claim against them pursuant to G.L. c.  151B, 4(4) and 4(4A) must be dismissed because Plaintiff never named them as respondents either in his charge filed with the EEOC or the MCAD.

Second, even if Plaintiff's claims brought pursuant to G.L. c. 151B, §§ 4(4) and 4(4A) are not dismissed for his failure to file a separate charge of retaliation under those sections of the statute, Plaintiff's claims must still be dismissed because, based on the undisputed material facts, Plaintiff cannot establish the essential element of his claims.

"Chapter 151B, [ ]  does not actually use the word 'retaliation.'  Rather, § 4(4) makes it unlawful for 'any person . . . to discharge, expel or otherwise discriminate against any person because he  has … filed a complaint, testified or assisted in any proceeding under [G.L. c. 151B, § 5],'  while § 4(4A) makes it unlawful for 'any person to coerce, intimidate, threaten, or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.'"  Psy-Ed Corp. v. Klein, 459 Mass. 697, 706 (2011) quoting, G.L. c. 151B, §§ 4(4) and 4(4A). In a retaliation case under G.L. c. 151B, the court utilizes the burden shifting standard adopted by the Supreme Judicial Court in Mole v. University of Mass., 442 Mass. 582, 591-592 (2004).  "In the absence of direct evidence of retaliatory motive, to make out a prima facie case of retaliation, the plaintiff must show that 'he engaged in protected conduct, that he suffered some adverse action, and that a 'causal connection existed between the protected conduct and the adverse action.'"  Id., quoting, Mole v. University of Mass., 442 Mass. 582, 591-592 (2004) (internal citations omitted).  The desire to retaliate,

however, must be shown to be a determinative factor in its decision to take adverse action.  Id. citing, Abramian v. President & Fellows of Harvard College, 432 Mass. 107 (2000).  Plaintiff cannot establish his *prima facie* case of retaliation under either section of the statute and so these claims must be dismissed.

      1.   Retaliation Claim Under § 4(4).

Plaintiff's retaliation claim under section 4(4) of Chapter 151B begins and ends with Plaintiff's failure to establish the elements of his *prima facie* case of retaliation. The basis for Plaintiff's claim of retaliation, as set forth above, is that MART retaliated against Plaintiff because he complained of discrimination on March 24, 2017 or by email dated August 24, 2016 or both by limiting his ability to work through the online portal system, and by not offering CCRD sufficient trips either through MART's online vendor portal or the IVR system, the same actions Plaintiff complained of from almost the outset of CCRD's contract with MART.  SoF, ¶¶ 28, 29, 30, 34, 35, 37 and 45.  For purposes of this Motion, MART does not dispute that Plaintiff engaged in protected conduct by submitting his March 24, 2017, letter to MART's Title VI Civil Rights Officer or for that matter when he alleged he was being discriminated against in his August 24, 2016 email to Ms. Badgley, and therefore can establish the first element of his *prima facie* case of retaliation.  However, Plaintiff will not be able to prove the second essential element of his *prima facie* case because, based on the undisputed facts, neither Plaintiff nor CCRD who for that matter is not a party here, suffered from an adverse action following Plaintiff's complaints. Plaintiff complained in his conversations and emails to MART employees prior to complaining of discrimination and after. Plaintiff repeatedly complained, both before and after his complaint of discrimination, that CCRD was not being assigned a sufficient number of trips and that the vendor portal in one way or another was not properly functioning.  SoF, ¶¶ 28, 29, 30, 34, 37 and 45. Even

14

if Plaintiff engaged in protected conduct and suffered an adverse action when CCRD (MART's Vendor, not Plaintiff), was assigned fewer trips than Plaintiff desired, there is no evidence that Plaintiff's complaint of discrimination was causally connected in any way to the number of trips that MARTs vendor portal or IVR system offered CCRD. Plaintiff just simply continued to complain and misunderstand how the portal system operated and how trips were assigned to MART vendors.

