UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET No. 4:19-cv-11093-MRG
(combined with case No. 120-cv-12076)

PAUL JONES,

    Plaintiff

v.

MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.,

    Defendants

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S
PARTIAL MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

Defendants, Montachusett Regional Transit Authority and Crystal Geisert, Bonnie Mahoney, Jessica Torres, Karen Cordio, Michelle Moyo, Donna Landry, Joanne Norris, Robert Monk, Amanda Kukta, Ivan Roman, Tamara Schumovskaya, Rebecca Badgley, and Stephanie Richards (collectively, "MART" or "Defendants"), hereby oppose Plaintiff Paul Jones' ("Plaintiff" or "Jones") Partial Motion for Summary Judgment For Defendant MART Leaving Prerecorded Calls on Plaintiff Answering Machine Under 47 U.S.C. § 227(b)(1)(A)(iii) ("Motion").

In his Motion, Plaintiff seeks summary judgment on Count I of his First Amended Complaint brought pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) (the "TCPA") and his claim for violation of the TCPA brought in a subsequent lawsuit, 1:20-cv-12076, that has now been consolidated here. While in his Motion Plaintiff seeks to "split" his TCPA claim and to only seek summary judgment pursuant to one section of the statute, which he does not identify, Plaintiff's attempt to "split" his claim into two parts is nonsensical, does not comport with the section of the statute under which he brings his claim, and does not comport with the First Circuit Court of

1

Appeals remand order, which remanded Plaintiff's cause of action for violation of the TCPA brought pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) only.

As will be set forth in more detail below, Plaintiff's Motion should be denied and Defendants' Motion for Summary Judgment should be granted, dismissing Plaintiff's TCPA claim and entering judgment in favor of Defendants.

## II.     RELEVANT FACTS

Defendants incorporate herein Defendants' Local Rule 56.1 Statement of Facts filed in support of Defendants' Motion for Summary Judgment as well as Defendants Response to Plaintiff's Statement of Facts.

## III.    ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendant is entitled to summary judgment if Defendant demonstrates either that Plaintiff has no reasonable expectation of proving an essential element of its claims or by submitting affirmative evidence negating an element of its claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987); Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998). In attempting to defeat summary judgment, "a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir.2005). Here, Plaintiff continues to rely on conclusory allegations contained in his various Complaints. While Defendants were required to take all of the factual allegations contained in Plaintiffs' complaints as true drawing all inferences in Plaintiff's favor in their motion to

dismiss, at this stage, Plaintiff must set forth admissible evidence to support those allegations to prevail at the summary judgment stage. Plaintiff has not put forth evidence to show that Defendants violated the TCPA and accordingly, Plaintiff's Partial Motion for Summary Judgment must be denied and Defendants' Motion for Summary Judgment granted.

### B. Section 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA

As set forth above, in his Motion Plaintiff seeks to "split" his TCPA claim and only seeks summary judgment pursuant to one section of the statute, which section he does not identify. Plaintiff's attempt to "split" his claim into two parts is nonsensical, and does not comport with the section of the statute under which he brings his claim. The definition of an "automatic telephone dialing system" ("ATDS") contained in the TCPA defines that system for the remaining sections of the statute. In his First Amended Complaint, Plaintiff brings a cause of action against Defendants for the violation of section 227(b)(1)(A)(iii) of the TCPA. That section provides as follows:

> § 227. Restrictions on use of telephone equipment.
> 
> . . .
> 
> **(b) Restrictions on use of automated telephone equipment**
> 
> **(1) Prohibitions**
> 
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
> 
> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
> . . .
> **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which

the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C. §227(b)(1)(A)(iii). Section 227 of the TCPA defines the term automatic telephone dialing system as follows:

§ 227. Restrictions on use of telephone equipment.

**(a) Definitions**

As used in this section—

**(1)** The term "automatic telephone dialing system" means equipment which has the capacity-

**(A)** to store or produce telephone numbers to be called, using a random or sequential number generator; and

**(B)** to dial such numbers.

47 U.S.C. § 227(a)(1)(A) and (B). Accordingly, to bring a claim under 47 U.S.C. §227(b)(1)(A)(iii), the ATDS must meet the definition for such a system contained in 47 U.S.C. § 227(a)(1)(A) and (B). Here, Plaintiff seeks to bring a claim under 47 U.S.C. §227(b)(1)(A)(iii) regardless of whether the telephone system used for calling meets the definition of an ATDS under the TCPA. Specifically, in his Motion, Plaintiff states that he is filing his summary judgment under §227(b)(1)(A)(iii), "on the section that prohibits the use of 'artificial or prerecorded voice messages to cell phone', not the section that prohibits the use of an Automatic Telephone Dialing System (ATDS) to any type of residential or a cell phone." See, Brief in Support of Plaintiff's Partial Motion for Summary Judgment for Defendant MART Leaving Prerecorded Calls on Plaintiff Answering Machine under 47 U.S.C. § 227(b)(1)(A)(iii) ("Plaintiff's Brief") at ¶14. Plaintiff's attempt to split his TCPA claim does not comport with the clear language of the statute and the definition of an ATDS contained therein. As will be set forth below, MART's IVR system is not an ATDS as that system is defined under the TCPA, a definition which is applicable to the

use of the term throughout the statute. Accordingly, Plaintiff's Partial Motion for Summary Judgment should be denied.

