UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES,

       Plaintiff,

v.

MONTACHUSETT REGIONAL

TRANSIT AUTHORITY, et al.

       Defendants,

DOCKET No. 4:19-cv-11093-MRG

## PLAINTIFF RESPONSE TO DEFENDANTS'

## LOCAL RULE 56.1 STATEMENT OF FACTS

### INTRODUCTION

Plaintiff generally objects to Defendants' Statement of Facts for G.L. c. 151B, §§ 4(4) and 4(4A)

Discrimination, Retaliation, Intentional Infliction of Emotional Distress, and violations of the

Telephone Consumer Protection Act ("TCPA") involving the use of an Automatic Telephone

Dialing System ("ATDS") the claims of to the extent that it attempts to adjudicate claims without

the benefit of discovery. Plaintiff has filed a Rule 56(d) Motion because no discovery has been

conducted on the above claims.

1

However Plaintiffs has filed a Partial Motion For Judgment on the Pleadings for violations of the TCPA leaving Artificial Prerecorded calls on his cellular telephone, which was file in June of 2022 but was never ruled on.

Plaintiff cannot fairly oppose Defendants' motion for summary judgment under Local Rule 56.1 on claims arising under G.L. c. 151B, §§ 4(4) and 4(4A) (Discrimination and Retaliation), Intentional Infliction of Emotional Distress, and the Telephone Consumer Protection Act ("TCPA") using an Automatic Telephone Dialing System, until Defendants allow Plaintiff to depose six (6) key defendants and produce critical discovery directly relevant to these claims.

Specifically, Plaintiff requires discovery including, but not limited to:

- Deposition testimony of Crystal Geisert, Bonnie Mahoney, Ivan Roman, Jessica Torres, Karen Cordio, and Donna Landry, regarding their involvement in and knowledge of acts of discrimination, retaliation, emotional distress, and improper telemarketing practices;

- Production of internal communications, emails, and policies regarding the treatment of Plaintiff and similarly situated vendors, particularly communications reflecting retaliatory or disparate treatment from the named defendants;

- Production of vendor portal system records showing that similarly situated vendors were allowed to freely adjust their available work hours and access opportunities, while Plaintiff was locked out or restricted from making changes;

- Records of other vendors' contracted rates, including a full list of rates charged by similarly situated vendors during the relevant period 2016-2020, to show that Plaintiff's rates were lower than 90% of other vendors, despite MART's staff repeatedly mischaracterizing Plaintiff's rates as "too high";

- Payment records (vendor checks) and portal activity logs that would demonstrate that white vendors were permitted to grow and thrive their businesses through unrestricted portal access and support from MART employees, while Plaintiff's access and opportunities were suppressed;

- Phone records and scheduling logs evidencing that white vendors were not subjected to IVR call-outs to make schedules, while Plaintiff's personal cell phone was targeted and placed into the IVR system without authorization as retaliation for filing civil rights complaints and MARTS Employees refused to call the Two office telephone numbers plaintiff provided in writing and verbally and in face to face meetings ;

- Documents showing MART's knowledge that white vendors were allowed to operate multiple (2-6) companies simultaneously under the same names and hold multiple contracts through MART, contrary to the treatment Plaintiff received;

- Training records and onboarding documentation establishing that white vendors were offered extensive training and portal support that was denied to Plaintiff;

- Production of the IVR Systems Manuals and related documentation in effect between 2016–2020, necessary to establish whether Defendants' IVR system constituted an Automatic Telephone Dialing System (ATDS) under the TCPA not the 2021 IVR Manual Defendants gave to plaintiff, which was not used to place any calls to plaintiff during 2016-2020;

- Call records, dialing logs, and recorded messages showing the volume, nature, and content of artificial prerecorded voice messages left on Plaintiff's cellular telephone and not on other Similar Situated white vendors;

- Plaintiff also needs to depose Two third-party depositions and subpoenas directed to similarly situated vendors and outside companies that maintain all records to show MART was paid for each trip given and that MART is a Telemarketer.
- Plaintiff needs to obtain records demonstrating disparate treatment in business opportunities, portal access, payment practices, and training support.

Plaintiff respectfully submits that without this necessary discovery, opposing Defendants' motion for summary judgment on these claims would result in unfair prejudice and deny Plaintiff the opportunity to fully and fairly present material facts essential to his opposition, as protected under Fed. R. Civ. P. 56(d) as plaintiff solemnly swear that Plaintiff has never had the opportunity to conduct any discovery under G.L. c. 151B, §§ 4(4) and 4(4A) (Discrimination and Retaliation), Intentional Infliction of Emotional Distress, and the Telephone Consumer Protection Act ("TCPA") using an Automatic Telephone Dialing System, the remaining claims and plaintiffs has only be granted 56 days of discovery solely on if plaintiff was an employee or independent contractor under the Title VII Count and defendants opposed those 56 days of discovery, plaintiffs complaint is still in the pleading stages after being filed coming up on 6 years in June of 2025.

