# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 4:19cv-11093-TSH

| | |
|---|---|
| PAUL JONES<br><br>Plaintiff<br><br>v.<br><br>MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.<br><br>Defendants | DEFENDANTS' LOCAL RULE 56.1<br>STATEMENT OF FACTS |

Defendants, Montachusett Regional Transit Authority ("MART"), and Rebecca Badgley, Donna Landry, Bonnie Mahoney, Karen Cordio, Joanne Norris, Stephanie Richards, Tamara Shumovskaya, Jessica Torres, Amanda Kukta, Robert Monk, Michelle Moyo, Ivan Roman, and Crystal Geisert (collectively "Individual Defendants") (when inclusive of MART, collectively "Defendants") set forth the following statement of undisputed material facts in support of Defendants' Motion for Summary Judgment pursuant to Local Rule 56.1 as follows:

1. Plaintiff, Paul Jones ("Plaintiff") is a Director, dispatcher and driver for Commonwealth Community Recovery Division, Inc. ("CCRD"). Complaint, ¶ 42.[1]

2. MART is a regional transportation authority established pursuant to G.L. c. 161B. *Exhibit A, Affidavit of Rebecca Badgley*, ¶ 2; *G.L. c. 161B*.

3. MART provides public transportation services to twenty-two (22) cities and towns in north central Massachusetts. *Exhibit A.* ¶ 3

---

[1] Complaint shall refer to Second Verified Amended Complaint filed on March 27, 2020.

4. Through its Dial-A-Mart Service, MART provides transportation that serves the needs of either human services agencies or target populations through eligible agency sponsored trips. *Exhibit A,* ¶ 3.

5. MART also provides transportation through its operating company for the Commonwealth of Massachusetts's Human Services Transportation Division of the Executive Office of Health and Human Services ("EOHHS"). MART provides routes for the Department of Developmental Services ("DDS") as well as individual MassHealth client rides on an as needed basis. *Exhibit A,* ¶ 5

6. The Commonwealth has established a statewide Human Services Transportation coordination initiative, which utilizes a Broker system of managing transportation services for eligible consumers from various programs and agencies ("HST Brokerage System"). Selected Regional Transit Authorities such as MART act as HST Brokers and arrange transportation by subcontracting with qualified Transportation Providers. The contractual agreement between the HST Broker and the Transportation Provider is referred to as the "Transportation Provider Subcontract." *Exhibit A,* ¶ 6.

7. All Transportation Providers ("Transportation Providers" or "Vendors") are required to comply with the Transportation Provider Performance Standards ("Performance Standards"). *Exhibit A,* ¶ 7.

8. MART has Transportation Provider Subcontracts with over two hundred (200) Vendors. The Performance Standards are incorporated into all Transportation Provider Subcontracts that MART has with its over two hundred Vendors. *Exhibit A,* ¶ 8.

9. MART entered into a Transportation Provider Subcontract ("Subcontract") with CCRD on October 26, 2015. CCRD executed the Transportation Provider Sub-Contract with MART on December 12, 2015. *Exhibit A, ¶ 9.*

10. Under the Performance Standards contained in the Subcontract, a Transportation Provider is defined as a "local transportation delivery entity under contract to a Broker for the direct provision of transportation services (vehicles and drivers) for HST Consumers. The Performance Standards specifically provide that the Transportation Provider is a "subcontractor to the Broker" and is subject to the provisions of the Commonwealth Terms and Conditions and Standards Contract terms. *Exhibit A, ¶ 11.*

11. Pursuant to Performance Standards, Transportation Providers such as CCRD are required to maintain workers compensation insurance for all employees/agents including owner(s) in the case of a sole proprietorship and to furnish a certificate of insurance to [MART] evidencing compliance prior to transporting any Agency Consumers. *Exhibit A, ¶ 12.*

12. CCRD was placed on a no-work hold in April 2020 due to the expiration of CCRD's workers compensation insurance. *Exhibit B - Email dated September 9, 2020.*

13. In addition, the Performance Standards require Transportation Providers to maintain liability insurance on all vehicles used under the Transportation Provider's contract with the Broker and that Broker be named as an additional insured on the Transportation Provider's insurance policy. *Exhibit A, ¶ 13; Exhibit C – Deposition of Rebecca Badgley, p. 48.*

14. As a courtesy, MART provides a new vendor, portal training before MART assigns work to the vendor so that the vendor understands how the system works. The training describes how the vendor will accept the work being offered, how the billing will be done and how to file and respond to complaints. *Exhibit C*, pp. 27-29.

15. MART uses an online portal system to assign rides to its Transportation Providers. The portal system assigns rides to the lowest cost qualified Transportation Provider. If the lowest cost qualified Transportation Provider does not accept the ride, the online portal system goes down the list to the next lowest cost qualified Transportation Provider. *Exhibit A*, ¶ 14.

