UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL JONES,<br><br>                Plaintiff,<br><br>v.<br><br>MONTACHUSETTS REGIONAL<br>TRANSIT AURTHORITY et al<br><br>                Defendants. | Civil Action No. 4:19-cv-11093-TSH |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE AND SUPPORTING MEMORANDUM

Pursuant to Federal Rule of Evidence 201, Plaintiff Paul Jones respectfully requests that this Honorable Court take judicial notice of adjudicative facts relevant to the claims and defenses in this action. These facts are not subject to reasonable dispute and are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned.

## ITEMS FOR JUDICIAL NOTICE

### Linardon v. Walsh et al., Case No. 1:25-cv-10772-WGY, pending in the United States District Court for the District of Massachusetts.

- o This case involves Montachusetts Regional Transit Authority (MART) as a named defendant and alleges discrimination and retaliation by the MART Scheduling Department. The plaintiff in Linardon was allegedly retaliated against by MART staff after submitting complaints about transportation services—a pattern of conduct similar to what Plaintiff Paul Jones experienced in this matter.

1

# Abdallah v. FedEx Corporation Services, Case No. 16-cv-3967 2021 U.S

- o In this case, the Northern District of Illinois held that calls which appear informational but are intended to generate revenue for the caller qualify as dual-purpose telemarketing under the TCPA, requiring prior express written consent.

## II. APPLICATION TO PLAINTIFF'S CASE

### Judicial Precedent Supporting Discrimination and Retaliation Claims

The facts alleged in **Linardon v. Walsh** directly support Plaintiff's claim that MART's Scheduling Department has engaged in **retaliatory behavior** following consumer complaints. In both cases, the complainants were allegedly targeted by MART staff after raising legitimate grievances related to transportation services. Judicial notice of Linardon is therefore proper, as it reflects a **pattern or practice of retaliation and discrimination** by MART relevant to the issues in this action.

### Judicial Precedent Supporting Dual-Purpose Telemarketing

The court's reasoning in **Abdallah v. FedEx** is directly applicable to Plaintiff's TCPA claims. In Abdallah, FedEx sent messages stating "your package is stuck in customs," which superficially appeared informational. However, because FedEx would be paid if the package was returned, the court found the messages to be **dual-purpose marketing calls**. The court emphasized that what matters under the TCPA is not the subjective label a caller gives to the message, but the **practical purpose and effect** of the call.

Here, MART's **prerecorded messages were not neutral or purely informational**. They were specifically designed to prompt Plaintiff to accept transportation trips—actions that would trigger reimbursement to MART from third-party payors (e.g., MassHealth). This establishes a **direct financial benefit to MART**, satisfying the criteria for telemarketing under the TCPA and FCC regulations.

The **FCC's 2003 Report and Order** further supports this conclusion:

2

"Dual purpose" calls motivated in part by the desire to sell additional goods or services constitute "unsolicited advertisements" and require prior express written consent.
— *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14097–98 ¶¶ 140–142 (2003)

Under this framework, MART's messages are legally marketing communications, not exempt informational alerts. As such, they require prior express written consent, which Plaintiff had either not given or had revoked.

## MART's Calls are Prerecorded Messages are Telemarketing that MART left on Plaintiffs cell phone answering service

Plaintiff requests that the Court take judicial notice of MART's own prerecorded call script, admitted by MART to be accurate:

"I found one trip in this request. You must be authorized to accept new trips from MART. Please listen to the following carefully: press five to hear the trips now; press six if you cannot accept these trips right now... press seven if you wish to decline..."

These messages demonstrate MART's effort to solicit business transactions from vendors and thus qualify as telemarketing under applicable law.

C. 47 C.F.R. § 64.1200(f)(12) as of the most recent published version in the Code of Federal Regulations:

**(12) Telemarketing** means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

## Judicial Precedent Supporting Dual-Purpose Telemarketing

FCC guidance and court precedent confirm that even "informational" calls can qualify as telemarketing if they serve a marketing purpose. For instance:

3

- **FCC 2003 Report & Order, ¶ 140–142**:

    "[D]ual-purpose calls… would, in most instances, constitute 'unsolicited advertisements'…"

- **Abdallah v. FedEx Corp. Servs., 2019 U.S. Dist. LEXIS 158830 (N.D. Ill. 2019)**:

    Informational messages that prompt the recipient to act in a way that financially benefits the caller qualify as telemarketing.

Similarly, MART's calls encouraged recipients to accept trips for which MART receives financial reimbursement from MassHealth and other Insurance companies.

## MART Lacked Prior Express Written Consent as Required by the TCPA

Under the Telephone Consumer Protection Act and its implementing regulation at 47 C.F.R. § 64.1200(f)(9), "prior express written consent" means:

*An agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice.*

This written agreement must include a clear and conspicuous disclosure that:

- (A) The person authorizes such telemarketing calls, and
- (B) Signing the agreement is not a condition of purchasing goods or services.

