# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PAUL JONES,

*Plaintiff,*

v.

MONTACHUSETT REGIONAL TRANSIT
AUTHORITY; CRYSTAL GEISERT;
BONNIE MAHONEY; JESSICA TORRES;
KAREN CORDIO; MICHELLE MOYO;
DONNA LANDRY; JOANNE NORRIS;
ROBERT MONK; AMANDA KUKTA;
IVAN ROMAN; TAMARA
SHUMOVSKAYA; REBECCA
BADGLEY; STEPHANIE RICHARDS,

*Defendants.*

Civil No.: 4:19-cv-11093-MRG

## MEMORANDUM AND ORDER

**GUZMAN, J.**

This case was brought *pro se* by Plaintiff Paul Jones ("Mr. Jones") against Montachusett

Regional Transit Authority ("MART") and certain named and unnamed MART employees[1]

(collectively, "Defendants"). Mr. Jones, who is African-American, alleges that Defendants[2]

subjected him to race- and sex-based discrimination and retaliated against him for filing a

---

[1] The named MART employees include Crystal Geisert, Bonnie Mahoney, Jessica Torres, Karen
Cordio, Michelle Moyo, Donna Landry, Joanne Norris, Robert Monk, Amanda Kukta, Ivan
Roman, Tamara Shumovskaya, Rebecca Badgley, Stephanie Richards.

[2] Mr. Jones attributes the alleged wrongdoing to all Defendants. For ease of reading, the Court, at
times, refers to all Defendants as "MART."

1

discrimination complaint. [ECF No. 55 at 38–41]. He further alleges that MART violated the federal Telephone Consumer Protection Act ("TCPA") by repeatedly placing unsolicited calls to his cellphone. [ECF No. 7 at 31-34].

All parties move for summary judgment on Mr. Jones's TCPA claim (Count I of the First Amended Complaint). [See ECF Nos. 162 & 166]. Defendants move for summary judgment on Mr. Jones's retaliation and negligent infliction of emotional distress claims (Counts V and VI of the Second Amended Complaint). [ECF No. 162]. In opposing Defendants' motion, Mr. Jones argues that summary judgment is premature under Federal Rule of Civil Procedure 56(d) due to the limited discovery conducted to date. [ECF No. 160 ¶ 1]. The Court agrees, in part. For the reasons set forth below, the Court **<u>DENIES</u>** summary judgment as to Counts V and VI of the Second Amended Complaint and Count I of the First Amended Complaint.[3]

Before turning to the merits, the Court acknowledges that this case has been pending for several years. In the time since the now-consolidated[4] actions were filed in 2019[5] and 2020,[6] the First Circuit weighed in twice on this matter, and the parties and the Court have expended significant resources. While the Court takes seriously its duty to safeguard judicial economy and efficiency, the passage of time alone does not justify an outcome unsupported by the law and evidentiary record. Put differently, the duration of this case does not place a thumb on the scale in

---

[3] Although the First Amended Complaint is no longer operative and Mr. Jones did not renew any TCPA claims in his Second Amended Complaint, the TCPA claim from the First Amended Complaint remains operative because the First Circuit ruled it was dismissed in error and remanded it for this Court's consideration. <u>Jones v. MART</u>, No. 22-1234, 2023 WL 10479525, *7 (1st Cir. Nov. 30, 2023).

[4] [ECF No. 156 (1:20-cv-12076-MRG consolidated with 4:19-cv-11093-MRG)].

[5] [4:19-cv-11093-MRG, ECF No. 1 (Complaint, May 10, 2019)].

[6] [1:20-cv-12076-MRG, ECF No. 1 (Complaint, November 27, 2020)].

favor of a summary judgment grant. That said, in the interest of facilitating an expedient and just disposition of this case, any outstanding discovery going forward will be narrowly circumscribed.

## I.    FACTUAL BACKGROUND

MART is a regional transportation authority established under Massachusetts law. [ECF No. 55 ("Second Am. Compl.") ¶ 13]. MART relies on a network of subcontracted vendors to provide public transportation services to twenty-two cities and towns in north central Massachusetts. [Defendants' Statement of Material Facts ("DSOF") ¶ 3, ECF No. 164]. During the relevant period, MART had subcontracts with over 200 transportation provider vendors ("vendors"). [Id. ¶ 5]. Mr. Jones's company, Commonwealth Community Recovery Division, Inc. ("CCRD"), was one of MART's vendors. [Id. ¶ 6].

