UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES,

     Plaintiff,

v.

MONTACHUSETT REGIONAL

TRANSIT AUTHORITY, et al.

     Defendants,

DOCKET No. 4:19-cv-11093-MRG

## PLAINTIFF'S VERIFIED REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

**Introduction**

1. The Court denied Plaintiff's Partial Motion for Summary Judgment on the Telephone Consumer Practices Act ("TCPA") Count I based on a perceived factual dispute as to whether Defendants received Plaintiff's revocation letters.

2. That factual premise no longer exists.

3. Defendants have now unequivocally admitted both on the record at the May 15, 2025, summary judgment hearing and again in their Opposition to Plaintiff's Motion for

1

Reconsideration that Plaintiff sent the certified revocation letters and that those letters were in fact received by Defendants' employees at Defendants' administrative office. See Doc. 201 at 2–3; See also Doc. 176. Pgs. 3-8.

4. Defendants further admitted that their employees signed the certified return receipts, i.e., the USPS Form 3811 green cards. See May 15, 2025, Tr. 11:2–6. See also Doc. 176. Pgs. 3-8.

5. Because the sole factual basis relied upon by the Court for denying Plaintiff's Partial Motion for Summary Judgment on Count I has now been eliminated by Defendants' own admissions, reconsideration is warranted. See Docket 201 pg. 3

6. Plaintiff's Motion for Reconsideration is narrowly confined to Count I, the TCPA prerecorded call claim under 47 U.S.C. § 227(b)(1)(A)(iii).

7. To the extent Defendants attempt to expand this reconsideration to Counts V and VI, Rule 56(d), or any matters beyond Count I, such arguments are wholly irrelevant to the discrete issue before the Court and provide no basis to deny reconsideration.

8. The Court denied Plaintiff's Partial Motion for Summary Judgment on Count I based solely on a purported factual dispute regarding whether Defendants received Plaintiff's revocation letters a dispute that no longer exists. See Docket 193 pg.2.

9. The record now establishes that Defendants did receive those letters. See Document 201 pg. 3

10. Plaintiff submitted signed USPS Form 3811 return receipts showing that Defendants' own employees signed for and accepted the revocation letters at Defendants' administration office located at 100 Main Street, Fitchburg, Massachusetts. See also Docket 176 pg. 6-8.

11. Those signed green cards include: Aliceson Hill's signature on February 17, 2017, for Certified Mail No. 7015 0640 0001 5570 5341; and Kathleen Marean's signature on March 15, 2018, for Certified Mail No. 7015 1520 0000 1814 3550. See Docket 176 pg. 6-8.

**12.** These are official USPS delivery records confirming receipt. Defendants have produced no affidavit, no testimony, and no documentary evidence denying receipt. See Docket 176 pg. 6-8.

**13.** Under Rule 56, where a party presents documentary evidence establishing a fact and the opposing party offers no contrary evidence, no genuine dispute exists as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). See also Docket 176 pg. 6-8.

### III. Defendants' Own Admissions Establish the Elements of Count I

**14.** The only claim at issue on reconsideration is Count I, Plaintiff's TCPA prerecorded-call claim under 47 U.S.C. § 227(b)(1)(A)(iii).

**15.** First, Defendants admit that they placed calls to Plaintiff's cell phone. See Dfnt. MSj.Doc. 163. pg. 6-8 ( Indeed, MART's IVR system utilized the cellular telephone number specifically provided to MART by the Plaintiff, so that he could "accept" or "reject" transportation trips."

**16.** Second, Defendants admit that those calls delivered prerecorded messages to Plaintiff cell phone. Defendants have admitted that they left the prerecorded message but it is not the type the TCPA protects from. (" The phone calls and voice messages sent to Plaintiff's cell phone thus were directly related to the acceptance of rides for the Plaintiff's business, CCRD, Inc., demonstrating that he had expressly consented to receive such calls from May of 2016 through June o/2019'). See Defendants MSJ. Docket. 163 pg. 10.

