UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUL 23 PM4:20

| | |
|---|---|
| PAUL JONES,<br><br>Plaintiff<br><br>v.<br><br>MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.,<br><br>Defendants | Civil Action: 4:19-cv-11093 MRG<br>Combined with case No. 1:20-cv-12076 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH AND CROSS-MOTION TO COMPEL DISCOVERY RESPONSES**

**INTRODUCTION**

Plaintiff Paul Jones, proceeding pro se, respectfully submits this opposition to the Motion to Quash filed by Defendants Montachusett Regional Transit Authority and Michelle Moyo. As District Judge Margaret R. Guzman correctly ruled in the electronic order entered on July 21, 2026, Defendants' primary threshold argument invoking Local Rule 26.1(c) numerical limits is entirely unpersuasive because those limitations apply individually to each party rather than

collectively to an entire side, and the Federal Rules of Civil Procedure control where any local rule conflicts.

Having failed on their numerical rule defense, Defendants now attempt to shield themselves from providing substantive discovery by relying on improper boilerplate objections, withholding required privilege logs, refusing to answer interrogatories, failing to produce requested documents, and recycling stale documents that Plaintiff filed years ago as exhibits to his amended complaint.

## RELEVANCE OF DISCOVERY UNDER ESTABLISHED FEDERAL CASE LAW REGARDING DISPARATE TREATMENT, RETALIATION, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The written discovery requests and interrogatories propounded by Plaintiff are directly relevant and essential to establishing his claims under established federal and district case law. As demonstrated in *Mantha v. Quotewizard.com, LLC*, No. 1:19-cv-12235-LTS (D. Mass.), and governed by discovery principles affirmed in this District, broad discovery into third-party practices, communication logs, and internal electronic records is vital to uncovering systemic non-compliance, lack of consent, and pretextual defenses.Furthermore, under binding legal standards applied in employment and vendor retaliation matters such as *Gusakovs v. Johnson & Johnson et al.*, No. 1:17-cv-11502-DJC, and foundational discovery sequencing principles articulated in *Katz et al. v. Liberty Power Corp., LLC et al.*, No. 18-cv-10506-ADB, inquiry into whether management was aware of protected activity, whether adverse actions were taken as a result, and whether specific operational records exist is entirely permissible and directly bears on the remaining claims.

Specifically, this discovery demonstrates how Plaintiff was treated disparately and unfavorably compared to other transportation vendors. This evidence supports Plaintiff's claims for Intentional Infliction of Emotional Distress (IIED) by proving "extreme and outrageous" conduct that went beyond all possible bounds of decency, where MART management openly conspired in a "plan of attack" to harass Plaintiff, deliberately set his portal capacity to zero to starve his business of work, and stated they "couldn't wait to see Mr. Jones fail as a vendor".The requested discovery proves that Defendants permitted other favored transportation vendors to operate between two and five distinct corporate entities with separate Vendor Identification numbers and portal access, while Plaintiff was systematically targeted and blocked in retaliation for filing discrimination complaints.

## MART'S ADMISSION REGARDING DOCUMENT DESTRUCTION AND DEFIANCE OF PLAINTIFF'S FORMAL PRESERVATION NOTICE

In response to Plaintiff's First Request for Production of Documents (specifically Response to Request No. 12 concerning personnel and operational records), Defendant MART brazenly admitted that it "only retains personnel files for employees for seven (7) years after they have left their employment with MART".This routine document destruction policy directly violates MART's ongoing legal duties and is entirely contrary to the formal Preservation of Electronic Evidence letter that Plaintiff served upon Defense Counsel Deborah I. Ecker, Esq., by certified mail on **March 15, 2021**.

As documented in Docket Entry No. 185, Exhibit 1, Plaintiff explicitly informed Defendants' counsel on March 15, 2021, that:

- Effective immediately, Defendants were required to retain and preserve any and all documents and data of any kind relating to Plaintiff Paul Jones and Commonwealth Community Recovery Division Inc., including employment, contracts, and separation.
- The preservation requirements explicitly superseded any conflicting document retention and destruction policies, directing Defendants to suspend normal document destruction policies and preserve all open files, closed files, warehoused files, emails, and third-party vendor records.
- Despite receiving this explicit notice and legal demand on March 15, 2021, MART continued its improper destruction of records and now attempts to use its own self-serving seven-year retention window as an excuse to withhold critical discoverable evidence. These actions directly contradict and violate Plaintiff's preservation of electronic evidence demands.

