**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PAUL JONES,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.,**<br><br>**Defendants** | **Civil Action: 4:19-cv-11093 MRG**<br>**Combined with case No. 1:20-cv-12076** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT CORRECTED VERSION**

**PRELIMINARY STATEMENT**

This is my renewed motion for corrected summary judgment. The Court's March 18, 2026 order (Doc. 193) denied the parties' cross-motions without prejudice and granted limited merits discovery. That discovery remains incomplete: Defendants have not produced the court-ordered discovery, and my requests remain outstanding.

On the undisputed record, Defendants' own admissions establish the TCPA claim, 47 U.S.C. § 227(b)(1)(A)(iii): Defendants admit placing IVR calls to my cellphone using an artificial voice, with no consent form and no consent documentation for those calls, while I revoked consent by

certified mail delivered to MART beginning in November 2016. This renewed motion seeks summary judgment on the TCPA claim only: Count I of the Verified Amended Complaint (Doc. 7, filed June 14, 2019) in Case No. 4:19-cv-11093-MRG, and Counts 1-2 of the First Amended Verified Complaint in Case No. 1:20-cv-12076. Both cases are consolidated, and this motion covers the TCPA counts in both docket numbers.

I do not seek summary judgment on Count V (G.L. c. 151B, §§ 4(4) and 4(4A)) OR Count VI at this time. As explained below, discovery on the 151B claim remains incomplete: Michelle Moyo's deposition has not been taken, the Court-ordered defendants to produce documents to the plaintiff (including the IVR system manual for 2016 through July 20, 2019, Defendants' telephone records, and voice messages etc. ) and they have not been produced, and my motion for sanctions for spoliation remains pending. I cannot move forward on Count V until that discovery is complete.

I do not seek summary judgment on Count VI (negligent infliction of emotional distress). I seek judgment on liability only, with damages to be determined at trial for Counts I TCPA.

The sworn discovery since, RFA and interrogatory responses from MART, Badgley, Shumovskaya, and Cordio, and the certified deposition of Ivan Roman answers the questions the Court reserved.

On the central question the Court reserved, whether I revoked consent, the supplemented record leaves no genuine dispute, and a threshold matter must be laid to rest. The March 18, 2026 order described Defendants as "den[ying] receiving Mr. Jones's letters." Doc. 193 at 5 (citing ECF No. 173 at 3). The cited page contains no denial of receipt; it argues only that I had "not provided the certified returns for said letters indicating that the appropriate person within MART actually received the letter(s)." That argument has now been answered four ways. First, defense counsel

acknowledged in open court that Defendants received the signed certified receipts and that the individuals who accepted them were MART accounts-receivable personnel. (May 15, 2025, Hr'g Tr. 11.) also See Ex-14. Second, MART admitted under oath that an accounts-receivable employee signed for the February 17, 2017, letter (SOF ¶41; Ex. 9, MART RFA 8). Third, MART admitted that Aliceson Hill's signature appears on the February 17, 2017, green card and Kathleen Marean's on the March 15, 2018, card (SOF ¶42; Ex. 9, MART RFAs 26-29), and stated that "two employees in MART's Accounts Receivable Department signed the cards on February 17,2017,7 and March 15, 2018, respectively" (SOF ¶ 43; Ex. 10, MART's Answer to Interrogatory No. 18).

Fourth, the signed return receipts, tracking records, and delivery confirmations for all three mailings are before the Court as Exhibits 1 through 3 to the accompanying Jones Affidavit. Receipt is therefore established by Defendants' counsel's admission, Defendants' sworn discovery responses, and the signed receipts themselves, and Defendants cannot now be heard to deny it. The single conclusory "not in receipt" sentence in the Oldfield affidavit, "[p]rior to this date, MART was not in receipt of any request from Mr. Jones not to use his cell phone for purposes of assigning new trips to CCRD via the IVR system" (DSOF ¶ 18, citing Ex. B ¶ 8), cannot create a genuine dispute against that record. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986) (the nonmovant must "present affirmative evidence," not "mere allegation or denials"). I acknowledge, as my affidavit states, that the original text of the 2018 letter is not presently in my available records (Jones Aff. ¶ 14); what the exhibits prove is the mailing and Defendants' signed receipt of it. By supplemental affidavit, I have now placed in the record my sworn recollection of that letter's contents: it asked MART to remove my personal cellular number from its IVR System, revoked all consent to calls on that number, and directed

MART to call CCRD Inc. only at its office numbers. (Supp. Jones Aff. ¶¶ 6-7.) That changes nothing on the merits: the November 2016 and February 2017 letters are in the record in full text, and the first revocation alone ended any consent Defendants claim.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence, viewed most favorably to the nonmovant, would permit a rational factfinder to resolve it for either party. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990); Doc. 193 at 7. Courts need not credit "conclusory allegations, improbable inferences, and unsupported speculation." *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)); Doc. 193 at 7. The nonmoving party cannot "rest upon mere allegation or denials," but must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); Doc. 193 at 7.

