UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SEP 29 AM10:18

| | |
|---|---|
| PAUL JONES,<br><br>Plaintiff<br><br>v.<br><br>MONTACHUSETT REGIONAL TRANSIT AUTHORITY, et al.,<br><br>Defendants | Civil Action: 4:19-cv-11093 MRG<br>Combined with case No. 1:20-cv-12076 |

AFFIDAVIT OF PAUL JONES IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT (CORRECTED VERSION)

## I. Identity and Role

1. I, Paul Jones, am I in the above-captioned action. I make this affidavit of my own personal knowledge. If called as a witness, I could and would testify competently to the facts stated herein.

2. From approximately 2016 through June 2019, I served as Director of Commonwealth Community Recovery Division, Inc. ("CCRD"), a transportation vendor under contract with the Montachusett Regional Transit Authority ("MART"). I performed CCRD's transportation labor

myself, driving trips and maintaining CCRD's vehicles, and I was MART's primary point of contact for CCRD.

3. As CCRD's Director, MART placed calls to my personal cellular telephone through its Interactive Voice Response ("IVR") system. The calls from MART's IVR system were placed to my personal cellular telephone number, **617-939-5417**.

## II. My Cellular Telephone Number

4. 617-939-5417 is and was my personal cellular telephone. I provided that number to MART for work-related communications in my capacity as CCRD's Director.

5. At no time did I ever sign a consent form, agreement, or any other document giving MART permission to place automated, autodialed, prerecorded, or artificial-voice calls or texts to 617-939-5417. I never gave MART my oral consent to place such calls to that number either.

6. Providing my cellular number to MART so that MART could reach me as CCRD's Director was not consent to receive automated or prerecorded calls to that number, and I never represented to MART that it was.

## III. The IVR Calls I Received

7. Beginning in or about November 2016, I personally received numerous telephone calls on my cellular telephone 617-939-5417 from MART's IVR system. The calls displayed the caller ID number **978-252-0019**, which is the telephone number associated with MART's IVR system.

8. The calls used a computerized, artificial voice, not a live human being, that delivered prerecorded prompts offering trips to CCRD, including prompts instructing me to press keys to accept, decline, or hear the trips being offered. I know this from personally receiving and listening to the calls.

9. The IVR calls also left messages on my voicemail. I personally listened to those voicemail messages. They were delivered in the same computerized, artificial voice, offering trips to CCRD.

## IV. My Revocation Letters

10. On or about November 12, 2016, I wrote and mailed a letter to MART revoking my consent to receive automated calls to my cellular telephone. The letter stated, among other things: "I am revoking all ATDS calls to my cellular telephone (617-939-5417)… please remove my 617-939-5417 number as soon as possible… please call CCRD INC only on 888-680-4667." A true copy of that letter is attached as **Exhibit 1**.

11. I mailed the November 12, 2016 letter by United States certified mail to MART at 100 Main Street, Fitchburg, MA 01420. The USPS tracking number for that mailing was **7016 2710 0001 0777 5997**. The USPS tracking record for that article shows it was "Delivered, Left with Individual," on November 21, 2016 at 12:03 p.m. in Fitchburg, MA 01420. The certified-mail receipt for that mailing is postmarked November 17, 2016 and is attached with Exhibit 1.

12. On or about February 11, 2017, I wrote and mailed a second letter, addressed to Crystal Geisert at MART, again demanding that MART remove my cellular telephone from its automatic telephone dialing system. That letter described that I was receiving "30 – 40 calls a day from MART on my cellular telephone" in "an computerized voice," stated that "617-939-5417 … is my personal cell phone," and asked that MART "remove my cell number from you call list asap." A true copy of that letter is attached as **Exhibit 2**.

13. I mailed the February 11, 2017 letter by United States certified mail to MART, c/o Crystal Geisert, 100 Main Street, Fitchburg, MA 01420 (USPS tracking **7015 0640 0001 5570 5341**). The return-receipt "green card" for that mailing was returned to me signed **"Alice m Hill"** and

dated **2/17/17**, with the "Agent" box checked. The certified-mail receipt is postmarked February 15, 2017. The green card and receipt are attached with Exhibit 2. I describe the signature exactly as it appears on the card; I do not know Ms. Hill's title or role at MART.