Based on the evidence, not mere allegations, it is undisputed that the reason CCRD did not receive as many requests for rides through the vendor portal or the IVR system both before and after Plaintiff complained of discrimination was because CCRD had higher vendor rates than other transportation providers and in part because of limits on hours that CCRD was willing to work. SoF, ¶¶ 23, 26. Rather than retaliate because the Plaintiff alleged discrimination, Ms. Badgley analyzed the online portal system, noticed that the rates submitted by Plaintiff on behalf of CCRD were higher than several other vendors, and explained that this was why he was not being offered rides ahead of time, except for the same-day or next-day rides that other, lower-cost vendors were unavailable for. SoF, ¶¶ 34, 35. Ms. Badgley, recognizing that some of the issues raised by Plaintiff appeared to be due to his not fully understanding how to use the vendor portal system, arranged for Plaintiff to receive one-on-one training with Robert Monk in May 2018. This was after Plaintiff complained of discrimination. In fact, after Plaintiff complained of discrimination, Ms. Badgley and others continued to work with Plaintiff, explaining to him reasons why CCRD was not being offered more rides and explaining various MART policies; for example, its policy of issuing fines to vendors or for shared rides. Ms. Badgley continued to emphasize to Plaintiff that everything is assigned via low-cost qualified bid process based off of vendor rates as trips are received. SoF, ¶¶ 37, 39, 44-46. There is simply no evidence by which Plaintiff can

show that his complaint of discrimination was in any way causally connected to CCRD's not being offered more rides.  Because Plaintiff cannot establish the elements of his *prima facie* case of retaliation, judgment should enter in favor of MART on Plaintiff's claim brought pursuant to G.L. c. 151B, § 4(4).

Assuming arguendo that Plaintiff succeeds in establishing his *prima facie* case of retaliation, the burden shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the action.  Audette v. Town of Plymouth, 858 F. 3d 13, 23 (2017).  If the defendant provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's purported reason was merely pretextual.  *Id.*

Here, MART has presented clear evidence of a legitimate, non-retaliatory reason for CCRD not being offered more rides than Plaintiff desired – CCRD's higher rates, as well as CCRD's limited capacities. Because rides are offered based on a "low-cost" system, the online portal was not assigning CCRD rides, not due to any retaliatory motive on MART's part but, due to CCRD's rates, due in part to CCRDs hours of operations, and due in part to a vendors' capacity tables. SoF, ¶¶ 7-10, 25-26, 35, 37, 45 and 47. As such, there was plainly a plausible, legitimate, and nonretaliatory justification for the purported adverse employment action that resulted in CCRD receiving fewer ride offers, being that of its higher rates.

Because MART has presented evidence based on the undisputed material facts of a legitimate, non-retaliatory reason for CCRD not being assigned more trips, the burden shifts back to Plaintiff to prove by a preponderance of the evidence that MART's purported reason was merely pretextual, that MART's purported retaliatory motive was a determinative factor in CCRD not being assigned more trips.  Plaintiff cannot meet this burden, because Plaintiff has not and cannot proffer admissible evidence to show that MART's reasons were pretextual and that CCRDs failure

to be assigned more trips was due to a retaliatory motive as opposed to the real reason, being that CCRD simply had higher rates than other vendors, when trips were assigned using a the portal system that assigns rides going out three days in advance or more to the lowest-cost qualified vendor, based off of vendor rates and availability.   Plaintiff's conclusory allegations, at most, amount to no more than subjective feelings of disillusionment with MART and his hopes that CCRD would have been offered more trips.

Because Plaintiff cannot make out a *prima facie* case of retaliation and, even if he cannot show by a preponderance of the evidence that MART's legitimate non-retaliatory reason was pretextual, judgement must enter in favor of MART on Plaintiff's claim pursuant to section 4(4) of Chapter 151.

       2.   <u>Interference Claim Under § 4(4A).</u>

Plaintiff also purports to have brought a claim under § 4(4A) of Chapter 151B which makes it unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by [G.L. c. 151B], or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by [G.L. c. 151B]."  G.L. c. 151B, § 4(4A).  In this regard, Plaintiff's interference claim appears premised on the allegation of a hostile work environment based on MART's "refusing to train plaintiff properly, refusing to allow plaintiff to participate in Federal Funded Programs, refusing [to] communication with plaintiff," while at the same time, telephoning Plaintiff to offer next-day and same-day rights too frequently. [Dkt No. 55, at ¶ 227.]  As the term is used in G.L. c. 151B, § 4(4A), "interfere" "is appropriately considered with, and interpreted in light of, the words 'coerce,' 'intimidate' and 'threaten' that precede it and that each implies some form of intentional conduct."  <u>Lopez</u> v. <u>Commonwealth</u>, 463