C. **MART Did Not Use an ATDS As That System is Defined by the TCPA**

Plaintiff's claims of violation of the TCPA must be dismissed and his Partial Motion for Summary Judgment denied because MART did not use an ATDS as that system is defined by the TCPA and as clarified by the Supreme Court when calling Plaintiff's cell phone, or any of its vendors' phones for the purpose of offering rides to CCRD, Inc., MART's vendor. The definition of an ATDS under the TCPA is necessarily incorporated into the section of the TCPA Plaintiff relies on in his Partial Motion for Summary Judgment.

The TCPA was enacted in 1991 to address "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers," after "[a]dvances in automated technology made it feasible for companies to execute large-scale telemarketing campaigns at a fraction of the prior cost, dramatically increasing customer contacts." Facebook, Inc. v. Duguid, 592 U.S. 395, 399 (2021) (internal quotations and citations omitted). "Congress found autodialer technology to be uniquely harmful. It threatened public safety by seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services." Id. "Indeed, due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business with sequentially numbered phone lines. Nor were individual consumers spared: autodialers could reach cell phones, pagers, and unlisted numbers, inconveniencing consumers and imposing unwanted fees." Id. at 399-400. MART has not engaged in the activities addressed by the TCPA, and so Plaintiff's claims thereunder must be dismissed.

The TCPA imposed various restrictions on the use of automated dialing equipment. Id.; See also Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2344 (2020). One such restriction, as relevant here, prohibits "any person within the United States" from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice" to any cell phone number. Id. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Here, it is undisputed that MART did not use an automatic telephone dialing system to contact the Plaintiff's cell phone. The United States Supreme Court has held that under the TCPA, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Duguid, 592 U.S. at 399. The definition of an autodialer thus "requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." Id. at 404. The Court expressly rejected the argument that ATDS simply encompasses any system with the "capacity to dial numbers without human intervention." Id. at 409.

Here, MART's equipment neither stores nor produces telephone numbers "using a random or sequential number generator," and therefore, "it is not an autodialer" within the meaning of the TCPA. Duguid, 592 U.S. at 402. Specifically, MART's system does not have the capacity to generate random ten-digit phone numbers and then to dial them to leave a prerecorded voice message. Rather, MART telephones its Vendors for transportation services on the numbers that

those Vendors provide to MART to receive offers for trips, using a highly specific and targeted low-cost qualified transportation provider list. See, Statement of Facts in Support of Defendants' Motion for Summary Judgment [Dkt.   ] ("SoF"), ¶¶ 14-18. If a Vendor rejects the call, the IVR system will telephone the next lowest-cost qualified Vendor using the telephone number provided to it, unless that Vendor has indicated that they are "at capacity" or on "holiday." SoF, ¶ 14 . Indeed, MART's IVR system utilized the cellular telephone number specifically provided to MART by the Plaintiff, so that he could "accept" or "reject" transportation trips for the region on behalf of CCRD, Inc. SoF, ¶ 17.

Additionally, even if MART's IVR system did have ATDS capacity (which it does not), it is undisputed that MART has never employed ATDS to call the Plaintiff. SoF, ¶¶ 16, 17. The Plaintiff does not allege, nor could he, that MART somehow makes large blocks of identical and simultaneous calls to random numbers, rather than the personalized calls and messages it sends to its vendors. *See generally Plaintiff's Second Amended Verified Complaint.* Rather, the telephone calls or messages will not be sent by MART if the vendor updates the online portal as full for a particular day, or on holiday, or if the vendor is not one of the lowest-cost, qualified vendors, based on the rates that the vendor sets (and can update quarterly) in MART's online portal system. SoF, ¶¶ 14, 17. As such, the calls and messages through the IVR system are not of the type of mass-produced, automatic robocalls to consumers against which the TCPA guards; they are targeted and specific messages sent to a list of MART's qualified vendors, so that those subcontractors can receive work through the benefit of optimized trip dispatch operations. *Accord* Jovanovic v. SRP Invs. LLC, No. PHX:21-CV-00393-JJT, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021), citing Suttles v. Facebook, Inc., 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) ("Targeted messages 'weigh against an inference that ATDS was used'"); Duguid, 592 U.S. at 405 ("Expanding the definition

of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems [of clogging up emergency and business lines] when Congress meant to use a scalpel").