Accordingly, Plaintiff requests that the Court deny Defendants' motion for summary judgment as Premature to Plaintiff's G.L. c. 151B, §§ 4(4) and 4(4A) (Discrimination and Retaliation), Intentional Infliction of Emotional Distress, and the Telephone Consumer Protection Act ("TCPA") using an Automatic Telephone Dialing System, without prejudice, or alternatively defer ruling on the motion until the necessary discovery is completed.

However, Plaintiff is prepared to partially oppose Defendants' Motion for Summary Judgment

4

solely with respect to defendants leaving artificial prerecorded messages on plaintiffs cellular

telephone answering service, claims under Count I of the TCPA.

Plaintiff has already filed a Partial Motion for Summary Judgment and request for  Discovery

over three years ago on June 21, 2022, for Defendants leaving Prerecorded Messages on Plaintiff

cell phone answering service. See CASE #: 1:20-cv-12076-MRG, Dckts. 22-25,28.


Defendants vigorously opposed all my request for discovery and Partial Motion For Summary

Judgment on June 23, 2022 (See CASE #: 1:20-cv-12076-MRG Dckts. 26-27) when

defendants attorney filed a motion to strike my Partial Motion for Summary Judgment and

opposition to my request for discovery.


But now defendants wants the court to move forward with defendants motion for summary

judgment without any discovery even being permitted other than 56 days which was limited to if

plaintiff was an employee or independent contractor *ONLY* under the Title VII Count that has

been dismissed from this lawsuit.


Based on evidence the Defendants have admitted that they 1. Called Plaintiffs cellular Telephone

2. Defendants admitted they left the artificial Prerecorded Messages on plaintiffs cellular

telephone answering Service. 3. Defendants states that plaintiff cannot show that he revoked

consent because the so-called certified Return Receipts plaintiff filed as Exhibit 1 only shows

that he paid for the Certified Return Receipt Green Cards, Plaintiff presents the original Certified

Return Receipts Green Cards that show defendants MARTS address and the agent / employee

from MART that signed for the Revocation Letter. See Exhibit 1. Plaintiff has cleared all hurdles

/ elements to prove defendants violated the TCPA.  These Certified Green Cards show that

MART received the revocation letters on three occasions. Defendant should be the one to show that they have plaintiff consent in writing as the calls where sales cales and MART is a telemarketer.

I the plaintiff revoked any and all consent defendant MART may have thought they had, both verbally and in writing, plaintiff request that his Partial Motion for Summary Judgment be granted as to MART leaving artificial Prerecorded calls on his cell phone (Answering Service) Defendants called my cell phone from on or about November 22, 2016, after plaintiff clearly revoked consent,. Defendants even called plaintiff after plaintiff filed the first TCPA lawsuit on June 19, 2019, thus again proving that plaintiff did not want any phone calls to his personal cellular telephone thus all the calls after November 21, 2019, where willful and knowingly.

Under the Fed. Civ. Rule plaintiff is allowed discovery and plaintiff has met all three elements to show defendants violated the TCPA, **1**. Defendants called a cellular phone **2**. Defendants left prerecorded messages **3**. Without written Consent or an Emergency Purpose.

There is no genuine issues off material facts as to defendants violated the TCPA Willfully and Knowingly leaving Prerecorded messages on plaintiffs cellular telephone answering service, plaintiff ask that his Partial Motion for Summary Judgment be granted and defendants Motion for Summary Judgment against G.L. c. 151B, §§ 4(4) and 4(4A) (Discrimination and Retaliation), Intentional Infliction of Emotional Distress, and the Telephone Consumer Protection Act ("TCPA") using an Automatic Telephone Dialing System be denied without prejudice and postponed until plaintiff is given discovery under the remaining claims.

## GENERAL OBJECTION

Accordingly, for the reasons set forth in Plaintiff's Rule 56(d) Motion and supporting affidavit,

Plaintiff responds to each of Defendants' numbered paragraphs as follows:

## SPECIFIC RESPONSES

1. The Plaintiff, Paul Jones ("Plaintiff"), is the Manager/Dispatcher and a driver for Commonwealth Community Recovery Division, Inc. ("CCRD"). Second Verified Amended Complaint, ¶ 42 [Dkt. 55].

    **Plaintiffs RESPONSE NO.1:** Denied , Plaintiff is one of three Dispatchers and a manager / driver for Commonwealth Community Recovery Division, Inc.