16. Transportation Providers submit rates to MART for use in the vendor portal system. Vendors are allowed to adjust their rates quarterly. MART does not set vendor rates. *Exhibit A*, ¶ 15.

17. Plaintiff submitted CCRD's rates to MART and changed CCRD's rates on occasion. *Exhibit D – Emails between Plaintiff and MART.*

18. Transportation Providers set the hours that the Transportation Provider is willing to work. MART does not set the hours that the Transportation Provider is available to work. *Exhibit A*, ¶ 16.

19. Plaintiff set the hours that CCRD was willing to work. *Exhibit D.*

20. The capacity tab in the portal system contains the vendor's hours of service. *Exhibit C*, pp. 75-76.

21. The Transportation Provider portal starts to assign trips to Transportation Providers beginning with the lowest cost qualified vendor for trips three or more days in advance of the scheduled trip. *Exhibit A*, ¶ 17.

22. For next day or same day requests for transportation, MART assigns the trips to Transportation Providers by telephone. As with the vendor portal system, MART assigns trips to its Vendors starting with the lowest cost qualified Vendor. MART attempts to contact the Transportation Providers three times by telephone to offer the trips before moving on to the next lowest cost Vendor. *Exhibit A*, ¶ 18; *Exhibit C, p. 45.*

23. If a vendor marks the vendor's portal as full for a particular day, the call out system will stop the call out system from offering the vendor work for that particular day. *Exhibit C, p. 46.*

24. Ultimately a vendor controls what assignments offered to the vendor, the vendor accepts or declines. While the capacity tab shows what hours the vendor operates and the volume of work being offered, the vendor controls what assignments to accept. The capacity is based on what a vendor's fleet size can handle in the course of a day. *Exhibit C, pp. 76-79; Exhibit D.*

25. If a trip is already assigned to a vendor and the consumer calls to change the time, if it is in advance, MART will notify the vendor in the vendor portal and the vendor can then notify MART if the vendor cannot accommodate the change. If the customer requests a change the same or next day, MART calls the vendor to see if the vendor can accommodate the change that was made by the customer. *Exhibit C, pp. 49-51.*

26. If there is a particular individual that the vendor such as CCRD no longer wants to transport, the vendor can notify MART and MART will remove the individual from being offered to the vendor in the future. A vendor does not have to get permission from MART to drop an individual. *Exhibit C, p. 29.*

27. If the vendor already has the individual scheduled for a trip, the vendor has to inform MART that the vendor no longer wants to transport the individual so that the individual's trip can be rescheduled. *Exhibit C, p. 30.*

28. Pursuant to the Subcontract a vendor is supposed to update its employee log when a vendor's employees change. *Exhibit C, pp. 65-66.*

29. A vendor does not have to seek MART's approval to hire an employee. Pursuant to the Subcontract for a vendor's employee to drive agency consumers, the vendor's employee must meet the requirements set forth in the Subcontract. *Exhibit C, pp. 66-67.*

30. MART is not the hiring or the firing authority for a vendor's employees, but by contract MART has the right to request the removal of an individual from working on MART's contract. *Exhibit C, pp. 31-32, 37-39.*

31. MART controls the amount of work a vendor can request in its capacity tab based on the size of the vendor's fleet. Mart controls the work to be offered a vendor based on the number of vehicles the vendor has and the size of the vehicles. *Exhibit C, pp. 34-35.*

32. CCRD submitted its requested rates to MART. The rates submitted by CCRD were higher than those of many other MART vendors providing services to EOHHS. *Exhibit A, ¶ 21. Exhibit D.*

33. CCRD also set the hours it was willing to provide transportation services pursuant to the contract from 7:00 a.m. to 3:00 p.m. MART did not set the hours during which CCRD could provide transportation services. *Exhibit A, ¶ 22; Exhibit D.*

DEFENDANTS

MONTACHUSETT REGIONAL TRANSIT AUTHORITY, REBECCA BADGLEY, DONNA LANDRY, BONNIE MAHONEY, KAREN CORDIO, JOANNE NORRIS, STEPHANIE RICHARDS, TAMARA SHUMOVSKAYA, JESSICA TORRES, AMANDA KUKTA, ROBERT MONK, MICHELLE MOYO, IVAN ROMAN, and CRYSTAL GEISERT

By their attorneys,

/s/ Deborah I. Ecker
Mark R. Reich (BBO# 553212)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110-1109
(617) 556-0007
mreich@k-plaw.com
decker@k-plaw.com

Dated: July 29, 2021

771819/MART/0006

7

## CERTIFICATE OF SERVICE

I, Deborah I. Ecker certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.

Date: July 29, 2021                                    /s/ Deborah I. Ecker