MART has never produced—nor can it produce—any such written agreement bearing Plaintiff's signature that satisfies these statutory and regulatory requirements. MART has admitted it does not have a contract with Plaintiff and never obtained a signed writing from Plaintiff authorizing prerecorded telemarketing messages to his cellphone. Therefore, any calls made to Plaintiff's cell phone using an artificial or prerecorded voice, particularly after he revoked consent, are unlawful under the TCPA.

## Consumers have the right to revoke consent at any time, in any reasonable way

There is widespread agreement that consumers have the right to revoke consent at any time, in any reasonable way. The Third, *See* G ager v. Dell Fin. Servs., L.L.C., 727 F.3d 265 (3d Cir. 2013), *rev'g* Gager v. Dell Fin. Servs., L.L.C., 2012 WL 1942079 (M.D. Pa. May 29, 2012).Ninth, *See* Van Patten v. Vertical Fitness Grp., 847 F.3d 1037, 1047–1049 (9th Cir. 2017).and Eleventh Circuits, *See* Osorio v. State Farm Bank, 746 F.3d 1242 (11th Cir. 2014). *Accord* Schweitzer v. Comenity Bank, 866 F.3d 1273 (11th Cir. 2017) (reiterating that consent can be revoked orally and holding that it can be partially revoked).and many lower court decisions, *See Faucett v. Move, Inc., 2023 WL 2563071 (C.D. Cal. Mar. 17, 2023) (denying motion to dismiss; fact that consumer may have given written consent to receive prerecorded telemarketing calls does not preclude him from orally revoking that consent); Chatman v. Miramed Revenue Grp., 2022 WL 832642 (N.D. Ill. Mar. 21, 2022); Tillman v. Hertz Corp., 2018 WL 4144674 (N.D. Ill. Aug. 29, 2018); Cartrette v. Time Warner Cable, Inc., 157 F. Supp. 3d 448 (E.D.N.C. 2016); King v. Time Warner Cable, 113 F. Supp. 3d 718, 726 (S.D.N.Y. 2015) (applying FCC's 2015 declaratory ruling; consumer's revocation, communicated to caller, was effective), vacated and remanded on other grounds, 894 F.3d 473 (2d Cir. 2018) (addressing definition of autodialer); Conklin v. Wells Fargo Bank, N.A., 2013 WL 6409731 (M.D. Fla. Dec. 9, 2013); Munro v. King Broad. Co., 2013 WL 6185233 (W.D. Wash. Nov. 26, 2013); Adamcik v. Credit Control Servs., Inc., 832 F. Supp. 2d 744 (W.D. Tex. 2011) (holding that consent is revocable and relying on common law meaning of "consent"). See also Blow v. Bijora, Inc., 855 F.3d 793, 803 (7th Cir. 2017) (quoting the FCC's ruling that consent can be revoked by any reasonable means, but concluding in footnote 3 that she had not done so).* have all so held. As the Third Circuit's decision holds, there is no indication in the legislative history that Congress intended the statute to limit a consumer's rights by imposing a temporal restriction on the right to revoke prior express consent. *See Gager v. Dell Fin. Servs., L.L.C., 727 F.3d 265, 272 (3d Cir. 2013).*

## A consumer may continue to engage in business with a company after revoking consent to receive automated or prerecorded calls.

The Telephone Consumer Protection Act (TCPA), under 47 U.S.C. § 227(b)(1)(A)(iii), prohibits calls to a cellular telephone using an automatic telephone dialing system or an artificial or

prerecorded voice unless the caller has obtained the prior express consent of the called party. Importantly, courts have consistently held that a consumer may revoke consent at any time and by any reasonable means.

Revoking consent does not terminate a business relationship between the consumer and the caller. A consumer may continue to engage in business with a company after revoking consent to receive automated or prerecorded calls. The right to revoke consent is independent of any contractual or commercial relationship. Once consent is revoked, the caller must immediately cease all autodialed or prerecorded calls, unless and until new prior express written consent is obtained, particularly where the calls are for telemarketing purposes.

In this case, Plaintiff explicitly revoked consent in writing on multiple occasions and even provided MART with two separate business numbers for future communications. Despite this, MART continued to place prerecorded messages to Plaintiff's personal cell phone, in direct violation of the TCPA.

As discussed in the appeal filed in this case, the First Circuit made clear that "neither the statute nor the implementing regulation contains an exception for autodialed or prerecorded/artificial voice calls to wireless numbers." See 47 U.S.C. § 227; 47 C.F.R. § 64.1200. *See also* Paul Jones v. Montachusett Regional Transit Authority, No. 22-1569, slip op. at 3 (1st Cir. Nov. 30, 2023).

Accordingly, MART's continued calls after Plaintiff's revocation were unlawful under the TCPA, regardless of any prior business interaction or the continued availability of alternative lines for communication.

Plaintiff has clearly revoked consent to receive autodialed or prerecorded calls on his personal cellphone, and MART has admitted that they received plaintiffs three revocation letters sent to Montachusetts Regional Transit Authority 100 Main Street, Fitchburg, Ma (Administration Department) with the First of Three letters sent on or about November 16, 2021, and that MARTS administration department received them.