To assign rides to its 200+ vendors, including CCRD, MART uses an online portal system. [Id. ¶ 7]. MART claims that rides are assigned neutrally pursuant to an autonomous bid system. [Id. ¶¶ 8–10]. Under the system, vendors set their own rates, and the system offers rides to the lowest available bidder. [Id.] If that vendor declines, the system moves to the next lowest bidder. [Id.] This sequence continues until a vendor accepts the ride. [Id.] In MART's telling, this system eliminates the prospect of favoritism or bias influencing ride assignments. [Id.]

### A.  MART's Alleged Retaliation Against Mr. Jones

Mr. Jones contends that MART retaliated against him after he complained of alleged sex- and race-based discrimination. [Second Am. Compl. ¶ 2].[7] Mr. Jones provides multiple examples

---

[7] The Court notes that the Second Amended Complaint contains allegations of discrimination and retaliation. The First Circuit affirmed this Court's entry of summary judgment in Defendants' favor on the Title VII discrimination claims. Jones, 2023 WL 10479525, at *5. The Court is not certain which factual allegations in the Second Amended Complaint relate exclusively to discrimination and which relate exclusively to retaliation. Any misattribution in the Court's recitation of the facts is neither a finding of fact nor indicative of the Court's view on the merits.

of MART's allegedly retaliatory actions. According to Mr. Jones, MART assigned CCRD substantially fewer rides than other vendors. [Id. ¶¶ 65–69]. Specifically, Mr. Jones claims that "he receive[d] 98 percent less work than non-minority vendors" even though his rates "were lower." [Id. ¶ 68]. Mr. Jones also claims that he was denied proper portal training, [id. ¶ 62], subjected to arbitrary fines, [id. ¶ 51], consistently offered economically undesirable rides, [id. ¶ 55], and that MART listed his capacity as "zero" on the portal, [id. ¶ 70], thereby interfering with his ability to obtain ride assignments. In addition, Mr. Jones alleges that MART purposefully declined to notify CCRD of ride cancellations which caused CCRD drivers to chase non-existent rides. [Id. ¶ 59].

MART denies these allegations. MART contends that Mr. Jones's underlying allegation that MART manipulated the rides offered to CCRD necessarily fails because all rides were automatically assigned without human intervention based on vendor rates and availability. [DSOF ¶¶ 26, 28]. MART largely attributes CCRD's low volume of ride assignments to Mr. Jones's inadvertent listing of CCRD's status as "full-capacity" on the portal between May 5, 2019 and March 27, 2020, [id. ¶ 17], CCRD's high rates relative to other vendors, [id. ¶ 23], CCRD's limited hours of operation, [id. ¶¶ 24–25], and a MART "oversight" that blocked Mr. Jones from adjusting CCRD's capacity on the portal for a period of time, [id. ¶ 29].

## B. Allegedly Unsolicited Calls

Mr. Jones further alleges that MART placed numerous automatic calls to his personal cellphone (ending in 5417) after he revoked consent and directed MART to use a different number. [ECF No. 167 ¶ 6]. The calls were made using MART's interactive voice response ("IVR") system to notify Mr. Jones of ride assignments for CCRD. [DSOF ¶ 11]. The system calls vendors without human intervention and communicates ride assignments with pre-recorded messages. [Id. ¶¶ 13,