**17.** Third, Defendants admit receipt of Plaintiff's three revocation letters, on or about November 21, 2016, February 17, 2017, and March 17, 2018, confirmed by signed certified mail return receipts evidencing delivery and acceptance by their own employees. See Docket 176. Pgs. 1-8.

**18.** These admissions establish each element of Plaintiff's TCPA claim and eliminate any genuine dispute of material fact as a matter of law.

**19.** Fourth, Defendants admitted that the calls were made to provide work to CCRD, Inc., an entity with which they had a contractual relationship, and not for any emergency purpose thereby foreclosing any statutory exemption under the TCPA. See Defendants MSJ. Docket. 163 pg. 10.

**20.** The TCPA permits prerecorded calls to a cell phone only with prior express consent or for emergency purposes. See First Circuit appeals Docket 43 pg. 4

**21.** Defendants do not contend and cannot contend that the calls at issue were made for any emergency purpose.

**22.** Once Plaintiff revoked any prior express consent, any continued prerecorded calls to Plaintiff's cell phone violated the TCPA. *Horton v. Portfolio Recovery Associates, LLC*, 591 F. App'x 191 (1st Cir. 2014).

**23.** Accordingly, as to Count I, the record presents no genuine dispute of material fact, and Plaintiff is entitled to judgment as a matter of law.

**24.** Defendants' Admissions Eliminate the Basis for Denial of Plaintiff's Partial Motion for Summary Judgment on Count I.

**25.** Defendants have abandoned any prior claim of non-receipt. See May 15, 2025, Tr. 11:2–6. See also Doc. 176. Pgs. 3-8.

**26.** At the May 15, 2025, hearing, and again in their Opposition to reconsideration, Defendants admitted that Plaintiff sent the certified letters and that those letters were received by Defendants' employees at MART's administrative office. See May 15, 2025, Transcript. 11:2–6. See also Doc. 176. Pgs. 3-8.

4

**27.** There is no longer any dispute as to receipt under Count I—only a corrected and undisputed record.

**28.** Defendants do not deny delivery and do not challenge the authenticity of the USPS certified mail return receipts ("green cards"). See Defendants Opposition Docket 201 pgs. 3-4.

**29.** Defendants offer no contrary evidence, Instead, having conceded the very fact on which the Court's denial rested, Defendants attempt to divert the analysis to unrelated arguments that cannot sustain the prior ruling. See Defendants Opposition Docket 201 pgs. 3-4.

**30.** Accordingly, the factual predicate underlying the Court's denial of Plaintiff's Partial Motion for Summary Judgment on Count I no longer exists and Defendants' Revocation Argument Fails as a Matter of Law. See Defendants Opposition Docket 201 pgs. 3-4.

**31.** Having admitted receipt, Defendants now attempt to argue that Plaintiff's revocation was ineffective. That argument fails as a matter of law. See Defendants Opposition Docket 201 pgs. 3-4.

**32.** Defendants admitted that Plaintiff sent revocation letters and that Defendants' own employees signed for and accepted them at Defendants' office. See May 15, 2025, Transcript. 11:2–6.

**33.** Defendants cannot evade the legal consequences of that receipt by retroactively imposing preferred formats, procedures, or internal channels that are not required by the TCPA.

**34.** The TCPA imposes no requirement that a consumer use "magic words" or comply with a defendant's internal policies in order to revoke consent. The First Circuit and the District of

Massachusetts follow the well-established principle that a consumer may revoke consent under the TCPA 'at any time and through any reasonable means.' *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 3d 1, 5 (D. Mass. 2022). This standard, set by the FCC and upheld by federal courts, ensures that callers cannot 'designate an exclusive means to revoke' or create technical hurdles to a consumer's right to be left alone. See In re Rules & Regs. Implementing the TCPA, 30 FCC Rcd. 7961, 7993-94 (2015); see also ACA Int'l v. FCC, 885 F.3d 687, 708-09 (D.C. Cir. 2018)."

**35.** Where a consumer clearly communicates revocation and the defendant receives it, consent is revoked. Defendants' current position is therefore both factually inconsistent and legally untenable. See Baisden v. Credit Control, LLC, 273 F. Supp. 3d 273 (D. Mass. 2017).