## DEFENDANTS PROVIDED NO RESPONSIVE DOCUMENTS TO PLAINTIFF'S DISCOVERY REQUESTS AT ALL

Furthermore, MART's discovery productions are a complete nullity. MART provided **no responsive documents whatsoever** to Plaintiff's legitimate requests for production. Instead of producing contemporary, unredacted, and relevant operational files, MART dumped approximately ninety percent of the exact same documents that Plaintiff originally attached as exhibits to his Second Amended Complaint filed on June 14, 2019 Recycling historical docket exhibits does not fulfill discovery obligations under Rule 34.

## PLAINTIFF'S FULL COMPLIANCE AND GOOD-FAITH DISCOVERY EFFORTS REGARDING DEFENDANTS' WRITTEN DISCOVERY

Defendants previously propounded written discovery upon Plaintiff. Plaintiff answered and objected to all requests for admissions and interrogatories, with the exception of two interrogatories that accidentally got mixed up between the first and second amended complaints an oversight Plaintiff explicitly promised to resolve immediately following his grueling 7-hour deposition on Tuesday, July 21, 2026, which ran from 10:00 a.m. until approximately 4:45 p.m.

However, Defendants demanded production of highly sensitive personal documents, including financial records, tax returns, hospital records, and records containing MassHealth client identifiers, names, appointment details, and addresses, which are strictly protected under the Health Insurance Portability and Accountability Act (HIPAA) and state privacy regulations. Plaintiff properly informed Defendants that a Stipulated Confidentiality Protective Order must be entered by the Court to protect Plaintiff's financial and health records, as well as HIPAA-protected MassHealth patient identifiers.

Defendants flatly rejected the confidentiality protective order and instead demanded that Plaintiff individually redact thousands of pages of personal medical, tax, financial, and MassHealth records—an impossibly burdensome and overbroad demand designed to obstruct discovery. Plaintiff formally served a signed copy of the District's standard Confidentiality Protective Order upon Defense Counsel, but Defense Counsel arbitrarily refused to sign it Furthermore, Plaintiff engaged in a good-faith meet-and-confer process, serving a formal Certificate of Non-Compliance pursuant to Local Rule 7.1 and Federal Rule of Civil Procedure 37(a)(1) detailing Defendants' discovery failures Plaintiff respectfully requests that this Court enter the Stipulated Confidentiality Protective Order to govern production in this matter

## SPECIFIC INTERROGATORIES AND REQUESTS FOR PRODUCTION REFUSED OR UNANSWERED BY DEFENDANT MART

Plaintiff specifically highlights below the exact Interrogatories and Requests for Production of Documents that Defendant MART refused to answer or produce, relying instead on improper objections, privilege claims without a privilege log, or baseless denials:

**1. Interrogatories Refused / Objected To Without Proper Answers:**

- **Interrogatory No. 1:** MART refused to describe the date, nature, and outcome of disciplinary actions, demotions, suspensions, or job alterations for Karen Cordio, Ivan Roman, Michelle Moyo, and Crystal Geisert, objecting on relevance and assuming denied facts.
- **Interrogatory No. 3:** MART refused to identify internal complaints or formal legal charges of discrimination, harassment, or retaliation made against Karen Cordio, Ivan Roman, Michelle Moyo, and Crystal Geisert by any MART employee or subcontractor vendor, asserting relevance objections.
- **Interrogatory No. 4:** MART refused to identify by corporate name, DBA, and vendor ID every transportation vendor sharing physical/business addresses, owners, managers, telephone numbers, or office facilities.
- **Interrogatory No. 5:** MART refused to state names, addresses, and titles of individuals holding ownership or management roles in more than two contracted transportation companies.