Where the movant's showing rests on the nonmovant's own admissions and undisputed documentary evidence, and the nonmovant offers only conclusory denials contradicted by its own documents, there is no genuine dispute, and judgment follows as a matter of law. That is the state of the record here.

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I (TCPA, 47 U.S.C. § 227(b)(1)(A)(iii))

### The Controlling Legal Framework

To make out a claim under § 227(b)(1)(A)(iii), a plaintiff must prove two things: (1) the defendant placed non-emergency calls to the plaintiff's cellular telephone number, and (2) the

calls were made "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii); Docket 193 at 10. No ATDS showing is required where the plaintiff claims an artificial or prerecorded voice was used instead. Visco v. Creditors Relief, LLC, No. 20-CV-12303-DJC, 2022 WL 488495, at 3 (D. Mass. Feb. 17, 2022); Docket 193 at 10. The TCPA "is a strict liability statute," Breda v. Cellco P'ship, 934 F.3d 1, 5 (1st Cir. 2019), and "consent [is] an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim." Id. at 5 n.4. At summary judgment, "the burden of demonstrating consent, including rebutting a plaintiff's assertion that they revoked consent, rests on the TCPA defendant in this case the calling party, MART." Docket 193 at 11-12 (citing Himes v. Client Servs. Inc., 990 F. Supp. 2d 59, 69 (D.N.H. 2014)).

Although the TCPA does not expressly address revocation, "courts have consistently recognized that consent may be revoked," Docket 193 at 11 (citing Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270 (3d Cir. 2013)), "through any reasonable means, including orally or in writing," In re Rules and Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 7993-96 (2015); Docket 193 at 11 n.12. Revocation must "be objectively clear and express a desire not to receive further calls," Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co., 847 F.3d 1037, 1048 (9th Cir. 2017); Docket 193 at 11. MART bears the burden of proving prior express consent, Docket 193 at 11; and any consent, once revoked by objectively clear means, cannot justify later calls.

**<u>B. Defendants Admit Both Elements</u>**

Defendants admit each of the two things I must prove:

1. Non-emergency calls to my cell phone. MART admitted it "placed calls to Plaintiff's cellphone number ... until June 2019 using an Interactive Voice Response system ('IVR')." (LR

56.1 ¶1 (Docket 247-1, ¶5).) Under oath MART further admitted that its "IVR system called Plaintiff's cellphone number to offer CCRD, Inc. trips" (MART 3rd RFA 4, "Admitted"), and that the IVR system "called Plaintiff's cellphone up and until June 20, 2019 to offer Plaintiff as dispatcher of CCRD, Inc. trips" (MART 3rd Int. 1-2). MART admitted the calls were "regarding providing nonemergency transportation services for MassHealth clients to nonemergency appointments" (MART RFA 11, "Admitted"), and admitted it is paid by the Commonwealth to broker that nonemergency transportation (MART RFA 10, "Admitted"). Defendants further admit that "MART called Plaintiff numerous times ... since November 2016 using the telephone number Plaintiff provided," (SOF ¶2 (Docket 173, Resp. 12, 19)). Defendants state that 978-252-0019 "is associated with MART's IVR system," (SOF ¶3 (Docket 173, Resp. 4)). The number called is 617-939-5417, my personal cellular telephone. (SOF ¶4 (Badgley RFP Resp. 2; Docket 176-1, p. 2).) No emergency is claimed: MART admitted the calls "were not made for an emergency purpose" (MART RFA 18, "Admitted").