14. On or about March 15, 2018, I sent a third certified mailing to MART at 100 Main Street, Fitchburg, MA 01420 (USPS tracking **7015 1520 0000 1814 3550**). The return-receipt green card for that mailing was returned to me signed **"K. Marean,"** with the "Agent" box checked. The green card and certified-mail receipt are attached as **Exhibit 3**. I describe the signature exactly as it appears on the card; I do not know Ms./Mr. Marean's title or role at MART. The text of the 2018 letter itself is not in my records that are presently available to me and is therefore not attached; I have searched my available records for it and cannot locate a copy. I have stated the contents of the March 2018 letter to the best of my recollection in a supplemental affidavit filed with the renewed motion for summary judgment. (Supp. Jones Aff. ¶¶ 4-7.)

## V. Calls Continued After My Revocations

15. The IVR calls to my cellular telephone 617-939-5417 continued after each of my three revocation mailings. I personally continued to receive the computerized-voice calls on a regular basis throughout 2017, 2018, and into 2019, including for months after each certified letter was delivered to MART.

16. On or about June 5, 2019, I received approximately 61 calls from MART's IVR system on my cellular telephone between approximately 6:10 a.m. and 7:18 p.m., that is, after all three of my written revocations.

17. On June 17, 2019, at 12:55 a.m., and again on June 20, 2019, at 6:50 a.m., I sent emails to Rebecca Badgley, Tamara Shumovskaya, Jessica Torres, and Amanda Kukta at MART requesting that MART contact CCRD, Inc. only through CCRD's office numbers, 413-315-4500

or 888-680-4667, and stop calling my personal cellular telephone. In the June 17 email I mistyped the office number as 4130315-4500; the June 20 email gave the correct number, 413-315-4500. I obtained the non-toll-free number 413-315-4500 for CCRD's use with MART's IVR system and paid for that number; MART did not use it for approximately three years after I obtained it.

18. Neither email stopped the calls. My Sprint telephone bills show seven (7) calls from MART's IVR number, 978-252-0019, to my cellular telephone on June 20, 2019, at 6:35 a.m., 7:10 a.m., 7:20 a.m., 7:50 a.m., 8:35 a.m., 8:40 a.m., and 8:55 a.m. Those calls used the same prerecorded/artificial computerized voice I had been hearing since 2016. My bills also show eleven (11) additional incoming calls from MART's operators from telephone number 978-424-9002 between June 20, 2019, and July 12, 2019.

## VI. My Protected Complaints

19. Beginning in 2015–2016, I made informal and formal complaints to MART's managers, directors, and employees, protesting what I believed to be discriminatory and retaliatory treatment of CCRD and me as a minority vendor.

20. I sent an email to Rebecca Badgley stating that I was being discriminated against as a minority vendor. She replied to me the following day stating that there was no discrimination.

21. On or about March 22, 2017, I submitted a written Title VI complaint to MART alleging discrimination, retaliation, a hostile work environment, and unfair treatment. MART acknowledged receiving that complaint, and I attended an in-person meeting at MART's Brokerage offices on April 5, 2017 with Ms. Badgley and others to discuss it.

22. On or about January 13, 2019, I filed a verified complaint with the Equal Employment Opportunity Commission ("EEOC") and they sent it to the MCAD alleging discrimination, a

hostile work environment, and retaliation against Rebecca Badgley, Karen Cordio, Ivan Roman, Tamara Shumovskaya and other named defendants. I signed by me under penalty of perjury. On or about February 11, 2019, I filed a further verified EEOC and they sent it to the MCAD complaint making the same categories of allegations in greater detail, also signed by me under penalty of perjury. MART's Answer admits that MART has levied fines against CCRD. (Doc 54 ¶141 (filed 2020-03-20).)

**VII. The Vendor-Portal Capacity Events, As I Observed Them**

23. In 2016 I logged into MART's vendor portal and observed that CCRD's capacity settings had been locked by MART and that vendors, including me, could not change vendor capacities or capacity distributions in the portal.

24. During the period from on or about May 2, 2016 through on or about August 25, 2016, I observed that CCRD's vendor-portal capacity was set to zero, and I received no new trip offers through MART's automatic assignment program during that period.