Mass. 696, 708 (2012). Claims based on a violation of G.L. c. 151B, § 4(4) and 4(4A) are commonly called retaliation claims even though the statute does not use those terms. As with section 4(4), section 4(4A) essentially proscribes retaliation against those who exercise their rights under G.L. c. 151B. For the reasons set forth above discussing why judgement should enter in favor of MART on Plaintiff's claim brought pursuant to section 4(4), so too MART is entitled to summary judgment on Plaintiff's retaliation claim under section 4(4A) of Chapter 151B. Plaintiff has not and will not be able to produce admissible evidence to establish his *prima facie* case of retaliation because even if he did suffer an adverse action, which he did not, he will not be able to prove that any such adverse action was causally connected to his complaints of discrimination. Plaintiff, as set forth above, similarly will not be able to present evidence to show that MART's legitimate non-retaliatory reason for CCRD not be assigned more trips was a pretext. Further, under section 4(4A), Plaintiff cannot proffer any admissible evidence that MART and its employees engaged in intentional conduct to retaliate against Plaintiff and to prevent CCRD from being assigned more trips. Instead, as repeatedly explained to Plaintiff, the online portal system as well as the IVR system utilizes a bid process to assign rides based on the lowest cost qualified transportation provided dependent upon vendor rates and availability. CCRD's rates were simply too high. It is undisputed that Plaintiff was unhappy with the level of ride offers CCRD was getting because CCRD's vendor rates were too high from the outset of the contract between MART and CCRD, Inc. Plaintiff's subjective complaints not only do not suffice to support a claim of retaliation or interference with protected rights, but Plaintiff also has not shown a causal connection between his complaining of discrimination and the complained of action or that the actions were taken to interfere with Plaintiff's rights under G.L. c. 151B. *See Bain v. City of*

*Springfield*, 424 Mass. at 766 ("subjective or intangible impressions must not be considered in making out a case under the statute").

Accordingly, summary judgment on this claim, too, must enter for Defendants.

### D. Negligent Infliction of Emotional Distress – Plaintiff's Claim Is Barred, as a Matter of Law, by the Massachusetts Tort Claims Act.

Finally, in Count VI of Plaintiff's Second Verified Amended Complaint, Plaintiff brings a claim for the negligent infliction of emotional distress, alleging that "Defendants knew or should have known, that failure to combat the Intentional Discrimination, Retaliation and the Hostile Work Environment and to investigate plaintiffs' allegations in a timely orderly fashion and to exercise due care would cause plaintiff severe emotional distress and physical symptoms." [Dkt 55, at ¶ 236.]   As with Plaintiff's other claims, summary judgment should enter in favor of Defendants on Plaintiff's negligent infliction of emotional distress claim because Plaintiff did not present his claim as required under the Massachusetts Tort Claims Act, G.L. c. 258 ("MTCA"), a prerequisite to being able to file a negligence claim against MART in court. G.L. c. 258, § 4. Specifically, under the MTCA a claim for negligence, a tort claim, may not be brought against a public employer unless the plaintiff "first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing." G.L. c. 258, § 4. Presentment is a condition precedent to Plaintiffs' negligence claim and must "be made 'in strict compliance with the statute.'" *Gilmore v. Commonwealth*, 417 Mass. 718, 721 (1994), quoting *Weaver v. Commonwealth*, 387 Mass. 43, 47 (1982); *see, e.g.*, *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274 (1985) ("If proper presentment is not made within the time allotted, the plaintiff's complaint is subject to dismissal"); Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 75 (D. Mass. 2015) (where "Plaintiff has not provided evidence that she made proper presentment

before filing suit … [the claim] is subject to dismissal"). Because Plaintiff did not make proper presentment of his negligence claim, his claim for the negligent infliction of emotional distress must be dismissed and judgment entered in favor of Defendants.

To the extent that the individual Defendants remain in this case, which they do not, the claim of negligent infliction of emotional distress must too be dismissed against them regardless of whether proper presentment was made by Plaintiff, because under the MTCA, public employees are not liable for negligent acts.  G.L. c. 258, § 2.