The undisputed facts also establish that MART does not use any "random or sequential number generator," such as computer-generated number tables to dial and leave its messages for various vendors, but rather, MART's IVR system makes decisions to call a vendor for transportation services using a highly specific low-cost list, which is generated based on contact information provided to it by its vendors and updated by the vendors through its online portal system. Accord Panzarella v. Navient Sols., Inc., 37 F.4th 867, 882 (3d Cir. 2022) (entering summary judgment for defendant loan-service provider who "selected a dialing campaign's potential targets from 'specific, curated borrower lists' … [which] contained contact information drawn from [defendant]'s internal database of account information rather than computer-generated number tables"); Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP, No., 2022 WL 16948612, at *3 (D.R.I. Nov. 15, 2022) (entering summary judgment for defendant where, *inter alia*, calling system could not generate random 10-digit numbers and dial them). As such, where the Defendants in no way use any sort of ATDS or random or sequential number dialing systems to telephone Plaintiff, the TCPA does not apply.

Finally, in his Brief Plaintiff alleges that MART is a "Telemarketer that solicits sales for their clients trips through prerecorded messages." Plaintiff's Brief, p. 9, ¶¶ 40 and 41. Based on the undisputed facts, MART is not a telemarketer i.e., is not soliciting sales of goods or services, but instead is contacting Plaintiff as the dispatcher for CCRD, MART's vendor to offer trips which if accepted would result in MART paying CCRD to provide a service.

Accordingly, Plaintiff's Motion must be denied and summary judgment must enter for the Defendants.

D.  **Prior Express Consent**

In addition, even assuming *arguendo* that MART did use an automatic dialing system to call the Plaintiff's cell phone, Plaintiff's Motion still must be denied because Plaintiff, as the dispatcher/manager of CCRD, provided MART prior consent to call his cell phone number. Among its provisions, as pertinent here, the TCPA prohibits making "any call (other than a call … made with the prior express consent of the called party) …." 47 U.S.C. § 227(b)(1)(A)(iii). The First Circuit has stated that it "understand[s] consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim." Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019). "The TCPA does not define prior express consent." Moskowitz v. Am. Sav. Bank, F.S.B., 37 F.4th 538, 541 (9th Cir. 2022). Some courts, then, have adopted the FCC's interpretation of the text: "that a person who knowingly releases his number consents to be called at that number, and that consent is 'effective' where the responsive messages relate to the same subject or type of transaction as the messages that led to the response." Moskowitz, 37 F.4th at 542, quoting Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044-1045 (9th Cir. 2017) and *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992).

Here, there is no dispute that Plaintiff gave his prior express consent to MART to call his cell phone for the purpose of ascertaining and accepting opportunities for rides to provide transportation services on behalf of CCRD, Inc. Specifically, the evidence is undisputed that the Plaintiff initiated contact with MART by providing his cell phone number to MART to obtain same-day or next-day rides under the terms of the contractual agreement between MART and

9

CCRD, Inc. SoF, ¶¶ 17; *Accord* Van Patten, 847 F.3d at 1046 (holding, as matter of law, that plaintiff "gave prior express consent" when he "gave his cellular telephone number for the purpose of a … contract with … defendant," reasoning that "transactional context matters in determining the scope of a consumer's consent to contact"); Moskowitz, 37 F. 4th at 542 (affirming grant of summary judgment for defendant where plaintiff "initiated contact with [defendant]" and "expressly consented" to receiving certain messages from defendant). See also, Lawrence v. Bayview Loan Servicing, LLC, 666 Fed.Appx. 875, 880 (11th Cir. 2016) ("[T]he provision of a mobile phone number, without limiting instructions suffices to establish the consumer's general consent to be called under the TCPA."). Additionally, the Plaintiff was trained by MART regarding how to use its online portal system and call-out system after complaining that he wanted to be contacted for *more* ride offers, and he did not attempt to limit any contact with MART regarding his cell phone usage at that time. SoF, ¶¶ 27, 35-38. *Accord* Miller v. Ginny's Inc., 287 F. Supp. 3d 1324, 1328 (M.D. Fla. 2017) (plaintiff provided defendant "with consent to call her using an ATDS by agreeing to the Credit Terms and providing [defendant] with her cell phone number in connection with the credit transaction").