2. MART is a regional transportation authority established pursuant to G.L. c. 161B. **Exhibit A, Affidavit of Rebecca Badley, ¶ 2; G.L. c. 161B.**

    **Plaintiffs RESPONSE NO. 2:** Admitted that MART is a regional transportation authority established pursuant to G.L. c. 161B but MARTS brokerage company is a separate company that Brokers trips and is not established pursuant to G.L. c. 161B.

3. MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts by brokering with subcontracted vendors. **Exhibit A, ¶ 3.**

    **Plaintiffs RESPONSE NO. 3:** Admitted that MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts.

    I Deny that MARTS Brokerage company provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts. MARTS Brokerage company sells trips to vendors that provides non-emergency transportation to individuals to non-emergency appointments. Plaintiff lacks sufficient discovery to admit or deny the remaining fact under Rule 56(d) until plaintiff is given his chance for discovery on the remaining claims.

4. Specifically, the Commonwealth has established a statewide Human Services Transportation coordination initiative, which utilizes a broker system of managing transportation services for eligible consumers from various programs and agencies.

Selected Regional Transit Authorities such as MART act as Brokers and arrange transportation by subcontracting with qualified transportation providers. **Exhibit A, ¶ 6.**

**Plaintiffs RESPONSE NO. 4:** Admitted

5.  MART has subcontracts with over two hundred (200) vendors or transportation providers. **Exhibit A, ¶ 8.**

    **Plaintiffs RESPONSE NO. 5:** admitted

6.  CCRD was one such vendor or "Transportation Provider." **Exhibit A, ¶ 9.**

    **Plaintiffs RESPONSE NO. 6:** Admitted

7.  To assign rides among its various Transportation Providers, such as CCRD among others, MART uses an online portal system. **Exhibit A, ¶ 14.**

    **Plaintiffs RESPONSE NO. 7:** Denied. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

8.  The portal system utilizes a bid process to assign rides that are going out three (3) days or more in advance to the lowest-cost qualified Transportation Provider based off vendor rates and availability, as trips are received. **Exhibit A, ¶ 17.**

    **Plaintiffs RESPONSE NO. 8:** Denied, MARTS employees has a way to override the Vendor portal system, so that no assigned rides goes out automatically.

9.  If the lowest-cost qualified Transportation Provider does not accept the ride, the online portal system goes down the list to the next lowest-cost, qualified Transportation Provider. **Exhibit A, ¶ 14.**

    **Plaintiffs RESPONSE NO. 9:** Denied, Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

10. The lowest-cost qualified Transportation Providers is determined based on the rates that are submitted to MART for use in the vendor portal system by the vendors. Vendors are allowed to adjust their rates quarterly. **Exhibit A, ¶¶ 14-17.**

**Plaintiffs RESPONSE NO. 10**: Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

11. For next-day or same-day requests for transportations services, MART assigns the trips by telephoning vendors using its interactive voice response ("IVR") system at a number that the vendor provided to MART. **Exhibit A, ¶ 18.**

    **Plaintiffs RESPONSE NO. 11:** Denied Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

12. This system is primarily utilized to efficiently manage high volumes of calls for trip dispatch operations, which involves both the acceptance and rejection of trips by MART's vendors. **Exhibit B – Affidavit of Stephen Oldfield, ¶2.**

    **Plaintiffs RESPONSE NO. 12:** Denied, Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

13. The IVR System does not have the capacity to use a random or sequential number generator to dial the numbers provided by vendors. Rather, as with MART's online vendor portal system, the calls using the telephone IVR system are made to Vendors by starting with the lowest cost qualified vendors. **Exhibit B, ¶ 3.**

    **Plaintiffs RESPONSE NO. 13:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

14. Specifically, the backend operations of the IVR system are engineered to optimize the assignment of trips to the low-cost Vendors in MART's portal of subcontractors. The process begins by identifying unassigned trips and pinpointing the lowest-cost qualified Transportation Provider in the system. Once a trip is accepted by a vendor, it is officially assigned to that vendor.

    If the trip is rejected, the IVR system moves on to the next lowest-cost qualified vendor. Additionally, if a vendor marks the vendor's portal as full for a particular day or marks that they are on "holiday," the call-out system will not have the capacity to offer the Vendor work for those particular days by telephone. If a Vendor does not respond after several attempts, the vendor is marked as having "declined" the trip. **Exhibit B, ¶ 4.**

9

**Plaintiffs RESPONSE NO. 14:** Plaintiff lacks sufficient discovery to admit or deny this

fact under Rule 56(d).