Defendant has also conceded that The record shows the following undisputed facts:

- MART placed the prerecorded Messages calls to plaintiffs cell phone answering service at issue.
- The plaintiff revoked consent by sending three revocation letters to Defendant MART *administrators* office located at 100 Main Street, Fitchburg Ma. which is irrelevant.
- MART admits it continued to call Plaintiff's personal cell phone even after Plaintiff gave MART two different office numbers to call instead of plaintiff cell phone as early as November 2016 and sent three different Revocation Letters by Certified Return Receipt Green Cards signed by Defendants MARTs employees, and the letter went to MARTS administration office.
- MART admitted the prerecorded messages provided by Plaintiff on CD Exhibit where made by MART to plaintiffs cell phone for work which is irrelevant.
- MART admitted the calls were not for an emergency purpose, as they stated the calls where to offer plaintiff work.
- MART admitted it never had a contract with Plaintiff and only had a contract with plaintiffs employer CCRD INC.

Under 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(f)(9), prior express written consent is required for telemarketing calls to wireless numbers. MART never obtained such consent from Plaintiff.

Revocation of consent, as recognized in Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013) and affirmed in the First Circuit in Jones v. MART, No. 22-1569, slip op. at 3 (1st Cir. Nov. 30, 2023), is legally sufficient to terminate any previously valid consent.

Plaintiff Paul Jones respectfully submits this Notice of Judicial to clarify why the calls made by Montachusett Regional Transit Authority (MART) are prohibited under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and why such calls constitute telemarketing under governing law.

Despite Plaintiff's clear revocation of consent, MART continued to transmit the following prerecorded message to his cellphone:

*"I found one trip in this request. You must be authorized to accept new trips from MART. Please listen to the following carefully: press five to hear the trips, press six if you cannot accept these trips right now and would like to receive a call back in a few minutes, press seven if you wish to decline these trips. Please make your selection now. If you would like to hear these options again, press eight."*

The use of such an automated system to deliver a message to a cell phone without valid consent violates the TCPA on its face. MART cannot rely on any prior relationship or implied business interest because (1) no contract ever existed between MART and Plaintiff, and (2) consent was explicitly and repeatedly revoked in writing.

Plaintiff respectfully requests that this Court take judicial notice of:

- Linardon v. Walsh et al., Case No. 1:25-cv-10772-WGY, for its evidentiary value in demonstrating a similar pattern of discriminatory conduct by MART's Scheduling Department, and
- Abdallah v. FedEx Corporate Services, for its precedential value in defining and applying the concept of dual-purpose marketing under the TCPA.

These cases support both Plaintiff's claims of unlawful Discrimination and Retaliation and his argument that MART's calls constitute telemarketing in violation of the TCPA.

## CONCLUSION

For the foregoing reasons, MART's motion for summary judgment should be denied in its entirety.

The prerecorded messages sent by MART's Transportation Brokerage Department to Plaintiff's personal cell phone were not merely informational—they were telemarketing communications designed to induce Plaintiff to engage in activity (accepting trips) that would result in financial gain for MART. These messages meet the definition of dual-purpose telemarketing under the TCPA and required prior express written consent, which was either never obtained or was lawfully revoked by the Plaintiff. MART's attempt to recharacterize these calls as purely informational is both factually unsupported and legally insufficient under TCPA precedent and FCC guidance.

Additionally, Plaintiff has raised plausible claims of discrimination and retaliation under M.G.L. c. 151B §§ 4(1), 4(4), and 4(4A), grounded in protected activity and subsequent adverse actions by MART's Scheduling Department. In light of the similar pending matter in *Linardon v. Walsh et al.*, the allegations suggest a troubling pattern of retaliation against individuals who complain about MART's services. Plaintiff is entitled to conduct full and fair discovery into these claims, including depositions, communications, internal policies, and records maintained by MART staff and the Scheduling Department.

Accordingly:

- MART's motion for summary judgment should be DENIED, and
- Plaintiff should be granted leave to conduct discovery on his claims under the TCPA and M.G.L. c. 151B, including his allegations of discrimination and retaliation.

Respectfully Submitted    May 24, 2025

Paul Jones   /s/ Paul Jones

79 Thompson Street

Springfield, Ma 01109

617-939-5417

Pj22765@gmail.com

# CERTIFICATE OF SERVICE

I, Paul Jones, hereby certify that on this 24th day of May 2025, I served a true and correct copy of the foregoing "Plaintiff's Request for Judicial Notice and Opposition to Defendant's Motion for Summary Judgment"] via email and courts ECF service upon the following:

Respectfully Submitted      May 24, 2025

Paul Jones   /s/ Paul Jones

79 Thompson Street

Springfield, Ma 01109

617-939-5417

Pj22765@gmail.com

Mark R. Reich

Deborah I. Ecker

KP Law, P.C.

101 Arch Street, 12th Floor

Boston, MA  02110-1109

(617) 556-0007

mreich@k-plaw.com

decker@k-plaw.com