4

15–16]. Although Mr. Jones consented to MART calling his personal cellphone, [id. ¶ 17], he contends that he later revoked that consent, [ECF No. 166 ¶ 3]. In addition to allegedly revoking his consent verbally, Mr. Jones claims that he revoked his consent in letters sent to MART via USPS certified mail on November 12, 2016, February 11, 2017, and March 15, 2018. [ECF No. 171, Ex. 1]. In each letter, Mr. Jones requested that MART stop calling his personal cellphone and instead direct all calls to a different number. [Id.] Mr. Jones submitted the USPS tracking information for the November 17, 2016 letter. [Id. at 3]. The tracking information indicates that the letter was marked "Delivered, Left with Individual" on November 21, 2016, at 100 Main Street, Fitchburg, Massachusetts 01420. [Id.] MART denies receiving Mr. Jones's letters. MART contends that Mr. Jones did not produce signed USPS "Form 3811" return receipts (known as "green cards") and therefore failed to establish that MART received the letters. [ECF No. 173 at 3]. MART further asserts that it was not in receipt of any request from Mr. Jones not to use his personal cellphone number prior to June 2019. [DSOF ¶ 17; ECF No. 164-2 ¶ 8.] Between June 17 and June 20, 2019, Mr. Jones and MART employees exchanged emails in which Mr. Jones requested that he be contacted at his office number for ride assignments. [DSOF ¶18; ECF No. 164-4 at 4]. MART asserts that, following these communications, it removed Mr. Jones's personal cellphone number from the IVR system on June 24, 2019. [DSOF ¶21; ECF No. 164-2 ¶ 8].

## II.    PROCEDURAL HISTORY

Mr. Jones filed two related actions against MART, the first on May 10, 2019, and the second on November 27, 2020. The actions were consolidated on February 27, 2025. [ECF No. 156]. Both arise from the same core factual allegations described above. A full recitation of the extensive procedural histories of the two actions would be lengthy and unnecessary. Accordingly, the Court

focuses on the matters relevant to this motion and incorporates by reference the procedural histories outlined by the First Circuit.[8]

Defendants move for summary judgment on Counts V and VI of the Second Amended Complaint and Count I of the First Amended Complaint.

- Count V of the Second Amended Complaint asserts violations of Sections 4(4) and 4(4A) of the Massachusetts anti-discrimination statute, Mass. Gen. Laws ch. 151B ("Chapter 151B").

- Count VI of the Second Amended Complaint asserts a claim for negligent infliction of emotional distress.

- Count I of the First Amended Complaint asserts that MART violated Section 227(b)(1)(A)(iii) of the TCPA.

[ECF No. 162].

Mr. Jones moves for partial summary judgment on Count I of the First Amended Complaint, alleging TCPA violations. [ECF No. 166]. Additionally, in opposition to the Defendants' motion for summary judgment as to Counts V and VI of the Second Amended Complaint, Mr. Jones argues that the Court should defer ruling on summary judgment and should instead grant his Rule 56(d) motion for further limited discovery. [ECF No. 160].

The First Circuit vacated and remanded this Court's prior dismissal of the TCPA claim and grant of summary judgment on the Chapter 151B[9] and negligent infliction of emotional distress claims. See Jones v. MART, No. 22-1569, 2023 WL 9233970, at *4 (1st Cir. Nov. 30, 2023); Jones v. MART, No. 22-1234, 2023 WL 10479525, at *7 (1st Cir. Nov. 30, 2023). Although Mr. Jones sought additional discovery, none was conducted following the remand. The discovery to date has largely focused on whether Mr. Jones was an "employee" or "independent contractor." [See ECF

---

[8] Jones v. MART, No. 22-1569, 2023 WL 9233970 (1st Cir. Nov. 30, 2023); Jones, 2023 WL 10479525.

[9] Sections 4(4) and 4(4A) of Chapter 151B.

No. 160 ¶ 3–4; ECF No. 178 at 1–4]. Mr. Jones argues that, because the First Circuit deemed his employment status immaterial and the discovery conducted up to now was mostly limited to that issue, further discovery is needed to oppose summary judgment on the remaining claims. [ECF No. 160 ¶ 8]. Defendants disagree.

## III.    LEGAL STANDARDS

Against this factual and procedural backdrop, the Court turns to the legal standards governing summary judgment. The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant" but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" Dixon-Tribou v. McDonough, 86 F.4th 453, 458 (1st Cir. 2023) (quoting Lahens v. AT&T Mobility P.R., Inc., 28 F.4th 325, 333 (1st Cir. 2022)). The nonmoving party cannot "rest upon mere allegation or denials," but must instead "present affirmative evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986).