**36.** Having admitted receipt, Defendants cannot now contend that the very revocation letters they accepted are legally meaningless. See Gathuru v. Credit Control Services, Inc. 623 F. Supp. 3d 1 (D. Mass. 2022).

**37.** Defendants Present No Rule 56 Evidence Creating a Genuine Dispute nor does defendants' Opposition presents no admissible evidence creating a genuine dispute as to Count I.

**38.** Defendants offer no affidavit denying receipt nor do defendants offer any testimony disputing the certified mail return receipts, or documentary evidence contradicting the USPS records.

**39.** Defendants offer no admissible evidence that the calls were made for any emergency purpose. Instead, Defendants rely solely on attorney argument.

6

**40.** But attorney argument is not evidence and cannot create a genuine dispute of material fact. See Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008).[1]

**41.** Defendants also stated that "the fact that he did not change the telephone number in the online portal so as not to receive calls on his cellular telephone from the IVR system as he had the ability to do, and his failure to notify those who were responsible for authorizing changes to the trip assignment systems, including specifically removing his cellular telephone numbers as Dispatcher for CCRD, Inc. from the IVR system, prove that Plaintiff's purported revocation by sending certified letters to MART was not effective means of revocation of consent and as a result Defendants' continued use of Plaintiff's cellular telephone number was not a violation of the TCPA. The sending of the letters by certified mail alone is not sufficient for Plaintiff to prevail. Plaintiff was never able to change capacity or his #.See Deposition Document 120-3 Page 10 of 113 Page 32: 5-24.

**42.** The TCPA imposes no requirement that a consumer use "magic words" or comply with a defendant's internal policies in order to revoke consent. The First Circuit and the District of Massachusetts follow the well-established principle that a consumer may revoke consent under the TCPA 'at any time and through any reasonable means.' *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 3d 1, 5 (D. Mass. 2022). This standard, set by the FCC and upheld by federal

---

[1] The Supreme Court has made clear that summary judgment cannot be defeated by mere assertions or metaphysical doubt. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

courts, ensures that callers cannot 'designate an exclusive means to revoke' or create technical hurdles to a consumer's right to be left alone. See In re Rules & Regs. Implementing the TCPA, 30 FCC Rcd. 7961, 7993-94 (2015); see also ACA Int'l v. FCC, 885 F.3d 687, 708-09 (D.C. Cir. 2018)." Defendants fail to point to any proof in the record on these above arguments.

43. The record as to Count I is entirely one-sided: certified mail documentation, signed return receipts, Plaintiff's sworn submissions, Defendants' own admissions, and no contrary evidence. See Docket 176 and 201.

44. Under Anderson, no reasonable jury could find for Defendants on the issues of receipt or continued prerecorded calls after revocation. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)

45. Defendants assert that Plaintiff had full discovery, That assertion is demonstrably false. The record reflects over six years of protracted and repetitive dispositive motion practice filed by defendants , including four motions to dismiss, three premature summary judgment motions, repeated discovery delays, and plaintiff had to file two multiple Rule 56(d) for failure to provide discovery and both plaintiffs 56(d) motions where granted confirming that the record was not sufficiently developed at the time. . See Docket No. 4:19-cv-11093,# 32 . 35, 58, 119. See also Civil Docket for case #: 1:20-cv-12076. # 8, 13.

46. Defendants further misrepresent the record by asserting that Plaintiff received discovery on the TCPA claim, the Chapter 151B claims, and the intentional infliction of emotional distress claim. That assertion is unequivocally false.

47. Ten discovery requests served by Plaintiff, only two were answered on the merits, the remaining eight were refused on the ground that they were purportedly outside the Court's "limited discovery." Defendants cannot refuse eight out of ten requests as beyond the scope of

discovery and then represent to the Court that Plaintiff had full discovery on the very claims they declined to address.