- **Interrogatory No. 6:** MART refused to identify instances where multiple vendors utilize the same employees, drivers, or dispatchers and how split payroll distributions are tracked.
- **Interrogatory No. 7:** MART refused to explain the process for auditing overlapping operational infrastructure among vendors (shared fleets, dispatch software, garages).
- **Interrogatory No. 8:** MART refused to identify policy numbers, insurance carriers, and named insureds where multiple registered vendors share commercial vehicle liability, workers' compensation, and general liability policies.
- **Interrogatory No. 10:** MART refused to properly identify by corporate name every transportation vendor or subcontractor with a contract transporting clients for money, answering only with an overbroad objection and cross-referencing an incomplete vendor .
- **Interrogatory No. 11:** MART refused to name other vendors besides CCRD Inc. whose vendor portal was restricted or marked as blocked between July 1, 2015, and June 1, 2026.
- **Interrogatory No. 12:** MART refused to produce ownership and control disclosure forms and beneficial ownership filings submitted to MART, MassHealth, and Medicaid.
- **Interrogatory No. 15:** MART refused to clarify or state the factual basis distinguishing "prior express consent" from "prior express written consent" regarding TCPA violations.
- **Interrogatory No. 16:** MART refused to explain what its attorney meant regarding accounts receivable personnel accepting certified mail receipts, improperly asserting attorney-client privilege.

- **Interrogatory No. 19:** MART refused to explain why CCRD Inc.'s paychecks were late on multiple occasions without reimbursement, falsely claiming the interrogatory assumed a denied fact.

**2. Requests for Production of Documents Refused / Unanswered:**

- **Request for Production No. 1:** MART refused to produce complete, unredacted copies of vendor contracts executed between MART and 33 listed provider entities between 2016 and 2021, objecting on overbreadth and relevance.
- **Request for Production No. 2:** MART refused to produce records identifying vendor ID numbers, corporate addresses, operational phone numbers, and names of owners/principals/managers for each provider in RFP No. 1.
- **Request for Production No. 3:** MART refused to produce copies of all commercial vehicle insurance policies, certificates, and policy riders submitted by each listed provide.
- **Request for Production No. 4:** MART refused to produce a list of all vendors suspended between March 2016 and June 1, 2020, in the brokerage transportation program.
- **Request for Production No. 5:** MART refused to produce unredacted payroll data for all listed vendors, falsely claiming it had no responsive documents.
- **Requests for Production Nos. 6, 7, 8, & 9:** MART refused to produce call logs, phone bills, monthly statements, service provider names/addresses, and audio voice recordings of messages left by MART on Plaintiff's cell phone (617-939-5417), claiming they were accessible to Plaintiff or that it had no responsive documents.

- **Requests for Production Nos. 10 & 11:** MART refused to produce internal HR investigation documents, summaries, and final reports regarding Karen Cordio, Ivan Roman, Crystal Geisert, and Paul Jones's complaints.
- **Request for Production No. 12:** MART refused to produce complete personnel files for Karen Cordio, Ivan Roman, Crystal Geisert, and other named defendants, asserting confidentiality and a 7-year retention limit.
- **Request for Production No. 13:** MART refused to produce internal memos, emails, and correspondence among Karen Cordio, Ivan Roman, and Crystal Geisert regarding Paul Jones or CCRD Inc., asserting blanket attorney-client and work-product privileges without a privilege log (producing only a pre-existing email exhibit).
- **Request for Production No. 15:** MART refused to produce complete records from Michelle Moyo's MCAD and EEOC proceedings (MCAD Docket No. 21WEM00109), producing only a partial settlement agreement and complaint.
- **Request for Production No. 16:** MART refused to produce documents showing when individual Defendant Michelle Moyo retained counsel Mark Reich and Deborah Ecker, improperly asserting attorney-client privilege.
- **Request for Production No. 17 (erroneously numbered as 18):** MART refused to produce HR department investigation files regarding Ivan Roman, Karen Cordio, and Crystal Geisert.
- **Request for Production No. 18:** MART refused to produce fine and complaint records for all listed transportation vendors and vendor IDs.
- **Request for Production No. 19:** MART refused to produce documents showing late vendor paychecks and reimbursements.