2. Artificial voice. MART admitted that through its IVR system it "placed calls to plaintiff's cell phone as dispatcher for MART's Vendor, CCRD, Inc. between February 17, 2017 and March 15, 2018 using an artificial voice to offer CCRD, Inc. trips" (Ex. 9 (Defendant MART's Responses to Plaintiff's First Set of Requests for Admissions), RFA 7), and "admit[ted] that when Plaintiff was called by the IVR system an artificial voice would state that the call was from MART" (Ex. 11 (Defendant MART's Responses to Plaintiff's Third Set of Requests for Admissions), RFA 5). MART's interrogatory answers confirm the mechanism: the messages "were not 'prerecorded scripts.' Instead, an artificial voice created by the software program would contact Plaintiff to offer CCRD, Inc. trips and each call was specific to the trip being offered" (Ex. 10 (Defendant MART's Answers to Plaintiff's First Set of Interrogatories), Int. 20). Shumovskaya swears the

IVR calls to vendors use "an artificial voice." (SOF ¶11 (Shumovskaya Int. 13).) This Court has already recited that Defendants do not dispute "the calls were made through an 'interactive voice response system' that delivered pre-recorded or artificial messages." Docket 193 at 10 (citing DSOF ¶11; Docket 173 at 2, 4). The statute is disjunctive, "an artificial or prerecorded voice," 47 U.S.C. § 227(b)(1)(A)(iii), and the admitted artificial voice satisfies it. Whether an ATDS was used is immaterial. Visco, 2022 WL 488495, at *3; Docket 193 at 10. Defendants' only consent-related defense concedes that "Plaintiff did not revoke his consent ... until June 2019," disputing revocation's timing, not its occurrence. (Docket 247-1, Defenses ¶2.)

## C. MART Cannot Carry Its Burden on Consent

Consent is MART's affirmative defense, and the record defeats it:

1. No consent form, no consent documents, no consent process, no TCPA policies. Badgley admitted: "MART has no such thing as a Consent form for individuals to sign giving MART CONSENT to call their cell phone between 2016 and June 25, 2019." (SOF ¶22; Ex. 16 (Badgley RFA Responses), RFA 11.) That no-consent-form period spans the entire window of calls at issue, including the June 17, 2019, through July 20, 2019, calls the First Circuit remanded. MART itself admitted it "does not have a consent form which it asks Vendors to sign to be allowed to call a Vendor's cellphone" and that "[i]nstead, MART has Vendors provide the telephone numbers the Vendor wants MART to call to offer the Vendor trips" (Ex. 11 (MART Third RFA Responses), RFA 12); admitted "to the extent that MART did not specifically in words ask Plaintiff for consent to call his cell phone number because Plaintiff provided the number to MART for MART to call" (Ex. 11 (MART Third RFA Responses), RFA 10); and admitted it "does not have any polices regarding the Telephone Consumer Protection Act" (Ex. 12 (MART Third Interrogatory Answers), Int. 3). Shumovskaya admitted MART "had no do not

call policy in writing between January 1, 2016, and June 30, 2020" (Ex. 13 (Defendant Tamara Shumovskaya's Responses to Requests for Admissions), RFA 27). Asked to produce any consent document for calls to 617-939-5417, Badgley answered: "Defendant has no responsive documents." (SOF ¶23; Ex. 16 (Badgley RFP Responses), RFP Resp. 2.) Asked to "[s]tate the process of an individual giving MART Consent to call his personal cell phone," she described only that vendors provide numbers "for MART to contact them to assign trips," a trip-assignment contact list, not a consent process. (SOF ¶113; Ex. 16 (Badgley Interrogatory Answers), Int. 2.) MART does not know how many times it called my cell phone and "has no documents that would reflect the number of calls made" (Ex. 12 (MART Third Interrogatory Answers), Int. 2). The party bearing the burden of proving consent has no form, never asked for consent in words, has no TCPA policies, kept no call records, and cannot say how many calls it made.

2. MART's July denials are contradicted by its August admissions. In July, MART denied it had "no record of prior express written consent" (Ex. 9 (MART First RFA Responses), RFA 1), denied it possessed "no document bearing Plaintiff's signature that authorizes" the calls (Ex. 9 (MART First RFA Responses), RFA 14), denied it had "no record indicating the specific date or time Plaintiff consented" (Ex. 9 (MART First RFA Responses), RFA 15), and denied it "never obtained the Plaintiff's consent" (Ex. 9 (MART First RFA Responses), RFA 16). Three weeks later, MART admitted it has no consent form, never asked me for consent in words, has no TCPA policies, and that its only "consent" paper is the vendor agreement with CCRD, Inc. The July denials implied a signed consent record that the August admissions confirm does not exist.