25. On June 2, 2016, I emailed Ivan Roman at MART reporting that when I went to the capacity management tab in MART's vendor portal, it stated in red bold letters: "You cannot change capacities as it has been locked by MART." Earlier that same day, Mr. Roman had emailed me, copying Karen Cordio, Crystal Geisert, and Tamara Shumovskaya, stating that I was "able to make changes to your capacity manager" through the vendor portal. His email was not correct: the portal was locked by MART, as I reported to me that evening.

26. On May 5, 2017, MART's Title VI Civil Rights Officer, Bonnie Mahoney, sent me MART's formal written response to my Title VI complaint. In that response MART admitted that Crystal Geisert had set CCRD's capacity to 0 on May 2, 2016, that MART "assumed" this was a typo because the capacity should have been 10, and that the error was not corrected until August 25,

2016. MART further admitted that "certain staff members were negligent in their diligence to respond to your correspondence."

**VIII. Termination After CCRD's COVID-19 Leave of Absence**

27. During the COVID-19 pandemic, when drivers and passengers were dying across the country, CCRD Inc. took a leave of absence from performing transportation work for MART. When I tried to return to work for MART after that leave of absence, Rebecca Badgley fired me by telephone and refused to allow CCRD Inc. to resume work as a MART transportation vendor. During that same period, other MART transportation vendors continued performing the same non-emergency transportation work that CCRD Inc. had performed.

**IX. The Distress This Conduct Caused Me**

28. The conduct described above, years of relentless computerized calls to my personal cellular telephone after I repeatedly asked MART to stop, combined with the retaliatory treatment of CCRD described in paragraphs 19–26, caused me severe emotional distress. I experienced severe headaches, insomnia, muscle tension, fatigue, nausea, vomiting, depression, shortness of breath, loss of appetite, stress, stomach pains, a racing heart, and changes in personality and mood.

29. During this ordeal I was rushed to the emergency room at Mercy Hospital, and I sought counseling for the stress-related conditions caused by defendants' conduct.

30. The distress impaired my functioning for months at a time: on some days I was unable to drive or to attend to my work and family duties.

31. I paul Jones verify that everything in this affidavit is True and Correct.

**X. Verbal Revocations**

32. In addition to my written revocations, I verbally told MART's managers, dispatchers, and other employees to stop calling my personal cellular telephone and to contact CCRD, Inc. only

through its office numbers. I gave these instructions in person and by telephone. For example, on or about October 2016, I called Ivan Roman, my contract manager, and Crystal Geisert and told them to call me only on my office number, 888-680-4667, and to stop calling my personal cellular telephone; they assured me no more calls would come to my personal cellular telephone, but the calls continued. MART's Answer admits that I "contacted Defendants about receiving calls." (Doc 54 ¶84 (filed 2020-03-20).) The calls to my personal cellular telephone continued anyway.

## XI. Administrative Filing

33. On January 13, 2019, and February 11, 2019, I signed and filed a verified administrative complaint under penalty of perjury pursuant to 28 U.S.C. § 1746 with the EEOC and they mailed the MCAD a copy, attached as Exhibit 7. In it I named the individual defendants who participated in the retaliation alleged in this case: Supervisors Rebecca Badgley, Joanne Norris, and Tamara Shumovskaya; former employees Karen Cordio and Ivan Roman; and lower employees Jessica Torres, Amanda Kukta, Michelle Moyo, and Robert Monk.

34. On June 21, 2026, I served MART with discovery including Request for Production No. 14, seeking the complete IVR system user manuals for 2015 through 2020 and related technical documentation for the equipment used to call my cellular telephone between November 1, 2016 and July 31, 2020. In its August 25, 2026 supplemental responses, MART objected to the request and did not produce the owner's manuals for the IVR system as configured during the 2016-2019 period when the calls to my number were placed.

35. On September 25, 2026, EOHHS Assistant General Counsel Timothy S. Hoitink produced to me 42 pages of documents, Bates-stamped EHS2P000001 through EHS2P000042, in response to my subpoena dated July 11, 2026. Earlier that day I confirmed receipt of the 118-record interim

production, Bates EHSPJ000203 through EHSPJ000879. Mr. Hoitink has advised that a further production through EOHHS's Everlaw system is expected during the week after my September 28, 2026 filing deadline.