In addition, assuming *arguendo* that Plaintiff's claim is not barred by the MTCA for his failure to make proper presentment, his claim for the negligent infliction of emotional distress must still be dismissed and judgment entered for MART because the provisions of the MTCA do not apply to discretionary functions, such as those that form the basis of Plaintiff's negligence claim. Put another way, MART is immune from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."  G.L. c. 258, § 10 (b). Indeed, Plaintiff's claim that MART negligently inflicted emotional distress on him is barred by G.L. c. 258, § 10(b) because, whether and how to respond to all of Plaintiff's complaints and whether and how to investigate the issues he raised in said complaints, none of which had anything whatsoever to do with Plaintiff's race or sex, are discretionary functions of a public employee.  *Compare Harrington v. City of Attleboro*, 172 F. Supp. 3d 337, 347 (D. Mass. 2016) (school's decisions on whether and how to investigate complaints of harassment and to discipline are discretionary functions).  In fact, MART's decisions in these regards were not limited by any statute or regulation and thus involves policy-making and

20

planning for which § 10(b) was designed to immunize.  *Accord Harry Stoller & Co. v. City of Lowell*, 412 Mass. 139, 141 (1992).[4]

Finally, even if Plaintiff's claim was not barred by discretionary function exception to the MTCA, Plaintiff's claim for the negligent infliction of emotional distress must still be dismissed because, based on the undisputed material facts, Plaintiff cannot prove the elements of his claim. To recover for the negligent infliction of emotional distress, Plaintiff must prove, 1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances. Lanier v. President and Fellows of Harvard College, 490 Mass. 37 (2022).  Here, Plaintiff cannot establish any of the required elements.  Plaintiff's claim presupposes that he will prevail on his discrimination, harassment and retaliation claims.  However, Plaintiff's only remaining claim in this regard is for retaliation brought pursuant to G.L. c. 151B, §§ 4(4) and 4(4A) which claim as set forth above will not survive summary judgment.  In addition, Plaintiff will not be able to prove the elements of his negligence claim because based on the overwhelming undisputed material facts, MART did not breach any duty owed to Plaintiff.  In fact, MART was not negligent, but instead, spent an inordinate amount of time trying to assist Plaintiff in better understanding the manner in which trips are assigned, in the use of the vendor portal and in responding to Plaintiff's numerous emails seeking information.  While Plaintiff clearly did not like the reasons provided for why CCRD was not being assigned more rides, the fact that he would have liked a different outcome is not evidence of negligence.  Plaintiff has not and cannot produce evidence to show that

---

[4] Additionally, Plaintiff's NIED claim is no different from the claims he has made under Title VII and Chapter 151B, and it necessarily presupposes that he can prevail on claims for discrimination, harassment, and retaliation against MART.  Because his Title VII claims have been dismissed and affirmed, and he cannot prevail pursuant to his Chapter 151B claim, Plaintiff also will not be able to show that MART's actions allegedly in violation of those statutes caused him to suffer severe emotional distress.

any of MART's actions caused him to suffer from emotional distress, any evidence of physical harm manifested by objective symptomology or evidence that a reasonable person under the circumstances of this case would have suffered from emotional distress.  Accordingly, even if Plaintiff's claim for the negligent infliction of emotional distress were not barred for the reasons set forth above, summary judgment must still enter in favor of Defendants because Plaintiff cannot prove the essential elements of his claim.

Accordingly, for these reasons, Count VI of Plaintiff's Verified Second Amended Complaint must be dismissed with judgment to enter in favor of Defendants.

## III.    CONCLUSION

For the above reasons, MART respectfully requests that judgment enter in favor of the Defendants on Count I of the Plaintiff's First Amended Complaint [Dkt No.7], and on Counts V and VI of Plaintiff's Second Verified Amended Complaint [Dkt No. 55].

Respectfully submitted,

DEFENDANTS,
MONTACHUSETT REGIONAL TRANSIT
AUTHORITY and MOHAMMED KHAN,

By their attorneys,

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com

Dated:  April 2, 2025
969829/37800/0006

<u>CERTIFICATE OF SERVICE</u>

I certify that the above document will be served upon any other party or counsel of record who is not being served by the Court's ECF system, upon notification by the Court's ECF system of same.

*/s/ Deborah I. Ecker*