The transactional nature of the parties' relationship here, and the explicit contract that CCRD, Inc. had with MART to provide transportation services, directly bears on the issue of consent and the nature of the calls that were sent to the Plaintiff's cell phone as CCRD, Inc.'s dispatcher/manager. Indeed, as the First Circuit noted in its decision to remand this case, the prior business relationship between the two parties is "relevant to the question whether Jones gave prior express consent to receive the calls." Jones v. MART, Case No. 1234, at 6 (1st Cir. 2023). See also, Van Patten, 847 F.3d at 1046 ("a transactional context matters in determining the scope of a consumer's consent to contact"). The phone calls and voice messages sent to Plaintiff's cell phone

thus were directly related to the acceptance of rides for the Plaintiff's business, CCRD, Inc., demonstrating that he had expressly consented to receive such calls from May of 2016 through June of 2019. In connection with the business relationship between MART and CCRD, Inc., absent severing the contractual relationship, it remains plain that Plaintiff, as the dispatcher/manager of CCRD, Inc. consented to receive telephone calls through his cell phone from MART for business purposes, such as providing CCRD, Inc. offers of same-day or next-day rides. No reasonable view of the evidence can suggest that express consent was not provided by the Plaintiff in connection with the work set forth in the contract between MART and CCRD, Inc.

Although Plaintiff alleges that he sent a letter to MART in 2017 purporting to "revoke" his consent to be telephoned by the IVR system using the cell phone number he provided to MART for such purposes, Plaintiff has not provided the certified returns for said letters indicating that the appropriate person within MART actually received the letter(s). More important, the undisputed facts remain that Plaintiff, despite having the ability to do so, did not change the telephone number in the online portal so as not to receive calls on his cellular telephone from the IVR system and continued to accept rides and offers of trips via telephone calls from MART's IVR system to obtain work through June 20, 2019 on the cellular telephone number he provided. SoF, ¶¶ 18,19. Rather, at the same time as Plaintiff complained about receiving too many calls about rides, Plaintiff also complained that he was not receiving enough rides from MART. *See* Plaintiff's Complaint. In email exchanges dated June 17, 2019 through June 24, 2019, Plaintiff requested that MART call his office numbers only, but did not respond to the inquiry from MART's staff member as to which telephone number provided would be for regular calls and which would be for the automated calls. The telephone number associated with MART's IVR system that appears on a vendor's caller id and/or cell phone bill, is 978-252-0019. SoF, ¶¶ 18-19. MART promptly updated the number in

11

its IVR system and MART ceased using Plaintiff's cellular telephone number, 617-939-5417, previously provided by Plaintiff to call him using MART's IVR system. However, Plaintiff would still have received "regular" calls from MART staff for the purpose of offering Plaintiff trips or for other purposes from MART's primary trunk line, 978-424-9002. MART's primary trunk line which appears on caller id for outgoing calls is <u>not</u> connected or affiliated with the IVR System. SoF, ¶¶ 20, 21. The appearance of that telephone number (978-424-9002) on Plaintiff's cell phone bill does not denote activity that calls were made using the IVR system. The undisputed facts remain that Plaintiff provided, and did not otherwise revoke, his prior express consent to receive calls on his cellphone from May 2016 through June of 2019 through the IVR system and continued to accept work offered up to June 20, 2019 through use of the IVR system. SoF, ¶¶ 17, 18.

Accordingly, even assuming *arguendo* that MART did use an automatic dialing system to call the Plaintiff's cell phone, based on the undisputed material facts, Defendants have met their burden of showing that Plaintiff consented to MART calling his cell phone to call him about potential work for CCRD using the IVR system. Accordingly, Plaintiff's Motion should be denied and summary judgement should enter in favor of MART on Plaintiff's remaining TCPA claims. <u>See, e.g.</u>, <u>Lucoff</u> v. <u>Navient Sol., LLC</u>, 981 F.3d 1299, 1306 (11th Cir. 2020) ("TCPA consent issues are appropriate for summary judgment … when the underlying facts are not disputed."); <u>Mantha v. Quotewizard.com, LLC</u>, No. CV 19-12235-LTS, 2021 WL 6061919, at *9 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, No. CV 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) (granting summary judgment on issue of prior consent for TCPA claim); <u>Carl</u> v. <u>First Nat'l Bank of Omaha</u>, 2:19-cv-00504-GZS, 2021 WL 2444162, at *3 (D. Me. June 15, 2021) (granting summary judgment to defendant on issue of consent).

## IV. CONCLUSION

For all of the reasons set forth above and in Defendants' Motion for Summary Judgment, Defendants respectfully request that this honorable Court deny Plaintiff's Partial Motion for Summary Judgment, grant Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants on all of Plaintiff's claims against them.

Respectfully submitted,

DEFENDANTS,
MONTACHUSETT REGIONAL TRANSIT AUTHORITY and MOHAMMED KHAN,

By their attorneys,

*/s/ Deborah J. Ecker*

Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA  02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com

Dated:  April 28, 2025

971644/37800/0006

## CERTIFICATE OF SERVICE

I certify that the above document will be served upon any other party or counsel of record who is not being served by the Court's ECF system, upon notification by the Court's ECF system of same.

*/s/ Deborah I. Ecker*