15. The IVR system does not use or have the capacity to generate random ten-digit phone
    numbers, but rather, uses specific phone numbers that are provided to MART by its
    Vendors. The IVR system then telephones the Vendor based on its low-cost qualified
    transportation provider algorithm. **Exhibit B, ¶ 5.**

    **Plaintiffs RESPONSE NO. 15:** Plaintiff lacks sufficient discovery to admit or deny this

    fact under Rule 56(d).

16. The IVR system does not have the capability to make large blocks of identical and
    simultaneous calls to random numbers, as that would be contrary to its targeted system of
    first allowing the lowest-cost vendor to either accept or reject the trip before the call-out
    system moves onto asking the next lowest-cost qualified transportation provider to offer
    it the trip. The call to the Vendor commences with an announcement of available trips, by
    stating: "I found six trips in this request," for example. Vendors are then reminded of
    their obligation to be authorized to accept new work from MART, and the IVR system
    will present options to the Vendors to either: (1) accept the trip; (2) request a call back;
    (3) decline the trip; or (4) hear the options again. If the Vendor opts to review the
    proposed trip by pressing "5," the Vendor is provided with options to either accept or
    decline individual trips, or to have the details repeated. **Exhibit B, ¶ 6; Exhibit C –
    Directions for How to Accept Trips via Different Programs.**

    **Plaintiffs RESPONSE NO. 16:** Plaintiff lacks sufficient discovery to admit or deny this

    fact under Rule 56(d).

17. MART has verified that the telephone number provided by Mr. Jones as CCRD's caller
    id as 617-939-5417. Vendor's such as CCRD have the autonomy to update their
    telephone numbers through the portal. From May 5, 2019, to March 27, 2020, within the
    Vendor Portal, Mr. Jones on behalf of CCRD, intermittently updated CCRD's status to
    "full-capacity," indicating that CCRD was at capacity and could not accept additional
    work. As a result, these status updates were intended to prevent the assignment of new

trips to CCRD via the IVR system. CCRD would not have been offered trips during these periods when the updates were active in the Vendor Portal. **Exhibit B, ¶ 7.**

**Plaintiffs RESPONSE NO. 17:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

18. On June 17 and 20, 2019, MART received an email from Mr. Jones indicating that he wanted MART's IVR system to use two CCRD office numbers only to contact him. Prior to this date, MART was not in receipt of any request from Mr. Jones not to use his cell phone for purposes of assigning new trips to CCRD via the IVR system, nor had Mr. Jones revised his telephone number in the online portal system. **Exhibit B, ¶ 8.**

**Plaintiffs RESPONSE NO. 18:** Denied, Plaintiff called Defendants Crystal Geisert ("Crystal") who was one of his contract managers on Monday December 5, 2016, to confirm if she had received my revocation letter, defendant Cystal  confirmed that she had received my revocation letter and will be switching my cellular telephone number out to 888- 680-4667 by the end of the day.

Plaintiff started receiving more Prerecorded calls soon after evidencing that she did not change the number.

I stated in my Verified amended Complaint ( CASE #: 4:19-cv-11093-MRG. Docket 7  ) under oath signed under penalty of perjury that I sent Defendants the first revocation letter by USPS certified receipt on November 17, 2016, which MART received on November 21, 2016, according to the USPS certified Tracking Number (7016 2710 0001 0777 5997) was delivered to 100 Main Street, Fitchburg, Ma 01420 and left with Individual at MARTS Office. The letter dated November 12, 2016, stated "*I am revoking*

*all ATDS calls to my cellular telephone please call CCRD INC only, on the 888-680-4667"*.See Exhibit 1 pg. 1

The calls did not stop so Plaintiff verbally again on at least 40 occasions demanded that my contract managers defendants Crystal Geisert and Ivan Roman remove my cellular Telephone number off MART Automatic Telephone Dialing  System and only call plaintiff on the office number 888-680-4667 where the dispatchers was waiting to receive calls but they failed to remove my cell number 617-939-5417 the two of the three dispatchers was laid off due to MART refusing to call the office phones. See. *Case 4:19-cv-11093-TSH.* Dckt. 7, Exhibit 1 June 14, 2019. *See also Plaintiffs VAC ¶ 84. Also See Defendants Answer Dckt. 54 ¶ 84., See also DEFENDANT'S SOF RESPONSE NO. 6.*

I stated in my Verified amended Complaint ( CASE #: 4:19-cv-11093-MRG. Docket 7  ) under oath signed under penalty of perjury that on February 11, 2017, Plaintiff sent a second letter to Defendant MART C/O Crystal Geisert to 100 main street, Fitchburg, Ma 01420 it was delivered on February 17, 2017 and signed for by Alice Smith MARTS Agent of MART, this revocation letter stated *"I am writing again to request that all calls to my cellular telephone be removed from MARTS Automatic Telephone Dialing System, I wrote MART some time ago and ask that CCRD INC only be contacted on the 888-680-4667 Number"*. See. *Case 4:19-cv-11093-TSH.* Dckt. 7, Exhibit 1 Returned Green Card and Certified slip. See also Exhibit 1 attached to this document.