The same standard applies when, as here, parties have filed cross-motions for summary judgment. Sec. & Exch. Comm'n v. Navellier & Assocs., Inc., 108 F.4th 19, 34 (1st Cir. 2024); see also Meuse v. Nat'l P.I. Servs., LLC, 2024 WL 4190081, at *4 (D. Mass. Sept. 13, 2024). The

7

court must view each motion separately, drawing inferences against each non-movant in turn. Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003) (first citing Mesnick, 950 F.2d at 822; and then citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

## IV.   DISCUSSION

### A.  Negligent Infliction of Emotional Distress (Count VI)

Defendants move for summary judgment on Mr. Jones's negligent infliction of emotional distress ("NIED") claim, in part, on the ground that he failed to comply with the presentment requirement imposed by the Massachusetts Tort Claims Act ("MTCA").[10] [ECF No. 163 at 19–20]. Although compelling on the law, as explained below, the Court declines to grant summary judgment until the record is further developed.

The MTCA—which waives sovereign immunity for certain state-law claims against "public employers"[11]—permits civil actions for "the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment," subject to procedural prerequisites. Mass. Gen. Laws ch. 258, § 2. Among those prerequisites is the statute's presentment requirement.

Under § 4 of the MTCA, a plaintiff may not institute suit against a public employer unless (1) he has presented his claim in writing to the executive officer of the public employer within two years of the accrual of the claim, and (2) the executive officer has denied the claim in writing or

---

[10] At times, Mr. Jones refers to this claim as "intentional infliction of emotional distress." Intentional and negligent infliction of emotional distress are distinct causes of action with different legal standards. Because the First Circuit specifically remanded the negligent infliction of emotional distress claim, the Court construes Mr. Jones's claim accordingly.

[11] MART is a public employer. See, e.g., Mass. Gen. Laws ch. 258, § 1 (defining "public employer," in part as "any duly constituted regional transit authority"); Plymouth Rock Assur. Corp. v. Sabin, 2007 Mass. App. Div. 69 (Mass. Dist. Ct. 2007)(finding that the Pioneer Valley Transit Authority is a public employer under the MTCA).

failed to respond within six months of presentment. Mass. Gen. Laws ch. 258, § 4. Presentment is not a mere technicality; it is "a statutory condition precedent to recovery under [the MTCA]." Vasys v. Metropolitan District Commission, 438 N.E.2d 836, 840 (Mass. 1982).

Although Defendants' argument is legally persuasive, the Court cannot conclude on the present record—particularly in light of Plaintiff's Rule 56(d) request and the scope of discovery to date—that Plaintiff will be unable to adduce evidence of presentment. He declined to submit an opposition or a statement of material facts, citing his pending Rule 56(d) motion seeking additional discovery. [ECF Nos. 175 & 176]. Therefore, the Court will defer ruling on summary judgment for the NIED claim until Mr. Jones is given a final opportunity to challenge Defendants' contention that he failed to satisfy the presentment requirement.

Because compliance with the MTCA's presentment requirement is a threshold issue dispositive of the NIED claim, the Court addresses only that requirement at this stage. See e.g., Evariste v. City of Boston, No. 18-12597-FDS, 2020 WL 1332835, at *8 (D. Mass. Mar. 23, 2020) ("plaintiff has not alleged presentment and therefore may not recover under the MTCA."); Monderer v. City of Newton, No. 013491, 2002 WL 388209, at *2 (Mass. Super. Ct. Jan. 7, 2002) ("a separate presentment letter is required"); Gifford v. Massachusetts, No. 24-12243-FDS, 2025 WL 1333720, at *7 (D. Mass. May 7, 2025) (dismissing NIED claim and noting that "federal courts regularly enforce the presentment provision of the MTCA"). On the present record, for the reasons stated above, the Court declines to grant summary judgment on the NIED claim. Accordingly, Defendants' motion for summary judgment as to Count VI is **DENIED** without prejudice.

**B.  TCPA Claim (Count I)**

MART and Mr. Jones have filed cross-motions for summary judgment on the TCPA claim (Count I). MART contends that it is entitled to judgment as a matter of law because (1) the challenged calls were not made using an automatic telephone dialing system ("ATDS") and (2) Mr. Jones consented to receive the challenged calls. [ECF No. 163 at 4–12]. Mr. Jones does not dispute that he initially provided consent but asserts that he subsequently revoked that consent, rendering any further calls unlawful under the statute. [ECF No. 166 ¶ 3]. Viewing the cross-motions independently and drawing all reasonable inferences in favor of each non-movant in turn, the Court concludes that genuine disputes of material fact preclude summary judgment for either party.