**48.** Defendants gave plaintiffs his own Exhibits plaintiff attached to his verified Amended Complaint as discovery (See Docket 4:19-cv-11093. Docket 7 Exhibits 1-24) further attempting to mischaracterize recycled materials as discovery compliance. Plaintiff's verified Amended Complaint included twenty-four exhibits. See Docket No. 7. Those exhibits consisted of Plaintiff's own emails, contracts, prior complaints, and related documents already filed with the Court, which defendants gave back to plaintiff as exhibits.

**49.** Defendants then reproduced those same materials originating from Plaintiff verified amended complaint and presented them as if they were their own discovery production. See Docket No. 4:19-cv-11093. 7 Documents 1-24.

**50.** That was not discovery; it was merely the repackaging of Plaintiff's own filings in plaintiffs verified amended complaint. It was nothing more than Defendants repackaging Plaintiff's own docketed exhibits and misrepresenting that recycling of Plaintiff's filings as compliance with their discovery obligations. (See Docket 4:19-cv-11093. Docket 7 Exhibits 1-24) Plaintiff Was Entitled to Discovery to Develop the Record.

**51.** Defendants suggest that Plaintiff merely "believes" he is entitled to discovery. Plaintiff does not "believe" he is entitled to discovery, he is entitled to it as a matter of law. In this Circuit and the District of Massachusetts, the right to discovery is not a matter of "belief" or "discretion" when a party has met the initial pleading requirements. The courts hold that once a claim has survived a motion to dismiss, the plaintiff is entitled to "the engine of discovery" to uncover the facts necessary to prove their case. Cabot v. United States 2017 WL 1337505 (D. Mass. Apr. 11, 2017).

52. The Federal Rules of Civil Procedure and settled precedent require that a nonmovant be afforded a fair opportunity to develop the evidentiary record before being subjected to dispositive motion practice on an incomplete record.

53. That principle applies with particular force where, as here, relevant internal records, complaints, emails, personnel files, and decision-making evidence remain exclusively within Defendants' possession and control. See *Yue v. Citizens Bank, N.A.*, 2021 WL 230155 (D. Mass. Jan. 22, 2021).

54. Plaintiff cannot be faulted for the absence of records that remain in MART's custody, plaintiff has consistently sought full discovery, including depositions, to develop the record in the ordinary course.

55. Defendants, by contrast, have repeatedly attempted to avoid that process through successive dispositive motions and limited production, while simultaneously asserting that the case is ready for adjudication.

56. Plaintiff Made Good-Faith Efforts to Narrow the Dispute, but Defendants Refused, plaintiff has made repeated good-faith efforts to narrow the issues and reduce the burden of continued litigation. See Docket No. 4:19-cv-11093,# 32 . 35, 58, 119. See also Civil Docket for case #: 1:20-cv-12076. # 8, 13.

57. Plaintiff did so in part due to significant personal circumstances, including caring for his 86-year-old mother who is seriously ill. Despite these circumstances, and despite Plaintiff's efforts to streamline the case and focus on genuinely disputed issues, Defendants have refused to narrow the case even after admitting the critical fact of the three elements of a Prerecorded TCPA case.

58. That refusal reflects a broader pattern in the record: Plaintiff has sought to move this case toward resolution, while Defendants have prolonged it through delay, resistance, and

10

unnecessary motion practice. See Docket No. 4:19-cv-11093,# 32 ,35, 58, 119. See also Civil Docket #: 1:20-cv-12076. Docs # 8, 13 back to back motions to dismiss.

59. The Court's Ruling on Motion for Summary judgment Count I, TCPA Constitutes Clear Error and Must Be Corrected, there is no dispute as to whether defendants receive plaintiffs 3 revocation letters to stop calling his cell phone and to only call CCRD INC two office numbers.

60. The Court's denial of Plaintiff's Partial Motion for Summary Judgment on Count I rests on a factual premise that is now disproven by documentary evidence and Defendants' own admissions. See Defendants Oppo to Motion for reconsideration Docket 201. Pgs. 3-4. And the May 15, 2025, Transcripts in open court .

61. The Court identified a genuine dispute as to whether Defendants received Plaintiff's revocation letters. See Docket 193. Pg 2.