- **Request for Production No. 20:** MART refused to produce ride logs (Rydelogs), fine reports, rates, auto-takeaways, assigned trips, performed trips, and rejected trips for all listed vendor IDs.
- **Request for Production No. 21:** MART refused to produce ride logs for Pioneer Valley vendors who named their own prices for emergency rides.
- **Request for Production No. 22:** MART refused to produce a list of vendors investigated and fined for using Uber and Lyft for non-emergency transportation between 2015 and 2020

**DEFENDANT KAREN CORDIO'S INTERROGATORIES AND REQUESTS FOR PRODUCTION REFUSED OR UNANSWERED**

Defendant Karen Cordio similarly refused to provide proper responses, relying on evasive objections and claiming a lack of recall regarding her direct targeting and retaliatory actions against Plaintiff:

**1. Karen Cordio's Interrogatories Refused / Objected To Without Proper Answers:**

- **Interrogatory No. 1:** Cordio refused to provide complete details regarding the reasons for her reassignments or demotions between 2012 and 2018, interposing overbreadth and relevance objections,
- **Interrogatory Nos. 2 & 3:** Cordio refused to identify individuals who participated in allowing a single owner to operate multiple vendor accounts simultaneously, and refused to detail instructions given or received from Rebecca Badgley to conceal true ownership from MassHealth.

- **Interrogatory Nos. 4 & 18:** Cordio refused to disclose financial ledgers, bank accounts, or real estate payoff records concerning her property loans between 2015 and 2019, objecting on relevance.
- **Interrogatory No. 5:** Cordio refused to provide facts regarding whistleblowing reports or compliance alerts concerning Alexander Shrayber, Maria Gutierrez, or cash bribee.
- **Interrogatory No. 6:** Cordio refused to detail communications concerning Paul Jones, CCRD Inc., or the blocking of the Vendor Portal, falsely claiming she did not recall.
- **Interrogatory No. 7:** Cordio refused to disclose phone numbers or state whether digital data from her employment period had been deleted or destroyed, claiming she had no emails or text messages from 2017.
- **Interrogatory No. 8:** Cordio refused to detail the exact reasons and outcome of her demotion following Plaintiff's complaints.
- **Interrogatory No. 9:** Cordio refused to identify MART employees interviewed, investigated, or disciplined during Brokerage Department audits.
- **Interrogatory No. 12:** Cordio refused to state administrative reasons why CCRD Inc.'s portal access was restricted, locked, or marked as blocked.
- **Interrogatory No. 13:** Cordio refused to explain why Plaintiff's March 22, 2016 training session was diverted to her private office on a personal laptop.
- **Interrogatory No. 17:** Cordio refused to describe her professional relationship with Sharna Smalls from HST, objecting on relevance.
- **Interrogatory No. 20:** Cordio refused to state her personal cellular telephone number and the vendors who communicated with it, objecting on relevance.

**2. Karen Cordio's Requests for Production of Documents Refused / Unanswered:**

- **Request for Production No. 1:** Cordio refused to produce investigative files, interview summaries, and final reports regarding complaints filed against her by Plaintiff.
- **Request for Production No. 2:** Cordio refused to produce her complete MART personnel file from 2015 through 2018, objecting on relevance and confidentiality.
- **Request for Production No. 3:** Cordio refused to produce pleadings and deposition transcripts from *Susan J. Trainor v. MART* (Civil Action No. 4:12-cv-40022).
- **Request for Production No. 4:** Cordio refused to produce text messages, emails, and notes from personal and MART-issued devices referencing Plaintiff, CCRD Inc., or the locking of the Vendor Portal.
- **Request for Production No. 5:** Cordio refused to produce background checks, public records searches, or investigative profiles compiled concerning Plaintiff outside official HR processes.
- **Request for Production No. 6:** Cordio refused to produce real estate closing documents, deeds, and mortgage payoff records showing sources of funds between 2015 and 2019.
- **Requests for Production Nos. 7, 8, 9, & 10:** Cordio refused to produce directives and operational instructions regarding overlapping vendors holding multiple concurrent contracts and concealing corporate structures from MassHealth.
- **Requests for Production Nos. 11, 15, & 16:** Cordio refused to produce documents concerning Alexander Shrayber, cash bribes, steering of Medicaid contracts, and communications with Shrayber's five companies.
- **Request for Production No. 12 & 13:** Cordio refused to produce evaluation reports, compliance alerts, or whistleblower reports regarding billing anomalies and contract splitting between 2015 and 2018.

- **Request for Production No. 14:** Cordio refused to produce billing records and transaction histories for her personal cellular telephone service.
- **Request for Production No. 17:** Cordio refused to produce the complete list of all vendors holding two or more companies simultaneously on MART's vendor registries.