3. The only "consent evidence" is a vendor contract with a different party. MART's Third Set of RFP responses cites only the MART-CCRD, Inc. vendor agreement and states there are "no

additional responsive documents." (SOF ¶24; Ex. 18 (MART Third RFP Responses), RFP Resp. 2.) But the parties to that agreement are MART and Commonwealth Community Recovery Division, Inc.; I am not a party to it, and it contains no provision consenting to artificial or prerecorded calls to my personal cellular telephone. A contract the subscriber never signed, saying nothing about robocalls, cannot supply "the subscriber's common-law consent to call the number assigned to cellular service." Osorio, 746 F.3d at 1254-55. See also Mantha v. QuoteWizard, 2021 U.S. Dist. LEXIS 245059 (D. Mass. Dec. 13, 2021) (defendant bears the burden of proving consent).

4. MART cannot manufacture a genuine dispute out of an empty record. Consent is MART's affirmative defense to prove, not mine to disprove. Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019). To survive summary judgment on that defense, MART must produce evidence that I consented to these calls. It has nothing: no consent form (Ex. 16 (Badgley RFA Responses), RFA Resp. 11), no consent documents (Ex. 16 (Badgley RFP Responses), RFP Resp. 2), never asked for consent in words (Ex. 11 (MART Third RFA Responses), RFA 10), no TCPA policies at all (Ex. 12 (MART Third Interrogatory Answers), Int. 3). A telephone number jotted on a third-party vendor contract cannot fill that void. The agreement is between MART and CCRD, Inc.; I am not a party to it, and it contains no provision consenting to automated or artificial-voice calls to any number. Only the subscriber can give consent, see Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1254-55 (11th Cir. 2014), and a contract I never signed cannot supply it. Zero competent consent evidence means zero genuine dispute, and summary judgment follows.

5. MART demanded a compliant channel, then left it unused. MART's own Answer admits it required vendors to maintain non-toll-free numbers to receive calls from the IVR system.

(Docket 54, ¶85.) I complied. I obtained the non-toll-free number 413-315-4500 for that very purpose and paid for it every month, yet MART never used it, continuing instead to place its prerecorded-voice calls to my personal cellular telephone. MART did not begin using the 413 number until approximately three years later. (Affidavit of Paul Jones ¶17; Docket 54, ¶85.) A defendant that demands a compliant channel leaves it unused for years while robocalling the number the plaintiff repeatedly told it to stop calling, cannot claim any implied consent to the calls it chose to make.

6. Defendants never pleaded consent as a defense to Count I. Count I (TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)) is pleaded in the Verified Amended Complaint (Docket 7), and the governing Answer to that complaint pleads no consent- or revocation-related affirmative defense: its four affirmative defenses are failure to state a claim; good faith with legitimate non-discriminatory and non-retaliatory reasons; no Title VII employment relationship; and no G.L. c. 151B employment relationship. (Docket 54 at 20-21.) (The Second Verified Complaint pleads no TCPA claim, and its Corrected Answer likewise contains no occurrence of the words "consent" or "revok." (Docket 243).) The only surviving consent assertion appears in the consolidated-case Answer, and it is contradicted by the documentary record, as shown below.

7. I could not change the number myself; changes ran through MART. (SOF ¶132.) MART's own change form states: "This form must be utilized for any changes of address, business or mailing and is required to be signed by the Contractor. This change form will serve as an amendment to your current contract with the Montachusett Regional Transit Authority." The form contains fields for "Phone Number" and "IVR Number." A telephone-number change was therefore a contract amendment processed through MART, not vendor self-service in the portal.

MART's own staff confirmed that vendors are not authorized to make changes and that only MART staff can do so. (SOF ¶132; Supp. R.A. 00515.) And MART's staff did make such changes themselves. (SOF ¶132.) MART now adds that in 2016 vendors could relay number changes through MART's email box (Ex. 12 (MART Third Interrogatory Answers), Int. 6); that is still MART processing the change, not vendor self-service. Defendants cannot fault me for "never changing" a number I had no authority to change myself. The contract's telephone field lists both my cellular number and CCRD's toll-free number, 888-680-4667 (Supp. R.A. 00117), so MART always had a non-cell number at hand; and listing a contact number on a vendor form is not consent to automated calls in any event, consent I revoked three times in writing.