36. I wrote and sent an email on September 23, 2016, at 1:09 p.m. (subject: "Retaliation Mart") recording my contemporaneous notes of MART's actions toward CCRD Inc. from August 15 through September 23, 2016, including my August 24, 2016 discrimination complaint to Director Badgley. I sent a follow-up email with additional contemporaneous notes on September 27, 2016, at 8:32 a.m. under the same subject. The notes are my own words, written as the events occurred.

37. I had no ability to change CCRD Inc.'s telephone number or IVR number in MART's vendor portal. MART's change form, which MART provided to vendors, states that it "must be utilized for any changes of address, business or mailing," must be signed by the contractor, and "will serve as an amendment to your current contract with the Montachusett Regional Transit Authority." MART's own staff told me in writing that "[v]endors are not authorized to make changes to the Vendor Capacity or the Vendor Capacity Distribution," that "[n]o vendor has access to adjust their capacity," and that hours-of-operation changes required me to "fill out the attached form and submit it back to MART." On May 21, 2018, Robert Monk wrote to me: "I did increase your capacity to accept more trips." I never submitted a change form changing CCRD's IVR number, and MART continued calling my personal cellular telephone.

## XII. July 2017 Written Objection to the Autodialer Calls

38. On July 14, 2017, I emailed Tamara Shumovskaya, Rebecca Badgley, Amanda Kukta, Karen Cordio, and Jessica Torres stating that I had "received over 140 Automatic Dialing system calls in the last 10 days," that "the automatic dialing system is very very dangerous as I am driving

when these calls come through most of the time," and that I "cannot answer when I am driving and have clients in the car its just not safe." I asked MART to place trips in CCRD's vendor portal instead, which I checked regularly. That same day Shumovskaya forwarded my email within MART, and Ivan Roman replied that I could mark myself "full" in the portal to stop the calls and that my "MART contract mandates that should [I] need to answer a call while driving [I am] required to pull over." The calls continued. A true copy of this email exchange is attached as **Exhibit 8** (MART000336-338).

## XIII. Authentication of Discovery Responses

39. Attached as Exhibit 9 are true and correct copies of Defendant MART's Responses to my First Set of Requests for Admissions, served July 16, 2026, which I received from defense counsel. The responses are signed under penalties of perjury.

40. Attached as Exhibit 10 are true and correct copies of Defendant MART's Answers to my First Set of Interrogatories, served July 16, 2026, which I received from defense counsel. The answers are signed under penalties of perjury.

41. Attached as Exhibit 11 are true and correct copies of Defendant MART's Responses to my Third Set of Requests for Admissions, served August 5, 2026, which I received from defense counsel.

42. Attached as Exhibit 12 are true and correct copies of Defendant MART's Answers to my Third Set of Interrogatories, served August 5, 2026, which I received from defense counsel. The answers are signed under penalties of perjury and state, among other things, that MART's IVR system called my cellphone through June 20, 2019 using an artificial voice, that MART does not know how many such calls were placed, that MART has no documents reflecting the call count, and that "MART does not have any polices regarding the Telephone Consumer Protection Act."

43. Attached as Exhibit 13 are true and correct copies of Defendant Tamara Shumovskaya's Responses to Requests for Admissions, Interrogatory Answers, and Responses to Requests for Production, served August 7, 2026, which I received from defense counsel. The responses are signed under penalties of perjury.

44. I attended the hearing before the Court on May 15, 2025. Attached as Exhibit 14 are true and correct copies of excerpts from the certified transcript of that hearing. At page 11 of the transcript, defense counsel Deborah Ecker stated: "In response to the summary judgment, he has now sent us the signed certified receipts," and "The individuals who accepted them were accounts receivable."

45. Attached as Exhibit 17 is a true and correct copy of my Sprint telephone bill for my personal cellular telephone number 617-939-5417, for the billing period June 17, 2019 through July 16, 2019. The bill shows seven incoming calls from 978-252-0019 (MART's IVR number) on June 20, 2019.

46. Attached as Exhibit 15 is a true and correct copy of the Docket Report for Case No. 4:19-cv-11093-MRG, as of September 28, 2026.

47. Attached as Exhibit 16 are true and correct copies of excerpts from Defendant Badgley's discovery responses, served August 10, 2026, which I received from defense counsel. The responses are signed under penalties of perjury.