I stated in my Verified amended Complaint ( CASE #: 4:19-cv-11093-MRG. VAC Docket 7 ) under oath signed under penalty of perjury that Plaintiff again several times verbally demanded that my number be removed from MARTS IVR system two separate times at in person meetings at MARTS office to Defendants Ivan Roman, Rebecca Badgley and Robert Monk they promised it would be removed but it never was prerecorded Messages kept pouring in, plaintiff provided two separate office numbers (413) 315-4500 and (888) 680-4667). *See Defendants Response to Plnt SOF ¶ 3. Also See Dckt. 7. Plaintiffs VAC ¶ ¶* 5, 161, 40, 84, 161, 190, 195,198, 221.

I stated in my Verified amended Complaint ( CASE #: 4:19-cv-11093-MRG. VAC Docket 7  ) under oath signed under penalty of perjury that Plaintiff sent another Revocation Letter on March 15, 2018, demanding the MART employees remove my number from there IVR System by Certified Return Receipt Mail (7015 1520 0000 1814 3550) to MART 100 Main Street, Fitchburg, Ma 01420 it was received by MARTS Agent K Marean , the letter again demanded that MART remove my cell phone number from their Automatic call out system and only call CCRD INC at either (413) 315-4500 and (888) 680-4667) which defendants again failed to do. *Also See Dckt. 7. Plaintiffs VAC ¶ ¶* 5, 161, 40, 84, 161, 190, 195,198, 221.

**19.** MART's records indicate that the last trip accepted via the IVR system using the telephone number provided for CCRD was on Jun 20, 2019. This suggests that the cell phone number provided by Mr. Jones on behalf of CCRD for use by the IVR system was deactivated in the IVR system prior to June 24, 2019, and no further trips were accepted

by CCRD after that date through the IVR system. **Exhibit B, ¶ 8; Exhibit D – Emails dated June 17 - June 20, 2019.**

**Plaintiffs RESPONSE NO. 19:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**20.** Shortly thereafter, Mr. Jones did not receive any telephone calls arranging trips by MART's IVR System to his cell phone. **Exhibit B, ¶ 8.**

**Plaintiffs RESPONSE NO. 20:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**21.** The telephone number associated with MART's IVR system that appears on a vendor's caller id and/or cell phone bill, is 978-252-0019. MART's primary trunk line which appears on caller id for outgoing calls from MART employees is 978-424-9002. The trunk line number is not connected or affiliated with the IVR system. MART would have contacted Plaintiff by use of its trunk line – 978-424-9002 after June 20, 2019, to offer Plaintiff as dispatcher for CCRD trips or for other purposes. **Exhibit B, ¶ 9. G.L. c. 151B and G.L. c. 258**

**Plaintiffs RESPONSE NO. 21:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

## DISCRIMINATION/RETALIATION FACTS

(22 through 47)

**22.** CCRD submitted an application to become a transportation provider to MART on

October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with CCRD

on December 12, 2015. Because there was documentation that was missing, MART did

not execute the Transportation Provider Sub-Contract with CCRD until February 3, 2016.

**Exhibit A, ¶ 19**

**Plaintiffs RESPONSE NO. 22:** Plaintiff lacks sufficient discovery to admit or deny this

fact under Rule 56(d).

**23.** CCRD submitted its requested rates to MART. The rates submitted by CCRD were

higher than many of the other MART vendors providing services to EOHHS. **Exhibit A,**

**¶ 21.**

**Plaintiffs RESPONSE NO. 23:** Plaintiff lacks sufficient discovery to admit or deny this

fact under Rule 56(d).

**24.** CCRD also set the hours it was willing to provide transportation services, which were

between the hours of 7:00 a.m. to 3:00 p.m. MART did not set the hours during which

CCRD could provide transportation services. **Exhibit A, ¶ 22.**

## DISCRIMINATION/RETALIATION FACTS

(22 through 47)

**22.** CCRD submitted an application to become a transportation provider to MART on October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with CCRD on December 12, 2015. Because there was documentation that was missing, MART did not execute the Transportation Provider Sub-Contract with CCRD until February 3, 2016. **Exhibit A, ¶ 19**

**Plaintiffs RESPONSE NO. 22:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**23.** CCRD submitted its requested rates to MART. The rates submitted by CCRD were higher than many of the other MART vendors providing services to EOHHS. **Exhibit A, ¶ 21.**

**Plaintiffs RESPONSE NO. 23:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**24.** CCRD also set the hours it was willing to provide transportation services, which were between the hours of 7:00 a.m. to 3:00 p.m. MART did not set the hours during which CCRD could provide transportation services. **Exhibit A, ¶ 22.**

**Plaintiffs RESPONSE NO. 24:** Plaintiff lacks sufficient discovery to admit or deny the remaining facts under Rule 56(d).