### 1.  *The ATDS Argument*

MART contends that it did not violate the TCPA because it did not use an ATDS. This argument is at odds with the statutory text. To make out a TCPA claim, a plaintiff must show that a defendant made a non-emergency, unsolicited call "using any automatic telephone dialing system **or** an artificial or prerecorded voice . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). "It is not required, therefore, that a plaintiff allege that the defendant utilized an ATDS if the plaintiff claims an artificial or prerecorded voice was used instead." Visco v. Creditors Relief, LLC, No. 20-CV-12303-DJC, 2022 WL 488495, at *3 (D. Mass. Feb. 17, 2022) (citing 47 U.S.C. § 227(b)(1)(A)(iii)). Here, Mr. Jones alleges—and MART does not dispute—that the calls were made through an "interactive voice response system" that delivered pre-recorded or artificial messages. [DSOF ¶ 11; ECF No. 173 at 2,4]. Accordingly, even assuming MART did not use an ATDS, that fact alone would not entitle it to summary judgment on the TCPA claim.

### 2. *The Consent Argument*

MART next argues that summary judgment should be granted in its favor because Mr. Jones provided consent to receive calls on his personal cellphone. Mr. Jones, who has also moved for summary judgment, does not dispute that he initially consented but contends that he later revoked that consent, rendering subsequent calls unlawful under the TCPA. [ECF No. 166 ¶ 3].

Although the TCPA does not expressly address revocation of prior express consent, courts have consistently recognized that consent may be revoked.[12] Courts evaluating revocation of consent to resolve TCPA claims apply common-law principles of consent. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014). Under those principles, "consent is terminated when the actor knows or has reason to know that the other party is no longer willing for the conduct to continue." Restatement (Second) of Torts § 892A cmt. i. Revocation must be objectively clear and express a desire not to receive further calls. See Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co., 847 F.3d 1037, 1048 (9th Cir. 2017). Moreover, the "issue of consent is ordinarily a factual issue." Thompson v. Louisiana, 469 U.S. 17, 23 (1984).

Because consent is an affirmative defense, and revocation turns on whether and when the defendant knew or should have known that consent had been withdrawn, disputes regarding the clarity, timing, and communication of revocation are frequently fact-bound and ill-suited for resolution at summary judgment. At summary judgment, the burden of demonstrating consent,

---

[12]See e.g., Gibbs v. SolarCity Corp., 239 F. Supp. 3d 391, 396 (D. Mass. 2017) ("a general right to . . . revoke prior express consent exists under the TCPA"); Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co., 847 F.3d 1037, 1048 (9th Cir. 2017) ("the TCPA permits consumers to revoke their prior express consent to be contacted"); Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270 (3d Cir. 2013) ("Although the TCPA does not expressly grant a right of revocation . . . the absence of an express statutory grant of this right does not mean that the right to revoke does not exist."). The Federal Communications Commission has likewise interpreted the TCPA to permit consumers to revoke prior express consent through any reasonable means, "including orally or in writing." See In re Rules & Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 7993–96 (2015).

including rebutting a plaintiff's assertion that they revoked consent, rests on the TCPA defendant—in this case the calling party, MART. <u>Himes v. Client Servs. Inc.</u>, 990 F. Supp. 2d 59, 69 (D.N.H. 2014) ("the burden regarding the issue of consent is on [the defendant], not [the plaintiff]") (first citing <u>Grant v. Capital Mgmt. Servs.</u>, L.P., 449 F. App'x 598, 600 n.1 (9th Cir. 2011); and then citing <u>Conklin v. Wells Fargo Bank, N.A.</u>, No. 6:13-cv-1246-Orl-37KRS, 2013 WL 6409731 at *3 (M.D. Fla. Dec. 8, 2013) ("As Plaintiff has pled that he did not give consent or alternatively revoked consent, he has adequately stated a TCPA claim, and Defendant's motion is due to be denied on that ground. It will be Defendant's task to prove consent at the summary-judgment stage." (citation omitted))).

Whether MART had knowledge, or reason to know, of Mr. Jones's alleged revocation of consent constitutes a material fact in determining whether MART can meet its burden on establishing the affirmative defense of consent and rebutting Mr. Jones's assertion that he revoked consent.