62. But the record contains the signed certified mail return receipts establishing delivery. Plaintiff submitted them in the record in plaintiffs reply to defendants opposition to plaintiffs motion for reconsideration and the court overlooked the signed green cards. See Docket 176 pgs. 6-8.

63. Defendants acknowledged them. Defendants admitted that their employees received and signed for the letters. There is no competing evidence. There is only prior argument that has now been abandoned. See Docket 201. Pgs. 3-4.

64. Under Anderson, Celotex, and Matsushita, a genuine dispute cannot be manufactured from unsupported assertions or attorney argument. Yet that is what occurred here.

65. The Court credited a purported dispute unsupported by any contrary evidence and now affirmatively eliminated by Defendants' own admissions.

**66.** This is not a close evidentiary question. The record on Count I is entirely one-sided. The documentary evidence establishes receipt. Defendants' admissions confirm receipt. Docket 201. Pgs. 3-4.

**67.** Defendants' admissions further establish that they placed prerecorded calls to Plaintiff's cell phone and that those calls were not made for any emergency purpose. See Defendants MSJ. Docket. 163 pg. 10.

**68.** No affidavit, testimony, or admissible record evidence contradicts these facts. Under Rule 56, where the evidence would not permit a reasonable jury to find for the nonmoving party, summary judgment must enter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**69.** A ruling that overlooks controlling record evidence and rests on a factual premise that no longer exists constitutes clear error warranting relief under Rule 59(e). See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81–82 (1st Cir. 2008).

**70.** Allowing that ruling to stand would elevate unsupported argument over undisputed evidence and result in manifest injustice.

**71.** Also, Attorney Mark Reich engaged in misleading and improper conduct that calls his credibility into serious question. Attorney Reich sent a letter threatening Ivan Roman with legal action and referral for investigation if he communicated with MART vendors—including Plaintiff—thereby attempting to intimidate and silence a percipient witness. Yet, despite this conduct, Attorney Reich later represented to this Court that he was counsel for Mr. Roman. This contradiction is not consistent with the duties of candor and professional responsibility owed to the Court and demonstrates that Attorney Reich's representations cannot be taken at face value. See Exhibit 1 (last two pages).

Notably, Ivan Roman is a named Defendant in this action and is willing to sit for a deposition and provide sworn testimony, further underscoring that counsel's prior efforts to restrict or chill his communications were improper and interfered with the development of material evidence.

## RELIEF REQUESTED

72. Because the record now establishes that Defendants placed prerecorded calls to Plaintiff's cell phone, that those calls were not made for any emergency purpose, and that Defendants received Plaintiff's revocation letters, no genuine dispute of material fact remains as to Count I.

73. Plaintiff respectfully requests that the Court: (a) grant reconsideration under Rule 59(e); (b) vacate the portion of the March 18, 2026, Order denying Plaintiff's Partial Motion for Summary Judgment on Count I; (c) enter summary judgment in Plaintiff's favor on Count I under 47 U.S.C. § 227(b)(1)(A)(iii); and (d) grant such other and further relief as the Court deems just and proper.

74 . The undisputed record now compels this result as a matter of law.

Respectfully submitted,
Paul Jones
79 Thompson Street
Springfield, Ma 01109
Tel: 617-939-5417
Pj22765@gmail.com

13

## Certificate of Service

I, Paul Jones, hereby certify that on April 7, 2026, I served the foregoing Plaintiff's Reply in

Verified Support of Motion for Reconsideration on all counsel of record through the Court's

CM/ECF system.

Respectfully submitted,

Paul Jones
79 Thompson Street
Springfield, Ma 01109
Tel: 617-939-5417
Pj22765@gmail.com

Deborah Eckers
Mark Reich

KP LAW
101 Arch Street
Boston, MA 02110
617-654-1714
decker@k-plaw.com

## VERIFICATION

I, Paul Jones, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing

statements of fact contained in this Verified Reply to defendants motion are true and correct

based upon my personal knowledge and review of the record.

Executed on this 7th day of April 2026.

14

Paul Jones /s/ Paul Jones                                April 7, 2026

79 Thompson Street

Springfield, MA 01109

pj22765@gmail.com

Tel: 617-939-5417