## ARGUMENT

### DEFENDANTS' RELIANCE ON BOILERPLATE OBJECTIONS AND IMPROPER PRIVILEGE CLAIMS WITHOUT A PRIVILEGE LOG MUST BE OVERRULED

Throughout their written discovery responses, Defendants MART and Karen Cordio have deployed generic, generalized boilerplate objections without providing the specific factual or legal foundation required by the Federal Rules of Civil Procedure. Specifically, in response to discovery requests addressing internal communications, attorney statements made on the record, and investigative files, Defendants asserted sweeping claims of attorney-client privilege and work-product protection without producing any privilege log.

Under Federal Rule of Civil Procedure 26(b)(5)(A), when a party withholds information otherwise discoverable by claiming that it is privileged or subject to protection as trial-preparation material, the party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Defendants have completely failed to satisfy this mandatory rule. Invoking blanket privilege without a privilege log is procedurally improper and operates as a waiver of the asserted privileges.

## MART'S SPOLIATION OF EVIDENCE AND DEFIANCE OF THE MARCH 15, 2021 PRESERVATION NOTICE

MART's admission that it destroys records after seven (7) years directly conflicts with and violates its legal obligations. Plaintiff served a formal Preservation of Electronic Evidence letter on Defense Counsel Deborah I. Ecker on March 15, 2021 (Docket Entry No. 185, Exhibit 1).This notice explicitly commanded Defendants to suspend all document retention and destruction policies and preserve all electronic and physical evidence, emails, and third-party vendor records. Defendants' continued failure to produce any responsive documents, combined with their admission of destroying files under a 7-year policy, demonstrates a blatant disregard for their preservation duties and warrants severe sanctions.

## DEFENDANTS' RESPONSES TO REQUESTS FOR ADMISSION EVADE FORTHCOMING ANSWERS

Defendants' responses to Plaintiff's Requests for Admission fail to comply with Federal Rule of Civil Procedure 36. Rule 36 requires that if a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. Here, MART and Cordio repeatedly interposed evasive denials or improper narrative qualifications while simultaneously admitting foundational facts—such as placing automated and artificial voice calls to Plaintiff's cellular telephone without obtaining prior express written consent, or acknowledging kickback schemes involving Alexander Shrayber—while denying liability.These evasive maneuvers are designed to obfuscate clear statutory violations under the Telephone Consumer Protection Act and systemic bid-rigging and should be treated as admissions or stricken as non-compliant under Rule 36.

## THE REQUESTED DISCOVERY IS PROPORTIONAL AND DIRECTLY RELEVANT TO REMAINING CLAIMS

As Judge Guzman noted, discovery must be focused on issues material to the remaining claims and defenses identified in the Court's Summary Judgment Memorandum and Order. The discovery propounded by Plaintiff directly targets these core issues, including MART's operational control, disparate treatment compared to other favored multi-entity vendors, retaliatory portal blocking, and intentional infliction of emotional distress. Defendants' motion to quash is simply an effort to avoid accounting for their systemic failure to provide authentic, forthright discovery responses.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Quash in its entirety, overrule Defendants' boilerplate objections and privilege claims, order Defendants to produce a complete and verified privilege log for any withheld documents, compel full and unevasive discovery responses for all unanswered interrogatories and refused document production requests detailed above (for both MART and Defendant Karen Cordio), enter the Stipulated Confidentiality Protective Order, and grant such other and further relief as the Court deems just and proper

Respectfully submitted,

Paul Jones, Pro Se July 23, 2026

79 Thompson Street

Springfield, MA 01109

Tel: 617-939-5417

Email: pj22765@gmail.com

**CERTIFICATE OF SERVICE**

I, Paul Jones, certify that a true copy of the foregoing was emailed to Counsel of Record on this 23rd day of July 2026.

**/s/ Paul Jones**

**Paul Jones, Plaintiff Pro Se**

79 Thompson Street, Springfield, MA 01109

pj22765@gmail.com | Tel: 617-939-5417

**Deborah Ecker, Esq.**

KP Law, P.C.

101 Arch Street, 12th Floor

Boston, MA 02110

decker@k-plaw.com