**Revoked Any Consent by Certified Mail: The Letters Are Objectively Clear**

1. Even assuming arguendo that consent existed, I revoked it in writing, delivered to MART, years before June 2019:

2. The revocation was not only in writing. I verbally told MART's managers, dispatchers, and other employees to stop calling my personal cellular telephone, yet the calls continued. (SOF ¶106; Affidavit of Paul Jones ¶32.) Verbal revocation is a reasonable means under the FCC's standard, 30 FCC Rcd. 7961, 7993-96, and each instruction was objectively clear.

3. Defendants admit the key contact. The Verified Amended Complaint alleges that I "immediately called Defendant Ivan Roman, his contract manager, and Crystal Geisert and informed them to please only call plaintiff on his office number 888-680-4667 (Revoked Consent)," and that Ivan and Crystal assured me no calls would come to my personal cellular telephone anymore. (Docket 7, ¶84.) Defendants' Answer admits that "Plaintiff contacted Defendants about receiving calls." (SOF ¶108; Docket 54, ¶84.) An admission that I contacted Defendants about the calls, paired with the sworn allegation of what was said in that contact,

leaves no genuine dispute that MART was told, directly and verbally, to stop calling the personal cell.

4. The 2016-11-12 letter. Dated November 12, 2016, it states: "I am revoking all ATDS calls to my cellular telephone (617-939-5417)... please remove my 617-939-5417 number as soon as possible... please call CCRD INC only on 888-680-4667." (SOF ¶31; Ex. 1; Docket 176-1, pp. 2-3.) USPS records show delivery "Left with Individual" on November 21, 2016, at 12:03 p.m. in Fitchburg, MA. (SOF ¶32; Ex. 1.)

5. The 2017-02-11 letter. Dated February 11, 2017, and addressed to Crystal Geisert, it states: "I am writing again to request that all calls to my cellular telephone be removed from MARTS Automatic Telephone Dialing System... 30 - 40 calls a day from MART on my cellular telephone... with a computerized voice... The 617-939-5417 number is my personal cell phone please remove my cell number from you call list asap." (SOF ¶33; Ex. 2; Docket 176-1, p. 4.) The green card was signed "Alice m Hill," dated 2/17/17, with the "Agent" box checked. (SOF ¶34; Ex. 2.)

6. The 2018 mailpiece. A third certified mailing to MART bears the green-card signature "K. Marean," with the "Agent" box checked. (SOF ¶35; Ex. 3.) The original text of the 2018 letter has not been located, but my supplemental affidavit states its contents from personal knowledge: the letter asked MART to remove my personal cellular number, 617-939-5417, from its IVR System, revoked all consent to calls on my cell phone number 617-939-5417, and directed MART to call CCRD Inc. only at 413-315-4500 and/or 888-680-4667. (Supp. Jones Aff. ¶¶ 4-7.)

7. These letters satisfy the legal standard. Written revocation is a reasonable means, 30 FCC Rcd. 7961, 7993-96; revocation must be objectively clear and express a desire not to receive further calls, Van Patten, 847 F.3d at 1048, and "remove my 617-939-5417 number as soon as possible" and "remove my cell number from you [sic] call list asap" are that. Signed green cards establish MART received the letters, and MART has now admitted the receipts. MART admitted that an employee of its Accounts Receivable department signed for the February 17, 2017 letter (SOF ¶41; Ex. 9 (MART First RFA Responses), RFA 8); admitted that Aliceson Hill's signature appears on the February 17, 2017 green card and Kathleen Marean's on the March 15, 2018 card (SOF ¶42; Ex. 9 (MART First RFA Responses), RFAs 26-27); and stated under oath that "two employees in MART's Accounts Receivable Department signed the cards on February 17, 2017 and March 15, 2018 respectively" (SOF ¶43; Ex. 10 (MART First Interrogatory Answers), Int. 18). Most powerfully, MART's own counsel told the Court on the record at the May 15, 2025, hearing: "In response to the summary judgment, he has now sent us the signed certified receipts," and "[t]he individuals who accepted them were accounts receivable." (SOF ¶44; Ex. 14 (May 15, 2025, Hearing Transcript), p. 11, ¶¶ 1-6.) MART then admitted under oath that the quoted language accurately reflects what is contained in the hearing transcript. (SOF ¶44; Ex. 9 (MART First RFA Responses), RFA 13.) Receipt is admitted; only the legal effect is disputed, and that is for the Court to decide.