48. Attached as Exhibit 18 are true and correct copies of excerpts from MART's Third Responses to Requests for Production, served August 5, 2026, showing Request No. 2 and MART's response. In response to my request to produce documents reflecting any alleged consent obtained from me for MART to call 617-939-5417, MART referred to the vendor agreement

between MART and CCRD, Inc. and stated: "Defendant has no additional responsive documents."

**EXHIBITS ATTACHED:**

- Exhibit 1: Revocation letter dated 11/12/2016, USPS tracking printout (7016 2710 0001 0777 5997, delivered 11/21/2016 at 12:03 p.m.), and certified-mail receipt (postmarked 11/17/2016).
- Exhibit 2: Revocation letter dated 2/11/2017 to Crystal Geisert, green card signed "Alice m Hill" dated 2/17/17 (tracking 7015 0640 0001 5570 5341), and certified-mail receipt (postmarked 02/15/2017).
- Exhibit 3: 2018 certified-mail receipt and green card signed "K. Marean" (tracking 7015 1520 0000 1814 3550).
- No Exhibit 4:
- No Exhibit 5:
- Exhibit 6: MART FY2025 vendor list.
- Exhibit 7: Verified administrative complaint dated February 11, 2019, signed under 28 U.S.C. § 1746, naming the individual defendants.
- Exhibit 8: July 14, 2017 email exchange: my written objection to the autodialer calls, Shumovskaya's forward within MART, and Roman's reply (MART000336-338).
- Exhibit 9: MART's Responses to my First Set of Requests for Admissions (served 2026-07-16).
- Exhibit 10: MART's Answers to my First Set of Interrogatories (served 2026-07-16).
- Exhibit 11: MART's Responses to my Third Set of Requests for Admissions (served 2026-08-05).
- Exhibit 12: MART's Answers to my Third Set of Interrogatories (served 2026-08-05).
- Exhibit 13: Shumovskaya's RFA Responses, Interrogatory Answers, and RFP Responses (served 2026-08-07).
- Exhibit 14: Excerpts from certified transcript of May 15, 2025 hearing (p. 11).
- Exhibit 15: Docket Report for No. 4:19-cv-11093-MRG (as of September 28, 2026).

- Exhibit 16: Excerpts from Defendant Badgley's discovery responses (served August 10, 2026).
- Exhibit 17: Sprint telephone bill for 617-939-5417, billing period June 17, 2019 through July 16, 2019, showing incoming calls from 978-252-0019 (MART's IVR number) on June 20, 2019.
- Exhibit 18: Excerpts from MART's Third Responses to Requests for Production (served 2026-08-05), showing Request No. 2 and MART's response.

**XIV. Declaration Under Penalty of Perjury**

49. The CCRD-MART Brokerage Transportation Provider Contract (July 1, 2015 through June 30, 2020) is between the Montachusett Regional Transit Authority and Commonwealth Community Recovery Division Inc. I signed the contract solely as CCRD Inc.'s authorized representative; I am not a party to the contract in my individual capacity. The contract contains no provision in which I consent, in my individual capacity, to prerecorded or artificial-voice calls to my personal cellular telephone number, 617-939-5417.

50. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on this 29th day of September 2026. (Corrected Version)

Respectfully submitted,

Paul Jones, Pro Se Plaintiff

79 Thompson Street

Springfield, Ma 01109

Tel: 617-939-5417

Pj22765@gmail.com

**CERTIFICATE OF SERVICE**

I, Paul Jones, hereby certify that on September 29, 2026, I served the foregoing Plaintiff's Renewed Motion for Summary Judgment (corrected version) , Memorandum in Support, Statement of Undisputed Facts Pursuant to Local Rule 56.1, Affidavit of Paul Jones with Exhibits 1 through 18, and Proposed Order, on the following counsel of record via the Court's CM/ECF system:

Deborah I. Ecker, Esq.

Date: September 29, 2026

Mark R. Reich, Esq.

KP Law, P.C.

101 Arch Street, 12th Floor

Boston, MA 02110

DEcker@k-plaw.com

Respectfully submitted,

Paul Jones, Pro Se Plaintiff

79 Thompson Street

Springfield, Ma 01109

Tel: 617-939-5417

Pj22765@gmail.com