25. Because of the limits on the hours CCRD was willing to work, CCRD automatically missed opportunities to be assigned rides that were not during CCRD work hours. MART receives many requests from clients for rides before 7:00 a.m. to transport riders to Methadone clinics or to dialysis. **Exhibit A, ¶ 23.**

**Plaintiffs RESPONSE NO. 25:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

26. Daily and Standing Order (weekly) rides are based on assignment from the low cost auto-assign program (no human intervention) which is based upon vendor rates and capacity tables. **Exhibit A, ¶ 24.**

**Plaintiffs RESPONSE NO. 26:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

27. On March 22, 2016, Mr. Jones received Vendor Portal Training at MART's offices. **Exhibit A, ¶ 26.**

**Plaintiffs RESPONSE NO. 27:** Denied. Plaintiff did not receive training as Plaintiff training was cancelled and rebooked with defendant Karen Cordio which she then took

me in her office and interrogated me I was shown no vendor portal or examples how the system works, she then told me if MART needed CCRD service she would reach out to me while all other vendors attended a live vendor portal training session. Plaintiff lacks sufficient discovery to admit or deny the remaining, this fact under Rule 56(d).

**28.** Following the Vendor Portal Training, Mr. Jones almost immediately began to complain that his company, CCRD was not being assigned a sufficient number of trips. By email dated April 16, 2016, Ms. Badgley advised Mr. Jones that trips are assigned by the vendor portal using a low-cost vendor automated program. **Exhibit A, ¶ 27.**

**Plaintiffs RESPONSE NO. 28:** Denied. Plaintiff did not receive any work from April 27, 2016, until on or about August 15, 2016, defendants admitted it was because plaintiffs vendor portal was blocked.  Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d). See Dckt. 7 VAC.

**29.** On August 24, 2016, Mr. Jones sent an email to Rebecca Badgley who at the time was the Director of Brokerage for MART, in which he complained of racial discrimination since the beginning of CCRD's contract with MART. Ms. Badgley looked into the issues raised by Mr. Jones in his email. After doing so, she responded to Mr. Jones, and advised him that after looking into his concerns she found that there was one area of the vendor portal that had been blocked, which was an oversight. She advised Mr. Jones to log into the vendor portal and make sure that he was able to adjust his capacities

and see daily work as well as standing orders. **Exhibit A, ¶ 28, Exhibit 3 attached thereto.**

**Plaintiffs RESPONSE NO. 29:** Denied plaintiff sent Defendant Rebecca Badgley, who at the time was the Director of Brokerage, an email accusing her and her staff of discrimination at approximately 5:10 PM when MART was closed. The very next day at approximately 10:30 AM  Defendant Rebecca Badgley emailed Plaintiff and informed plaintiff she had completed her investigation (Approximately 2 hours) and found no discriminatory acts, but found that plaintiff was blocked from making any changes in the vendor portal, , and it remained blocked unlike the other similarly situated vendors. Plaintiff lacks sufficient discovery to admit or deny the remaining facts under Rule 56(d) until proper discovery is given to plaintiff including depositions, production of documents, Interrogatories, and admissions.

**30.** On March 5, 2017, Ms. Badgley met with Mr. Jones in person to discuss issues he was having. **Exhibit A, ¶ 29.**

**Plaintiffs RESPONSE NO. 30:** Denied. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**31.** On March 10, 2017, Mr. Jones sent a letter to Everett Jones, Regional Director to Senator Elizabeth Warren alleging that MART was violating his civil rights in violation of Title VI, and complained of retaliation, hostile work environment and unfair and

deceptive acts. Mr. Jones attached email exchanges he had with MART employees about his not being assigned rides as early as March 29, 2016. **Exhibit E – Letter dated March 10, 2016**.

**Plaintiffs RESPONSE NO. 31:** Admit I sent a letter to Everett Jones. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**32.** On March 24, 2017, Mr. Jones sent a letter of complaint addressed to MART's Title VI Civil Rights Officer. **Exhibit F – Letter.**

**Plaintiffs RESPONSE NO. 32:** Admit I sent the letter to MART Civil Rights department for violations of Discrimination , Retaliation, and hostile work environment and CCRD INC receiving no work from the vendor portal.