Here, summary judgment on the issue of consent is precluded by genuine disputes of material fact. The parties disagree as to when—and in what manner—Mr. Jones revoked his consent to receive calls on his personal cellphone. <u>See</u> <u>supra</u> Section I.B. They further dispute whether MART received, or reasonably should have understood, any communication as an effective revocation of consent. <u>Id.</u> Viewing the evidence in the light most favorable to the non-movant with respect to each motion, the Court cannot conclude as a matter of law that consent was either effectively revoked or definitively remained in place during the relevant period. Summary judgment for either party is therefore inappropriate. <u>GTE Wireless, Inc. v. Cellexis Int'l, Inc.</u>, 341 F.3d 1, 4 (1st Cir. 2003) (citation omitted) ("Summary judgment is inappropriate if there is a genuine issue as to any material fact."). These disputes turn on questions of notice, clarity, and

credibility that are properly resolved by the factfinder. Accordingly, Defendants' and Mr. Jones's cross-motions for summary judgment as to Count I is **DENIED** without prejudice.

### C. Chapter 151B Claim (Count V)

Defendants move for summary judgment on Mr. Jones's retaliation claim under Sections 4(4) and 4(4A) of Chapter 151B. Defendants argue that Mr. Jones failed to comply with the administrative exhaustion requirement for his retaliation claim, and that, even if he had, the claim fails on the merits. [ECF No. 163 at 12-13]. Mr. Jones argues that more discovery is needed to resolve material factual disputes for this claim, including on the issue of retaliatory intent. [ECF No. 175 at 2–4]. Given that discovery thus far has been generally limited to the question of Mr. Jones's employment status, and not the merits of the underlying retaliation claim, material factual issues remain to be determined, and summary judgment as to Count V is **DENIED** without prejudice.

### D. Rule 56(d) Motion for Additional Discovery

Mr. Jones contends the Court should permit additional discovery under Rule 56(d) instead of granting summary judgment against him. Rule 56(d) seeks to "protect[] a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 724 (1st Cir. 2022) (alteration in original) (quoting Rivera-Almodóvar v. Instituto Socioenconómico Comunitario, Inc., 730 F.3d 23, 28 (1st Cir. 2013)); Fed. R. Civ. P 56(d). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The First Circuit has explained that, when seeking additional discovery under Rule 56(d), a party must provide:

13

> [A] timely statement—if not by affidavit, then in some other authoritative manner—that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

Vélez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). Finally, a party must also "have exercised 'due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter.'" Id. (quoting Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir.1994)).

In this matter, the Court is mindful of the complex procedural history, which involved a remand from the First Circuit on the original complaint. The record indicates that some discovery was conducted earlier in the case; however, Judge Hillman placed limits on the discovery process at a certain point, including a limitation that discovery be limited to the issue of whether Mr. Jones was an employee. [ECF No. 95]. Upon remand, the parties were thrust into the throes of litigation and moved for summary judgment. To date, no new discovery has occurred since the First Circuit remand.

The Court finds that Mr. Jones has met his burden in demonstrating his entitlement to more limited discovery. His Rule 56(d) motion identifies the key areas of inquiry of such discovery and argues how the determination of presently-contested facts would influence the outcome of the pending summary judgment motions. While Mr. Jones did not substantively respond to the Defendant's Statement of Material Facts, he raised an objection that he did not have information needed to respond to the Defendant's assertions without further discovery. His lack of response to the Defendant's Statement of Material Facts does not evidence a lack of diligence, but rather the constraints of the litigation process, where materials facts may be solely known to the opposing party until they are revealed in discovery.

14

The Court **GRANTS** Mr. Jones's Motion for Additional discovery, **IN PART.** Given the lengthy procedural history and age of this case, full discovery without restrictions would unduly delay resolution of this matter. Accordingly, the Court shall schedule a hearing with the parties to determine the scope of any new discovery and place appropriate limitations on what the parties may request. The scheduling of the hearing and a corresponding pre-hearing order will occur through a separate docket entry.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** without prejudice both cross-motions for summary judgment as to Counts V and VI of the Second Amended Complaint and Count I of the First Amended Complaint, [ECF Nos. 162 & 166]. Further, the Court **GRANTS IN PART** Mr. Jones's Rule 56(d) motion for limited discovery, [ECF No. 160].

**SO ORDERED.**

Dated: March 18, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

15