8. Defendants' argument, that I "continued to voluntarily engage in business with MART using the cell phone number at issue," is not true. I had no ability to change CCRD Inc.'s telephone number or IVR number in MART's vendor portal; only MART's employees could make those changes. (Affidavit of Paul Jones ¶37.) This is the same "do business" defense the Third Circuit rejected in Gager. The Third Circuit held that "creditors are permitted to attempt live, person-to-

person calls," so "the only limitation imposed by the TCPA is that [the caller] will not be able to use an automated dialing system to do so." 727 F.3d at 273-74. Revocation restricts the manner of contact, not the underlying business relationship. MART's interrogatory answer that it "did not receive notice from Plaintiff that he wanted CCRD, Inc. to be removed as a Vendor" (SOF ¶45; Ex. 10 (MART First Interrogatory Answers), Int. 17) answers a demand I never made. I never asked to end the vendor relationship; I asked MART to stop the automated calls/prerecorded messages to my personal cell, which is exactly what Gager protects: revocation takes away the automated dialing system/prerecorded calls, not the business. 727 F.3d at 273-74. Section 227(b)(1)(A)(iii) is disjunctive: it prohibits ATDS or artificial/prerecorded voice calls. The Gager principle (revocation takes away the manner of calling, not the business relationship) applies to both prongs equally.

9. That is precisely what my letters did. They did not terminate the vendor relationship; they instructed MART to "remove my 617-939-5417 number as soon as possible" and to "call CCRD INC only on 413-315-4500 and/or 888-680-4667." (SOF ¶31.) MART remained free to reach CCRD phone operators, whoever answered (not me personally), by live call or through the office numbers at all times, including by prerecorded messages to those office numbers. And the June 17, 2019, and June 20, 2019, emails prove the point in reverse: even an explicit office-number-only instruction did not stop the IVR calls to my cell number. My phone bills show seven more IVR calls from 978-252-0019 on June 20, 2019, six after the June 20, 2019, email itself, contradicting Shumovskaya's sworn claim that after my June 20, 2019, email, "the IVR system did not contact Plaintiff on his cell phone." (SOF ¶39; Ex. 13 (Defendant Tamara Shumovskaya's Responses to Requests for Admissions), RFA 28; Affidavit of Paul Jones ¶45.) Continued

business through non-automated channels is not consent to robocalls; under Gager, it cannot revive consent revoked in writing years earlier.

10, Defendants' only response is the affirmative defense that "Plaintiff did not revoke his consent for MART to call his cellphone number until June 2019." (SOF ¶37; Docket 247-1, Defenses ¶2.) That bare assertion is contradicted by two signed, delivered certified letters, both ordered into the record by this Court (Docket 193), that say the opposite. A pleading allegation contradicted by authenticated documentary evidence does not create a genuine dispute. On July 14, 2017, I emailed five MART managers that I had "received over 140 Automatic Dialing system calls in the last 10 days" and that the system (prerecorded calls to my cell phone while I was driving) was "very very dangerous as I am driving," asking that trips be placed in CCRD's portal instead of calling my cell phone with prerecorded messages; Roman replied that I could mark myself "full" in the portal, forfeiting all work. (SOF ¶134.) The calls continued.

## <u>The June 2019 Events Confirm the Calls Were Stoppable, and Were Stopped</u>

On June 17, 2019, and June 20, 2019, I emailed Badgley, Shumovskaya, Torres, and Kukta requesting that MART contact CCRD only through its office numbers. (SOF ¶38; Ex. 13 (Defendant Tamara Shumovskaya's Interrogatory Answers), Int. 9; Ex. 13 (Defendant Tamara Shumovskaya's Responses to Requests for Admissions), RFA 28.) MART admitted under oath that its IVR system "called Plaintiff's cellphone up and until June 20, 2019, to offer Plaintiff as dispatcher of CCRD, Inc. trips" (Ex. 12 (MART Third Interrogatory Answers), Int. 1-2). Shumovskaya claims that after the June 20, 2019, email, "the IVR system did not contact Plaintiff on his cell phone" (SOF ¶39; Ex. 13 (Defendant Tamara Shumovskaya's Responses to Requests for Admissions), RFA 28), but my Sprint bill proves otherwise. The bill shows seven