**33.** MART responded to the letter on April 28, 2017, responding to each of the concerns raised by Mr. Jones in his letter. **Exhibit A, ¶ 28, Exhibit 4 attached thereto.**

**Plaintiffs RESPONSE NO. 33:** Denied MART did not respond to each of my concerns. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**34.** In an email dated October 2, 2017, Mr. Jones informed Ms. Badgley that "things have changed for the worst since we had a meeting in March . . . to iron out the portal differences." In that email, Mr. Jones complained that CCRD was having problems with

"non cost-effective trips miles." He complained that CCRD was being fined and that CCRD trips were still "90% given to [CCRD] by the Automatic Dialing System which causes [CCRD] not to be able to compete with any other vendors" complaining that "[CCRD] calls are hand-picked and sent through the Automatic Dialing System and are not cost effective." **Exhibit A, ¶ 31, Exhibit 5 attached thereto.**

**Plaintiffs RESPONSE NO. 34:** Admitted that the email was regarding discrimination and retaliation and that no trips were offered through the vendor portal like other similar situated vendors where receiving and MARTS kept assigning an individual that kept calling me Ni#@a when I transported him. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**35.** Ms. Badgley responded to Mr. Jones by email dated October 3, 2017. She told him that she was sorry to hear that things were not going well. She reiterated her previous suggestion to him that he branch out to other venues in addition to contracting with MART. She advised him that as they had previously discussed and confirmed with him, his company has complete access to the vendor portal. She reminded him that transportation that is scheduled 3 days or more in advance is going out through the vendor portal auto assign system based on vendor bid prices for the trips. She told him that She had taken a look at CCRD's rates and that they continued to be on the high side, which is why CCRD was seeing little to no trips in advance through the vendor portal. Further, Ms. Badgley told Mr. Jones that CCRD was getting the bulk of its calls from the vendor call out and scheduling members due to the fact that there is same day and next

day work and the other vendors are at capacity and MART has reached CCRD's trip rate for coverage. **Exhibit A, ¶ 32, Exhibit 5 attached thereto.**

**Plaintiffs RESPONSE NO. 35:** Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

36. Mr. Jones sent Ms. Badgley an email on January 8, 2018, in which he complained that CCRD had dropped its rates but was still not receiving offers through the vendor portal. **Exhibit A, ¶ 33, Exhibit 6 attached thereto.**

**Plaintiffs RESPONSE NO. 36:** Admitted.

37. Ms. Badgley looked into Mr. Jones' concerns. She subsequently advised Mr. Jones that she had followed up on her end and that the assign program was functioning properly and rides in the area were being picked up by vendor with lower rates prior to getting to CCRD's rate structure during the running of the assign program. This was why CCRD was getting offered trips via the call out system or from staff. Ms. Badgley advised Mr. Jones that she had looked at CCRD's rates in comparison to other vendors in the area and that CCRD's rates were still on the high side in comparison. She advised him that he was welcome to request the most updated rates. **Exhibit A, ¶ 34, Exhibit 6 attached thereto.**

**Plaintiffs RESPONSE NO. 37:** admitted that the email was sent but denied that my rates were higher than other vendors , Denied Badgley looked into Mr. Jones' concerns. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d). Only actual discovery production of documents will show actually all rates in in comparison, plaintiffs needs the rate sheets from discovery that will answer actually who's rates were higher.

**38.** Because some of the issues raised by Mr. Jones appeared to Ms. Badgley to be due to his not understanding fully how to use the Vendor Portal system, she thought it would benefit him to receive one-on-one training on the system. Ms. Badgley arranged for Mr. Jones to receive one-on-one training with Robert Monk in May 2018. **Exhibit A, ¶ 35, Exhibit 7 attached thereto.**

**Plaintiffs RESPONSE NO. 38:** Denied that Ms. Badgley opinion, Plaintiff informed her that Defendant Karen Cordio refused to let me take the Vendor Portal Training with the other vendors instead had me come to her office to question me no job related things. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**39.** Prior to the training Ms. Badgley and other MART employees continued to work with Mr. Jones to assist him in the use of the vendor portal. **Exhibit A, ¶ 36; Exhibit 8 attached thereto**

**Plaintiffs RESPONSE NO. 39:** Denied. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**40.** By email dated May 9, 2018, MART sent Mr. Jones a memo that had been sent to all vendors regarding billing and the schedule of fines for late invoices and fraudulent billing. **Exhibit A, ¶ 37, Exhibit 9 attached thereto.**

**Plaintiffs RESPONSE NO. 40:** Denied ,Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**41.** On February 11, 2019, Mr. Jones filed a charge of discrimination with the Equal Employment Opportunity Commission and dually filed the complaint with the Massachusetts Commission Against Discrimination. In his MCAD complaint, Plaintiff alleged that the Respondent was discrimination against him in violation of Title VII of the Civil Rights Act of 1964, as amended and the applicable laws of the Commonwealth of Massachusetts. Plaintiff alleged that he was a MART employee. He did not bring a claim under G.L. c. 151B, §§ 4(4) and 4(4A) and only named MART – not any individuals as Respondents. **Exhibit G – EEOC Complaint; Exhibit H – MCAD Complaint**.