prerecorded IVR calls from 978-252-0019 on June 20, 2019, all after the June 17, 2019, email and six after the June 20, 2019, email, using the same prerecorded/artificial computerized voice I had been hearing since 2016. No prerecorded IVR calls from 978-252-0019 appear on my bill after June 20, 2019. (SOF ¶39; Affidavit of Paul Jones ¶45.) The consolidated second action alleges the calls continued until on or about July 10, 2019. (SOF ¶55; Docket 6, ¶8.) My Sprint bill shows the calls actually continued to July 12, 2019, with the last call from MART's other number, 978-424-9002, at 8:28 a.m. that day. (SOF ¶39; Affidavit of Paul Jones ¶45.)

That complaint alleges: "Plaintiff instructed Defendants employees to cease all calls including the prerecorded computerized artificial automated calls to plaintiffs cellular telephone number and the calls from 978-424-9002 with an Automatic Telephone Dialing System and or a predictive dialer. See Consolidated Verified Amended Complaint Doc. 6, ¶ 6. [Plaintiff] provided 2 additional telephone number 888-680-4667 & 413-315-4500 to defendants on several occasions to contact Commonwealth Community Recovery Division Inc. dispatcher whom they were trying to reach. ... Despite Plaintiffs repeated and unequivocal instructions, defendants and/or its Agents continued placing automated and or artificial voices messages to Plaintiffs cellular." (Docket 6, ¶¶6, 10-12.) Roman testified that changing a vendor's numbers in the system was simple: "it should be as simple as that." (SOF ¶40.)

These facts close the loop: removal that Defendants say took effect June 24, 2019, four days after an explicit written instruction followed by seven IVR calls on June 20 itself, should have taken effect when the certified letters arrived in 2016 and 2017. MART's own records confirm the IVR was still calling into late June 2019: on July 1, 2019, Badgley reported CCRD was offered 169 trips and accepted 60 on June 28, 2019. (SOF ¶126.) The calls continued for years after delivered

written revocations, the precise harm the TCPA's strict-liability regime targets. Breda, 934 F.3d at 5.

**Conclusion on Count I**

Defendants admit the calls, admit the artificial voice, and admit they have no consent documentation. The only "consent" document is a vendor contract with a different party that says nothing about robocalls. Two certified letters, delivered and signed for, revoked any consent years before Defendants' claimed June 2019 revocation date. On this record, no rational factfinder could resolve the consent issue in Defendants' favor. Summary judgment on Count I is warranted.

**In the Alternative: Rule 56(d) Relief on the Withheld IVR Manuals**

**In the Alternative: Rule 56(d) Relief on the Withheld IVR Manuals**

My Count I case does not depend on the ATDS prong. But the technical facts rest exclusively with MART, which has not produced them: I served RFP No. 14 seeking the IVR system user manuals for 2015 through 2020, and MART objected that the request "assumes" automation, pointing to nine documents produced March 6, 2025 without producing the manuals for the system as configured during 2016-2019. (SOF ¶118; Affidavit of Paul Jones ¶34.) Under Fed. R. Civ. P. 56(d), should the Court conclude the ATDS question must be reached, I request in the alternative that the Court defer ruling on Count I and order Defendants to produce the manuals sought in RFP No. 14 before deciding.

**COUNT V (G.L. c. 151B, §§ 4(4) AND 4(4A)) IS DEFERRED PENDING COMPLETION OF DISCOVERY**

I do not seek summary judgment on Count V at this time. Discovery on the c. 151B retaliation

claim remains incomplete, and I cannot move forward until the following discovery is completed and the pending spoliation motion is resolved.

**A. Michelle Moyo's Deposition Has Not Been Taken**

Michelle Moyo is a named individual defendant and a former MART employee whose testimony is central to the retaliation claim. Her deposition has been noticed but has not been taken. Until her deposition is completed, the record on the 151B claim is incomplete.

**B. Court-Ordered Documents Have Not Been Produced**

The Court ordered Defendants to produce certain documents, including the manual for the IVR system that placed calls to me from 2016 through July 20, 2019, Defendants' telephone records, and voice messages. Defendants have not produced these documents.