**Plaintiffs RESPONSE NO. 41:** Admitted I filed a charge with the with the Equal Employment Opportunity Commission and dually filed the complaint with the

Massachusetts Commission Against Discrimination. Deny the remainder, Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**42.** The EEOC dismissed Mr. Jones' complaint on February 19, 2019, for "Lack of Jurisdiction: No Employee/Employer Relationship." **Exhibit I – EEOC Dismissal**.

**Plaintiffs RESPONSE NO. 42:** admitted EEOC dismissed Mr. Jones' complaint on February 19, 2019, for "Lack of Jurisdiction.

**43.** On December 4, 2020, the MCAD issued a Notice of Substantial Weight Determination stating that after review of the EEOC's Final Determination dated February 19, 2019, that the MCAD was in agreement with the EEOC and has granted substantial weight to the EEOC's determination. The MCAD determined that the "charge reveals no distinct jurisdiction under the discrimination laws separately enforced by the MCAD." **Exhibit J – MCAD Dismissal.**

**Plaintiffs RESPONSE NO. 43:** Denied, the MCAD dismissed Mr. Jones' complaint on February 19, 2019, for "Lack of Jurisdiction. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**44.** By email dated June 24, 2019, Mr. Jones asked Ms. Badgley to explain the shared ride policy because he believed that he was not properly getting credit for some shared

ride members when they did not show up. Ms. Badgley emailed Mr. Jones and explained the standing order to him. **Exhibit A, ¶ 38, Exhibit 10 attached thereto.**

**Plaintiffs RESPONSE NO. 44:** Denied she did not explain fully. Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**45.** By email dated June 27, 2019, Mr. Jones complained that CCRD's vendor portal reflected offers of trips that CCRD never accepted and complained that MART's system had a "glitch." Ms. Badgley again looked into the concerns raised by Mr. Jones in his email. Ms. Badgley responded to him and informed him that she had looked into the information he provided to her and told him that MART has no way of controlling what times or how frequently members book appointments and reiterated to him that everything booked is assigned via a low cost qualified bid process based off vendor rates as trips are received. In addition, Ms. Badgley advised him again that MART does not have the ability to build CCRD's schedule for him or provide trips in a specific geographical area as the trips are all medical appointments that can change in volume and location on a daily basis. **Exhibit A, ¶ 39, Exhibits 11 and 12 attached thereto.**

**Plaintiffs RESPONSE NO. 45:** Denied, Plaintiff lacks sufficient discovery to admit or deny this fact under Rule 56(d).

**46.** In another email dated July 1, 2019, Ms. Badgley responded to another issue raised

by Mr. Jones about vendor assignments, advising him that all of the calls that he had

accepted via IVR vendor call-out, transferred through to his portal and were scheduled

with his company. **Exhibit A, ¶ 40, Exhibits 11 and 12 attached thereto.**

**Plaintiffs RESPONSE NO. 46:** Denied, Plaintiff lacks sufficient discovery to admit or

deny this fact under Rule 56(d).

**47.** Assignments made by MART to its over two hundred Vendors are based on a low

cost qualified bid process based off vendor rates and availability as trips are received. As

Ms. Badgley repeatedly told Mr. Jones, CCRD's rates were simply higher than those of

other eligible Vendors in the area, which is why CCRD was not being assigned as many

trips as Mr. Jones would have liked. MART does not have information on the

demographics of the Transportation Providers it contracts with but is aware that

seventeen of those Transportation Providers have registered their businesses with the

Supplier Diversity Office (SDO) of the Operational Services Division of the

Commonwealth of Massachusetts. CCRD does not appear on the list as having been

certified as a diverse business by the SDO. **Exhibit A, ¶41; Exhibit 13 attached

thereto.**

**Plaintiffs RESPONSE NO. 47:** Denied. Plaintiff lacks sufficient discovery to admit or

deny this fact under Rule 56(d).Need Discovery to show all vendors rates only then can

one state that plaintiff rates are higher.

Respectfully submitted,

Paul Jones                    /s/ Paul Jones

79 Thompson Street

Springfield, Ma 01109

Pj22765@gmail.com

617-939-5417

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing through the CM/ECF

system which sent notice of such filing to the following:

Paul Jones     /s/ Paul Jones                                  April 28, 2025

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com


Deborah I. Eckers

101 Arch St, 12th Floor

Boston, Ma 02110

617-654-1714

decker@k-plaw.com