The IVR system manual is critical for two reasons. First, it will show how the IVR system was configured and operated during the actionable period, which bears directly on the retaliation claim. Second, the manual is needed to prove that MART's IVR system is an automatic telephone dialing system under Facebook, Inc. v. Duguid, 592 U.S. 395 (2021). Defendants substituted a 2021 user manual for the operative 2016-2020 manuals that governed the dialing equipment during the actionable period, which is improper because not a single violative call occurred in 2021. (See Docket 246.)

Defendants claim they do not have telephone records, voice messages, or HR documents for Karen Cordio, Michelle Moyo, and Crystal Geisert. In their July 16, 2026, First RFP responses, Defendants stated they "only retain[] personnel files for employees for seven (7) years after they have left their employment with MART." (Ex. 11 (MART Third RFP Responses), Resp. 12.)

This 7-year retention policy means routine purging occurred while this lawsuit was active, despite my formal preservation demand.

**C. The Spoliation Motion Remains Pending**

On March 15, 2021, I served a formal Notice to Preserve Electronic Evidence on Defendants' counsel via Certified Mail No. 7019 1120 0000 0061 1739, demanding preservation of all electronically stored information from July 5, 2015, through March 15, 2021, including call records, IVR dialer data, internal emails, and HR investigation files. (Docket 240-2.) Counsel acknowledged receipt on March 15, 2021.

Despite this preservation demand, Defendants have responded "no responsive documents" to requests for HR investigation files, personnel records, internal communications, call logs, and IVR data. On August 28, 2026, I filed a Motion for Sanctions for Spoliation of Evidence pursuant to Fed. R. Civ. P. 37(e) and 37(b) (Docket 240). Defendants opposed (Docket 241), and I replied (Docket 246, filed September 8, 2026). The motion remains pending and has not been ruled on.

I cannot and will not let Defendants defy a Court order and a five-year-old preservation demand while the Court sits idle. All corporations know the name of their telephone company. Under the TCPA, if you operate an IVR system, you have stored prerecorded voice messages that went out. The Court ordered MART to hand over all recordings in its possession. Defendants have them, and they must produce them.

**<u>D. Conclusion on Deferral</u>**

Until Michelle Moyo's deposition is completed, the Court-ordered documents are produced, and the spoliation motion (Doc. 240) is resolved, I cannot move forward on Count V. I therefore defer summary judgment on the c. 151B claim and request that the Court grant summary judgment on Count I (TCPA) now, while ordering Defendants to complete the outstanding discovery.

## IV. CONCLUSION

**CORRECTED VERSION**

**D. Conclusion on Deferral**

Until Michelle Moyo's deposition is completed, the Court-ordered documents are produced, and the spoliation motion (Docket 240) is resolved, I cannot move forward on Count V. I therefore defer summary judgment on the c. 151B claim and request that the Court grant summary judgment on Count I (TCPA) now, while ordering Defendants to complete the outstanding discovery.

**IV. CONCLUSION**

For the foregoing reasons, I request summary judgment in my favor on Count I (TCPA: Count I of the Verified Amended Complaint (Docket 7) in Case No. 4:19-cv-11093-MRG, and Counts 1-2 of the First Amended Verified Complaint in Case No. 1:20-cv-12076), on liability only, with damages to be determined at trial, and such other relief as the Court deems just. I defer summary judgment on Count V (c. 151B) pending completion of discovery and resolution of the spoliation motion (Docket 240). I do not seek summary judgment on Count VI (NIED).

Respectfully submitted,

Paul Jones, Pro Se Plaintiff

Date: September 29, 2026

79 Thompson Street

Springfield, Ma 01109

Tel: 617-939-5417

Pj22765@gmail.com

## CERTIFICATE OF SERVICE

I, Paul Jones, hereby certify that on September 29, 2026, I served the foregoing Plaintiff's Renewed Motion for Summary Judgment (corrected version) , Memorandum in Support, Statement of Undisputed Facts Pursuant to Local Rule 56.1, Affidavit of Paul Jones with Exhibits 1 through 18, and Proposed Order, on the following counsel of record via the Court's CM/ECF system:

Deborah I. Ecker, Esq.

Date: September 29, 2026

Mark R. Reich, Esq.

KP Law, P.C.

101 Arch Street, 12th Floor

Boston, MA 02110

DEcker@k-plaw.com

Respectfully submitted,

Paul Jones, Pro Se Plaintiff

79 Thompson Street

Springfield, Ma 01109

Tel: 617-939-5417

Pj22765@gmail.com